# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) | No. 5:12-CV-01341-W |
| | ) ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) ) | |
| | ) | |

## TRUST DEFENDANTS' MOTION TO DISMISS CORRECTED CONSOLIDATED AMENDED COMPLAINT WITH SUPPORTING BRIEF

BRACEWELL & GIULIANI LLP
W. Stephen Benesh *(admitted pro hac vice)*
Curt R. Hineline *(admitted pro hac vice)*
Patrick A. Caballero *(admitted pro hac vice)*
111 Congress Ave., Suite 2100
Austin, Texas 78701
(512) 494-3680

HARTZOG CONGER CASON & NEVILLE
Drew Neville, Jr.
Ryan S. Wilson
201 Robert S. Kerr Avenue, Suite 1600
Oklahoma City, OK  73102
(405) 235-7000

*Attorneys for Defendants*
*SandRidge Mississippian Trust I*
*and SandRidge Mississippian Trust II*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................... 1

SUMMARY OF ARGUMENT ...................................................................... 1

BACKGROUND ............................................................................................ 3

AUTHORITY & ARGUMENT ..................................................................... 6

    I.      PLAINTIFFS' SECURITIES ACT CLAIMS AGAINST THE
            TRUSTS, BROUGHT UNDER SECTIONS 11 AND 12(A)(2),
            FAIL AS A MATTER OF LAW AND MUST BE DISMISSED ........... 6

        A.    All of Plaintiffs' Securities Act Claims Sound in Fraud and
            are Subject to the Strict Pleading Requirements of Rule 9(b) .......... 6

        B.    Plaintiffs Have Failed to Plead Fraudulent Conduct with the
            "Who, What, When, Where, How, and Why" Particularity
            Required as it Concerns the Following ........................................... 11

            *1.*    *Statements Made and Actions Taken by SandRidge and
                 its Officers are not Actionable Against the Trusts.* ............... 11

                a.    SandRidge's Alleged Reporting to the
                    Oklahoma Tax Commission. ..................................... 11

                b.    Any Alleged Overspending by SandRidge. ............... 12

                c.    Any Alleged "Front Running" or "Flipping" by
                    Ward or Related Entities ........................................... 13

                  d.    Violations of SandRidge's Codes of Ethics ............... 14

            *2.*    *The Trusts Properly Identified Their Oil and Gas
                 Projections as Mere Estimates Based on Independent
                 Opinions, and Expressly Warned That Actual Results
                 Might Vary Materially* ........................................................ 14

            *3.*    *The Trusts' Statements About SandRidge's
                 Understanding of the Geology of the Mississippian* ............. 18

         C.    Plaintiffs' Section 11 and 12(a)(2) Claims Fail Because
            Plaintiffs Failed to Plead Subjective Lack of Belief in the
             Reserve Estimates ........................................................................ 19

         D.    Plaintiffs' Section 11 Claims Against Trust I Fail Because
             Plaintiffs Failed to Adequately Plead Reliance on the Trust's
             Registration Statement as Required by Section 11(a). .................... 20

         E.    Plaintiffs' Section 12(a)(2) Claims Fail as a Matter of Law
             Because the Trusts were not Plaintiffs' "Sellers." ........................... 22

         F.    Plaintiffs' Section 12(a)(2) Claims Fail as a Matter of Law
             Because the Trusts' Reliance on Expert Reports about
             Reserves was Reasonable ............................................................... 24

        G.    Plaintiffs' Section 11 and 12(b)(2) Claims Should be
            Dismissed for Lack of Loss Causation ........................................... 25

II.  **PLAINTIFFS' EXCHANGE ACT CLAIMS AGAINST THE TRUSTS, BROUGHT UNDER SECTIONS 10(B) AND RULE 10b-5, MUST BE DISMISSED**. ............................................................... 28

    A.    Standards for Pleading Claims Under the PSLRA ........................... 28

    B.    Plaintiffs Have Failed to Plead with Particularity That the Trusts Acted With Scienter as Required Under the PSLRA and *Twombly* ...................................................................................... 31

    C.    SandRidge's Oil and Gas Projections are not Actionable Because They Fall Under the PSLRA's Safe Harbor for Forward-Looking Statements ............................................................ 34

    D.    Plaintiffs' Claims Relating to the Trusts' Reports on Forms 10-K and 10-Q Should be Dismissed ................................................. 35

    E.    Plaintiffs' 10b-5 Claims Should be Dismissed for Lack of Loss Causation .................................................................................. 38

III.  **INCORPORATION BY REFERENCE** ................................................. 38

**CONCLUSION** ........................................................................................................ 39

**CERTIFICATE OF SERVICE** ................................................................................ 40

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Adams v. Kinder Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ...................................................................... 30, 33, 38

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ........................................................................................ 21, 29

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................... 21, 28, 29, 31, 32

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
   896 F. Supp. 2d 1210 (N.D. Ga. 2012) ....................................................... 19

*Berckley Inv. Grp., Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006)........................................................................... 26

*Bryson v. Gonzales*,
   534 F.3d 1282 (10th Cir. 2008) ................................................................... 29

*City of Phila. v. Fleming Cos., Inc.*,
   264 F.3d 1245 (10th Cir. 2001) .................................................... 10, 30, 31

*Cozzarelli v. Inspire Pharm. Inc.*,
   549 F.3d 618 (4th Cir. 2008) ........................................................................... 9

*Del Noce v. Delyar Corp.*,
   No. 72 Civ. 1819, 1976 WL 813 (S.D.N.Y. July 30, 1976) ....................................... 15

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)........................................ 26

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)................................................................. 19, 35

*Gee v. Pacheco*,
   627 F.3d 1178 (10th Cir. 2010) ................................................................... 4

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) .................................................... 10, 17, 19

*Hillson Partners Ltd. v. Adage, Inc.*,
   42 F.3d 204 (4th Cir. 1994) ......................................................................... 10

*In re American Int'l Group, Inc., 2008 Securities Litigation*,
    No. 08 Civ. 4772 ................................................................................ 15

*In re Craftmatic Sec. Litig.*,
    890 F.2d 628 (3d Cir. 1989)................................................................ 24

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
    2004 WL 5278716 (E.D. Tex. June 16, 2004)................................... 25

*In re GlenFed Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) (en banc) ............................................ 10

*In re Kosmos Energy Ltd. Sec. Lit.*,
    No. 3:12-CV-373, 2013 WL 3196437 (N.D. Tex. June 24, 2013) ....... 22, 23

*In re Metropolitan Securities Litigation*,
    532 F. Supp. 2d 1260 (E.D. Wash. 2007) ......................................... 24

*In re SandRidge Energy, Inc. Shareholder Deriv. Lit.*,
    No. CIV-13-102 (W.D. Okla. Sept. 11, 2013) ................................. 14, 36

*In re Thornburg Mortgage, Inc. Sec. Litig.*,
    695 F. Supp. 2d 1165 (D.N.M. 2010) ................................... 9, 22, 23, 32

*In re Verifone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993)............................................................ 38

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................ 33

*In re Williams Sec. Litig. WCG Subclass*,
    558 F.3d 1130 (10th Cir. 2009) ........................................................ 26

*J & R Marketing, Sep. v. General Motors Corp.*,
    549 F.3d 384 (6th Cir. 2008) ............................................................ 36

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) ........................................................ 22

*Kansas Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) ........................................................ 29

*Maher v. Durango Metals*,
    144 F.3d 1302 (10th Cir. 1998) ........................................................ 24

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
　437 F.3d 588 (7th Cir. 2006), *vacated* ....................................................... 33

*MHC Mut. Conversion Fund, L.P. v. United W. Bancorp, Inc.*,
　913 F. Supp. 2d 1026 (D. Colo. 2012) ........................................................ 19

*Miller v. Shell Oil Co.*,
　345 F.2d 891 (10th Cir. 1965) ................................................................... 25

*Mizzaro v. Home Depot, Inc.*,
　544 F.3d 1230 (11th Cir. 2008) ................................................................. 33

*Novak v. Kassaks*,
　216 F.3d 300 (2d Cir. 2000) ..................................................................... 10

*Pinter v. Dahl*,
　486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) ....................... 22, 23

*Robbins v. Oklahoma*,
　519 F.3d 1242 (10th Cir. 2008) ............................................................ 29, 32

*Rubke v. Capital Bancorp Ltd.*,
　551 F.3d 1156 (9th Cir. 2009) ................................................................... 19

*Shaw v. Digital Equip. Corp.*,
　82 F.3d 1194 (1st Cir. 1996) ....................................................................... 9

*Slater v. A.G. Edwards & Sons, Inc.*,
　719 F.3d 1190 (10th Cir. 2013) ...................................................... 4, 17, 36

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
　365 F.3d 353 (5th Cir. 2004) ..................................................................... 33

*Steed v. Warrior Capital, L.L.C.*,
　No. CIV-06-348, 2007 WL 2458790 (W.D. Okla. Aug. 24, 2007) .............. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308, 127 S. Ct. 2499 (2007) .................................................. 30, 33

*Thomas v. Metropolitan Life Ins. Co.*,
　2008 WL 4619822 (W.D. Okla. 2008) ........................................................ 4

*Truk Int'l Fund LP v. Wehlmann*,
　737 F. Supp. 2d 611 (N.D. Tex. 2009) ...................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................... 8

*Virginia Bankshares v. Sandberg*,
  501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) ........................... 19

*Wagner v. First Horizon Pharm. Corp.*,
  464 F.3d 1273 (11th Cir. 2006) .................................................................. 9

*Weinstein v. McClendon*,
  CIV-12-465, 2013 WL 1457718 (W.D. Okla. Apr. 10, 2013) ..................... 32

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ...................................................................... 33

*Woodmont, Inc. v. Daniels*,
  274 F.2d 132 (10th Cir.1959) .................................................................... 33

## STATUTES

15 U.S.C. § 77k(a) ............................................................................ 6, 20, 21

15 U.S.C. § 78u-4 .................................................................................... 1

15 U.S.C. § 78u-4(b)(2) ....................................................................... 30, 32

15 U.S.C. § 78u-5(c)(1) ............................................................................ 34

15 USC § 77k(e)(3) ................................................................................. 26

U.S.C. § 77l(a)(2) ........................................................................... 6, 22, 24

## RULES

Fed. R. Civ. P. 9(b) ....................................................... 1, 2, 6, 8, 9, 10, 11

Fed. R. Civ. P. 9(b)(2) ......................................................................... 10, 11

Fed. R. Civ. P. 12(b)(6) ................................................................... 1, 25, 29

Fed. R. Evid. 201(b) .................................................................................. 4

Rule 10b-5 ................................................................................... passim

Rule 159A ............................................................................................. 23

## TREATISE

29A Fed. Proc., L. Ed. § 70:408 ........................................................................... 4

## REGULATIONS

17 C.F.R. § 229.303 ........................................................................... 36

17 C.F.R. § 229.404 ........................................................................... 35

17 C.F.R. § 229.503 ........................................................................... 37

## INTRODUCTION

Defendants SandRidge Mississippian Trust I ("Trust I") and SandRidge Mississippian Trust II ("Trust II" and collectively, the "Trusts"), by and through their undersigned attorneys, hereby move to dismiss Plaintiffs' Corrected Consolidated Amended Complaint ("Complaint") pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, and Fed. R. Civ. P. 9(b) and 12(b)(6).

## SUMMARY OF ARGUMENT

More than seven months after they initiated this litigation by suing SandRidge Energy, Inc. ("SandRidge") and several of its principals, Plaintiffs amended their Complaint to add SandRidge Mississippian Trust I and SandRidge Mississippian Trust II as defendants. However, in spite of devoting scores of pages in their Complaint to generally non-specific allegations of conduct by Defendants, Plaintiffs failed to make any meaningful factual allegations against either of the Trusts and likewise failed to plead any plausible theory for any liability of either Trust.

The Court should reject Plaintiffs' transparent and insupportable efforts and dismiss the claims against the Trusts. The Trusts are publicly-held legal entities, separate and distinct from SandRidge, with different assets, liabilities, and owners. The Trusts' assets, which have been fixed since the Trusts' inception, consist primarily of royalty interests in very small fractions of the oil and gas properties owned by SandRidge in the "Mississippian play" as described in the Complaint. The Trusts were not involved with the alleged activities to which most of the Complaint is devoted: the Trusts were not involved in or affected by any alleged excessive capital expenditures by SandRidge, the

1

Trusts were not involved or participants in or affected by any alleged "front running," property flipping, or other alleged activities of the so-called Ward-related entities, and the Trusts had no obligation to disclose any such alleged activities. The Trusts were not involved in any way with or affected by any of the matters Plaintiffs allege regarding SandRidge's Code of Ethics. No matter how many times the Complaint asserts that "Defendants" failed to disclose an alleged production ratio for an unknown period of time for selected, unidentified SandRidge wells allegedly constituting SandRidge's "typical horizontal well in its Mississippian play," *see* Compl. ¶ 160, there is no allegation in the Complaint connecting any of the data alleged by Plaintiffs to any well in which either Trust had an interest. Nor do Plaintiffs assert any facts supporting their claim that the Trusts misrepresented SandRidge's familiarity with the geology of the Mississippian. More importantly, because most of Plaintiffs' assertions appear to depend on an implication that the independent reserve reports estimating the Trusts' reserves were somehow defective, there is no allegation in the Complaint asserting that the independent reserve engineering firm which estimated the Trusts' reserves failed to consider any relevant data, and no allegation that any of the Trusts' offering documents failed to disclose any material information of which either Trust was aware of at the time of its offering.

Plaintiffs' Section 11 and 12(a)(2) claims against the Trusts should be dismissed because:

- The claims sound in fraud and have not been adequately plead pursuant to Fed. R. Civ. P. 9(b);

- Plaintiffs have failed to sufficiently plead  any theory on which the Trusts may be held liable for Ward's alleged misconduct;

- Plaintiffs have failed to plead a subjective lack of belief by the Trusts in the reserve estimates and other statements of opinion;

- Plaintiffs have failed to plead any facts supporting their assertion of reliance on Trust I's registration statement (Section 11 only);

- The Trusts were not "sellers" of the units at issue (Section 12(a)(2) only);

- The Trusts' reliance on expert reports about the reserves was reasonable (Section 12(a)(2) only); and

- Plaintiffs have failed to adequately plead loss causation.

Likewise, Plaintiffs' Section 10(b) and Rule 10b-5 claims should be dismissed because:

- Plaintiffs have failed to plead with particularity that the Trusts acted with scienter;

- The Trusts' oil and gas reserve estimates fall under the PSLRA's safe harbor for forward-looking statements; and

- Plaintiffs have failed to adequately plead loss causation.

- Plaintiffs' claims relating to the Trusts' reports on forms 10-K and 10-Q should be dismissed.

Further, the Trusts incorporate by reference all of the challenges to the Complaint raised by the SandRidge and Underwriter Defendants and are applicable to claims asserted against the Trusts.

## BACKGROUND

As Plaintiffs assert in their Complaint, both Trusts are Delaware statutory trusts. *See* Compl. (Dkt. No. 75) ¶¶ 41, 42.  Defendant Trust I was formed in December 2010 to hold royalty interests in 37 producing horizontal wells and 123 horizontal development

wells to be drilled over 42,900 net acres in the Mississippian play in Oklahoma.  *Id.* ¶ 41.

Defendant Trust II was formed in December 2011 to hold royalty interests in 67

producing horizontal wells and 206 horizontal development wells to be drilled over

43,000 net acres in the Mississippian play in Oklahoma and Kansas.  *Id.* ¶ 42.   The

Trusts' interests were located on a small fraction of the oil and gas properties held by

SandRidge.  *See, e.g.*, Compl. ¶ 288 (stating that by late 2012 alone, SandRidge had "an

inventory of approximately 8,000 drilling locations on approximately 1.7 million net

acres").  Neither Trust was allowed to acquire  additional oil and gas properties or royalty

interests.  *See* Gimble Decl. Ex. 10 at 25, 81; *id.* Ex. 11 at 27, 84.[1]  Accordingly, the

Trusts' holdings have been fixed since their inception, unaffected by any subsequent

alleged "flipping" of or other transactions involving other properties by Defendant Ward

or related entities.

The Form S-1 Registration Statement for Trust I was declared effective by the

SEC on April 5, 2011, and the Trust I Prospectus was dated April 6, 2011.  *See* Benesh

Decl. Ex. 1; Gimble Decl. Ex. 10.  The Form S-1 Registration Statement for Trust II was

declared effective by the SEC on April 17, 2012, and the Trust II Prospectus was dated

April 17, 2012.   *See* Benesh Decl. Ex. 10; Gimble Decl. Ex. 11.  As noted in the

Complaint, each of the Trusts' prospectuses included reserve reports and estimates of

---

[1] The Trusts respectfully ask this Court to take judicial notice of the SEC filings noted
herein pursuant to Fed. R. Evid. 201(b) and the incorporation by reference doctrine.  *See*
29A Fed. Proc., L. Ed. § 70:408; *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190,
1196 (10th Cir. 2013); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Thomas v.
Metropolitan Life Ins. Co.*, 2008 WL 4619822 *5 (W.D. Okla. 2008).

future production of oil and gas attributable to the Trusts' interests based on those reports. All of these estimates were forward-looking statements accompanied by cautionary language, including express warnings that actual results "almost always vary" from assumptions, and such variations "can be material, depending on the circumstances." *See* Gimble Decl. Ex. 10 at 40; *id.* Ex. II at 41. All of the Trusts' reserve estimates were based on reports from Netherland, Sewell & Associates, Inc., an independent third party oil and gas reserve engineering firm. *See* Gimble Decl. Ex. 10 at 1, Annex A; *id.* Ex. II at 1, Annex A.

The Trusts operated as separate and distinct legal entities from SandRidge. SandRidge has "no ability to manage or influence the management of the trust[s] (except through its limited voting rights as a holder of trust units)." *See* Gimble Decl. Ex. 10 at 43; *id.* Ex. II at 46. Further, contrary to Plaintiffs' assertions that SandRidge and the Trusts share officers and directors, the Trusts' publicly filed statements make clear that the Trusts have no officers or directors at all. *See* Benesh Decl. Ex. 2 at 40 ("The Trust has no directors or executive officers."); *id.* Ex. 11 at 53 (same); *see also id.* Ex. 6 at 35 (stating that Trust I "has no principal executive officer, principal financial officer, board of directors or persons performing similar functions."); *id.* Ex. 12 at 30 (stating same for Trust II).

Thus, despite Plaintiffs' global allegations of wrongdoing by "the Defendants," there is no basis for concluding that the Trusts were involved in and/or aware of SandRidge's activities. The entities are separate and distinct, and must be evaluated that

way when determining when Plaintiffs have alleged facts sufficient to support each of their claims against the Trusts.

## AUTHORITY & ARGUMENT

I.   **PLAINTIFFS' SECURITIES ACT CLAIMS AGAINST THE TRUSTS, BROUGHT UNDER SECTIONS 11 AND 12(A)(2), FAIL AS A MATTER OF LAW AND MUST BE DISMISSED**

   A.   **All of Plaintiffs' Securities Act Claims Sound in Fraud and are Subject to the Strict Pleading Requirements of Rule 9(b).**

To adequately plead Section 11 and 12(a)(2) claims, Plaintiffs must allege facts sufficient to establish that the Trusts misrepresented material facts in their Registration Statement or Prospectus.  *See* 15 U.S.C. § 77k(a); U.S.C. § 77l(a)(2).  Obviously aware that the alleged misrepresentations and omissions of which they complain are not attributable to the Trusts, Plaintiffs attempt to circumvent the heightened pleading requirements of Fed. R. Civ. P. 9(b) by repeatedly disclaiming that their claims sound in fraud.  *See* Compl. ¶¶ 392, 400, 409.  However, that does not make it so; in reality, Plaintiffs' claims against the Trusts plainly sound in fraud.  The substance of Plaintiffs' allegations underlying the Exchange Act claims are the same as those allegations underlying the Securities Act claims.  As an example, in support of their Section 11 and 12(a)(2) claims, Plaintiffs incorporate by reference a number of paragraphs that imply intent or knowledge on the part of the Trusts, including the following:

> ¶ 104: "… Throughout the Class Period, Defendants represented that it was necessary to spend heavily on SandRidge's development activities in the Mississippian in order to reap lucrative financial gains from the large reserves of oil and natural gas. Unbeknownst to investors, however, Defendant Ward had an undisclosed ulterior motive for SandRidge's Mississippian activities to enrich Ward and his family members, at the

expense of the Company and its shareholders. ***Defendants failed to disclose to investors*** during the Class Period that the Ward-related entities bought huge amounts of land and mineral rights in the Mississippian that stood to benefit from SandRidge's spending and development activities in the area…."

¶ 124: "Unbeknownst to shareholders, ***contrary to Defendants' representations regarding compliance with the corporate governance guidelines***, Defendant Ward and other related parties were ***engaging in self-dealing transactions*** in direct contravention to SandRidge's Code of Business Conduct and Ethics and Financial Code of Ethics."

¶ 125: "Defendants repeatedly noted that by 2014, the Company would have a "self-funding capital program," which would be operating "all within [SandRidge's] cash flow," and all while "improving [its] credit metrics." According to Defendants' positive statements, SandRidge appeared to be on a clear path to success. ***Contrary to their repeated assurances during the Class Period***, instead of focusing on cash flow and maintaining financial discipline, ***Defendants continued to spend more and more money and exceed capital expenditure targets*** in large part to continue acquisition, drilling, and development activities in the Mississippian."

¶¶ 138-39: "In the SandRidge Mississippian Trust I Registration Statement, Defendants characterized the "Mississippian formation's geology" as "well understood as a result of the thousands of vertical wells drilled and produced there since the 1940s" … . ***Contrary to their statements, however, Defendants did not have a strong understanding*** of the Mississippian production and reserves associated with horizontal wells."

¶320: "The statements referenced above in ¶¶318-19 were false or misleading as a matter of current or historical fact and/or were not meaningful because Defendants should have warned that the gas to oil ratio for SandRidge's Mississippian horizontal wells was higher than represented throughout the entire Class Period, that its older wells in the Mississippian wells had begun to experience steep drilling declines in March 2012, and that the EUR for its typical horizontal Mississippian well was grossly overstated and should have been reduced as a result of the steep drop in production. Additionally, ***the purported warnings do not disclose that data that existed at the time of the statements revealed that the economics of SandRidge's horizontal Mississippian type wells was much worse than portrayed by Defendants.***"

(Emphasis added.)

7

Furthermore, several of the paragraphs that Plaintiffs cite in support of their Section 11 and 12(a)(2) claims incorporate by reference <u>other</u> paragraphs that expressly allege that Defendants acted "knowingly" or "recklessly." *See, e.g.*, Compl. ¶¶ 391 and 399 (citing ¶¶ 385 and 386, which incorporate by reference ¶¶ 191, 193, 270). Moreover, all of the paragraphs cited by Plaintiffs in support of their Section 11 and 12(a)(2) claims are interspersed with other paragraphs that expressly accuse the Defendants of knowing and/or reckless misstatements.[2]

Fortunately, the Court does not need to tread new ground in rejecting Plaintiffs' blatant attempt to obfuscate the fact that the alleged misrepresentations and omissions of which they complain are not attributable to Trusts. Federal courts have repeatedly required Section 11 and 12(a)(2) claims to be pled pursuant to Rule 9(b) where the misrepresentations that are the basis of those claims are also the basis of fraud claims alleged elsewhere in the Complaint. *See Steed v. Warrior Capital, L.L.C.*, No. CIV-06-348, 2007 WL 2458790 at *3 (W.D. Okla. Aug. 24, 2007) (describing fraud allegations as "serious business" and agreeing with the court's reasoning in *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (stating that where plaintiffs "alleges a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim … the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule

---

[2] *See, e.g.*, ¶¶ 158-62, 164, 168, 171, 177, 179, 181, 183, 185, 187, 189, 191, 193, 195, 197, 199, 201, 203, 205, 207, 210, 212, 216, 219, 228, 230, 232, 235, 237, 239, 242, 246, 249, 251, 254, 258, 262, 264, 266, 270, 277, 283, 291, 293, 296, 299, 303, 307, 341-43, 345, 347, 371-73.

9(b)")); *In re Thornburg Mortgage, Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1190 (D.N.M. 2010) ("Under certain circumstances, rule 9(b)'s heightened-pleading requirements might apply to the allegations of material misstatements under a 1933 Act claim."); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) ("We conclude that a § 11 or § 12(a)(2) claim must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint."); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) ("[D]espite the minimal requirements of Sections 11 and 12(2) [of the 1933 Securities Act], a complaint asserting violations of those statutes may yet 'sound[] in fraud.'  For example, if a plaintiff were to attempt to establish violations of Sections 11 and 12(2) as well as the anti-fraud provisions of the Exchange Act through allegations in a single complaint of a unified course of fraudulent conduct, fraud might be said to 'lie[] at the core of the action.'") (emphasis added).

Likewise, courts have repeatedly rejected efforts to avoid the Rule 9(b) pleading requirements by labeling claims sounding in fraud as negligence or strict liability.  *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) ("When a plaintiff makes an allegation that has the substance of fraud, therefore, he cannot escape the requirements of Rule 9(b) by adding a superficial label of negligence or strict liability. Allowing a plaintiff to do so would undermine one of the primary purposes of Rule 9(b): protecting defendants from the reputational harm that results from frivolous allegations of fraudulent conduct."); *Wagner*, 464 F.3d at 1278 ("Nor is it enough to present a general

disclaimer in an attempt to immunize the nonfraud claims from the Rule 9 requirements … .").

Accordingly, Plaintiffs' allegations of material misrepresentations and omissions in the Trusts' Registration Statements and Prospectuses must satisfy the heightened pleading requirements of Rule 9(b)(2)—i.e., Plaintiffs "must state with particularity the circumstances constituting fraud."  "Mere conclusory allegations of falsity are insufficient."  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997).  "The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading."  *Id.* (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); *see also Hillson Partners Ltd. v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994) (holding that "[w]here fraudulent projections are alleged, the plaintiffs must identify in the complaint with specificity some reason why the discrepancy between a company's optimistic projections and its subsequently disappointing results is attributable to fraud").  The policy behind Rule 9(b)'s pleading requirement is to ensure that securities claims will not be based on "fraud by hindsight." *Grossman*, 120 F.3d at 1124; *see also City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1260 (10th Cir. 2001) ("Plaintiffs should not be allowed to proceed with allegations of 'fraud by hindsight' … because corporate officials should be liable for failing to reveal only 'those material facts reasonably available to them.'") (quoting *Novak v. Kassaks*, 216 F.3d 300, 309 (2d Cir. 2000)).

In summary, Plaintiffs' transparent attempt to avoid pleading their Section 11 and 12(a)(2) claims with particularity pursuant to Rule 9(b) should be rejected by this Court. Plaintiffs' allegations of material misrepresentations and omissions in the Trusts' Registration Statements and Prospectuses were required to satisfy the heightened pleading requirements of Rule 9(b)(2), and they do not.

**B.      Plaintiffs Have Failed to Plead Fraudulent Conduct with the "Who, What, When, Where, How, and Why" Particularity Required as it Concerns the Following:**

   ***1.    Statements Made and Actions Taken by SandRidge and its Officers are not Actionable Against the Trusts.***

In alleged support of their claims against the Trusts, Plaintiffs allege that certain statements were made and/or actions were taken by SandRidge and Defendant Tom Ward.  But such statements and actions were not made, taken, or adopted by the Trusts. While the Trusts' connection with all of the alleged statements is non-existent or attenuated, the following are worthy of particular discussion.

   **a. SandRidge's Alleged Reporting to the Oklahoma Tax Commission.**

Plaintiffs allege that production data for unidentified wells reported to the Oklahoma Tax Commission by SandRidge (or other unidentified persons) reveals that the oil-to-gas production ratios reported to investors were "grossly overstated."  *See, e.g.*, Compl. ¶¶ 6-8, ¶ 19 ("much of the data was provided by SandRidge").  But even assuming that the production ratios alleged in the Complaint were accurate for some unidentified subset of SandRidge's wells for some unidentified period of time, the Complaint does not allege that those wells had anything to do with the wells in which

either Trust I or Trust II held interests.  Even Plaintiffs admit in the Complaint that the Tax Commission data relates only to "SandRidge's initial producing wells in their most active counties in the Mississippian play."  *See* Compl. ¶ 143 (emphasis added); *see also* ¶ 19.  Indeed, Trust II has interests located in southern Kansas, not just Oklahoma.  *See* Gimble Decl. Ex. 11 at 4.  Even assuming that the production ratios alleged were accurate for some subset of SandRidge's wells, Plaintiffs have not alleged that either Trust  was aware of any such information at the time of its disclosures or even attempted to link these alleged averages to any misconduct on the part of the Trusts, let alone to the specific interests held by either Trust.  Accordingly, to the extent Plaintiffs' Section 11 and 12(a)(2) claims are based on the Oklahoma Tax Commission records, Plaintiffs have failed to plead with the required particularity that any statements by the Trusts were materially false or misleading, and these claims should be dismissed.

### b.  Any Alleged Overspending by SandRidge.

Plaintiffs repeatedly accuse SandRidge of overspending to the ultimate detriment of the securities holders in alleged support of their Securities Act claims against the Trusts.  *See* Compl. ¶¶ 381 (citing, *e.g.*, Compl. ¶¶ 4, 8, 104, 125, 156).  Yet the Trusts neither incurred, benefitted from, were responsible for or were otherwise affected by any such alleged expenditures, and Plaintiffs fail to allege otherwise.  *See* Gimble Decl. Ex. 10 at 2 (stating that all operating and capital expenses are to be borne by SandRidge, not the Trusts); *id.* Ex. 11 at 2 (same).  Accordingly, to the extent Plaintiffs' Section 11 and 12(a)(2) claims are based on any alleged overspending by SandRidge, Plaintiffs have

failed to plead with the required particularity that any statements by the Trusts were materially false or misleading, and these claims should be dismissed.

### c. Any Alleged "Front Running" or "Flipping" by Ward or Related Entities.

In alleged support of Plaintiffs' claims against the Trusts, Plaintiffs allege that SandRidge founder and former CEO Tom "Ward and his affiliated entities were engaged in a classic form of front-running." *See* Compl. ¶ 3. Specifically, Plaintiffs allege that Ward acquired "massive amounts of land and mineral rights throughout the Mississippian … just prior to SandRidge's acquisitions of neighboring properties," and then "flipped those properties to SandRidge or other companies," or held on to them to benefit from their "appreciation in value due to SandRidge's development activities in the area." *Id.* Importantly, however, even assuming that Plaintiffs' allegations about Ward and the Ward-related entities are all true, they had no effect on either Trust, and Plaintiffs do not articulate how such activity could have affected either Trust, let alone been material to either of them. The Trusts' interests were acquired directly from SandRidge in connection with the formation of the Trusts. *See* Gimble Decl. Ex. 10 at 1, 3, 61; *id.* Ex. 11 at 1, 3, 63. Neither Trust was permitted to acquire any additional oil or gas properties or interests. Thus, any alleged competition by Ward or related entities for properties was simply irrelevant to the Trusts and irrelevant to the veracity of the Trusts' disclosures. The Trusts were not involved or participants[3] in the alleged purchases or sales and did

---

3 *See* Item 404(a) of SEC Regulation S-K (stating that only <u>participants</u> in subject transactions have a duty to disclose them). Notably, this Court has already found that

Continued on following page

not bear any expense relating to them, and Plaintiffs do not allege otherwise. Even assuming that Plaintiffs' allegations about Ward and Ward-related entities are all true, they had nothing to do with either Trust.

### d. Violations of SandRidge's Codes of Ethics.

Plaintiffs also assert that Ward's alleged self-dealing directly contravened SandRidge's Code of Business Conduct and Ethics and Financial Code of Ethics. *See* Compl. ¶¶ 123-24. But as the Complaint plainly states, this code of conduct was created and is enforced solely by SandRidge. *See id.* As such, any alleged violation thereof is in no way chargeable or pertinent to the Trusts. Because Plaintiffs have failed to sufficiently plead any connection of the Trusts with the alleged Ward activities, Plaintiffs have failed to assert a claim against the Trusts.

### 2. The Trusts Properly Identified Their Oil and Gas Projections as Mere Estimates Based on Independent Opinions, and Expressly Warned That Actual Results Might Vary Materially.

Plaintiffs' Section 11 and 12(a)(2) claims should be dismissed to the extent they are based on Plaintiffs' assertion that their alleged production data in any way challenges the Trusts' reserve reports or disclosures based on those reserve reports. *See* Compl. ¶¶ 384-86 (citing ¶¶ 192-93). Plaintiffs not only have failed to plead specific facts, they have failed to allege that the Trusts' statements were subjectively false at the time they

---

Continued from previous page

SandRidge was not a party to any of Ward's alleged transactions, and thus had no duty to disclose the same in its proxy statements. *See In Re SandRidge Energy, Inc. Shareholder Deriv. Lit.*, No. CIV-13-102 (W.D. Okla. Sept. 11, 2013) at 18. Because the Trusts are even further removed from Ward's activities, Plaintiffs cannot plausibly allege that they had a duty to disclose them.

were made. Further, the plain language of the public filings of the Trusts preclude Plaintiffs' claims.

First, the reserve projections stated therein are based on expert reports by Netherland, Sewell & Associates, Inc., an independent third-party engineering firm. These expert estimates and projections are opinions, not statements of fact. *See* Gimble Decl. Ex. 10 at 65 ("All of the oil and natural gas reserves in this registration statement were <u>estimated</u> by Netherland Sewell.") (emphasis added); *id.* at 64 ("Netherland Sewell estimated oil and natural gas reserves attributable to the Underlying Properties as of December 31, 2010.  Numerous uncertainties are inherent in estimating reserve volumes and values, and the estimates are subject to change as additional information becomes available.  The reserves actually recovered, and the timing of production of the reserves may vary significantly from the original estimates."); *id.* Ex. 11 at 65, 67 (similar). Accordingly, the Trusts cannot be liable for reliance on these opinions, and the claims against them must be dismissed, unless Plaintiffs have sufficiently pleaded facts showing that the Trusts subjectively believed these opinions to be false, as discussed in Section I.C. below.  *See In Re American Int'l Group, Inc., 2008 Securities Litigation*, No. 08 Civ. 4772 at p. 9, Memorandum and Order (S.D.N.Y. April 26, 2013) ("PwC's Audit Opinions are clearly expressed as statements of opinion and are therefore subject to *Fait's* subjective falsity requirement."); *Truk Int'l Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 623 (N.D. Tex. 2009) (dismissing Securities Act claims where there was no allegation that statements about proved reserves estimates were not believed at the time of the offering); *Del Noce v. Delyar Corp.*, No. 72 Civ. 1819, 1976 WL 813 at *10 (S.D.N.Y.

July 30, 1976) ("valuation of petroleum reserves . . . involves a long and difficult process in which even highly regarded experts are ultimately forced to rely on their subjective judgments both in the selection and weighing of data").

Second, the Trusts' public filings expressly warned that the production projections were estimates, that actual results likely would vary, and that such variations could be material:

> This prospectus and the documents incorporated by reference contain forward-looking statements. Such forward-looking statements are based on assumptions and beliefs that the trust and SandRidge believe to be reasonable; however, <u>assumed facts almost always vary from actual results, and the differences between assumed facts and actual results can be material</u>, depending upon the circumstances. Where the trust or SandRidge expresses an expectation or belief as to future results, that expectation or belief is expressed in good faith and based on assumptions believed to have a reasonable basis. It cannot be assured, however, that the stated expectation or belief will occur or be achieved or accomplished.

*See* Gimble Decl. Ex. 10 at 40; Ex. 11 at 41 (emphasis added); s*ee also id.* Ex. 10 at 13 ("Actual reserves and future production may be less than current estimates, which could reduce cash distributions by the trust and the value of the trust units."); *id.* Ex. 11 at 14 (same).  The Trusts' prospectuses also expressly warned that the Trusts' reserve estimates had a low reliability because of the short length of time that the wells had been in operation:

> Reserve estimates for fields that do not have a lengthy production history are less reliable than estimates for fields with lengthy production histories. A lack of production history may contribute to inaccuracy in estimates of proved reserves, future production rates and the timing of development expenditures. Most of the Producing Wells have been operational for less than one year and estimated total reserves vary substantially from well to well and are not directly correlated to perforated lateral length or completion technique. Although SandRidge and Netherland Sewell

> analyzed historical production data from vertical wells drilled in the AMI since the 1940s, there can be no assurance that this data can accurately predict future production from horizontal wells. The lack of operational history for horizontal wells in the Mississippian formation may also contribute to the inaccuracy of estimates of proved reserves. <u>A material and adverse variance of actual production, revenues and expenditures from those underlying reserve estimates, would have a material adverse effect on the financial condition, results of operations and cash flows of the trust and would reduce cash distributions to trust unitholders.</u>

*See* Gimble Decl. Ex. 10 at 20 (emphasis added); *see also id.* Ex. 11 at 22-23 (stating similar).

Although Plaintiffs now assert that the Trusts should have disclosed the matters alleged by Plaintiffs, they fail to plead any facts alleging that either Trust was aware of any such matters at the time of its disclosures, or describing what, when, where, how, or <u>why</u> the Trusts' statements were in any way inaccurate or misleading, let alone fraudulent, at the time they were made, particularly in light of the above disclaimers.  *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997) (securities claims may not be based on "fraud by hindsight"; thus, to survive motion to dismiss, plaintiffs must explain "why the disputed statement was untrue or misleading *when made*") (citation omitted, italics in original); *see also Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1199, 1205 (10th Cir. 2013) (affirming dismissal of Securities Act claims where plaintiffs had not alleged any contemporaneous facts to support the inference that defendants reasonably should have anticipated the impending mortgage crisis or its consequences for the issuer's financing).  Accordingly, Plaintiffs' Securities Act claims against the Trusts based on these assertions should be dismissed.

### 3. The Trusts' Statements About SandRidge's Understanding of the Geology of the Mississippian.

In alleged support of their Section 11 and 12(a)(2) claims against the Trusts, Plaintiffs also allege that the Trusts' offering documents "failed to disclose the adverse facts about the Company's understanding of the geology of the Mississippian," which Plaintiffs state was "highly variable" instead of having the "continuity" or "consistency" allegedly described.  *See* Compl. ¶¶ 190, 191, 269.  However, not only have Plaintiffs failed to support their claims with particularized facts about the Trusts' alleged knowledge and actions, but SandRidge's and the Trusts' offering documents offer evidence to the contrary.

The Trusts' statements about SandRidge's beliefs are based on statements made in SandRidge's own publicly filed documents.  Even so, both of the Trusts' prospectuses expressly warned investors of the variability of the region.  *See* Gimble Decl. Ex. 10 at 18 (noting that SandRidge's decisions to develop properties in the region "will depend in part on the evaluation of data obtained through geophysical and geological analyses, production data and engineering studies, ***the results of which are often inconclusive or subject to varying interpretations***," and that "[d]rilling and production operations" at a given property could be curtailed due to "unusual or unexpected geological formations and miscalculations") (emphasis added); *id.* Ex. 11 at 20 (same).  Thus, Plaintiffs' allegations are contrary to the very documents to which Plaintiffs point for their claim for liability.

18

In addition, any statement by the Trusts that SandRidge had a "thorough understanding" of the Mississippian region, *see* Compl. ¶ 190, is not an actionable misrepresentation; it is merely a "generalized statement[] of optimism that [is] not capable of objective verification." *Grossman,* 120 F.3d at 1119. Accordingly, Plaintiffs' Securities Act claims against the Trusts based on these assertions should be dismissed.

**C.**  **Plaintiffs' Section 11 and 12(a)(2) Claims Fail Because Plaintiffs Failed to Plead Subjective Lack of Belief in the Reserve Estimates.**

Plaintiffs have not alleged any facts to suggest subjective lack of belief in reserve estimates (or for that matter, any other material contrary statements of belief or opinions). Various circuits have held that "when a plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to the extent that the statement was both objectively false and disbelieved by the defendant at the time it was expressed." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011) (citing *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1095–96, (1991)); *see also Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009) ("[M]isleading opinions … can give rise to a claim under section 11 only if the complaint alleges with particularity that the statements were both objectively and subjectively false or misleading."); *MHC Mut. Conversion Fund, L.P. v. United W. Bancorp, Inc.*, 913 F. Supp. 2d 1026, 1036-37 (D. Colo. 2012) (requiring plaintiffs asserting claims under the Securities Act to allege that the opinions are both objectively and subjectively false, and citing both *Fait* and *Rubke* for support); *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1217-18 (N.D. Ga. 2012) (requiring

a Section 11 and 12(a)(2) plaintiff to "sufficiently allege subjective falsity in its claims because statements of opinions or belief are actionable only if they are both objectively and subjectively false").

Here, as demonstrated above, Plaintiffs' Complaint failed to allege that the Trusts did not subjectively believe to be true their statements of opinions in their registration statements and prospectuses when they made them, let alone allege anything of the sort with particularity.   Accordingly, Plaintiffs' Section 11 and 12(a)(2) claims should be dismissed.

**D.      Plaintiffs' Section 11 Claims Against Trust I Fail Because Plaintiffs Failed to Adequately Plead Reliance on the Trust's Registration Statement as Required by Section 11(a).**

Plaintiffs' Section 11 Claims against Trust I also fail because Plaintiffs have failed to plead sufficiently that they acquired the Trust I securities in <u>reliance</u> upon the Trust's registration statement.   Section 11 expressly requires claimants who acquired their securities after the issuers made available at least 12 months' worth of earnings statements beginning after the registration statement became effective to prove reliance on the untrue statement in or omission from the registration statement.  *See* 15 USC § 77k(a).

When the named plaintiff against Trust I acquired her securities (presumably in October 2012), *see* Compl. ¶ 23, Trust I had already made available more than 18

months' worth of earnings statements since its registration statement became effective.[4] Accordingly, the reliance requirement of 15 USC § 77k(a) applies to Plaintiffs' claims against Trust I.  Plaintiffs' sole attempt to satisfy this requirement in their Complaint is to allege that "Plaintiffs and putative Class members acquired units in the Miss Trust I Offering and the Miss Trust II Offering, and in reliance on, the Registration Statements and without knowledge of the untruths and/or omissions alleged herein."  *See* Compl. ¶ 398.  However, Plaintiffs do not offer any additional facts about when, how, or in what ways the named plaintiff for Trust I "relied" upon the Registration Statement.  By the time the named plaintiff purchased her Trust I securities, the Trust had filed with the SEC five quarterly reports and an annual report.  Consequently, her unsupported assertion of reliance cannot substitute for her failure to plead any facts suggesting actual reliance.

While well-pleaded factual allegations are presumed to be true, the presumption of truth does not apply to mere "labels and conclusions," or a "formulaic recitation of the elements" of a claim, or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 550 U.S. 662, 678 (2009) (citation omitted, emphasis added).  Because Plaintiffs' sole conclusory reference to reliance fails to meet the pleading standards established in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662, their Section 11 claims against Trust I should be dismissed.

---

[4] Trust I's registration statement became effective on April 5, 2011.  Subsequently, Trust I filed, among other reports, Reports on Form 10-Q for the periods ending March 30, 2011, June 30, 2011, and September 30, 2011, an Annual Report on Form 10-K for the year ended December 31, 2011, Reports on Form 10-Q for the periods ending March 31, 2012, June 30, 2012, and September 30, 2012, and an Annual Report on Form 10-K for the year ended December 31, 2012.  *See* Benesh Decl. Ex. 1-9.

E.     **Plaintiffs' Section 12(a)(2) Claims Fail as a Matter of Law Because the Trusts were not Plaintiffs' "Sellers."**

Plaintiffs' Section 12(a)(2) claims against the Trusts fail for another, independent reason: Plaintiffs have not alleged, and cannot allege, facts supporting their claim that the Trusts were "sellers" of securities as the statute expressly requires. *See* 15 U.S.C. § 77l(a)(2).

The only proper defendants in a Section 12(a)(2) action are those who "offer or sell" unregistered securities. *Pinter v. Dahl*, 486 U.S. 622, 641 (1988). The definition of one who "offers or sells" includes "[a] person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Id. at 647; *see also Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir. 2000) (finding that Section 12(a)(2) imposes an "express privity requirement"). Notably, where the offering at issue was a firm commitment underwriting—meaning that the plaintiffs purchased the securities from underwriters, not the original issuer—courts have found that the issuer did not directly and actively offer, sell, or solicit the sale of the securities at issue to the plaintiffs, as required for Section 12(a)(2) liability. *See, e.g.*, *In re Thornburg Mortgage, Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1220 (D.N.M. 2010) (finding issuer of securities is "not a proper Section 12(a)(2) defendant" where securities offerings were structured as firm commitment underwriter offerings); *In re Kosmos Energy Ltd. Sec. Lit.*, No. 3:12-CV-373, 2013 WL 3196437, at *10 (N.D. Tex. June 24, 2013) ("In this Court's view, such statement [in *Pinter v. Dahl*] amounts to a determination by the Supreme Court that, based on the unambiguous terms of the statute

[Section 12(a)(2)], one may not recover from an issuer where the plaintiff purchased the shares from the underwriter, absent other circumstances such as solicitation by the issuer, given that the plaintiff did not purchase the shares 'from' the issuer.").[5]

Here, Plaintiffs generally assert that all of the Defendants "were sellers and offerers and/or solicitors of purchasers of the securities offered pursuant to the Prospectuses of the Miss Trust I Offering and the Miss Trust II Offering." *See* Compl. ¶ 401.  However, as the offering documents themselves clearly state, both the Trust I Offering and Trust II Offering were firm commitment underwritings. *See* Gimble Decl. Ex. 10 at 113-17; *id.* Ex. 11 at 115-19.  Presumably recognizing this problem with their claim, Plaintiffs then allege that the Trusts and others "solicited such purchases for their personal financial gain through the preparation and dissemination of the Registration Statements." *See* Compl. ¶ 402.  This statement that the Trusts participated in the preparation of the registration statements—without even alleging in what ways the Trusts allegedly participated and without any allegation of any direct and active participation in the solicitation of any sale—is insufficient at the pleading stage to state a Section 12(a)(2) claim against the Trusts. *See In re Thornburg Mortgage, Inc. Sec. Litig.*, 695 F. Supp. 2d at 1220 ("The fact that the individual Defendants created the offering documents, many

---

5 In 2005, the SEC adopted Rule 159A, which states that issuers may be liable as "sellers" in Section 12(a)(2) claims regardless of the underwriting method used to sell the securities.  Subsequent cases have made clear, however, that the SEC's attempt to rewrite the Securities Act is precluded by the Supreme Court's interpretation thereof. *See, e.g.*, *Kosmos Energy Ltd. Securities Lit.*, No. 3:12–CV–373, 2013 WL 3196437, at *8-10 (N.D. Tex. June 24, 2013) ("Such interpretation by the Supreme Court [in *Pinter v. Dahl*] leaves no gap for the SEC to fill, and it forecloses the SEC's determination that issuers are liable as statutory sellers under § 12(a)(2).").

of which were likely made long before the public offerings, does not constitute 'direct and active' solicitation of the 'immediate sale' that Section 12(a)(2) liability requires.") (citing *Maher v. Durango Metals*, 144 F.3d 1302, 1306 (10th Cir. 1998)); *see also In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989) ("[A]lthough an issuer is no longer immunized from § 12 liability, neither is an issuer liable solely on the basis of its involvement in preparing the prospectus.

Rather, a "purchaser must demonstrate direct and active participation in the solicitation of the immediate sale to hold the issuer liable as a § 12[(a)](2) seller." *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989); *In re Metropolitan Securities Litigation*, 532 F. Supp. 2d 1260, 1295 (E.D. Wash. 2007) ("neither the signing of a prospectus, nor the unsupported assertion of solicitation is sufficient to qualify an individual as a 'seller' for the purposes of Section 12"). Because the Complaint is wholly devoid of allegations supporting any claim that the Trusts were direct and active participants in the solicitation of immediate sales of the securities at issue in this lawsuit, Plaintiffs' Section 12(a)(2) claims against the Trusts must be dismissed.

## F. Plaintiffs' Section 12(a)(2) Claims Fail as a Matter of Law Because the Trusts' Reliance on Expert Reports about Reserves was Reasonable.

Section 12 of the Securities Act expressly excludes liability of defendants who "did not know, and in the exercise of reasonable care could not have known," of the alleged untruth or omission alleged by plaintiffs. *See* 15 U.S.C. § 77l(a)(2). As stated above, other than their global allegations of "the Defendants'" knowledge, Plaintiffs do not make any specific allegations that the Trusts knew of any alleged untruth or omission.

While generally an affirmative defense, the "reliance" defense can be grounds for dismissal of a Securities Act complaint where, as here, the "defense clearly appears on the face of the complaint." *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *45 (E.D. Tex. June 16, 2004); *accord Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("Under [Rule 12(b)], a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").

Here, the Trusts' registration statements expressly state that the reserve estimates stated therein are based on reserve reports by Netherland, Sewell & Associates, Inc., an independent, third-party petroleum engineering firm.  *See* Gimble Decl. Ex. 10 at 1, Annex A; *id.* Ex. 11 at 1, Annex A.  These reports are then attached as exhibits to each of the Trusts' prospectuses, which, in turn, are incorporated by reference by Plaintiffs' Complaint.  *See* Compl. ¶¶ 94, 99.  Importantly, Plaintiffs' Complaint in no way challenges the reasonableness of those expert reports.  Because Plaintiffs failed to raise any doubt that the Trusts' reliance on these expert reports was reasonable, Plaintiffs' Section 12(a) claims against the Trusts should be dismissed.

### G.    Plaintiffs' Section 11 and 12(b)(2) Claims Should be Dismissed for Lack of Loss Causation.

Plaintiffs' Securities Act Claims against the Trusts should be dismissed for failure to adequately plead loss causation.  In any action for claims under Section 11 or 12(a)(2) of the Securities Act:

> if the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from such

> part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, ***such portion of or all such damages shall not be recoverable***.

*See* 15 USC § 77k(e)(3) (emphasis added); Section 12(a)(2)(b) (similar).  Here, Plaintiffs have failed to adequately plead that any material omissions or misstatements by the Trusts <u>proximately caused</u> any devaluation of their securities.  *See Berckley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) ("[T]he loss causation element requires the plaintiff to prove that it was the very facts about which the defendant lied which caused its injuries.") (quotation marks and citation omitted); *accord In re Williams Sec. Litig. WCG Subclass*, 558 F.3d 1130, 1136-37 (10th Cir. 2009); *cf. Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 336 (2005) ("An inflated purchase price will not by itself constitute or proximately cause the relevant economic loss needed to allege and prove "loss causation.").

The Complaint alleges that in response to announcements by SandRidge on August 4, 2011, and a conference call held by SandRidge on August 5, 2011, the trading price of Trust I units decreased 4%.  *See* Compl. ¶ 359.  The Complaint also alleges that from November 8, 2012, to November 9, 2012, the closing prices of Trust I decreased 7.4% and Trust II decreased more than 8.5%.  *See* Compl. ¶ 361. Plaintiffs offer no explanation why the alleged price decrease was proximately caused by any alleged misstatement in  or omission from either of the Trusts' disclosures or why it was even related in any way to any alleged misstatement in or omission from either of the Trusts' disclosures.  Plaintiffs also fail to mention that November 9, 2012 was the ex-dividend

date for both trusts, and they avoid entirely any discussion about the possible effect that SandRidge's November 8, 2012 press release reporting net losses may have had on price volatility.

First, as stated in the Complaint, on August 4, 2011, <u>SandRidge</u> announced that it was increasing its capital expenditures by $500 million "due in large part to increased spending in the Mississippian." Compl. ¶ 358. Three months later, on November 8, 2012, Plaintiffs assert that a publicly issued letter from TPG-Axon to <u>SandRidge</u>'s Board of Directors accused Ward of self-dealing,[6] demanded Ward's resignation, and criticized SandRidge's stock performance. Compl. ¶¶ 10, 322. There is no allegation that there was any matter relating to either of the Trusts in the announcement or in the TPG-Axon letter. As demonstrated above, the Trusts are separate entities from SandRidge, and cannot be held liable for SandRidge's statements and actions. However, simply due to the naming similarity and perceived association between the entities, it is highly plausible that unitholders associated SandRidge with the respective Trusts (just as Plaintiffs tend to do in the Complaint), resulting in temporary volatility in the Trusts' securities.

Further, November 8, 2012 was the ex-dividend date for a quarterly cash distribution by both Trusts.[7] Thus, unitholders of Trust I and Trust II as of November 8

---

[6] Contrary to Plaintiffs' assertion, the TPG-Axon letter did not <u>actually</u> mention the Ward Entities' acquisitions in the Mississippian. *See* Gimble Decl. Ex. 25 (Nov. 8 TPG-Axon Letter).

[7] *See*
http://finance.yahoo.com/q/hp?s=SDT&a=10&b=1&c=2012&d=10&e=30&f=2012&g=v;
http://finance.yahoo.com/q/hp?s=SDR&a=10&b=1&c=2012&d=10&e=30&f=2012&g=v.

were entitled to cash distributions, whereas any new owners beginning November 9 were not entitled to those distributions.  Because buyers who acquire a security on or after the ex-dividend date are not entitled to the dividend or distribution, the trading price on the ex-dividend date naturally falls on the ex-dividend date.[8]  This, combined with the name-association volatility caused by SandRidge's announcements, plausibly caused the Trusts' securities prices to temporarily decline.  As such, Plaintiffs' assertions of loss causation fail under *Twombly*.  *See Twombly*, 550 U.S. at 555, 570 (requiring a plaintiff to set forth sufficient factual matter to make a claim "plausible on its face" and "to raise a right to relief above the speculative level").

In summary, not only have Plaintiffs failed to show that any material omissions or misstatements by the <u>Trusts</u> proximately caused the devaluation of their securities, but other, more plausible causes of the declines occurred.  Plaintiffs' Section 11 and 12(a)(2) claims should be dismissed.

## II.   PLAINTIFFS' EXCHANGE ACT CLAIMS AGAINST THE TRUSTS, BROUGHT UNDER SECTIONS 10(B) AND RULE 10b-5, MUST BE DISMISSED.

### A.   Standards for Pleading Claims Under the PSLRA.

---

[8] *See* William J. Grange, <u>Corporation Law for Officers and Directors</u> 262-3 (1935) ("On that day [ex-dividend day] the stock is said to become 'ex-dividend' and there is usually a small drop in its market price to compensate for the loss of the dividend which has been cut off, so to speak, from the stock."); s*ee also* Edwin J. Elton et al., *Marginal Stockholder Tax Effects and Ex-Dividend Day Price Behavior: Evidence From Taxable Versus Nontaxable Closed-End Funds*, 87 REVIEW OF ECONOMICS AND STATISTICS 3, 579-586 (2005) (noting that since 1970, over 100 articles have appeared in leading journals of finance and economics examining the fall of stock prices on ex-divided days).

As noted above, in *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that, in order to survive dismissal under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. In turn, the Tenth Circuit has stated that *Twombly* imposes a "burden … on the plaintiff[s] to frame a 'complaint with enough factual matter (taken as true) to suggest' that [they are] … entitled to relief." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

However, only well-pleaded factual allegations are presumed to be true; the presumption of truth does not apply to mere "labels and conclusions," or a "formulaic recitation of the elements" of a claim, or "naked assertions devoid of further factual enhancement." *Iqbal*, 550 U.S. at 678 (2009) (citation omitted); *accord Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214-15 (10th Cir. 2011). Further,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1215 (citations omitted); *see also Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (requiring complaints to "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (quotation marks and citation omitted).

In addition, to adequately plead a claim under Section 10(b) or Rule 10b-5, the Tenth Circuit has held:

29

that a plaintiff's complaint must contain allegations addressing the following five elements: (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).  To satisfy the scienter requirement, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  The Supreme Court explained that a "strong inference" is one that is "powerful or cogent" and "more than merely reasonable or permissible—it must be cogent and compelling."  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (quotation marks and citation omitted).  Thus, "[a] complaint will survive [a motion to dismiss] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* (footnote omitted).

In the Tenth Circuit, the required state of mind (scienter) has been defined as "intentional *or* reckless misconduct."  *See City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1259 (10th Cir. 2001) (italics in original).  Further, whereas intentional misconduct "'encompasses deliberate illegal behavior,'" *id.* at 1260 (citation omitted), "recklessness is defined as 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware

of it.'" *Id.* (citation omitted).  However, "[c]ourts have been cautious about imposing liability for securities fraud based on reckless conduct." *Id.*  For example, "[p]laintiffs should not be allowed to proceed with allegations of 'fraud by hindsight,'" because corporate defendants "should be liable for failing to reveal only 'those material facts reasonably available to them.  Thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.'" *Id.*  In addition, "allegations that the defendant possessed knowledge of facts that are later determined by a court to have been material, without more, is not sufficient to demonstrate that the defendant intentionally withheld those facts from, or recklessly disregarded the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud." *Id.*

**B.**   **Plaintiffs Have Failed to Plead with Particularity That the Trusts Acted With Scienter as Required Under the PSLRA and *Twombly*.**

Here, Plaintiffs' allegations of scienter against the Trusts fail to meet the strict requirements of the PSLRA and *Twombly*.  For example, Plaintiffs allege that "Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them." *See* Compl. ¶ 372.  Yet as Plaintiffs also admit, "[t]he fraud alleged herein [the Complaint] relates to the core business and operations of <u>SandRidge</u>." *See* Compl. ¶ 348 (emphasis added).

Plaintiffs fail to set forth facts specifying why or how the <u>Trusts</u> were allegedly privy to this alleged fraud.  Plaintiffs do not allege any facts indicating that the <u>Trusts</u> were aware of any information about the reserves of the oil and gas production of the <u>Trusts</u>' wells that allegedly contradicted the Trusts' public statements.  Nor is there any allegation that the Trusts should have considered any alleged activities of the Ward entities, even if the Trusts had been aware of them, or SandRidge's capital expenditures, relevant, let alone material to either Trust.  *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (plaintiffs carry burden "to frame a 'complaint with enough factual matter (taken as true) to suggest' that [they are] … entitled to relief") (quoting *Twombly*, 550 U.S. at 556).

Further, despite Plaintiffs' attempts to lump all the Defendants together under the SandRidge name, alleging scienter at the pleading stage requires more than mere association.  *See, e.g.*, *Weinstein v. McClendon*, CIV-12-465, 2013 WL 1457718, at *3-4 (W.D. Okla. Apr. 10, 2013) (dismissing plaintiffs' first claim as insufficiently pled under the PSLRA because "[t]hroughout the Complaint, plaintiffs group all defendants together and make generalized, conclusory allegations regarding scienter without any specific corroborating details"); *In re Thornburg Mortgage, Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1199 (D.N.M. 2010) ("[T]he PSLRA's particularity requirement appears to foreclose plaintiffs from pleading that facts about the defendants, as a group, are sufficient to give rise to a strong inference of scienter.") (citing 15 USC § 78u-4(b)(2)), *on reconsideration in part*, 824 F. Supp. 2d 1214, 1277 (D.N.M. 2011) (finding that, for the purpose of PSLRA scienter analysis, statements will be associated only with the individual

defendants who said them, signed them, or as to whom plaintiffs specifically allege had knowledge of them; general allegations that a defendant "must have known" by virtue of their positions in the company are insufficient).[9]

Finally, as with all their other global allegations about "the Defendants'" knowledge, Plaintiffs' Exchange Act claim-based allegations that the Trusts knowingly misrepresented SandRidge's "familiarity" with the geology of the Mississippian region fail for the same reasons.  *See* Compl. ¶¶ 190, 191, 269.  Despite conclusorily asserting that the Trusts knew or recklessly disregarded information contradicting SandRidge's statements, *see* Compl. ¶ 191, Plaintiffs have alleged no facts establishing what, when,

---

[9] *See also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) (affirming dismissal of § 10(b) and Rule 10b-5 claims where plaintiff "failed to plead scienter adequately for any of the individual defendants"); *Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 603 (7th Cir. 2006) (requiring plaintiffs to plead a "strong inference of scienter … with respect to each individual defendant in multiple defendant cases"), *vacated and remanded*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 n.6 (2007) (but expressly preserving the Seventh Circuit's holding "that allegations of scienter made against one defendant cannot be imputed to all other individual defendants"); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("[T]he PSLRA requires the plaintiffs to 'distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud.'") (citation omitted); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1105-07 (10th Cir. 2003) (considering allegations of scienter against each defendant individually); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1156-57 (C.D. Cal. 2007) (to satisfy the PSLRA, plaintiffs must plead particularized facts establishing scienter "separately for each alleged misrepresentation and each defendant."); *cf. Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir.1959) (where "intent is an essential ingredient of tort liability as for deceit," collective scienter is inappropriate).

where, how, or <u>why</u> the Trusts' allegedly *knew* such statements to be false or recklessly disregarded any information contradicting SandRidge's statements.

Because Plaintiffs fail to state sufficient facts to give rise to the required strong inference that the Trusts acted with the requisite scienter, Plaintiffs' Section 10(b) and Rule 10b-5 claims should be dismissed.

### C.   SandRidge's Oil and Gas Projections are not Actionable Because They Fall Under the PSLRA's Safe Harbor for Forward-Looking Statements

Under the PSLRA, a plaintiff is not liable for a forward looking statement if:

(A) the forward-looking statement is—
    (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; or
    (ii) immaterial; or
(B) the plaintiff fails to prove that the forward looking statement—
    **
    (ii) if made by a business entity, was—
        (I) made by or with the approval of an executive officer of that entity; and
        (II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

*See* 15 U.S.C. § 78u-5(c)(1).   Here, the PSLRA's safe harbor for forward looking statements applies to the Trusts' projections for oil and gas projections because they were all forward-looking statements accompanied by meaningful cautionary language. Specifically, the prospectuses for both Trusts include the following language:

### CAUTIONARY STATEMENT REGARDING FORWARD-LOOKING STATEMENTS

       This prospectus and the documents incorporated by reference contain forward-looking statements. Such forward-looking statements are based on assumptions and beliefs that the trust and SandRidge believe to be

reasonable; however, assumed facts almost always vary from actual results, and the differences between assumed facts and actual results can be material, depending upon the circumstances. Where the trust or SandRidge expresses an expectation or belief as to future results, that expectation or belief is expressed in good faith and based on assumptions believed to have a reasonable basis. It cannot be assured, however, that the stated expectation or belief will occur or be achieved or accomplished. All statements other than statements of historical facts included or incorporated by reference in this prospectus, including, without limitation, statements regarding the proved oil and natural gas reserves associated with the Underlying Properties, the trust's or SandRidge's future financial position, business strategy, budgets, pending acquisitions, recent acquisitions and divestitures, project costs and plans and objectives for future operations, including the information under the heading "Target Distributions and Subordination and Incentive Thresholds," statements pertaining to future development activities and costs, and other statements in this prospectus that are prospective and constitute forward-looking statements are forward-looking statements.

*See* Gimble Ex. 10 at 40; Ex. 11 at 41 (similar). Further, as demonstrated above, Plaintiffs have failed to plead with particularity facts showing that any officer, let alone an "executive officer," of the Trusts made these forward-looking statements with <u>actual, subjective</u> knowledge that the statements were false or misleading. *See* Section I.C. *supra* (discussing *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011)); *see also* Benesh Decl. Ex. 2 at 40 ("The Trust has no directors or executive officers."); *id.* Ex. 11 at 53 (same). Accordingly, Plaintiffs' Exchange Act claims should be dismissed pursuant to the PSLRA's safe harbor for forward-looking statements.

### D. Plaintiffs' Claims Relating to the Trusts' Reports on Forms 10-K and 10-Q Should be Dismissed

In addition to their allegations about the Trusts' registration statements, Plaintiffs have alleged that the Trusts' Reports on Form 10-K filed during the Class Period were required to furnish information required under Item 404 of Regulation S-K, 17 C.F.R.

§ 229.407(a), including a description of transactions in which the registrant was a participant. *See* Compl. ¶¶ 308-11. As this Court already has concluded with respect to SandRidge in connection with allegations against SandRidge, securities regulations in Item 404 requiring disclosure of "related-party transactions" are not applicable where the registrant is not a "participant" in the alleged transactions. *See In re Sandridge Energy, Inc. Shareholder Deriv. Litig.*, No. 5:13-cv-00102-W, slip op. at 17-18 (W.D. Okla. Sept. 11, 2013) (Dkt. No. 134). Here, there is no allegation that either Trust I or Trust II was such a "participant" in any of the alleged Ward entity transactions. Consequently, for the same reasons that similar claims relating to the Trusts' registration statements should be dismissed, these claims relating to the Trusts' Reports on Form 10-K should be dismissed.

Similarly, in addition to their allegations about the Trusts' registration statements, Plaintiffs have asserted that the Trusts' Form 10-Ks and 10-Qs filed during the Class Period failed to disclose "known trends, events or uncertainties" under Item 303 of Regulation S-K, 17 C.F.R. § 229.303. *See* Compl., ¶¶ 312-15. As the Tenth Circuit has recognized, Item 303 applies only where a trend or uncertainty is both "presently known to management" and "reasonably likely to have material effects on the registrant's financial condition or results of operations." *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 at 1197; *see also J & R Marketing, Sep. v. General Motors Corp.*, 549 F.3d 384, 391 (6th Cir. 2008) (Item 303 also only covers trends "known" to the company not "knowable" trends). Plaintiffs have not alleged plausible facts with respect to either Trust as to either requirement here. Consequently, for the same reasons that similar

claims relating to the Trusts' registration statements should be dismissed, these claims relating to the Trusts' Reports on Form 10-K and 10-Q should be dismissed.

Further, in addition to their allegations about the Trusts' registration statements, Plaintiffs have asserted that the Form 10-Ks filed by SandRidge and the Trusts during the Class Period failed to disclose a "discussion of the most significant factors that make the offering risky or speculative" as required by Item 503 of Regulation S-K, 17 C.F.R. § 229.303. *See* Compl., ¶ 316. To the contrary, the Report on Form 10-K filed by Trust I during the Class Period included appropriately tailored, substantive warnings about the risks relevant to an investment in Trust I's securities. Item 1A of Trust I's Form 10-K filed during the Class Period contained risk factors substantially similar to those set forth in its registration statement. *See* Benesh Decl. Ex. 2 at pp. 18-33. Plaintiffs even quoted from some of the relevant risk factors in Paragraph 319 of the Complaint. Thus, the Form 10-K filed by Trust I during the Class Period explicitly warned investors about the risks of variances occurring in the future from the estimates of reserves and production. Further, as discussed above, Trusts were under no obligation to disclose any information about the alleged activities by Ward or Ward entities, and Plaintiffs have failed to allege any connection between their alleged average SandRidge Mississippian well production data and any well in which either Trust held an interest. Accordingly, Plaintiffs have failed to allege with particularity that the Trusts' Form 10-Ks or 10-Qs failed to comply with Items 404, 303, or 503 of Regulation S-K. Further, Plaintiffs have failed to support these claims with facts establishing that the Trusts acted with scienter. Even if Plaintiffs could establish a duty to disclose under Regulation S-K, it still would not mean that either

Trust had made an omission actionable under Section 10(b), as Plaintiffs would still have the burden of demonstrating that any omission was material. *See in re Verifone Sec. Litig.,* 11 F3d 865, 870 (9th Cir. 1993) (declining "to hold that a violation of exchange rules governing disclosure may be imported as a surrogate for straight materiality analyses under § 10(b)"). Accordingly, the Plaintiffs' Exchange Act claims based upon the Trusts' Form 10-Qs and 10-Ks should be dismissed.

### E. Plaintiffs' 10b-5 Claims Should be Dismissed for Lack of Loss Causation.

Plaintiffs' 10b-5 claims against the Trusts should be dismissed for failure to adequately plead loss causation. As stated above, for Plaintiffs' Rule 10b-5 claim to survive a motion to dismiss, the Complaint must allege with particularity that Plaintiffs' reliance on the Defendants' material misrepresentations or omissions of fact <u>caused</u> Plaintiffs' ensuing damages. *See Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). Yet, as demonstrated in Section I.G. above, Plaintiffs have failed to sufficiently plead that the alleged omissions or misstatements by the Trusts <u>proximately caused</u> the devaluation of its securities. Accordingly, Plaintiffs' Section 10b-5 claims against the Trusts should be dismissed.

## III. INCORPORATION BY REFERENCE

To the extent not set forth in this motion, the Trusts refer to and incorporate by reference any other argument for dismissal of Plaintiffs' claims that is advanced by other defendants against whom Plaintiffs have asserted such claims. This includes, but is not limited to, the following:

- The arguments in the SandRidge Defendants' and Underwriter Defendants' motions/memoranda that Plaintiffs have failed to comply with PSLRA requirements for securities class actions, including defects in the required notice of claims by unitholders of Trust I and Trust II and failure to file notice seeking appointment of lead plaintiffs in connection with such claims.

- The arguments in the SandRidge Defendants' and Underwriter Defendants' motions/memoranda relating to the lack of standing of Plaintiff Greenberg to assert claims under Section 12(a)(2).

- The arguments in the SandRidge Defendants' and Underwriter Defendants' motions/memoranda relating to the application of the "bespeaks caution" doctrine to Plaintiffs' claims against the Trusts.

- The arguments in the SandRidge Defendants' and Underwriter Defendants' motions/memoranda regarding the effect of Plaintiffs' disclaimer of "intentional or reckless conduct" on their Securities Act claims.

## CONCLUSION

For the reasons stated herein, Plaintiffs' claims against the Trusts under Securities Act Sections 11 and 12(a)(2) and Exchange Act Sections 10(b) and Rule 10b-5 should be dismissed.

DATED this 7th day of October 2013.

Respectfully submitted,

**Bracewell & Giuliani LLP**

By: _s/W. Stephen Benesh_____
W. Stephen Benesh *(Admitted pro hac vice)*
Texas State Bar No. 02132050
Curt R. Hineline    *(Admitted pro hac vice)*
Washington State Bar No. 16317
Patrick A. Caballero *(Admitted pro hac vice)*
Texas State Bar No. 24028975
111 Congress Ave., Suite 2100
Austin, Texas 78701
Phone: 512-494-3680
Fax: 512-479-3949

steve.benesh@bgllp.com

**And**

**Hartzog Conger Cason & Neville**

Drew Neville, Jr.
Oklahoma State Bar No.:   6641
Ryan S. Wilson
Oklahoma State Bar No.:  14340
201 Robert S. Kerr Avenue, Suite 1600
Oklahoma City, OK  73102
Tel:  405-235-7000
Fax:  405-996-3403

**ATTORNEYS FOR DEFENDANTS**
**SANDRIDGE MISSISSIPPIAN TRUST I**
**AND SANDRIDGE MISSISSIPPIAN TRUST II**

## CERTIFICATE OF SERVICE

I certify that on the 7th day of October, 2013, I electronically transmitted the *Defendants' Motion to Dismiss Corrected Consolidated Amended Complaint with Supporting Brief* to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the appropriate ECF registrants.

By: s/W. Stephen Benesh
        W. Stephen Benesh