# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. CIV-12-01341-W<br><br>Relating to All Actions |

## MOTION OF DEFENDANTS SANDRIDGE ENERGY, INC., JAMES D. BENNETT, AND MATTHEW K. GRUBB TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT

COVINGTON & BURLING LLP
Mark P. Gimbel (admitted *pro hac vice*)
C. William Phillips (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

CROWE & DUNLEVY
Thomas B. Snyder, Esq., OBA #31428
20 North Broadway, Suite 1800
Oklahoma City, OK 73102
(405) 234-3254


*Attorneys for James D. Bennett and Matthew K. Grubb*


CONNER & WINTERS, LLP
Kiran A. Phansalkar, OBA #11470
Mitchell D. Blackburn, OBA #12217
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
(405) 272-5711

*Attorneys for SandRidge Energy, Inc.*

TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

Introduction ......................................................................................................................... 1

Factual Background and Allegations ................................................................................... 2

I.     Procedural Background and Dismissal of the First Amended Complaint ............... 3

II.    The Second Amended Complaint ........................................................................... 6

Argument ............................................................................................................................. 7

III.   SandRidge's Statements About CapEx Are Not Actionable. ................................ 8

       A.    Defendants' CapEx Statements Were Forward-Looking. ........................... 9

       B.    The Forward-Looking Statements Were Accompanied by
             Cautionary Language. ............................................................................... 10

       C.    Plaintiffs Do Not Allege That The SandRidge Defendants Had
             Actual Knowledge Of The Supposedly Misleading Nature Of The
             Forward-Looking CapEx Statements. ....................................................... 11

IV.    SandRidge's Statements About The Ward-Related Entities Are Not
       Actionable. ........................................................................................................... 14

V.     SandRidge's Statements About Oil & Gas Production Are Not Actionable
       Because Plaintiffs Have Failed to Plead Scienter. .............................................. 16

       A.    Plaintiffs Do Not Adequately Allege That Defendants Bennett and
             Grubb Acted With Scienter. ...................................................................... 18

             1.    The Amended Complaint Continues Plaintiffs' Inappropriate
                   Reliance on Defendants' Managerial Positions ............................. 18

             2.    The Former Employee Allegations Miss The Mark. ..................... 21

       B.    Plaintiffs Fail to Allege That Ward Acted With Scienter. ........................ 21

       C.    Plaintiffs Do Not Adequately Allege Scienter as to SandRidge. ............. 22

VI.    The Second Amended Complaint Does Not State a Section 20(a) Claim. ........... 22

VII.   Other Arguments for Dismissal are Hereby Incorporated. .................................. 23

Conclusion ........................................................................................................................ 25

TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083  (10th Cir. 2003) ................................................................. 17, 22, 23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 7, 13

*City of Philadelphia v. Fleming Cos., Inc.*,
   264 F.3d 1245 (10th Cir. 2001) ................................................................................ 19

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   131 S. Ct. 2179 (2011) .............................................................................................. 14

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976), ................................................................................................ 16

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011) ..................................................................................... 24

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) ...................................................................... 20

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) *aff'd, Albert Fadem Trust v.*
   *Citigroup, Inc.,*165 F. App'x 928 (2d Cir. 2006) ......................................................... 19

*In re Gold Resource Corp. Sec. Litig.*,
   957 F. Supp. 2d 1284 (D. Colo. July 15, 2013) *aff'd*, 776 F.3d 1103
   (10th Cir. 2015) ......................................................................................................... 9

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   667 F.3d 1331 (10th Cir. 2012) ................................................................................ 13

*In re Fusion-io, Inc. Sec. Litig.*,
   No. 13-CV-05368, 2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ............................... 11

*In re Stat-Tech Sec. Litig.*,
   905 F. Supp. 1416 (D. Colo. 1995) .......................................................................... 13

*In re Thornburg Mortg. Inc. Sec. Litig.*,
   695 F. Supp. 2d 1165 (D.N.M. 2010) ....................................................................... 17

*In re Williams Sec. Litig.*,
  339 F. Supp. 2d 1206 (N.D. Okla. 2003) ...................................................... 9

*Grossman v. Novell, Inc.*, ................................................................... 23
  120 F.3d 1112 (10th Cir. 1997)

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ..................................................................... 10

*Long v. Brown*, 98 P.2d 28
  (Okla. 1939) ........................................................................................ 12

*Lyons v. Am.'s Wholesale Lender*,
  No. 3:13-CV-2608-B, 2014 WL 5326609 (N.D. Tex. Oct. 16, 2014) .......................... 8

*Matrixx Initatives, Inc. v. Siracusano*,
  131 S. Ct. 1309 (2011) ............................................................................. 14

*Miller v. Champion Enters., Inc.*,
  346 F.3d 660 (6th Cir. 2003) ..................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015) ............................................................................. 24

*Prissert v. Emcore Corp.*,
  894 F. Supp. 2d 1361 (D.N.M. 2012) ................................................... 17, 22

*Slater v. A.G. Edwards & Sons, Inc.*,
  719 F.3d 1190 (10th Cir. 2013) .................................................................. 11

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) ............................................................... 17, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................. 8

*Stoneridge Investment Partners, LLC*,
  552 U.S. 148 (2008) ................................................................................ 14

*Thomas v. Metro. Life Ins. Co.*,
  No. CIV-07-0121-F, 2008 WL 4619822 (W.D. Okla. Oct. 16, 2008) ....................... 11

*Weinstein v. McClendon*,
  No. CIV-12-465-M, 2013 WL 1457718 (W.D. Okla. Apr. 10, 2013),
  *aff'd*, 757 F.3d 1110 (10th Cir. 2014) ......................................................... 18

*Wolfe v. AspenBio Pharma, Inc.*,
   587 F. App'x 493 (10th Cir. 2014) ............................................................................ 12

*Zinna v. Congrove*,
   55 F.3d 1177 (10th Cir. 2014) ................................................................................. 16

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) ....................................................................................... 17

15 U.S.C. § 78u-4(b)(3)(A) ......................................................................................... 8

15 U.S.C. § 78u-5(c)(1) ........................................................................................... 3, 8

15 U.S.C. § 78u-5(c)(1)(A)(i) ..................................................................................... 4

15 U.S.C. § 78u-5(i)(1) ............................................................................................. 24

15 U.S.C. § 78u-5(i)(1)(A) ..................................................................................... 9, 10

Defendants SandRidge Energy, Inc. ("SandRidge" or "the Company"), James D. Bennett, and Matthew K. Grubb (collectively, "SandRidge Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Second Consolidated Amended Complaint ("Second Amended Complaint").

## INTRODUCTION

Plaintiffs' Second Amended Complaint fails to cure the many deficiencies noted by the Court in its Order dismissing the First Amended Complaint.  Rather than curing these defects, Plaintiffs double down, repackaging the same deficient claims in the hope that the Court will come to a different conclusion.

For example, although the Court found that the statements alleged in the First Amended Complaint about capital expenditures could not support a securities fraud claim because they were both forward-looking and accompanied by adequate cautionary language, the Second Amended Complaint relies on the very same statements, adding only legal conclusions which insist — contrary to the Court's prior findings — that the statements were *not* forward-looking or accompanied by adequate cautionary language.

Similarly, although the Court already has rejected Plaintiffs' allegations that the market's purported reaction to a November 8, 2012 letter from TPG-Axon establishes loss causation with respect to alleged misrepresentations or omissions relating to the Ward-Related Entities' activities in the Mississippian, Plaintiffs continue to rely on this same letter to establish loss causation, changing only the typeface of their allegations, as if bold and italic font can save an otherwise deficient claim.

Likewise, despite the Court's clear holding that generalized allegations that

SandRidge executives received reports regarding Mississippian production are insufficient to establish scienter with regard to alleged misstatements on that subject, the Plaintiffs again respond by doubling down — adding more defective claims that Ward, Grubb, and Bennett received reports and attended meetings at which production was discussed, without anywhere offering the kind of particularized factual allegations that would prove knowledge of any misstatement or omission.

For these and other reasons set forth below, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND AND ALLEGATIONS

Defendant SandRidge, headquartered in Oklahoma City, is a producer of oil and natural gas listed on the New York Stock Exchange ("NYSE") under the symbol "SD." In or about 2009, SandRidge began acquiring significant interests in the Mississippian Lime formation (the "Mississippian") in Oklahoma and Kansas.  SAC ¶¶ 3, 65-66.  Like SandRidge, many other companies have operated in the Mississippian, including Shell — one of the largest oil companies in the world — and three entities allegedly affiliated with Tom Ward, SandRidge's founder and former CEO:  WCT Resources, L.L.C. ("WCT"), 192 Investments, L.L.C. ("192"), and TLW Land & Cattle, L.P. ("TLW") (collectively, the "Ward-Related Entities").  *Id*. ¶¶ 81, 92.  Defendant James D. Bennett served as SandRidge's Chief Financial Officer and a Senior Vice President during the relevant period, and Defendant Matthew K. Grubb served as SandRidge's President and Chief Operating Officer.  *Id*. ¶¶ 30, 31.

**I.      Procedural Background and Dismissal of the First Amended Complaint**

On March 6, 2013, the Court consolidated two putative securities class actions

filed in this Court, each of which asserted claims against the SandRidge Defendants and

other parties under Sections 10(b) and 20(a) of the Securities Exchange Act on behalf of

a putative class of purchasers of SandRidge common stock.  ECF 60.  On July 30, 2013,

Plaintiffs filed their First Amended Complaint, which joined fifteen new defendants and

added new claims — under Sections 11, 12(a)(2), and 15 of the Securities Act — on

behalf of a new class of plaintiffs comprised of unitholders in certain SandRidge royalty

trusts (the "Unitholder Claims").  ECF 75 (hereinafter cited as "FAC").

In a series of orders entered from May 11, 2015, to October 27, 2015, the Court

dismissed the First Amended Complaint in its entirety.  ECF 179, ECF 180, ECF 184,

ECF 185.  The Court dismissed the Unitholder Claims (Counts III, IV, and V) for failure

to comply with the notice requirements of the Private Securities Litigation Reform Act

("PSLRA"), 15 U.S.C. § 78u-4.  *See, e.g.*, ECF 184, at 1-2.  The Court also dismissed the

common stockholder claims (Counts I and II), which alleged violations of Sections 10(b)

and 20(a) of the Exchange Act based on alleged misrepresentations or omissions

concerning three subjects: SandRidge's capital expenditure ("CapEx") guidance, land

acquisitions by the Ward Entities, and oil and gas production in the Mississippian.  *See*

*id.* at 31.  The Court's orders described in detail the reasons why these claims were not

viable.  *Id*. at 2.

First, the Court found that the alleged misstatements regarding SandRidge's

CapEx were protected by the PSLRA's "safe harbor" provision at 15 U.S.C. § 78u-

5(c)(1). *Id.* at 11-17.  The Court explained that:

> SandRidge's representations about its projected capital
> expenditures about which the Lead Plaintiffs have
> complained were accompanied by adequate cautionary
> statements that "identif[ied] important factors that could
> cause actual results to differ materially from those in the
> forward-looking statement[s]." . . . [and] sufficiently alerted
> investors of the dangers of their investments by also
> providing substantive and company-specific warnings about
> certain circumstances[.]

*Id.* at 16 (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)).   For these reasons, the Court held that

SandRidge's projected CapEx estimates "fall within PSLRA's safe harbor provision and

are therefore not actionable."  *Id*. at 17 (footnotes omitted).

Second, the Court found that Plaintiffs failed to adequately plead loss causation

with respect to their allegations regarding transactions involving the Ward-Related

Entities.  *Id.* at 18-22.   The Court explained that, contrary to Plaintiffs' allegations, a

November 8, 2012 TPG-Axon letter and SandRidge press release "do not pertain to the

Ward-related entities or to these entities' acquisition of adjacent acreage."  *Id.* at 21, n.34.

Instead, the transactions with the Ward-Related Entities were not disclosed until a

January 23, 2013 TPG-Axon presentation.  *See id.* at 21-22.  As a result, the decline of

SandRidge's share price on November 8 and 9, 2012 could not have been attributable to

any corrective disclosure about the transactions involving the Ward-Related Entities, and

failed to demonstrate loss causation.  *Id.* at 21-22.

Third, the Court found that Plaintiffs failed to adequately plead that alleged

misstatements about the value of SandRidge's wells in the Mississippian were made with

scienter.  *Id.* at 22-30.  The Court observed that pleading scienter requires

4

"*[p]articularized* factual allegations" showing that the defendants

> received and reviewed a report or other information and that
> that *specific* defendant therefore knew the truth about the
> facts that were purportedly misstated and further knew that
> his misrepresentation about, or nondisclosure of, that truth
> would likely mislead investors.

*Id.* at 27-28 (emphasis added).  Because a plaintiff must allege that a defendant had access to specific reports or information establishing the "truth about the facts that were [reportedly] misstated," *id.* at 27, the Court concluded that Plaintiffs' "generalized, conclusory allegations regarding scienter without specific corroborating details" were insufficient.  *Id.*  In particular, the Court noted that Plaintiffs' allegation "[t]hat Bennett and Grubb may have received reports from the Reservoir Engineering Department does not alone demonstrate 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Id.* at 28 (citation omitted).   Instead, Plaintiffs were required to offer particularized allegations raising a "strong inference that Grubb and Bennett 'knew about the 'danger of misleading buyers and sellers,' . . . or that 'the danger [of misleading investors] was 'so obvious that [Grubb and Bennett] must have been aware of it.'" *Id.* (citations omitted).  The Court cautioned that this requirement cannot be met by simply alleging that Grubb or Bennett had a motive — financial or otherwise — to misrepresent SandRidge's financial status, because a mere allegation of a possible motive "fails to raise an inference of scienter that is either cogent or compelling." *Id.* at 29-30.

After having explained the defects of the First Amended Complaint in detail, the Court granted Plaintiffs narrow leave to replead against four of the nineteen defendants — SandRidge, Bennett, Grubb, and Ward.

II.      **The Second Amended Complaint.**

Plaintiffs filed their Second Amended Complaint on October 23, 2015.  ECF 188

(hereinafter cited as "SAC").  The new pleading focuses on the same alleged

misstatements as the First Amended Complaint, but incorporates additional detail.

*CapEx.*  The Second Amended Complaint continues to assert that the Defendants

made the same allegedly misleading statements concerning SandRidge's CapEx that were

at issue in the First Amended Complaint.  But Plaintiffs now attempt to buttress those

allegations by (i) asserting that the increased CapEx in 2011 and 2012 benefitted Mr.

Ward and the Ward-Related Entities, *compare* SAC ¶¶ 8, 9, 151, 180, 184, 334-36, 343,

*with* FAC ¶¶ 8, 159, 195, 199, 358, and, (ii) pleading the legal conclusion that —

contrary to the Court's prior holding — the statements were neither forward-looking nor

accompanied by appropriate cautionary language, *compare* SAC ¶¶ 173-74, 180, 188,

274, 354, *with* FAC ¶¶ 189, 195, 203, 293, 365.

*Transactions of Ward-Related Entities.*  The Second Amended Complaint

continues to allege that the Defendants failed to disclose alleged front-running of

SandRidge in the Mississippian by the Ward-Related Entities.  *See* SAC ¶¶ 3, 83, 98,

336-37.  While the complaint adds additional factual detail concerning some of these

transactions, it does not plead any new facts suggesting that any purported "corrective

disclosure" about these transactions moved the price of SandRidge stock at any time.  *See*

*id.*  Plaintiffs continue to rely on the same allegation — rejected by the Court in its prior

opinion — that the transactions were disclosed by TPG-Axon on November 8, 2012,

leading SandRidge's stock price to decline.  *See id.* ¶ 344-48.  However, as the Court

previously found, TPG-Axon's "disclosures and accusations" detailing the scope of these transactions were not released in the November 8, 2012 letter, but in a subsequent "presentation that was released by TPG-Axon on January 23, 2013" and filed with the SEC the following day.  ECF 184 at 21.  Plaintiffs have failed to allege that SandRidge's stock declined in response to these subsequent disclosures.

   *Mississippian Oil and Gas Production.*  The Second Amended Complaint continues to assert claims relating to alleged misrepresentations about oil and gas production in the Mississippian.  *See* SAC ¶¶ 132-148, 152-53, 155, 164-69, 177-78, 181-84, 196-97, 202-203, 219-37, 248-49, 252-62, 266-74, 279-82.  However, Plaintiffs have failed to include any specific factual allegations demonstrating that any of the Defendants possessed information demonstrating that any of the Company's statements about the Mississippian were false or misleading.  Plaintiffs rely instead on generalized allegations, based largely on facts allegedly provided by unidentified former SandRidge employees, that SandRidge held regular meetings and circulated regular reports with unspecified content regarding production in the Mississippian.  *See* SAC ¶¶ 122-29, 322-37.  But Plaintiffs fail to identify any specific reports or meetings that might support their allegations of scienter; to specify the content of any such reports or meetings; or to explain why it should have informed Bennett, Grubb, or any Defendant that SandRidge's Mississippian production estimates were incorrect.  *See id.*

**ARGUMENT**

   Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), a complaint must not only include factual allegations establishing every essential element of a

7

plaintiff's claim, but plead "enough facts to state a claim to relief that is plausible on its face." Where, as here, a plaintiff asserts securities fraud claims, the burden is higher. Securities fraud claims must meet the "[e]xacting pleading requirements" of the PSLRA, which exceed even the particularized pleading requirements of Rule 9(b). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Under the PSLRA, a plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter." *Id.* If the complaint fails to meet these requirements, the complaint must be dismissed. 15 U.S.C. § 78u-4(b)(3)(A). As explained below, just as Plaintiffs' prior complaint failed to meet these high standards, the Second Amended Complaint remains deficient. Dismissal with prejudice is therefore appropriate. *Lyons v. Am.'s Wholesale Lender*, No. 3:13-CV-2608-B, 2014 WL 5326609, at *7-8 (N.D. Tex. Oct. 16, 2014) (dismissing amended complaint with prejudice where plaintiffs failed to address deficiencies in their complaint despite "the opportunity to replead").

## III.   SandRidge's Statements About CapEx Are Not Actionable.

Under the safe harbor provision of the PSRLA, 15 U.S.C. § 78u-5(c), a forward-looking statement is not actionable if

> (A) [it] is (i) identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement; *or* (ii) immaterial; *or* (B) the plaintiff fails to prove that the forward-looking statement (i)…was made with actual knowledge…that the statement was false or misleading.

15 U.S.C. § 78u-5(c)(1) (emphasis added). The requirements are disjunctive. *See id.* Thus, if there is adequate cautionary language, liability will be precluded without regard

to the defendant's state of mind; conversely, if the defendant lacked actual knowledge that a statement was false, or if the statement was not material, liability will be precluded without regard to whether there was adequate cautionary language. *See id.; see also In re Gold Resource Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1294 (D. Colo. July 15, 2013) *aff'd*, 776 F.3d 1103 (10th Cir. 2015); *accord In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1220 (N.D. Okla. 2003). As the Court explained in its Order dismissing the First Amended Complaint, SandRidge's CapEx estimates "fall within PSLRA's safe harbor provision and are therefore not actionable." ECF 184, at 17 (footnotes omitted). The Second Amended Complaint fails to cure this basic defect.

### A.    Defendants' CapEx Statements Were Forward-Looking.

As the Court previously found, the phrase "'forward-looking statement[s]' is statutorily defined to include 'projection[s] of . . . capital expenditures.'" 15 U.S.C. § 78u-5(i)(1)(A). Despite this statutory definition, Plaintiffs allege in the Second Amended Complaint that various statements about SandRidge's CapEx were not forward-looking because they purportedly concerned actions taken in the past.[1] For example, Plaintiffs assert that Mr. Ward's statements, in April and May of 2011, that 2011 CapEx needs have been "addressed" are "not forward-looking because they concern action taken in the past." SAC at ¶ 180. Plaintiffs' allegations are untenable.

Because these statements were made prior to the end of the relevant year, they are

---

[1] *See id*. ¶¶ 179-180 (April 12, 2011 statements about 2011 CapEx); ¶¶ 187-88 (May 5, 2011 statements about 2011 CapEx); *id.* ¶ 194 (May 24, 2011 statements about 2011 CapEx); *id*. ¶¶ 273-74 (August 23, 2012 statements about 2012 CapEx).

9

plainly forward-looking in character.  A statement in April or May of 2011 that CapEx

needs for all of 2011 have been "addressed" boils down to nothing more than a projection

that 2011 capital expenditures will fall within budgeted amounts.  Such statements are

inherently forward-looking and "cannot meaningfully be distinguished from the future

projection of which they are a part." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d

242, 255 (3d Cir. 2009) (finding that statements that company was "on track" and

positioned to meet annual goals, "cannot meaningfully be distinguished from the future

projection of which they are a part"); *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 677

(6th Cir. 2003) (finding that statements that imply present circumstances but also form

the basis of forward-looking statements are subject to the PSLRA's safe harbor).  Thus,

notwithstanding Plaintiffs' allegations to the contrary, the alleged misstatements about

future capital expenditures in the Second Amended Complaint are plainly forward-

looking in nature.  *See* 15 U.S.C. § 78u-5(i)(1)(A) (defining statements "containing a

projection of … capital expenditures" as "forward-looking" statements).

    **B.**    **The Forward-Looking Statements Were Accompanied by Cautionary Language.**

    Plaintiffs also attempt to avoid the PSLRA's safe harbor by asserting that oral

statements about SandRidge's CapEx were not accompanied by sufficient cautionary

language.  *See* SAC ¶¶ 174, 355.  The argument fails because these statements were

accompanied by cautionary language, delivered either orally or in a written presentation

10

accompanying the oral statements.  *See* Ex. 1[2] at 2; Ex. 2 at 2; Ex. 3 at 1; Ex. 4 at 2; Ex.

5 at 3.  Mr. Bennett, for example, had a practice of beginning earnings calls with

cautionary language.  *See, e.g.*, Ex. 5 at 3 ("[T]oday's call will contain forward-looking

statements and assumptions, which are subject to risks and uncertainties, and actual

results may differ materially from those projected in these forward-looking statements.").

This type of cautionary language at the beginning of oral presentations satisfies the

requirements of the PSLRA's safe harbor.  *See In re Fusion-io, Inc. Sec. Litig.*, No. 13-

CV-05368, 2015 WL 661869, at *13 (N.D. Cal. Feb. 12, 2015).

      **C.**    **Plaintiffs Do Not Allege That The SandRidge Defendants Had Actual Knowledge Of The Supposedly Misleading Nature Of The Forward-Looking CapEx Statements.**

Plaintiffs' CapEx allegations also fail because Plaintiffs do not plead any facts

showing that the SandRidge Defendants had actual knowledge that any statement

concerning CapEx was false or misleading.  Plaintiffs assert that the Defendants failed to

disclose that "SandRidge was prepared to increase CapEx in order to spend more funds in

the Mississippian to enrich the Ward-related entities,"  (*e.g.*, SAC ¶ 180), but the Second

Amended Complaint fails to include any well-pleaded allegations demonstrating that any

of the SandRidge Defendants were aware of any undisclosed plan to increase CapEx for

the benefit of the Ward-Related Entities.

---

[2] All exhibits are attached to the Declaration of Mark P. Gimbel and consist of materials
which this Court may consider on a motion to dismiss.  *See, e.g.*, *Thomas v. Metro. Life
Ins. Co.,* No. CIV-07-0121-F, 2008 WL 4619822, at *5 (W.D. Okla. Oct. 16, 2008)
("Courts routinely consider public filings at the motion to dismiss stage."); *see also Slater
v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

At most, Plaintiffs make conclusory allegations that Defendants "knew, or recklessly disregarded" the Ward-Related Entities' activities in the Mississippian "because the Company had engaged in numerous transactions with the Ward-related entities." *Id*. ¶¶ 325-26. But there are no particular facts alleged that would demonstrate that any of the SandRidge Defendants were aware of: (1) the full nature of Mr. Ward's involvement with the Ward-Related Entities, (2) the extent of the Ward-Related Entities' holdings in the Mississippian, or (3) the existence of any purported undisclosed plan to benefit such entities by increasing SandRidge's CapEx in the Mississippian. Without these facts, Plaintiffs have failed to sufficiently allege that any of the SandRidge Defendants had actual knowledge that Mr. Ward's supposed "undisclosed ulterior motive" rendered the Company's CapEx statements misleading. *Id*. ¶ 82. *See Wolfe v. AspenBio Pharma, Inc.*, 587 F. App'x 493, 498 (10th Cir. 2014) (dismissing claim where drawing an inference of actual knowledge would have required to the court to "stack inference upon inference to even conclude that the statements were false — much less that defendants knew or were reckless in not knowing they were false").

Nor can such knowledge be imputed to SandRidge simply because of Ward's status as the Company's CEO. Plaintiffs' theory (however misguided) is that Ward was acting for his own benefit, in violation of the Company's Code of Ethics, and against its interests. *See, e.g.*, SAC ¶¶ 102-104. A corporate principal will not be charged with knowledge of an agent gained "in performance of acts" done on the agent's "own personal behalf" or "in matters where the agent's interest is adverse to that of his principal." *Long v. Brown*, 98 P.2d 28, 36 (Okla. 1939) (internal quotation marks

omitted); *In re Stat-Tech Sec. Litig.*, 905 F. Supp. 1416, 1422 (D. Colo. 1995)

(concluding that where defendants "acted adversely to the interest of [the corporation]

. . . . these defendants' misconduct should not be imputed to the company.").

Finally, Plaintiffs have failed to establish that Mr. Ward's so-called "undisclosed

ulterior motive" was material and actually rendered the CapEx statements misleading.

For example, Plaintiffs fail to plead any specific facts showing that this undisclosed

motive actually led SandRidge to increase its CapEx to benefit the Ward-Related Entities.

Nor would such allegations be plausible, given the existence of alternative explanations

for increases in capital expenditures.  For example, Plaintiffs' own pleading explains why

SandRidge increased its "2011 capital expenditure guidance by a shocking $500 million"

(in Plaintiffs' words).  *See* SAC ¶ 107.  The Company's CapEx guidance was increased

not because of any undisclosed motive to benefit the Ward-Related Entities, but because

SandRidge had "entered into a $500 million joint venture with Atinum, thereby allowing

SandRidge [to] accelerate its drilling and development activity in the Mississippian."  *Id.*

In the face of this obvious alternative explanation for changes in SandRidge's CapEx

guidance, Plaintiffs' theory about an undisclosed motive to benefit the Ward-Related

Entities fails the test of plausibility.  *See, e.g.*, *Twombly,* 550 U.S. at 567 (rejecting

plaintiffs' allegations as implausible in the face of "an obvious alternative explanation")

*In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1344-45 (10th Cir. 2012)

(affirming dismissal and reasoning that, although "we could plausibly infer" that

defendants had actual knowledge they were making false statements, "we must consider

plausible competing inferences as well" in assessing scienter).

**IV.    SandRidge's Statements About The Ward-Related Entities Are Not Actionable.**

As the Court explained in its prior ruling, "[t]he element of 'loss causation' recognized in *Matrixx*, 131 S. Ct. at 1317, and *Stoneridge Investment*, 552 U.S. at 157, 'requires a plaintiff to show that a misrepresentation (or omission) that affected the integrity of the market price also caused a subsequent economic loss.'"  ECF 184 at 19 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011) (emphasis removed)).  In dismissing the First Amended Complaint, the Court ruled Plaintiffs' allegations regarding alleged front-running and flipping by the Ward-Related Entities "fail[ed] to sufficiently allege facts plausibly suggesting 'loss causation' . . . .."  ECF 184 at 18 n.29.  This crucial inadequacy persists in the Second Amended Complaint.

The allegations regarding the Ward-Related Entities in the Second Amended Complaint, which have hardly changed at all, suffer from the same defects as the previous complaint.  Plaintiffs now allege that "on November 8, 2012, Defendants issued a press release disclosing the Company's financial results for the third quarter 2012," which reported a loss, and stated that SandRidge was considering a sale of some of its assets in the Permian basin.  SAC ¶ 298.  Also "on November 8, 2012, Dnakar [sic] Singh . . . publicly issued a letter addressed to the SandRidge Board of Directors calling for Defendant Ward's resignation," accusing Ward of "unchecked 'rife' self-dealing," and claiming that Ward "***bought massive holdings of ranchland, and then turned around and leased the land to SandRidge for future exploration***."  *Id.* ¶ 299 (emphasis in SAC).  These exact statements in SandRidge's press release and Singh's public letter

have already been considered and dismissed by the Court as failing to constitute corrective disclosures supporting an inference of loss causation.  ECF 184 at 20-22.

The Court's holding in this regard adopted Defendants' argument that the public letter of November 8, 2012, which preceded a fall in share price, did not disclose the *Ward-Related Entity* transactions that Plaintiffs allege were improperly concealed. Instead, "[t]he disclosures and accusations 'detailing the scope of [these transactions] . . . came in a presentation that was released by TPG-Axon on January 23, 2013, and attached as an exhibit to a Consent Statement filed with the SEC on January 24, 2013." *Id*. at 21. Because this "presentation and SEC filing came after the decline in the value of SandRidge's common stock on November 9, 2012, there can be (and are no) allegations in the Amended Complaint that support the inference that SandRidge stock declined in response to, or was negatively affected by, either the subsequent presentation or TPG-Axon's disclosure about the Ward-related entities and their transactions and purchases of adjacent acreage." *Id*. at 21-22.

Despite the Court's clear ruling, the Second Amended Complaint relies on this same purported corrective disclosure to allege loss causation.  The only change Plaintiffs make in presenting the language of the November 8 letter is altering the reference to Ward's ranchland purchases so that it appears in bold and italics, as noted above.  *See* SAC ¶ 345.  Plaintiffs supplement this typeface alteration with two new sentences that attempt to interpret the significance of the language, elaborating that the language "suggested that Defendant Ward had been moving ahead of SandRidge," and that "[i]n other words, the letter discussed Defendant Ward's front-running activities." *Id*.  This

replicates the explanation Plaintiffs provided in their opposition to the SandRidge

Defendants' Motion to Dismiss, and which the Court has already rejected.  *See* ECF 138

at 34 ("[T]he November 8, 2012 TPG-Axon letter raises concerns regarding Ward's 'self-

dealing' and specifically references flipping engaged in by the Ward-related entities.").

Thus, not only are Plaintiffs propounding arguments that would fail if they were brought

for the first time, they are asking the Court to ignore its own prior ruling, which is law of

the case.  Under that principle, "once a court decides an issue, the same issue may not be

relitigated in subsequent proceedings in the same case."  *Zinna v. Congrove*, 755 F.3d

1177, 1182 (10th Cir. 2014) (citation omitted).

      In short, Plaintiffs' alterations to typeface and repackaging of rejected arguments

cannot save their patently defective claim, which should be dismissed again — this time

with prejudice.

**V.      SandRidge's Statements About Oil & Gas Production Are Not Actionable
Because Plaintiffs Have Failed to Plead Scienter.**

      As this Court has explained, scienter "is required to state a cause of action under

Section 10(b) and Rule 10b-5," ECF 184 at 24, and is subject to "a heightened pleading

standard" under the PSLRA, *id*. (quoting *In re Gold Resource Corp. Sec. Litig.*, 776 F.3d

1103, 1109 (10th Cir. 2015) (internal quotation marks omitted)).  This heightened

standard requires Plaintiffs to allege facts demonstrating "a mental state embracing intent

to deceive, manipulate, or defraud."  *Id.* (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S.

185, 193 n.12 (1976)).  This mental state cannot be alleged in general terms — "it is not

sufficient . . . to allege generally that the defendant[s] acted with scienter, as permitted

under [Rule] 9(b)" *Id.* (quoting *In re Gold Resource*, 776 F.3d at 1109) (alteration in

ECF 184; internal quotation marks and citation omitted).  Instead, plaintiffs must, "with

respect to *each act or omission* alleged . . . , state *with particularity* facts giving rise to a

*strong* inference that [each] . . . defendant acted with the required state of mind."  15

U.S.C. § 78u-4(b)(2)(A) (emphasis added).

　　　Furthermore, such allegations "must give rise to a strong inference that *each*

*individual defendant* acted with scienter, and not only that the group of defendants, taken

together, acted with scienter."  *In re Thornburg Mortg. Inc. Sec. Litig.*, 695 F. Supp. 2d

1165, 1199 (D.N.M. 2010) (emphasis added); *see also Adams v. Kinder-Morgan, Inc.*,

340 F.3d 1083, 1105-07 (10th Cir. 2003) (considering allegations of scienter against each

defendant individually).  And to plead that a corporation acted with scienter, a plaintiff

cannot attribute knowledge to the corporation generally or seek to charge it with the

collective knowledge of all of its employees.  *See Prissert v. Emcore Corp.*, 894 F. Supp.

2d 1361, 1371 (D.N.M. 2012); *see also Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,

365 F.3d 353, 366 (5th Cir. 2004) (rejecting collective scienter doctrine).  Instead, the

complaint must establish scienter on the part of specific officers whose knowledge may

be imputed to the corporation.  *See id.*

　　　In dismissing the First Amended Complaint, the Court held that Plaintiffs'

allegations failed to support an inference that the Defendants acted with scienter — an

essential element of any claim under Section 10(b).  (ECF 184, at 24; *see also* ECF 185,

at 21).  The Second Amended Complaint does not correct this inadequacy.

A.  **Plaintiffs Do Not Adequately Allege That Defendants Bennett and Grubb Acted With Scienter.**

In its prior ruling, the Court held that the facts pleaded in the First Amended Complaint "fail[ed] to create the necessary inference that any representations made by, or any nondisclosures of, Grubb or Bennett regarding the production of SandRidge's wells in the Mississippian formation were made with the primary purpose of misleading shareholders or that either defendant recklessly disregarded the likelihood that his representations or nondisclosures regarding production would mislead SandRidge investors."  ECF 184 at 28-29 (footnotes omitted).  The Second Amended Complaint does not remedy this defect; it relies on essentially the same insufficient allegations.

1.  **The Amended Complaint Continues Plaintiffs' Inappropriate Reliance on Defendants' Managerial Positions**

Plaintiffs have failed to heed the Court's warning that "any 'attempt to allege scienter based on [the] defendants' management positions" is "inadequate."  ECF 184 at 27 (quoting *Weinstein v. McClendon*, No. CIV-12-465-M, 2013 WL 1457718 at *4 (W.D. Okla. Apr. 10, 2013, *aff'd*, 757 F.3d 1110 (10th Cir. 2014))).  Indeed, the Second Amend Complaint continues to rely on vague allegations about what the Defendants must have known because of their positions.

For example, the Second Amended Complaint adds allegations that "[t]he Reservoir Engineering Department ["RED"] was headed by Rodney E. Johnson . . . one of only four Executive Vice Presidents at the Company," and that Defendant Bennett was one of the Executive Vice Presidents at SandRidge.  SAC ¶ 117.  Plaintiffs do not explain why any significance should be attached to any of these facts.  Mr. Johnson's status as an

Executive Vice President has no bearing on the state of mind of any of the Defendants here.  Mr. Bennett's status as an Executive Vice President is similarly irrelevant, since it is well-established that scienter may not be inferred based on an individual's "position as an officer alone . . ."  *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 382 (S.D.N.Y. 2004) *aff'd Albert Fadem Trust v. Citigroup, Inc.,* 165 F. App'x 928 (2d Cir. 2006);  *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1264 (10th Cir. 2001) ("[T]he mere fact that the individual [d]efendants occupied senior positions . . . is not sufficient to imply knowledge of the specific fact of [falsity or] materiality.").

Plaintiffs also add an allegation that the RED reported to Grubb (SAC ¶ 119), but this again adds nothing to the analysis.  The Court previously rejected Plaintiffs' effort to plead scienter based on the theory that Grubb received reports from the RED.  ECF 184 at 28.  Dressing up the allegation by claiming that there was a formal reporting structure does not transform a defective theory into a viable one.  Since the complaint still fails to identify any specific report of the RED that contradicted any public statement of any Defendant, the allegation that the RED formally reported to Grubb is of no significance.

The Court already considered and rejected similar allegations in the First Amended Complaint regarding Defendants' positions, and the connection between those positions and the RED.  The Order specifically considered, and rejected as inadequate, allegations that "reserves estimates were presented to SandRidge's Executive Committee, on which Grubb and Bennett served," that "the Reservoir Engineering Department reported 'the true facts about the production and economics in the Mississippian' . . . [to] Grubb, as SandRidge's president," and that "the '[r]eserve reports were reviewed by . . .

19

Bennett.'" *Id*. at 27.  As the Court explained, Defendants' positions at SandRidge and

relationship to the RED are simply insufficient to meet the heavy burden for pleading

scienter under the PSLRA.  *Id*. at 28 ("That Bennett and Grubb may have received

reports from the Reservoir Engineering Department does not alone demonstrate 'a mental

state embracing intend to deceive, manipulate, or defraud.'") (citation omitted).  Instead,

Plaintiffs must put forward "*[p]articularized* factual allegations" showing that "a

defendant received and reviewed a report or other information."  *Id*. at 27 (emphasis

added).  These allegations must demonstrate "that specific defendant therefore knew the

truth about the facts that were purportedly misstated," in addition to showing that such

defendant "knew that his misrepresentation about, or nondisclosure of, that truth would

likely mislead investors."  *Id*. at 27-28.

        In the end, Plaintiffs' allegations boil down to little more than a claim that

Defendants "would have" been familiar with the relevant facts due to their positions.

*See, e.g.*, SAC ¶ 330 ("Significant declines . . . would have been readily identified," and

"would have been reported to Ward, Bennett, Grubb, and other senior executives.").  But

"allegations that 'information was the sort of [data]' that 'would have been reviewed by

the Individual Defendants' are too speculative to give rise to a strong inference of

scienter."  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011).  To plead

scienter, a complaint must "*specifically* allege defendants' knowledge of facts or access

to information contradicting defendants' public statements" through well pleaded factual

allegations demonstrating that "*specific* contradictory information  . . . was available to

the defendants . . . *at the same time* they made their misleading statements."  *Id.* at 587-88

(emphasis added).  On this score, Plaintiffs' complaint fails once again.

### 2.    The Former Employee Allegations Miss The Mark.

Plaintiffs have added various allegations about the purported assertions of certain former unidentified SandRidge employees (referred to as "FE1," "FE2," and "FE3"), but these likewise fail.[3]  The additional factual allegations supplied by these confidential witnesses do little more than repackage allegations that the Court has already rejected as inadequate (*e.g.*, that Bennett and Grubb received regular reports from the RED).  For example, instead of just receiving unspecified information from the RED in the form of regular reports, Defendants are alleged based on information imparted by these confidential witnesses to have received unspecified information from the RED at regular meetings.  *See, e.g.*, SAC ¶¶ 127, 324.  Plaintiffs do not explain why the allegation that Bennett and Grubb attended regular *meetings* with the RED is any more compelling than the prior defective allegation that they received *reports* from the RED, and it is not. Without specific factual allegations demonstrating exactly what information the RED imparted to Bennett or Grubb — or why it contradicted that Defendant's public statements — Plaintiffs fail to plead scienter as to either defendant.

### B.    Plaintiffs Fail to Allege That Ward Acted With Scienter.

In its opinion granting Ward's prior motion to dismiss, the Court held "[t]he pleaded facts taken collectively do not give rise to a strong inference of scienter that

---

[3]  Plaintiffs acknowledge that FE1 was not an employee during the Class Period.  FE1's employment terminated in 2010 (SAC ¶ 22), the year before the beginning of the Class Period (which stretches from February 24, 2011, to November 8, 2012, SAC ¶ 1).  FE1 thus provides little support, if any, for allegations regarding Defendants' states of mind at the time of the challenged disclosures.

Ward acted with the required state of mind: either with an 'intent to deceive' or with 'conscious disregard.'"   ECF 185 at 21.   For reasons explained in detail in the motion to dismiss filed by Ward, which the SandRidge Defendants hereby adopt and incorporate by reference, the Second Amended Complaint fails to cure this defect.

### C.   Plaintiffs Do Not Adequately Allege Scienter as to SandRidge.

To plead that a corporation acted with scienter, a plaintiff cannot attribute knowledge to the corporation generally or seek to charge it with the collective knowledge of all of its employees.   *See Prissert*, 894 F. Supp. 2d at 1371; *see also Southland Sec. Corp.*, 365 F.3d at 366.   Instead, the complaint must establish scienter on the part of specific officers whose knowledge may be imputed to the corporation.   *See Prissert*, 894 F. Supp. 2d at 1371.   Because Plaintiffs have failed to plead scienter on the part of any of the individual officers discussed in the Second Amended Complaint, as explained in detail above, plaintiffs have failed to plead scienter as to SandRidge.   *See id.*

### VI.   The Second Amended Complaint Does Not State a Section 20(a) Claim.

To state a Section 20(a) claim Plaintiff must "establish (1) a primary violation of the securities laws and (2) control over the primary violator by the alleged controlling person."   *Adams v. Kinder-Morgan*, 340 F.3d 1083, 1107 (10th Cir. 2003) (internal quotation marks omitted).   Here, because Plaintiffs have failed to establish  a primary violation of Section 10(b), their control person liability claim under Section 20(a) is defective and must be dismissed.[4]

---

[4] They also fail to establish the requisite element of control.  Plaintiffs' allegation that Bennett was the CFO of SandRidge, SAC ¶ 30, is not enough, because the alleged fraud (continued…)

## VII.   Other Arguments for Dismissal are Hereby Incorporated.

Finally, the SandRidge Defendants expressly incorporate by reference all applicable arguments for dismissal made in their motion to dismiss the First Amended Complaint and by Ward in his motions to dismiss the First and Second Amended Complaints.  These include, without limitation:

*The Second Amended Complaint fails to plead the falsity of oil and gas projections with particularity.*  As explained in detail in Point I(A)(2) of the SandRidge Defendants' prior motion to dismiss, a complaint must explain with specificity why a "disputed statement was misleading *when made*."  *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1124 (10th Cir. 1997) (emphasis added).  Here, the complaint fails to plead specific facts showing that any projections about oil and gas production were false when issued.  Plaintiffs' allegations that SandRidge's oil & gas projections were false are based on (1) unidentified production reports filed with the Oklahoma Tax Commission ("OTC") and (2) undisclosed analysis by an anonymous consultant engaged by Plaintiffs' counsel, based on an admittedly incomplete subset of unidentified SandRidge wells.  In the absence of specific factual allegations identifying particular wells — and providing the specific production dates for which Plaintiffs claim to have data — there is no basis to assume any of this data is inconsistent with any contemporaneous public statement of SandRidge. ECF 133 at 7-10, 18-20; ECF 134 at 23-24; ECF 148 at 1-4.

---

does not relate "specifically to official reports of the company's financial performance." *Adams*, 340 F.3d at 1109.  The claim against Grubb similarly fails to establish that he had control over any fraudulent activity.

*The oil and gas projections are inactionable opinions.*  To the extent that the

Second Amended Complaint relies on statements about SandRidge's type curve, and

other production estimates and projections, such statements are opinions.  An opinion is

not actionable unless plaintiffs allege not only that it was objectively false, but that it was

subjectively false — *i.e.*, that the defendant did not believe the opinion at the time it was

stated.  *See* ECF 133 at 34-35 (citing, inter alia, *Fait v. Regions Fin. Corp.*, 655 F.3d 105,

113 (2d Cir. 2011); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*

*Pension Fund,* 135 S. Ct. 1318, 1327 (2015) ("[A] sincere statement of pure opinion is

not an 'untrue statement of material fact,' regardless whether an investor can ultimately

prove the belief wrong.").  Plaintiffs have not alleged any facts sufficient to show that

any projections about oil and gas were both objectively *and* subjectively false.

*SandRidge's oil and gas projections are protected by the PSLRA safe harbor.*  As

explained in detail in Point I(A)(1) of the SandRidge Defendants' prior motion, the

PSLRA's safe harbor provision protects not only the forward-looking statements about

CapEx discussed at length above, but SandRidge's forward looking statements about its

type curve, expected rate of return, and estimated reserves.  *See* ECF 133 at 16-18.  All

such statements were forward-looking in nature and accompanied by adequate cautionary

language. *See id.; see also* 15 U.S.C. § 78u-5(i)(1) (defining forward-looking statements

to include statements that "contain[] a projection of revenues" and of "future economic

performance").

*Plaintiffs have not sufficiently alleged that SandRidge's CapEx statements were*

*false when made.*  Plaintiffs have not alleged particularized facts establishing that the

CapEx statements were false *at the time they were made*.  Indeed, SandRidge's public filings indicate that in the first half of 2011, SandRidge's results were consistent with its CapEx guidance.  ECF 133 at 20-21; ECF 148 at 8-9.

*SandRidge was not required to disclose the Ward-Related Entity transactions, and the Second Amended Complaint fails to explain why they would be material to SandRidge investors*.  Plaintiffs have failed to allege facts establishing that SandRidge was aware of the Ward Entity transactions and had a duty to disclose them.  Plaintiffs have also failed to allege facts explaining how the Ward Entities' undisclosed acquisitions were material to SandRidge's financial condition.  ECF 133 at 10; 22-24; ECF 134 at 21-23; ECF 148 at 9-12.

*Plaintiffs' other scienter allegations are insufficient*.  Plaintiffs' other allegations relating to scienter, including their claims about the defendants purported motive and opportunity to engage in fraud, are insufficient for the reasons set forth in Point I(B) of the SandRidge Defendants' prior motion.  *See* ECF 133 at 24-28.

## CONCLUSION

For the foregoing reasons, this Action should be dismissed.

Dated: December 18, 2015

Of Counsel:

COVINGTON & BURLING LLP

Mark P. Gimbel (admitted *pro hac vice*)
C. William Phillips (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

Respectfully submitted,


CROWE & DUNLEVY

*/s/Thomas B. Snyder*
Thomas B. Snyder, Esq., OBA #31428
20 North Broadway, Suite 1800
Oklahoma City, OK 73102
(405) 234-3254

*Attorneys for James D. Bennett and
Matthew K. Grubb*

CONNER & WINTERS, LLP
Kiran A. Phansalkar, OBA #11470
Mitchell D. Blackburn, OBA #12217
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
(405) 272-5711

*Attorneys for SandRidge Energy, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2015, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Mitchell D. Blackburn (mblackburn@cwlaw.com)
Kiran Phansalkar (kphansalkar@cwlaw.com)
Darren B Derryberry (dderryberry@derryberrylaw.com)
David A Rosenfeld (drosenfeld@rgrdlaw.com)
Evan J Kaufman (ekaufman@rgrdlaw.com)
Mario Alba (malba@rgrdlaw.com)
Scott A Graham (scott@lawtulsa.com)
Sean T Masson (smasson@rgrdlaw.com)
C Williams Phillips (cphillips@cov.com)
Mark P Gimbel (mgimbel@cov.com)

Everett C Johnson, Jr (everett.johnson@lw.com)
George S Corbyn, Jr (gcorbyn@corbynhampton.com)
James C Word (christian.word@lw.com)
Joe M Hampton (jhampton@corbynhampton.com)
Margaret A. Tough (margaret.tough@lw.com)
Steven M. Bauer (steven.bauer@lw.com)
Drew Neville, Jr (dneville@hartzoglaw.com)
Ryan S Wilson (RWilson@hartzoglaw.com)
William Stephen Benesh (sbenesh@bracepatt.com)
William Stephen Benesh (sbenesh@bracepatt.com)
John E Barbush (j.barbush@coxinet.net)
Richard W Gonnello (rgonnello@faruqilaw.com)
Samuel H. Rudman (srudman@rgrdlaw.com)

_s/Thomas B. Snyder_
Thomas B. Snyder