# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

In re SANDRIDGE ENERGY, INC.
SECURITIES LITIGATION,

This Document Relates To:

    ALL ACTIONS.

No. 5:12-cv-01341-W

<u>CLASS ACTION</u>

## TOM L. WARD'S MOTION TO DISMISS AND
## OPENING BRIEF IN SUPPORT THEREOF

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 4

I.  STATEMENT OF FACTS AND ALLEGATIONS ................................................ 6

    A.  This Court Already Dismissed The Claims Against Mr. Ward ................... 6

    B.  Plaintiffs' Second Amended Complaint ......................................................... 8

        1.  Amendments Related To Mr. Ward's Alleged Knowledge Or
            Reckless Disregard ........................................................................... 8

        2.  Amendments Related To Mr. Ward's Alleged Financial
            Motive .............................................................................................. 9

II.  ARGUMENT ...................................................................................................... 10

    A.  Plaintiffs' Amended Complaint Must Plead Particularized Facts
        Giving Rise To A Strong Inference of Scienter .......................................... 10

    B.  Plaintiffs' Amendments To The Second Amended Complaint Fail
        To Allege Knowledge Of Any Misstatement .............................................. 11

    C.  Plaintiffs' Additions To The Second Complaint Still Do Not Present
        A Coherent Financial Motive For Mr. Ward To Commit Fraud ................. 15

CONCLUSION ......................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adams v. Kinder-Morgan, Inc.*,
    340 F.3d 1083 (10th Cir. 2003) .................................................................. 7

*City of Philadelphia v. Fleming Cos.*,
    264 F.3d 1245 (10th Cir. 2001) ............................................................ 8, 11

*Frank v. Dana Corp.*,
    646 F.3d 954 (6th Cir. 2011) .................................................................. 10

*In re Gold Res. Corp.*,
    776 F.3d at 1109 ..................................................................................... 7

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) .................................................................. 10

*Ley v. Visteon Corp.*,
    543 F.3d 801 (6th Cir. 2008) .................................................................. 10

*Nakkhumpum v. Taylor*,
    782 F.3d 1142 (10th Cir. 2015) .............................................................. 10

*In re PEC Solutions, Inc. Sec. Litig.*,
    418 F.3d 379 (4th Cir. 2005) .................................................................. 14

*In re Visual Networks, Inc., Sec. Litig.*,
    217 F. Supp. 2d 662 (D. Md. 2002) ........................................................ 14

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ..................................................... 10

*Weinstein v. McClendon*,
    No. CIV-12-465-M, 2013 WL 1457718 (W.D. Okla. Apr. 10, 2013) .................... 8, 11

*In re Zagg, Inc. Sec. Litig.*,
    797 F.3d 1194 (10th Cir. 2015) ................................................................ 8

### STATUTES

15 U.S.C. §§ 78u-4 ........................................................................................ 17

## RULES

Fed. R. Civ. Proc. 9(b) ................................................................................................... 1

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................. 1

Pursuant to the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (codified in 15 U.S.C. §§ 78u-4 *et seq.*) (the "Reform Act") and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, for all the reasons set forth more fully below, defendant Tom L. Ward ("Mr. Ward") hereby moves, by and through the undersigned attorneys, for an order dismissing Plaintiffs' Second Corrected Consolidated Amended Complaint ("Second Amended Complaint" or "SAC").[1]

## PRELIMINARY STATEMENT

The Court previously dismissed this action against Mr. Ward because, *inter alia*, Plaintiffs failed to plead specific facts supporting a strong inference Mr. Ward acted with intent to defraud purchasers of SandRidge stock, the company Mr. Ward founded and in which he personally owned roughly 25.3 million shares of stock.  *See* August 27, 2015 Order (Dkt. 185).  Specifically, the Court held Plaintiffs had not established that Mr. Ward knew of the alleged misstatements nor that Mr. Ward had a financial motive to commit fraud.  *Id.* at 17-20.  The Court allowed Plaintiffs an opportunity to replead sufficient particularized facts to state a claim, but they remain unable to do so.

First, Plaintiffs again fail to plead any actual facts suggesting Mr. Ward "knew the truth about the facts that were purportedly misstated."  *Id.* at 18.  Instead, Plaintiffs

---

[1] SandRidge Energy, Inc. ("SandRidge" or the "Company") offers additional arguments for dismissal based upon the pleading deficiencies in the Second Amended Complaint. *See* SandRidge Motion to Dismiss, Dkt. 189.  These arguments apply equally to Mr. Ward.  Rather than burden the Court with repetition, Mr. Ward incorporates the SandRidge defendants' arguments herein and moves for dismissal on those grounds as well.

merely identify three former SandRidge geologists who Plaintiffs claim attended unspecified meetings at which unspecified details about unspecified wells and properties were discussed and at which Mr. Ward was also present. SAC ¶¶ 21-24; 115-29. These allegations are no different than Plaintiffs' earlier insufficient allegations about unspecified reports supposedly received by Mr. Ward. Order at 18 ("That Ward may have received reports form the Reservoir Engineering Department does not alone demonstrate 'a mental state embracing intent to deceive, manipulate or defraud.'"). Indeed, one of those former geologists did not even work at SandRidge during the Class Period, (*see* SAC ¶ 22), and none describe with any particularity information discussed at any meeting indicating that any statement by SandRidge was inaccurate or misleading, much less that Mr. Ward knew it. Plaintiffs do not even attempt to connect any information from these former geologists to any particular statement made by Mr. Ward.

Second, Plaintiffs supplement their inadequate motive allegations by making a guess at how much the valuation of the so-called Ward-related entities' Mississippian properties increased, extrapolated from a SandRidge report about its own properties. SAC ¶¶ 9, 335-36. This hypothetical valuation, even if it had been based on actual facts, is irrelevant because Plaintiffs still "only speculated about any profits Ward might have received" from those entities or their properties. Order at 19. Plaintiffs also make no effort to rebut the scienter-negating inference created by the fact that "Ward had significantly increased his SandRidge stock holdings" and "like the Lead Plaintiffs suffered the same stock price decline." *Id.* at 21. Plaintiffs thus fail again to suggest a

plausible motive for Mr. Ward to participate in a fraud that could only have injured him financially.

There are no other new facts about Mr. Ward alleged in Plaintiffs' Second Amended Complaint. Thus, the outcome of this motion to dismiss should be the same as the first, with only one exception—Plaintiffs' claims against Mr. Ward should again be dismissed for failure to plead particularized facts giving rise to a strong inference of scienter, but this time dismissed with prejudice.

## I.    STATEMENT OF FACTS AND ALLEGATIONS

### A.    This Court Already Dismissed The Claims Against Mr. Ward

On August 27, 2015, this Court dismissed the claims against Tom Ward because, *inter alia*, Plaintiffs failed to plead that Mr. Ward possessed the requisite state of mind to commit securities fraud. *See* August 27, 2015 (Dkt. 185) (the "Order"), Ex. 6.[2] After summarizing the appropriate legal standard and Plaintiffs' factual allegations, the Court focused its analysis on whether Plaintiffs adequately pleaded scienter with respect to Mr. Ward. The Court concluded that they did not. *Id.* at 18-21.

---

[2] The Court may take judicial notice of matters of public record or documents that are referred to in the Second Amended Complaint and are central to Plaintiffs' case. *See* Order at 2, n.2. Attached hereto is a declaration of George S. Corbyn, Jr. ("Corbyn Decl.") that provides all of the documents that may properly be considered by the Court. Exhibits to the Corbyn Decl. are denoted in this brief as "Ex. __." Some of these documents were cited in Mr. Ward's prior motion to dismiss or in the Court's August 27 Order. Though Mr. Ward has incorporated certain of his prior arguments by reference, each of the supporting documents is attached to the Corbyn Decl. as part of the record on the instant Motion.

First, the Court rejected Plaintiffs' allegations of Mr. Ward's knowledge of falsity that were based on his access to information regarding SandRidge's performance. *Id.* at 18. "That Ward may have received reports from the Reservoir Engineering Department does not alone demonstrate 'a mental state embracing intent to deceive, manipulate or defraud.'" *Id.* As the Court explained, Plaintiffs' allegations must show that Mr. Ward "received and reviewed" a particular report or other information and must show that Mr. Ward "therefore knew the truth about the facts that were purportedly misstated" based on that report, and that he knew his misrepresentation would likely mislead investors. *Id.*

Second, the Court held that Plaintiffs' allegations of financial motive amounted only to "speculat[ion] about any profits Ward might have received." *Id.* at 19. The limited allegations regarding compensation that Mr. Ward or any of the so-called related entities received, as disclosed in SEC filings, did not give rise to an inference of scienter. *Id.* Moreover, the Court rejected as conclusory the myriad motive allegations regarding Mr. Ward's purported interest in misrepresenting SandRidge's financial status or operations in the Mississippian. *Id.* at 19. Nor did Mr. Ward's SandRidge compensation suggest a financial motive. *Id.* at 20. Instead, the record actually showed that "Ward had significantly increased his SandRidge stock holdings" during the Class Period. *Id.* at 21. Thus, when the SandRidge stock price declined at the end of the Class Period, "Ward like the Lead Plaintiffs suffered the same stock price decline." *Id.*[3]

---

[3] The Court also rejected general imputations of knowledge to Mr. Ward based on the "magnitude of the misrepresentations of SandRidge's oil and gas production" and the

Ultimately, the Court held that the conclusory allegations in the First Amended Complaint, taken collectively, did not allow the strong inference of scienter to show Mr. Ward acted with an intent to deceive or conscious disregard.  *Id.* at 22.  Nonetheless, the Court permitted Plaintiffs an opportunity to amend to address their pleading deficiency.

## B.   Plaintiffs' Second Amended Complaint

Plaintiffs' Second Amended Complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.   These same substantive claims were asserted in the First Amended Complaint.  Rather than restate the claims with which this Court is already familiar, Mr. Ward directs the Court to the limited amendments that Plaintiffs have made to revive their claims.[4]  As noted above, the Court found that Plaintiffs failed to plead that Mr. Ward had the requisite state of mind and failed to allege Mr. Ward had a financial motive to commit securities fraud.   Accordingly, Plaintiffs' amendments are most easily grouped into those two categories.

### 1.   Amendments Related To Mr. Ward's Alleged Knowledge Or Reckless Disregard

To supplement the conclusory allegations that this Court rejected, Plaintiffs added the following:

---

alleged deficiency in the "core business and operations of SandRidge."  Order at 20. These "must have known" allegations are inadequate.  *See id.*

[4] For additional background with respect to Mr. Ward's employment contracts, his so-called related entities, and the prior allegations in this case, Mr. Ward refers the Court to his previous Motion to Dismiss, Dkt. 134 at 10-15, and Reply, Dkt. 159, the Court's August 27 Order, Dkt. 185 at 5-13, and to SandRidge's Mot. to Dismiss, Dkt 189, filed on this same date.

Three confidential former SandRidge employees' subjective beliefs purport to support Mr. Ward's knowledge of the alleged falsity of his statements. *See* SAC ¶¶ 21-24, 115-29. The first former employee ("FE1") did not work at SandRidge during the Class Period. *Id.* ¶ 22. The second former employee ("FE2") only identifies meetings that Mr. Ward and others attended involving "the production performance throughout SandRidge's assets" and the status of drilling. *Id.* ¶¶ 123, 124. FE2 believes that "the number of underperforming wells in the Mississippian was larger than expected" and that "Mississippian was not performing as well as expected." *Id.* ¶ 128.[5] A third former employee ("FE3") believes lower-than-expected oil production "caused frustration within SandRidge" and was "common knowledge." *Id.* ¶ 126. He also believes Mr. Ward attended meetings where the "poor performance of the Mississippian was discussed." *Id.* ¶ 127. These confidential former employees cannot attribute any knowledge directly to Mr. Ward.

### 2.     Amendments Related To Mr. Ward's Alleged Financial Motive

In addition, Plaintiffs added additional allegations regarding Mr. Ward's purported financial motive to commit fraud:

In March 2012, SandRidge's interests in the Mississippian land had "appreciated by 21 times [their] value ($200 per acre purchase price)." *Id.* ¶¶ 9, 335-36. Plaintiffs allege that the so-called Ward-related entities "held interests in 475,000 acres in the

---

[5] Though they appeared in their prior complaint, Plaintiffs have again added allegations that the "magnitude of the misrepresentations of SandRidge's oil and gas production" and Mr. Ward's "vast personal interests" suggests Defendants' knowledge of misstatements. SAC ¶¶ 330-1.

Mississippian." *Id.* ¶ 9.  By extrapolation, Plaintiffs suggest that the so-called Ward-related entities possess interests "valued at $2 billion."  *Id.*  Plaintiffs do not suggest how the alleged appreciation of such interests specifically profited Mr. Ward.

## II.    ARGUMENT

As discussed below, the Second Amended Complaint fails to plead any facts, much less the requisite particularized facts, to show what Mr. Ward knew, what he did, or how he benefited from the purported securities fraud scheme.  Plaintiffs have not alleged any additional facts that alter this Court's analysis with respect to the prior Amended Complaint.  Instead, the allegations in the Second Amended Complaint still present the type of generic and conclusory allegations of scienter that courts, including this one, routinely reject.[6]

### A.    Plaintiffs' Amended Complaint Must Plead Particularized Facts Giving Rise To A Strong Inference of Scienter

Plaintiffs' amended securities fraud claims are again measured by the heightened pleading standards set forth in the Court's August 27 Order (Dkt. 185).  Specifically, the Court explained that the inquiry is whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter."  Order at 15 (quoting *In re Gold Res. Corp.*, 776 F.3d at 1109).  Courts in the Tenth Circuit are "cautious about imposing liability for securities fraud based on reckless conduct," and it requires "a particularly high standard."

---

[6] Plaintiffs further allege claims against Mr. Ward under Section 20(a) of the Securities Exchange Act of 1934.  SAC ¶¶ 367-70.  For the reasons stated here and in SandRidge's brief in support of its motion to dismiss, Dkt. 189, Plaintiffs do not allege a primary Section 10(b) violation and, therefore, the control person claim must be dismissed.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1107-08 (10th Cir. 2003).

*Id.* at 16 (quoting *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1206 (10th Cir. 2015), and *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001)).  Mere allegations that a defendant "should have made certain disclosures earlier than he actually did" or that he "possessed knowledge of facts that are later determined by a court to have been material" are not enough to plead a claim for securities fraud.  *Id.* at 16 (quoting *Fleming*, 264 F.3d at 1260).

## B.  Plaintiffs' Amendments To The Second Amended Complaint Fail To Allege Knowledge Of Any Misstatement

The Court's Order provided explicit instruction about what facts Plaintiffs must plead to establish a strong inference of scienter.  Plaintiffs must make a showing of what Mr. Ward specifically knew, when he knew it, and why it shows that a particular statement he made to the public was false.  *See id.* at 18 ("Particularized factual allegations must show that the defendant received and reviewed a report or other information and that that specific defendant therefore knew the truth about the facts that were purportedly misstated and further knew that his misrepresentation about, or nondisclosure of, that truth would likely mislead investors.").  To that end, the Court held "generalized, conclusory allegations regarding scienter without specific corroborating details are insufficient."  *Id.* (quoting *Weinstein v. McClendon*, No. CIV-12-465-M, 2013 WL 1457718, at *4 (W.D. Okla. Apr. 10, 2013)).  The Court was also clear that the mere fact Mr. Ward was a senior executive who was involved in the management of the company is insufficient.  *Id.* (quoting *Weinstein*, 2013 WL 1457718, at *4).  Accordingly, the Court held that the allegation "that Ward may have received reports from the

11

Reservoir Engineering Department does not alone demonstrate 'a mental state embracing intent to deceive, manipulate or defraud.'"  *Id.*

Despite the Court's clear directive, Plaintiffs' new allegations in the Second Amended Complaint do nothing more than present general assertions that impute knowledge to Mr. Ward based on his role as CEO and Chairman of SandRidge.  *See* SAC ¶¶ 115-29.[7]  Specifically, Plaintiffs now identify three former geologists who supposedly attended meetings with Mr. Ward (and others).  But not even one of these witnesses describes any information at any of the meetings that indicated any Company statement was false or that Mr. Ward knew it.  Indeed,  FE1 did not work at SandRidge during the Class Period.  FE2 alleges only that he attended weekly meeting at which they "would also determine the information that would be reported to Ward."  *Id.* ¶ 125.  FE2 does not say what that information was.  FE2 also claims the number of underperforming wells "was larger than expected," (*id.* ¶ 128), but again he does not even attempt to attribute that knowledge to Mr. Ward.  FE2 also identifies the department heads who received drilling reports, but Mr. Ward is not listed as a recipient.  *See id.* ¶ 129.  Finally, FE3 claims the low level of oil production in the Mississippian "caused frustration within SandRidge" and he "believed that it was common knowledge"; he also purports to have attended meetings "throughout 2012" that Mr. Ward also attended during which the

---

[7] Notably, these allegations are not aimed at transactions involved the so-called Ward Related Entities, nor do they challenge Mr. Ward's conduct under his Employment Agreement.  On those points, the Second Amended Complaint contains nothing more than the same innuendo as the First Amended Complaint.

"poor performance of the Mississippian was discussed." *Id.* ¶¶ 126-27. But none of these three former employees can state that Mr. Ward knew information that rendered any public statement false or misleading.

Instead, the confidential former employee allegations are simply that Mr. Ward (and others) could have known information about SandRidge's business. This is no different than Plaintiffs' previous allegations that Mr. Ward received reports, which this Court rejected. *See* Order at 18.[8] That Mr. Ward was present at certain meetings and that the performance of the Mississippian wells were discussed generally at some of those meetings is unremarkable. *See* SAC ¶¶ 123-26.

Nor do Plaintiffs tie any information purportedly discussed at any meeting or in any reports to any of the allegedly false statements that they attribute to Mr. Ward. Without that, Plaintiffs cannot plead securities fraud. *See Nakkhumpum v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015) (executive's positive statements to investors regarding

---

[8] The Court should also be skeptical of attempts to plead scienter through confidential witnesses, particularly ones who rely on their subjective "belie[f]" or "understanding," *e.g.*, SAC ¶¶ 126, 129. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (affirming dismissal and noting that statements of confidential witnesses were to be discounted for allegations of scienter); *Ley v. Visteon Corp.*, 543 F.3d 801, 811 (6th Cir. 2008), *abrogated in part by Frank v. Dana Corp.*, 646 F.3d 954 (6th Cir. 2011) (confidential witness statements should be sharply discounted where plaintiffs withheld names of employees who knew of defendant's "alleged accounting improprieties" and failed to allege "what, when, where, and how" the employees knew that information); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (reliance on confidential witness statements did not establish an inference of recklessness, absent allegations "that any [confidential witness] met the Individual Defendants, reported any concerns, received any instructions, or made any personal contact with them during the Class Period").

liquidity, in light of evidence that company had serious cash flow problems, did not establish scienter because a fact-finder could at most "view [his] report as overly rosy in light of Delta's continued inability to pay its bills" but "none of the allegations suggest an intention to deceive" or reckless disregard of a risk that his assessment would deceive anyone). Plaintiffs still do not plead any facts that identify what specific information Mr. Ward knew was false or what information he withheld even though he knew it posed a substantial likelihood of misleading a reasonable investor. *See* Order at 18. General averments that Mr. Ward attended meetings where the performance of the Company was discussed are just not enough.[9] *See id.* (rejecting attempts to plead scienter "based on [a] defendant['s] management position[] and involvement in the operations of [the corporate defendant]" (quoting *Weinstein*, 2013 WL 1457718, at *4)).

Plaintiffs have done nothing more than identify three confidential former employees who generally agree that Mr. Ward attended SandRidge meetings, received unidentified reports, and generally was aware of the performance of his company. The Court previously held these types of allegations are insufficient, and should do so again. *Id.* at 17-18, 21 (rejecting as "conclusory" allegations based on Ward's position in the

---

[9] Plaintiffs also allege knowledge based on the "magnitude of the misrepresentations of SandRidge's oil and gas production" after the fact, SAC ¶ 330, and based on Mr. Ward's "vast personal interests." *Id.* ¶ 331. These are exactly the types of backward-looking and conclusory allegations that courts reject out of hand. *See* Order at 15 (rejecting "fraud by hindsight" and acknowledging that "allegations a defendant should have anticipated future events … do not suffice" (quoting *Fleming*, 264 F. 3d at 1258)); *Id.* at 20 (rejecting allegations that a defendant must have known of fraud based on the magnitude of the alleged fraud).

company, involvement in its operations, and general receipt of reports from the Reservoir Engineering Department).

### C.   Plaintiffs' Additions to the Second Complaint Still Do Not Present A Coherent Financial Motive for Mr. Ward to Commit Fraud

When assessing whether defendants have acted with intent to deceive in securities fraud cases, courts in the Tenth Circuit take motive into account, noting that allegations of motive may be important to the totality, but are not typically sufficient in and of themselves to establish a "strong inference" of scienter.  Order at 18-19.  In its August 27 Order, the Court found that the prior Complaint's attempt to create a financial motive by pointing to the so-called Ward-related entities was inadequate because it "only speculated about any profits Ward might have received" based on the alleged relationship.  *Id.* at 18. The Court held such speculation insufficient to plead a financial motive for Mr. Ward to commit securities fraud.  Plaintiffs' SAC suffers the same deficiency.

Plaintiffs' theory of Mr. Ward's motive has not changed.  *See* SAC ¶¶ 81, 333. But Plaintiffs have added a handful of allegations regarding the hypothetical value of properties belonging to the so-called Ward-related entities.  *See Id.* ¶¶ 9, 334-37. Plaintiffs calculate a value based on *SandRidge's* view of *SandRidge's* assets derived from purchase prices *SandRidge* was able to obtain, all of which led to an undefined appreciation over an undefined period of time.  *See Id.* ¶ 9, 336.[10]  At most, the additions

---

[10] The Second Amended Complaint remains silent as to why non-SandRidge interests are valued the same as SandRidge values its own interests, whether the so-called Ward-related entities possess interests similar to SandRidge, what portion of those interests are purportedly attributable to Mr. Ward, and how this valuation suggests an increase in

to the Second Amended Complaint suggest that the property value and attendant oil interests belonging to the so-called Ward-related entities may have increased during the Class Period.[11]   But Plaintiffs still provide no facts to connect any appreciation of the Ward-related entities' interests (even a hypothetical one) to Mr. Ward whatsoever. Instead they continue to merely assert that Mr. Ward must have profited from the purported increase in the value of interests in the Mississippian.  *Id.* ¶ 337.  The Court correctly rejected this conclusory allegation last time.  Order at 19 (Plaintiffs "only speculated about any profits Ward might have received").  In other words, the amendments to the SAC still do not establish that Mr. Ward profited from the Ward-related entities and are, instead, improper speculation.  *Id.* at 18.

Moreover, the Court recognized that, absent additional facts, Plaintiffs cannot overcome the scienter-defeating inference created by Mr. Ward's personal financial interest in SandRidge's success.  *See id.* at 20; *see also* Ward Mot. to Dismiss (Dkt. 134 at 21-23).  Plaintiffs plead nothing to refute Mr. Ward's massive financial interest in SandRidge or to suggest he *sold* any shares of the Company stock during the Class Period.  In fact, judicially noticeable facts demonstrate that Mr. Ward's financial interests

---

value given the absence of any allegations regarding the cost of the so-called Ward-related entities' interests.

[11] The SAC states that during the Class Period, Land & Cattle received about $925,000 and WCT Resources (in which Plaintiffs concede that Mr. Ward has no stake) received about $168,000 from SandRidge.  SAC ¶ 95.  These are not new allegations, and they are still insufficient to show financial motive.  There is no specification of how much of these amounts were profits, how much of that profit Mr. Ward or his family actually received, and how this alleged profit compared to the compensation Ward received from SandRidge or his vast stockholdings.  *See id.*

were aligned with those of SandRidge shareholders. At the end of the Class Period, Mr. Ward owned roughly 25.3 million SandRidge shares. Order at 20; SandRidge Form 4, Ex. 5. As a result of the drop in SandRidge's stock price (SAC ¶ 348), Mr. Ward lost almost $15 million. Further, public filings disclose that Mr. Ward actually *increased* his stock holding by approximately two million shares during the Class Period. SandRidge Form 4s, Exs. 4, 5.[12] *See also* Ward Mot. to Dismiss (Dkt. 134 at 23-24). As this Court recognized once already, the record evidence instead suggests that Mr. Ward's interests were aligned with other SandRidge shareholders and that he "suffered the same stock price decline." Order at 20. Nonetheless, the SAC, like its predecessor, ignores Mr. Ward's financial interest in SandRidge through both his stock ownership and compensation.[13]

In sum, the Second Amended Complaint actually shows that Mr. Ward did not act in a manner consistent with Plaintiffs' alleged fraudulent scheme. Mr. Ward's

---

[12] The alleged profit from any alleged frontrunning was thus far outweighed by the loss in stock value suffered by Mr. Ward and simply does not demonstrate any motive for Mr. Ward to have engaged in Plaintiffs' imagined scheme. *See, e.g.*, *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390 (4th Cir. 2005) (defendants' sales of 1.17%, 1.47%, 1.79%, and 13.0% of their holdings during the class period "were nearly *de minimis*" and thus insufficient to show motive); *In re Visual Networks, Inc., Sec. Litig.*, 217 F. Supp. 2d 662, 669 (D. Md. 2002) (allegation that profits from the sale of the stock evidenced defendants' motive were insufficient where stock sale was a small percentage of the total stock owned).

[13] In 2011, Mr. Ward's compensation package consisted of salary, bonus, and restricted stock options and was valued at approximately $25,261,502 (of which over $20 million was from stock awards). SandRidge 2012 10-K/A, Ex. 1, at 17. The fact that a majority of Mr. Ward's compensation was in SandRidge stock also undercuts Plaintiffs' contention that his compensation was untied to performance. SAC ¶ 338.

overwhelming financial interests were tied to the success of SandRidge, and the most recent amendments do nothing to suggest otherwise. Plaintiffs offer no plausible reason why Mr. Ward would purposely sabotage SandRidge and his interests to generate largely unquantified, but nevertheless *de minimis*, revenues for the so-called Ward-related entities. [14]

## CONCLUSION

For the reasons stated above, as well as those provided in the Company's concurrently filed motion to dismiss, Mr. Ward respectfully requests that the Court dismiss him from this action with prejudice.

---

[14] Plaintiffs further allege that Mr. Ward made or certified several false or misleading statements or omissions. *See, e.g.*, SAC ¶¶ 155-56, 158-73, 175-86, 189-97, 199-200, 206-11, 214-16, 228-45, 248-49, 257-58, 263-64, 266-67. These and other similar statements are either forward-looking statements, mere puffery, and/or otherwise not actionable, as detailed in the SandRidge Mot. to Dismiss filed concurrently herewith, *see* Dkt 189.

Dated: December 18, 2015                         CORBYN HAMPTON LAW FIRM


s/ George S. Corbyn, Jr.
George S. Corbyn, Jr. OBA # 1910
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK  73102
Telephone:  (405) 239-7055
Facsimile:  (405) 702-4348
Email:  gcorbyn@corbynhampton.com

LATHAM & WATKINS LLP

Margaret A. Tough (admitted *pro hac vice*)
Steven M. Bauer (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email:  margaret.tough@lw.com
Email:  steven.bauer@lw.com


LATHAM & WATKINS LLP


J. Christian Word (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201
Email:  everett.johnson@lw.com
Email:  christian.word@lw.com

*Attorneys for Defendant Tom L. Ward*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel registered for ECF.

s/ George S. Corbyn, Jr.
George S. Corbyn, Jr.

CORBYN HAMPTON LAW FIRM
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK  73102
Telephone:  (5405) 239-7055
Facsimile:  (405) 702-4348
Email:  gcorbyn@corbynhampton.com