UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION, _____ This Document Relates To: ALL ACTIONS. | No. 5:12-cv-01341-W <br><br> <u>CLASS ACTION</u> |

**TOM L. WARD'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Plaintiffs' Opposition confirms the Amended Complaint lacks particularized facts to give rise to a strong inference that Mr. Ward committed fraud. Indeed, Plaintiffs' only new argument is that new confidential witnesses establish that Mr. Ward generally attended meetings and read reports. Of course he did. This was never in dispute. But what the Court required Plaintiffs to plead (and what Mr. Ward showed Plaintiffs failed to plead) are actual facts to show that Mr. Ward attended specific meetings and read specific reports concerning information that contradicted SandRidge's public statements. Because the Amended Complaint does not contain a single factual allegation describing the content of any discussion with Mr. Ward or document he read, Plaintiffs have not created any inference that Mr. Ward knew any statement was false and misleading.

Plaintiffs also remain unable to articulate a coherent motive for Mr. Ward to have committed the alleged fraudulent scheme, much less one backed by actual facts. Plaintiffs re-argue their theory that Mr. Ward must have committed securities fraud to benefit his children but cannot quantify any real financial benefit to them. Nor can Plaintiffs dispute that Mr. Ward owned more stock after the alleged fraud was supposedly exposed than he did before it began. There simply is no basis to conclude Mr. Ward did anything to profit from the alleged scheme.

Accordingly, this Court should once again dismiss the claims against Mr. Ward in their entirety, but this time dismiss with prejudice.[1]

## ARGUMENT

### A. The Former Employees Do Not Describe What Mr. Ward Supposedly Knew

Plaintiffs argue first that the Amended Complaint includes allegations based on "interviews with former SandRidge geologists demonstrat[ing] that Mr. Ward closely monitored SandRidge's oil and gas production and reserves in the Mississippian." Opp. at 9. This allegation is presumed to be true at this stage, but is utterly irrelevant. Plaintiffs mistakenly believe the Court dismissed their claims because they pled only that Mr. Ward "may" have received reports from the Reservoir Engineering Department. Opp. at 9. To the contrary, in its August 27 Order, the Court held that "[p]articularized factual allegations must show that the defendant **received and reviewed** a report or other information and that the specific defendant therefore **knew the truth** about the facts that were purportedly misstated and **further knew that his misrepresentation about, or nondisclosure of, that truth would likely mislead investors**." Order at 18 (emphasis added). Plaintiffs' Opposition addresses only the first element of the pleading requirement articulated by the Court (and one that was not broadly in dispute).

Plaintiffs do not argue (because they cannot) that the allegations by former geologists identify a single meeting or piece of information that Mr. Ward received that

---

[1] As with his Opening Brief, the arguments made by SandRidge Energy, Inc. ("SandRidge" or the "Company") in its Reply apply equally to Mr. Ward. Mr. Ward incorporates the SandRidge defendants' arguments herein.

showed lower oil-to-gas ratios in the Mississippian before Mr. Ward and SandRidge disclosed that information. *See Nakkhumpun v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015) (despite executive's positive statements to investors, "none of the allegations suggest an intention to deceive" or reckless disregard of a risk that his assessment would deceive anyone). Plaintiffs' confidential witnesses allege only that Mr. Ward generally received information, but not what that information was. The Court has already held this is insufficient. Order at 18.

So Plaintiffs contend that the mere reference to former employees as confidential witnesses is sufficient to plead scienter. That is incorrect—Plaintiffs must plead facts to show the confidential witness knew relevant information. For example, Plaintiffs argue the Court should overlook that Former Employee 1 did not work at SandRidge when the supposed fraud occurred because "the same meetings headed by Ward continued to take place during the Class Period." Opp. at 22.[2] Plaintiffs cannot allege what information was discussed at a given meeting, when such a meeting took place, and what statements Mr. Ward knew were false or misleading based upon that knowledge. Order at 16, 18 (noting that mere possession of knowledge of facts later considered material is not enough to show intent to deceive and rejecting allegations of mere access to information

---

[2] A confidential witness who was not present at the company during the relevant period must present sufficiently detailed allegations to be of any use. *See* Opp. at 22 (citing *Simon v. Abiomed, Inc.*, 37 F. Supp. 3d 499, 515 (D. Mass. 2014). In *Abiomed*, the confidential witnesses who were not current employees were able to speak directly to the defendant's off-label marketing policy at a time that was critical to the claim. 37 F. Supp. 2d at 515. Here, Former Employee 1 cannot speak to any information received by Mr. Ward during the critical period to Plaintiffs' case.

3

about Mississippian wells absent a showing that Mr. Ward knew the truth about facts that were then misstated). Allegations from confidential witnesses, like all allegations, are adequate only "if the facts alleged in the plaintiffs' complaint are detailed enough to support a reasonable belief that the defendant's statements identified by the plaintiffs were false or misleading." Opp. at 20 (quoting *Mishkin v. Zynex Inc.*, No. 09-cv-00780-REB-KLM, 2011 WL 1158715, at *6 (D. Colo. Mar. 30, 2011)).[3] Plaintiffs' Opposition does not identify any allegations in the Amended Complaint providing the details necessary to show that Mr. Ward knew any statements made by him or SandRidge were false or misleading.[4]

### B. Plaintiffs' Renewed Argument About An Alleged Financial Benefit To Mr. Ward's Family Suffers From the Same Flaws As Last Time

This Court rejected Plaintiffs' previous argument that Mr. Ward had a motive to commit fraud to enrich his family trusts because the allegations "only speculated about

---

[3] Indeed, in *Mishkin*, the Court credited allegations because they were specific to conclude that there was evidence of fraud that was specifically attributed to the defendants' knowledge of improper insurance billing, as well as allegations that the defendants insisted that improper practice continue. 2011 WL 1158715, at *6. No such specificity is provided by the SandRidge former employees, nor do they identify any statements or conduct attributed to Mr. Ward.

[4] Plaintiffs also regurgitate arguments that this Court has rejected before. *See* Opp. at 11-12. Plaintiffs attempt to plead scienter based on the same allegations that the alleged fraud concerned key parts of SandRidge's business and that the size of the alleged discrepancy itself suggests scienter. *See id.* In its August 27 Order, the Court held that "allegations based on the 'core operations' doctrine . . . and allegations based on the magnitude of the fraud alone are not enough to create a strong inference of scienter." Order at 21. Plaintiffs have pleaded no new facts to make these speculative arguments any more suggestive of Mr. Ward's scienter than they were when the Court rejected them the first time.

any profits Ward might have received" based on the alleged relationship to the so-called Ward-related entities. Order at 18. Plaintiffs concede that they cannot allege Mr. Ward benefited from the alleged fraud, so they argue Mr. Ward was motivated to confer a financial benefit on his family. *See* Opp. at 14-15. But no matter who Plaintiffs allege to be the beneficiary of the claimed fraud, the fundamental pleading failure is Plaintiffs' inability to quantify any profits obtained as a result of the fraud. Indeed, Plaintiffs still are unable to show that any Ward family member profited at all. Plaintiffs do not articulate the size of the financial benefit to Mr. Ward's family, how the family benefited from a scheme that resulted in the devaluation of assets across the Mississippian, or how the alleged financial benefit to Mr. Ward's children sufficiently benefited Mr. Ward to motivate him to commit securities fraud. Just as the Court held last time, Plaintiffs "only speculated about any profits Ward might have received." Order at 19. Without any actual facts to establish any actual profit, the Court is unable to reasonably conclude Mr. Ward was motivated to commit fraud.[5]

---

[5] Moreover, neither *Marcus v. Frome*, 329 F. Supp. 2d 464, 473 (S.D.N.Y. 2004), nor *SEC v. China Northeast Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 389 (S.D.N.Y. 2014), cited by Plaintiffs, supports Plaintiffs' argument that a potential benefit to a family member's company is sufficient to plead scienter. In *Marcus*, the plaintiffs pled motive based on the defendant's direct receipt of over 1 million shares of stock as well as the sale of almost 400,000 shares to his family. 329 F. Supp. 2d at 473. Likewise, in *China Northeast Petroleum*, the SEC pled the defendant's motive by showing that he funneled offering proceeds into his own account as well as that of relatives. 27 F. Supp. at 389.

### C. Plaintiffs Cannot Negate The Inference Created By Mr. Ward's Substantial SandRidge Stock Ownership

Plaintiffs cannot dispute that Mr. Ward held 25.3 million shares at the end of the Class Period and that each of those shares declined in value by the same amount as the shares held by the class members they purport to represent. *See* Order at 21. So, Plaintiffs make a number of confusing and confused arguments about why the Court should ignore that Mr. Ward had substantial financial interests in SandRidge's success.

First, Plaintiffs argue Mr. Ward's stock holdings did not actually increase during the Class Period and recklessly accuse Mr. Ward of misrepresenting this fact to the Court. Plaintiffs are simply wrong. The documents filed with the Securities and Exchange Commission undeniably show that Mr. Ward held approximately 23.3 million shares in 2011 before the Class Period and 25.3 million in 2012 at the end of the Class Period. Mr. Ward did not argue that his acquisition of 1.6 million shares in 2011 occurred during the Class Period, as Plaintiffs claim. Rather this is a pre-Class Period acquisition that resulted in Mr. Ward's ownership of 23.3 million shares.[6]

Second, Plaintiffs contend Mr. Ward was "awarded" his shares, that his losses are undeterminable without knowing his cost basis, and that he is rich so he would not care if he lost millions of dollars. Opp. at 18. These arguments are financial nonsense. The unassailable facts are that Mr. Ward has consistently owned a large number of SandRidge

---

[6] Plaintiffs also suggest that the Court cannot consider the total ownership shown in Mr. Ward's Form 4s at the pleading stage. Opp. at 19, n. 18. Plaintiffs have alleged Mr. Ward was financially motivated by profits he received, and courts routinely consider judicially noticeable facts that undermine such motive allegations, just as this Court recognized in its dismissal order. *See* Order at 2, n.2.

shares, increased his holdings during the Class Period, and could have avoided millions of dollars of losses (or obtained millions of dollars of profits) by selling his stock.  This behavior is inconsistent with an inference that Mr. Ward knew SandRidge stock was artificially inflated due to alleged misrepresentations.  Moreover, Plaintiffs' suggestion that Mr. Ward intended to lose millions in SandRidge stock because money does not matter to him is incompatible with their contention that Mr. Ward was motivated to commit fraud to make millions for the so-called Ward entities.

That Mr. Ward did not profit by selling his stock when he could have dispels an inference that Mr. Ward intended to commit fraud.[7]  It is incumbent upon Plaintiffs to plead a "cogent and compelling" basis to support a strong inference of scienter and Plaintiffs simply cannot do so in light of Mr. Ward's demonstrated unwillingness to personally benefit from the alleged scheme.[8]

---

[7] Plaintiffs' case law citations are inapposite.  *See* Opp. at 19-20.  Those cases focus on a plaintiff's ability to plead scienter by adequately pleading specific facts showing conscious misbehavior.  In such cases, a failure to identify stock sales or actual profits *may* not defeat scienter.  But even Plaintiffs' cases acknowledge that, in most instances, the acquisition of company stock suggests that the defendant lacked fraudulent intent. *See, e.g.*, *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013) (acknowledging that if a defendant made a relatively modest purchase of stock, that might not defeat scienter); *In re Ashanti Goldfields Sec. Litig.*, No. CV 00-0717(DGT), 2004 WL 626810, at *5 (E.D.N.Y. Mar. 30, 2004) (acknowledging that "net purchases or sales of stock may be relevant with respect to a motive for fraud claim").  Here, Plaintiffs have alleged nothing close to the specific allegations to show conscious misconduct by Mr. Ward.  And they cannot avoid the fact that Mr. Ward's acquisition of SandRidge stock is antithetical to any financial motive to commit securities fraud.

[8] Plaintiffs do not argue for any additional basis to support their claim under Section 20(a).  *See* Opp. at 22.  Accordingly, Plaintiffs' control person claim against Mr. Ward fails because they cannot allege a primary violation.

7

## CONCLUSION

For the reasons stated above and in Mr. Ward's motion to dismiss, as well as those provided in the Company's parallel motion, Mr. Ward respectfully requests that the Court dismiss him from this action with prejudice.

Dated: April 25, 2016                                    CORBYN HAMPTON LAW FIRM

<div style="margin-left: 3em;">

s/ George S. Corbyn, Jr.
George S. Corbyn, Jr. OBA # 1910
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK  73102
Telephone:  (405) 239-7055
Facsimile:  (405) 702-4348
Email:  gcorbyn@corbynhampton.com

LATHAM & WATKINS LLP

Margaret A. Tough (admitted *pro hac vice*)
Steven M. Bauer (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email:  margaret.tough@lw.com
Email:  steven.bauer@lw.com

LATHAM & WATKINS LLP

J. Christian Word (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201
Email:  everett.johnson@lw.com
Email:  christian.word@lw.com

*Attorneys for Defendant Tom L. Ward*

</div>

## **Certificate of Service**

I hereby certify that on April 25, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel registered for ECF.

    s/ George S. Corbyn, Jr.
George S. Corbyn, Jr.

CORBYN HAMPTON LAW FIRM
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK  73102
Telephone:  (405) 239-7055
Facsimile:  (405) 702-4348
Email:  gcorbyn@corbynhampton.com