UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC.<br>SECURITIES LITIGATION | ) | No. 5:12-cv-01341-LRW |
| | ) | |
| | ) | <u>CLASS ACTION</u> |
| | ) | |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS. | ) | |
| | ) | |

**PLAINTIFFS' MOTION TO PARTIALLY LIFT
PSLRA DISCOVERY STAY AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 1

    A.  Documents Concerning the SEC's Investigation of SandRidge for Violations of the Securities Laws ................................................................. 2

    B.  Documents Produced to the Ad Hoc Committee ......................................... 4

II.  ARGUMENT ........................................................................................... 6

    A.  Legal Standards ............................................................................... 6

    B.  Partially Lifting the Stay Is Necessary to Prevent Undue Prejudice to Plaintiffs and the Class ...................................................................... 7

    C.  Plaintiffs' Requests Are Sufficiently Particularized ................................... 13

    D.  Partially Lifting the Stay Will Not Be Burdensome to Defendants ............ 14

    E.  Partially Lifting the Stay Does Not Undermine the Legislative Purpose of the PSLRA Stay ......................................................................... 15

III.  CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Friedman v. Quest Energy Partners LP*,
   No. Civ-08-936-M, 2009 U.S. Dist. LEXIS 117050
   (W.D. Okla. Dec. 15, 2009) ................................................................................. 6, 7, 15

*In re Bank of Am. Corp. Sec. Litig.*,
   No. 09 MDL 2058 (DC), 2009 U.S. Dist. LEXIS 108322
   (S.D.N.Y. Nov. 16, 2009) ............................................................ 6, 13, 14, 15

*In re Enron Corp. Sec.*,
   No. MDL-1446, 2002 U.S. Dist. LEXIS 26261
   (S.D. Tex. Aug. 16, 2002) ................................................................ 9, 14, 16

*In re FirstEnergy Corp. Sec. Litig.*,
   229 F.R.D. 541 (N.D. Ohio 2004) .......................................................... 9, 13

*In re Lernout & Hauspie Sec. Litig.*,
   214 F. Supp. 2d 100 (D. Mass. 2002) ........................................................ 12

*In re Metro. Sec. Litig.*
   No. CV-04-25-FVS, 2005 U.S. Dist. LEXIS 46033
   (E.D. Wash. Mar. 31, 2005) ............................................................................ 9

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   220 F.R.D. 246 (D. Md. 2004) .................................................................... 14

*In re Royal Dutch/Shell Transport Sec. Litig.*,
   No. 04-374 (JWB), 2005 U.S. Dist. LEXIS 37962
   (D.N.J. Feb. 15, 2005) .................................................................................... 9

*In re SemGroup Energy Partners, L.P., Sec. Litig.*,
   No. 08-MD-1989-GKF-FHM
   (N.D. Okla. Feb 5, 2009) ............................................................................... 9

*In re Spectranetics Corp. Sec. Litig.*,
   No. 08-cv-02048, 2009 U.S. Dist. LEXIS 100748
   (D. Colo. Oct. 14, 2009) ....................................................................... 7, 13, 14

*In re Tyco Int'l, Ltd. Sec. Litig.*,
   No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659
   (D.N.H. July 27, 2000) ................................................................................ 13

**Page**

*In re Williams*,
No. 02-CV-72H (M), 2003 U.S. Dist. LEXIS 24304
(N.D. Okla. May 21, 2003) ............................................................................ 7, 8, 10, 15

*In re Worldcom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002) ................................................................*passim*

*Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
943 F. Supp. 2d 913 (E.D. Wis. 2013) ......................................................................... 13

*Seippel v. Sidley, Austin, Brown & Wood LLP*,
No. 03 Civ. 6942, 2005 U.S. Dist. LEXIS 2388
(S.D.N.Y. Feb. 17, 2005) ............................................................................................... 7

*Tomita Techs. USA, LLC v. Nintendo Co.*,
818 F. Supp. 2d 770 (S.D.N.Y. 2011) ......................................................................... 15

*Waldman v. Wachovia Corp.*,
No. 08 Civ. 2913 (SAS), 2009 U.S. Dist. LEXIS 1988
(S.D.N.Y. Jan. 12, 2009) .............................................................................................. 14

*Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*,
No. 08 Civ. 9528, 2009 U.S. Dist. LEXIS 39243
(S.D.N.Y. May 8, 2009) ............................................................................................... 15


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(b)(3)(B) ............................................................................................... 6, 7, 12


**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995 ("PSLRA")
Pub. L. No. 104-67, 109 Stat. 737 (1995) ...............................................................*passim*

Conference Report:
H.R. Conf. Rep. No. 104-369, at 11, 104th Cong. 1st Sess. (1995),
*reprinted in* 1995 U.S.C.C.A.N. 679 ............................................................................ 6

Lead Plaintiffs Laborers Pension Trust Fund for Northern Nevada, Construction Laborers Pension Trust of Greater St. Louis, and Vladimir Galkin and Angelica Galkin (collectively, "Plaintiffs") respectfully move for a modification of the stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the production of documents in the possession of SandRidge Energy, Inc. ("SandRidge" or the "Company").

## I.      INTRODUCTION

Plaintiffs are seeking the production of documents, and a minor modification of the PSLRA discovery stay, to prevent Plaintiffs from suffering undue prejudice in this action. The documents sought by Plaintiffs have already been produced by SandRidge or the individual defendants Tom L. Ward, James D. Bennett and Matthew K. Grubb (the "Individual Defendants") to: (1) the Securities and Exchange Commission (the "SEC") in connection with the SEC's investigation of alleged violations of the federal securities laws by SandRidge; and (2) a group of SandRidge shareholders (the "Ad Hoc Committee") who sought appointment as an official committee to represent SandRidge shareholders in connection with SandRidge's chapter 11 bankruptcy proceedings (the "SandRidge Bankruptcy Proceeding").[1]

Plaintiffs seek the following documents:

1.      All documents provided to the SEC by SandRidge and the Individual Defendants in connection with the SEC's investigation of SandRidge's

---

[1] *In re SandRidge Energy, Inc., et al.,* Lead Case No. 16-32488 (Chapter 11) (Bankr. S.D. Tex.).

violations of the federal securities laws as described in SandRidge's Form 10-Q filed on August 15, 2016. *See* Ex. 1 at 33.[2]

2.      All documents provided to the Ad Hoc Committee by SandRidge in connection with the SandRidge Bankruptcy Proceeding.[3]

As alleged in Plaintiffs' Second Consolidated Amended Complaint for Violations of Federal Securities Laws (the "SAC") and set forth in Plaintiffs' oppositions to defendants' motions to dismiss the SAC, Plaintiffs allege, *inter alia*, that defendants issued materially false and misleading statements and omitted material information about SandRidge's oil and gas production and reserves. As discussed below, the documents sought by Plaintiffs are relevant to Plaintiffs' claims. Plaintiffs will suffer undue prejudice unless the documents are produced, and SandRidge and the Individual Defendants cannot claim any form of undue hardship or burden since each of the requested documents have already been compiled and produced to other parties.

**A.      Documents Concerning the SEC's Investigation of SandRidge for Violations of the Securities Laws**

SandRidge commenced the SandRidge Bankruptcy Proceeding by filing a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern

---

[2]   Unless otherwise noted, all exhibits referenced herein are exhibits to the Declaration of Evan J. Kaufman in Support of Plaintiffs' Motion to Partially Lift PSLRA Discovery Stay ("Kaufman Decl.").

[3]   Based upon representations made in pleadings filed in the SandRidge Bankruptcy Proceeding, Plaintiffs understand that some or all of the documents provided to the Ad Hoc Committee were also provided to the official committee of unsecured creditors appointed in the SandRidge Bankruptcy Proceeding.

District of Texas (the "Bankruptcy Court") on May 16, 2016.[4]  On June 16, 2016, the SEC

filed a Proof of Claim against SandRidge in the SandRidge Bankruptcy Proceeding in the

amount of $1.2 million, based upon "[v]iolations of the federal securities laws."  SEC Proof

of Claim at 2, Ex. 2.  The SEC's $1.2 million claim against SandRidge was the result of an

investigation of SandRidge by the SEC, which was triggered by a whistleblower who claims

to have been terminated by the Company in retaliation for objecting to SandRidge's

management about the "levels of oil and gas reserves disclosed by the Company in its public

filings."  SandRidge Form 10-Q dated August 15, 2016.  Ex. 1 at 33.

According to SandRidge, the Company notified the SEC about the whistleblower's

claim against the Company after receiving a letter from the whistleblower's attorney

describing the incident.  *Id.*  Upon learning about the former employee's claims, the SEC

launched an investigation and issued two subpoenas to SandRidge.  The SEC, in addition to

investigating the former employee's claims about SandRidge's misrepresentations about oil

and gas reserves, also served the Company with a subpoena.  That subpoena seeks

documents relating to whether SandRidge's employment agreements for certain employees

contain language which violates SEC rules prohibiting a company from impeding an

individual from communicating directly with the SEC about possible securities law

---

[4]    The Bankruptcy Court entered an order (the "Confirmation Order"), Ex. 8, confirming
SandRidge's chapter 11 plan of reorganization (the "Plan"), Ex. 5, on September 2, 2016.
The Plan, which became effective on October 4, 2016, expressly allows Plaintiffs to, among
other things, seek discovery from SandRidge and name SandRidge and its affiliates as
defendants in this action for the purpose of recovering from available insurance.  *See*
Confirmation Order at ¶146(iii)-(iv), Ex. 8.

violations. *Id.* SandRidge disclosed that counsel for its audit committee of the board of directors is "responding" to the subpoenas issued by the SEC. *Id.*

In response to the SEC's investigation and communications with the Company, SandRidge sent letters to certain current and former employees to make clear that their employment-related agreements do not prohibit them from communicating Company securities law violations to the SEC. The Company disclosed that it also revised its Code of Conduct and other relevant policies so they would not violate SEC rules regarding whistleblowers. *Id.*

Plaintiffs are seeking the documents produced by SandRidge and any Individual Defendant to the SEC. These documents, which relate to SandRidge's representations about its oil and gas production and reserves in public filings, are relevant to Plaintiffs' claims in this action.

### B.    Documents Produced to the Ad Hoc Committee

The Ad Hoc Committee sought appointment as an official committee to represent the interests of SandRidge's shareholders in the SandRidge Bankruptcy Proceeding. Shortly after SandRidge filed for bankruptcy, the Ad Hoc Committee alleged that SandRidge and its senior officers and directors had "committed conspiracy and fraud" against SandRidge shareholders and creditors by, *inter alia*, filing for bankruptcy protection when the Company was not insolvent and materially understating the value of SandRidge's oil and gas reserves, in an effort to line their own pockets with millions of dollars.[5]

---

[5]    *See* https://www.sandridgesec.com/news/m.blog/39/july-1-2016-sandridge-stockholders-equity-committee-news.

The Ad Hoc Committee was active in the SandRidge Bankruptcy Proceeding and sought and obtained documents from SandRidge relevant to Plaintiffs' claims here, including documents concerning SandRidge's oil and gas production, reserve reports, and other documentation relating to the valuation of the Company's reserves. *See* Ad Hoc Committee of Shareholders' Emergency Motion to Extend Deadlines for Expert Report and Objection to Confirmation. Ex. 3 at 3. These and other documents were produced to the Ad Hoc Committee through an "electronic data room" set up for the SandRidge Bankruptcy Proceeding.

On September 20, 2016, the Ad Hoc Committee indicated that it intends to appeal the decision confirming the Plan of Reorganization and discussed that it developed information during the SandRidge Bankruptcy Proceeding showing that SandRidge regularly misrepresented its assets, stating, "[t]hrough talking with Sandridge personnel that have worked in reservoir engineering, production engineering, and lift operation, we have established that inflating assets at Sandridge was a frequent practice."[6] The Ad Hoc Committee filed a Notice of Appeal in the Bankruptcy Court on September 23, 2016. *See* Ex. 4.[7] Plaintiffs are seeking the documents produced by SandRidge to the Ad Hoc Committee which are relevant to Plaintiffs' claims here.

---

[6] *See* http://www.sandridgesec.com/news/m.blog/39/september-16-2016-sandridge-shareholders-committee-news.

[7] The appeal has been docketed, *The AD HOC Committee of Shareholders*, No. 4:16-cv-2890 (S.D. Tex.).

## II.     ARGUMENT

### A.     Legal Standards

The PSLRA imposes an automatic stay of discovery in a securities class action "during the pendency of any motion to dismiss." 15 U.S.C. §78u-4(b)(3)(B). Congress enacted this provision to "minimize the incentives for plaintiffs to file frivolous securities class actions in the hope . . . that corporate defendants will settle those actions rather than bear the high cost of discovery[.]"[8] *Friedman v. Quest Energy Partners LP*, No. Civ-08-936-M, 2009 U.S. Dist. LEXIS 117050, at *7-*8 (W.D. Okla. Dec. 15, 2009) (quoting *In re Worldcom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)); *see also* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. Congress also wanted to prevent plaintiffs from pursuing discovery in the hopes of finding "some sustainable claim not alleged in the complaint." *Friedman*, 2009 U.S. Dist. LEXIS 117050, at *7-*8.

A court may exercise its discretion to lift the stay, however, when a party demonstrates that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. §78u-4(b)(3)(B). Generally, a court will modify or lift the stay when: (i) the documents and information sought are sufficiently particular; (ii) the plaintiff will suffer undue prejudice or there is a need to preserve evidence; (iii) the production is not overly burdensome to the defendants; and (iv) doing so will not undermine the PSLRA's legislative purpose. *See In re Bank of Am. Corp. Sec. Litig.*, No. 09 MDL 2058 (DC), 2009 U.S. Dist. LEXIS 108322, at *4-*5 (S.D.N.Y. Nov. 16, 2009) (noting that "courts have

---

[8]     Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

modified the discovery stay . . . when doing so would not frustrate Congress's purposes in enacting the PSLRA") (quoting *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 Civ. 6942, 2005 U.S. Dist. LEXIS 2388, at *1 (S.D.N.Y. Feb. 17, 2005)); *see also In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048, 2009 U.S. Dist. LEXIS 100748, at *6-*7 (D. Colo. Oct. 14, 2009) ("The stay may be modified if the collective weight of these factors shows that there is good cause to permit Plaintiff to engage in immediate discovery.").

### B. Partially Lifting the Stay Is Necessary to Prevent Undue Prejudice to Plaintiffs and the Class

The discovery stay should be modified in order to "prevent undue prejudice" to Plaintiffs. 15 U.S.C. §78u-4(b)(3)(B); *In re Williams*, No. 02-CV-72H (M), 2003 U.S. Dist. LEXIS 24304, at *13-*18 (N.D. Okla. May 21, 2003) (permitting modification of discovery stay to prevent undue prejudice to plaintiffs). Congress specifically left the issue of whether prejudice is "undue" to the courts to resolve because courts are uniquely positioned to "consider all the facts and circumstances presented by each particular case." *Id.* at *14-*15. Undue prejudice has been construed in the Western District of Oklahoma to mean "improper or unfair treatment amounting to something less than irreparable harm." *Friedman*, 2009 U.S. Dist. LEXIS 117050, at *9; *see Spectranetics*, 2009 U.S. Dist. LEXIS 100748, at *7. Of chief concern is whether plaintiffs will be hampered in formulating effective litigation or settlement strategies without the benefit of discovery materials to which the movant does not have access. Similarly, courts look to whether plaintiffs do not have documents which are possessed by other litigants.

In *WorldCom*, the court was particularly concerned that the lead plaintiff "would essentially be the only major interested party in the criminal and civil proceedings against WorldCom without access to documents that currently form the core of those proceedings" and that "[i]f [lead plaintiff] must wait until the resolution of a motion to dismiss to obtain discovery and formulate its settlement or litigation strategy, it face[d] the very real risk that it w[ould] be left to pursue its action against defendants who no longer have anything or at least as much to offer."  234 F. Supp. 2d at 305-306.  In this situation, plaintiffs are "prejudiced by [their] inability to make informed decisions about its litigation strategy in a rapidly shifting landscape."  *Id.* at 305.  The court thus ordered that certain documents produced to investigators be produced to the lead plaintiff.

Similarly, the United States District Court for the Northern District of Oklahoma, in *In re Williams*, lifted the discovery stay and ordered the production of documents where defendants had already produced the requested documents to third parties and the motion to dismiss had been fully briefed, stating in pertinent part:

> [E]nforcement of the stay would cause Lead Plaintiff "undue" prejudice in the sense that any prejudice suffered by Lead Plaintiff would be purely gratuitous. That is, enforcement of the stay as to the particular information sought would be needless because it would not serve the interest of any party and would vindicate no policy interest.  In balancing the purpose of the PSLRA stay, the detriment to Defendant, the burden production would impose on Defendant, the detriment to Lead Plaintiff, and general principles of fairness, the Court finds that ***it would be unfair and unnecessary, and hence "undue," to require Lead Plaintiff to suffer any prejudice as a result of the PSLRA stay as regards the information already produced to investigating governmental bodies***.

*In re Williams*, 2003 U.S. Dist. LEXIS 24304, at *16-*17.

Other courts have lifted the discovery stay in similar circumstances.[9]  In *In re Metro.
Sec. Litig.*, the Court partially lifted the PSLRA discovery stay, holding the lead plaintiffs
"may well be unfairly disadvantaged if they do not have access to documents the
governmental agencies and other civil claimants possess."  No. CV-04-25-FVS, 2005 U.S.
Dist. LEXIS 46033, at *14 (E.D. Wash. Mar. 31, 2005).  In that action, the lead plaintiffs
sought documents related to an SEC investigation and an independent bankruptcy
examiner's investigation of corporate defendants.  In granting the lead plaintiffs' motion, the
court held that "[lead plaintiffs'] access to the requested documents may assist in evaluating
the worth of any potential settlements and in bringing an efficient and economic resolution to
all claims."  *Id.* at *15.

As set forth in detail in the SAC, "throughout the Class Period, Defendants materially
overstated the amount of oil being produced in the Mississippian play for its typical
horizontal Mississippian well, the amount of oil relative to gas, and the economics for

---

[9]   *See In re SemGroup Energy Partners, L.P., Sec. Litig.*, No. 08-MD-1989-GKF-FHM
(N.D. Okla. Feb 5, 2009) (order partially lifting PSLRA stay for discovery of documents and
materials defendant had produced in connection with governmental and other investigations
following a bankruptcy filing); *In re Enron Corp. Sec.*, No. MDL-1446, 2002 U.S. Dist.
LEXIS 26261 (S.D. Tex. Aug. 16, 2002) (granting order for limited production of documents
and materials produced in response to inquiries and investigations by governmental bodies
because the burden would be so slight to defendant in that the documents had already been
found, reviewed and organized); *In re Royal Dutch/Shell Transport Sec. Litig.*, No. 04-374
(JWB), 2005 U.S. Dist. LEXIS 37962, at *4 (D.N.J. Feb. 15, 2005) (lifting PSLRA
discovery stay and ordering production of all documents produced by defendants to parties in
other actions and to various government agencies including the SEC); *In re FirstEnergy
Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (granting motion to partially lift
PSLRA stay and finding that "[w]ithout discovery of documents already made available to
government entities, Plaintiffs would be unfairly disadvantaged in pursuing litigation and
settlement strategies.").

horizontal Mississippian wells, and misrepresented the geology of the Company's leasehold across the Mississippian." SAC at ¶2. The documents concerning SandRidge's production and reserves produced to the Ad Hoc Committee and the documents produced to the SEC regarding its investigation of misrepresentations by SandRidge of production and reserves are directly relevant to Plaintiffs' claims. Here, as in *Worldcom* and *In re Williams*, Plaintiffs will suffer undue prejudice if these documents, which have already been produced to other parties, are not produced to Plaintiffs.

These documents will allow Plaintiffs to make informed decisions regarding their claims, litigation strategy, and potential settlement. The documents will enable Plaintiffs to better understand the strength of their claims as well as the extent of the defendants' potential liability to the SEC and other parties. Plaintiffs will be immediately prejudiced by being forced to evaluate their case or pursue a settlement of this action without understanding the complete scope of the Company's potential liability. Moreover, the information Plaintiffs seek has already been made available to other parties pursuing, or that may later pursue, claims against the Company and others.

Additionally, time is of the essence because any settlement between Plaintiffs and SandRidge will implicate the Company's director and officer liability insurance policies (the "D&O Policies"). These dwindling D&O Policies, however, have been significantly depleted since Plaintiffs first filed their claims in July 2013 and are likely to continue to be greatly reduced going forward. Indeed, the D&O Policies have been funding the legal fees and expenses of SandRidge and the Individual Defendants in this and other actions, including the fees, expenses and settlement of a related federal derivative action, *In re*

*SandRidge Energy, Inc. Shareholder Derivative Litigation*, Case No. CIV-13-102-W (the "Derivative Action"). *See* Stipulation and Agreed Order Regarding Payment of Insurance Proceeds; and Stipulation of Settlement at Schedule 1.1(d), as Exs. 6 and 7 respectively.[10] It is likely that the D&O Policies are also funding the fees and expenses associated with the SEC's investigation of the Company and will fund any future monetary settlements with the SEC. According to a Stipulation and Agreed Order Regarding Payment of Insurance Proceeds entered in the SandRidge Bankruptcy Proceeding on August 18, 2016,[11] the limits of five layers of the D&O Policies have already been depleted and the Company's sixth layer of insurance is currently funding legal expenses in cases beyond this action. In addition to the costs associated with the SEC's investigation, the D&O Policies may need to fund costs associated with an action potentially filed by the SEC, including possible criminal charges that might arise in conjunction therewith.[12] Furthermore, the Ad Hoc Committee has already

---

[10]   In the event of a settlement of this action, in addition to any remaining funds from the Company's D&O Policies, Plaintiffs are entitled to obtain settlement proceeds from an escrow account established as part of the settlement of the Derivative Action and funded with $38 million solely by the defendants' insurance carriers (the "Escrow Account"). *See* Ex. 6 at ¶1.28, 2.1. The Escrow Account was created solely for the purposes of (i) funding a fee and expense award in the Derivative Action and (ii) "paying or reimbursing any attorneys' fees, expenses, settlement obligations, or judgments arising out of the defense, settlement, or resolution" of this action, an action captioned *Lanier v. SandRidge Energy, Inc. et al.*, Case No. CIV-15-634-M, and any subsequent litigation asserting substantially similar securities law violations as alleged in this action and the *Lanier* action. *Id.* at ¶2.3, 1.27. It is Plaintiffs' understanding that approximately $25 million remains in the Escrow Account. On December 22, 2015, the court approved a $13 million fee and expense award to plaintiffs' counsel in the Derivative Action to be paid from the Escrow Account.

[11]   Ex. 6 at 2–3.

[12]   The Plan specifically reserves the SEC's rights to seek injunctive or non-monetary relief against the Company, potentially subjecting the Company to additional liability. Ex. 5 at 41.

expressed its view that the Company has committed fraud and there are no indications that group of shareholders will simply go away without a resolution. Plaintiffs will suffer undue prejudice unless the documents previously produced to other parties are also produced to Plaintiffs.

Finally, the need to preserve evidence is a separate ground for modification of the PSLRA stay. For instance, if the data room maintained for the benefit of the Ad Hoc Committee and others in the SandRidge Bankruptcy Proceeding is deactivated, there is a risk the documents contained therein will be significantly more difficult to re-compile and produce, and there is no guarantee that Plaintiffs will thereafter receive the identical universe of documents already produced to other parties. Even though those documents are available for production now, there are no assurances that they will be readily available once a decision is rendered on defendants' motions to dismiss. Enabling Plaintiffs to obtain the same documents already reviewed, compiled, and produced to other parties, in the same order and format, will serve the interest of fairness among the various parties potentially asserting claims against SandRidge and others. *See* 15 U.S.C. §78u-4(b)(3)(B) ("all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is ***necessary to preserve evidence*** . . ."); *see In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108-109 (D. Mass. 2002) (finding that the circumstances of the case warranted lifting the PSLRA stay to preserve evidence, in part, because the "bankruptcy and potential dissolution of [Lernout & Hauspie] and/or its subsidiaries likewise must be considered").

### C.      Plaintiffs' Requests Are Sufficiently Particularized

A request for discovery is particular if "it is directed at specific persons" and "identifies specific types of evidence that fall within its scope." *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659, at *12 (D.N.H. July 27, 2000). Moreover, the request must implicate a "clearly defined universe of documents." *Bank of Am.*, 2009 U.S. Dist. LEXIS 108322, at *7 (quoting *Worldcom*, 234 F. Supp. 2d at 301). By contrast, a request is not particular if it seeks "an open ended, boundless universe of materials." *Tyco*, 2000 U.S. Dist. LEXIS 11659, at *13 (finding particularity lacking).

Here, there can be no dispute that Plaintiffs are seeking a clearly defined universe of documents. Plaintiffs' motion is limited to those documents already collected, reviewed, and produced by SandRidge to the SEC and the Ad Hoc Committee. Consequently, the discovery sought is directed at a finite universe of materials and the materials are readily ascertainable and easily made available to Plaintiffs. The limited discovery requested here is, thus, sufficiently particular on its face. *See Spectranetics*, 2009 U.S. Dist. LEXIS 100748, at *8 ("[A] discovery request targeting the same list of documents that has already been produced . . . is more likely to be found particularized.").[13]

---

[13]    *See also Bank of Am.*, 2009 U.S. Dist. LEXIS 108322, at *9 (lifting stay as to "documents already produced" elsewhere); *Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) (holding that a discovery request was particular where "limited solely to relevant materials that have already been produced in other proceedings, similar to what has been permitted by other courts in PSLRA-lift cases"); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (finding that plaintiff's request was sufficiently particularized as it was "limited to the closed universe of materials that FirstEnergy [had] already produced for government investigators and the federal grand jury").

**D.      Partially Lifting the Stay Will Not Be Burdensome to Defendants**

Granting the limited discovery requested by Plaintiffs would impose little burden on SandRidge or the Individual Defendants since the documents sought herein have already been collected, reviewed and produced by SandRidge or the other defendants.  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004); *see also Bank of Am.*, 2009 U.S. Dist. LEXIS 108322, at *5 (recognizing that the "[t]he burden . . . is slight when a defendant has already found, reviewed and organized the documents") (quoting *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913 (SAS), 2009 U.S. Dist. LEXIS 1988, at *4 (S.D.N.Y. Jan. 12, 2009)).  As the *Enron* court held:

> While recognizing that the PSLRA's discovery stay protected Defendants from unnecessary discovery costs, Lead Plaintiff argues that here the burden would be slight because Enron has already found, reviewed, and organized the documents.  The Court agrees.  ***In a sense this discovery has already been made***, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse.

*In re Enron Corp.*, 2002 U.S. Dist. LEXIS 26261, at *32 (*see also Spectranetics*, 2009 U.S. Dist. LEXIS 100748, at *24 (noting that a defendant "faces a reduced discovery burden when it has already gathered and produced the same materials for other parties" and that "[t]his burden is further minimized when a plaintiff offers to pay the defendant's costs to produce those documents").[14]

The Confirmation Order entered in the SandRidge Bankruptcy Proceeding explicitly permits Plaintiffs to seek discovery from SandRidge in this action.  Ex. 8 at ¶146(iii).  Furthermore, complying with Plaintiffs' proposed document requests imposes no real burden

---

[14]      Plaintiffs are prepared to pay the reasonable costs of duplicating and producing the documents sought herein.

since the requested documents will likely be produced electronically and it is "cheaper and easier" to produce the documents with the "click of a mouse." *Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011). Thus, the "balance favors" Plaintiffs, "based on the lack of any cost to [D]efendants to produce those documents and [P]laintiffs' unusual need for an early review of crucial records." *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A.*, No. 08 Civ. 9528, 2009 U.S. Dist. LEXIS 39243 (SAS), at *3 (S.D.N.Y. May 8, 2009); *see also In re Williams*, 2003 U.S. Dist. LEXIS 24304, at *16 (modifying PSLRA stay where copying and producing documents to plaintiff that had already been reviewed, organized and produced to others "would work no hardship on Defendant").

### E.    Partially Lifting the Stay Does Not Undermine the Legislative Purpose of the PSLRA Stay

The legislative purpose of the automatic stay provision of the PSLRA is to prevent plaintiffs from filing frivolous securities class actions "in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *Friedman*, 2009 U.S. Dist. LEXIS 117050, at *7-*8; (quoting *Worldcom*, 234 F. Supp. 2d at 305). The limited discovery here poses no threat of the abusive litigation tactics (*e.g.*, fishing expeditions and extortionate settlements in frivolous cases) addressed by the PSLRA. *See Bank of Am.*, 2009 U.S. Dist. LEXIS 108322, at *8 (noting absence of such concerns in granting a similar motion); *Worldcom*, 234 F. Supp. 2d at 305 (same). Indeed, the allegations underpinning the investigation by the SEC and the allegations of the Ad Hoc

Committee only serve to bolster the credibility of Plaintiffs' already detailed allegations. *See, e.g., Enron*, 2002 U.S. Dist. LEXIS 26261, at *30 (PSLRA was "not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case").

The SAC alleges a compelling case for securities fraud, and this action is far from frivolous. SandRidge has already settled a derivative litigation arising out of similar facts and circumstances to those alleged in the SAC, and the SEC has filed a proof of claim and, upon information and belief, continues to investigate violations of the federal securities laws by SandRidge similar to those alleged here. Plaintiffs seek only limited discovery from SandRidge (and, to the extent they have already produced documents to the SEC or the Ad Hoc Committee, the Individual Defendants) to prevent undue prejudice. Lifting the stay will not be inconsistent with the purpose of the stay.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and partially lift the stay of discovery for the limited purpose of allowing Plaintiffs to obtain the documents requested herein.

DATED:  October 17, 2016                ROBBINS GELLER RUDMAN
                                                    & DOWD LLP
                                                    SAMUEL H. RUDMAN (admitted *pro hac vice)*
                                                    EVAN J. KAUFMAN (admitted *pro hac vice*)
                                                    SAMUEL J. ADAMS (admitted *pro hac vice*)

                                                  * /s/ Evan J. Kaufman*
                                                    EVAN J. KAUFMAN
                                                    NY Bar Number: 2753614

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
sadams@rgrdlaw.com

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK  73105
Telephone:  405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)
ambere@zhlaw.com

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the parties have satisfied the requirements of Rule 37(a)(1) of the Federal Rules of Civil Procedure and Local Rule 37.1 of the Western District of Oklahoma regarding an informal conference to settle discovery disputes.  Plaintiffs' counsel met and conferred telephonically with counsel for Defendants James D. Bennett ("Bennett") and Matthew K. Grubb ("Grubb") on October 4, 2016 in good faith and in an effort to obtain discovery without Court action.  By email dated October 7, 2016 directed to Plaintiffs' counsel and copying counsel for all parties, counsel for Defendants Bennett and Grubb stated that he had spoken to counsel for the other defendants and none of the defendants agreed to produce the requested documents.  Pursuant to Local Rule 37.1, the distance between counsels' offices rendered personal conferences infeasible.  Counsel for Plaintiffs' office is located in Melville, NY, which is more than 30 miles from the offices of counsel for Defendants Bennett and Grubb in New York, NY (32.3 miles apart), counsel for Defendant Ward in Washington, DC and San Francisco, CA, and counsel for SandRidge in Oklahoma City, OK.  After a sincere attempt to resolve their differences, the parties were unable to reach an accord.

DATED:  October 17, 2016

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing.  Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 17, 2016.


*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN