## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

IN RE SANDRIDGE ENERGY, INC.
SECURITIES LITIGATION

Case No. CIV-12-01341-W

Relating to All Actions

## OPPOSITION OF ALL DEFENDANTS TO PLAINTIFFS' MOTION TO PARTIALLY
## LIFT PSLRA DISCOVERY STAY

COVINGTON & BURLING LLP
C. William Phillips (admitted *pro hac vice*)
Mark P. Gimbel (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

CROWE & DUNLEVY
Thomas B. Snyder, Esq., OBA #31428
324 N. Robinson, Ste. 100
Oklahoma City, OK 73102
(405) 234-3254

*Attorneys for James D. Bennett and
Matthew K. Grubb*

CONNER & WINTERS, LLP
Kiran A. Phansalkar, OBA #11470
Mitchell D. Blackburn, OBA #12217
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
(405) 272-5711

*Attorneys for SandRidge Energy, Inc.*

LATHAM & WATKINS LLP
Margaret A. Tough (admitted *pro hac vice*)
Steven M. Bauer (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

J. Christian Word (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

George S. Corbyn, Jr. OBA #1910
Corbyn Hampton Law Firm
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, Oklahoma 73102
(405) 239-7055

*Attorneys for Defendant Tom L. Ward*

# TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Background.............................................................................................................. 2

    A.    Dismissal of Plaintiff's First Amended Complaint and Mooting of
          Motions to Partially Lift PSLRA Stay. ........................................................ 2

    B.    Second Amended Complaint........................................................................ 4

    C.    Derivative Action Settlement ..................................................................... 4

    D.    SandRidge Bankruptcy............................................................................... 6

Argument ................................................................................................................. 7

I.    Discovery in securities litigation is stayed pending the resolution of a
    motion to dismiss................................................................................................ 7

    A.    The Exception for Prevention of Undue Prejudice is Narrowly
          Construed ................................................................................................... 8

    B.    The exception for the need to preserve evidence must be imminent
          and not merely speculative. ...................................................................... 10

II.    Plaintiffs have not met the requirements to justify lifting the PSLRA
    discovery stay. ................................................................................................. 10

    A.    Plaintiffs have not shown undue prejudice. ............................................. 10

          1.    A $25 million escrow fund dedicated solely to expenses for
                securities litigation guarantees that Plaintiffs' are not in
                competition with others for depleting settlement funds........................... 11

          2.    Improving Plaintiffs' litigation position is not a basis for lifting the
                stay. ...................................................................................................... 13

          3.    The SEC investigation does not create undue prejudice........................... 14

    B.    Lifting the Stay is Not Necessary to Preserve Evidence............................ 14

    C.    Plaintiffs' Arguments Regarding Burden and Legislative Intent do
          Not Warrant Lifting the Stay Mandated by Statute ................................... 16

Conclusion ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
No. 07-CV-1204, 2007 WL 2049738 (S.D.N.Y. July 18, 2007) ............................................14

*Barton W. Gernandt, Jr., et al., v. SandRidge Energy, Inc., et al.*,
Case No. 15-CV-834-D (W.D. Ok.) ...........................................................................................6

*In re CFS-Related Sec. Fraud Litig.*,
179 F. Supp. 2d 1260 (N.D. Okla. 2001) ...................................................................7, 8, 9, 14

*Duane & Virginia Lanier Trust v. SandRidge Energy, Inc., et. al*,
Case No. CIV-15-00634-M (W.D. Ok.) .....................................................................................6

*Duane & Virginia Lanier Trust v. SandRidge Energy Inc., et al.*,
No. CIV-15-0634-M (W.D. Okla. Jun. 19, 2015)............................................................3, 4, 11

*Friedman v. Quest Energy Partners LP*,
No. CIV-08-936-M, 2009 WL 5065690 (W.D. Okla. Dec. 15, 2009) .....................6, 9, 13, 16

*Herrley v. Frozen Food Exp. Indus., Inc.*,
No. 3:13-CV-3004, 2013 WL 4417699 (N.D. Tex. Aug. 19, 2013) .........................................8

*In re Refco, Inc.*,
No. 05-CV-8626, 2006 WL 2337212 (S.D.N.Y. Aug. 8, 2006)..............................................13

*In re SandRidge Energy Inc., et al.*,
No. 16-32488 (Bankr. S.D. Tx. Sep. 20 2016) ......................................................................5, 6

*In Re SandRidge Energy, Inc., Shareholder Derivative Litigation*,
No. CIV-13-102-W (W.D. Okla. Dec. 22, 2015) ...................................................................4, 5

*Sarantakis v. Gruttaduaria*,
No. 02-CV-1609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ..............................................14

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*,
189 F.3d 909 (9th Cir. 1999) .................................................................................................1, 2

*In re Spectranetics Corp. Sec. Litig.*,
No. 08-CV-02078, 2009 WL 3346611 (D. Colo. Oct. 14, 2009) ................................... *passim*

*In re Thornburg Mortg., Inc. Sec. Litig.*,
No. 07-CV-0815, 2010 WL 2977620 (D.N.M. July 1, 2010)...........................................7, 9, 15

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 129 (S.D.N.Y. 2003)..................................................................10

*In re Williams Securities Litigation*,
  No. 02-CV-72H (M), 2003 WL 22013464 (N.D. Okla. May 22, 2003)............................12, 15

*Winer Family Trust v. Queen*,
  No. CIV.A. 03-4318, 2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ............................................8

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002).........................................................8, 11, 12

**Statutes**

15 U.S.C.A. § 78u-4(b)(3)(B) .....................................................................................7

11 U.S.C. § 362(a)(3)..................................................................................................5

15 U.S.C. § 78u–4(b)(3)(B) .................................................................................6, 15

15 U.S.C. § 78u-5(c)(1) ..............................................................................................3

Bankruptcy Code Section 101(5)...............................................................................6

Employment Retirement Income Security Act of 1974..............................................8

Private Securities Litigation Reform Act., 15 U.S.C. § 78u-4............................... *passim*

Securities Exchange Act Sections 10(b) and 20(a)....................................................2

**Other Authorities**

H.R. REP. NO. 104-369 (1995)...................................................................................8

S. REP. NO. 104–98 (1995)......................................................................................2, 7

Defendants James D. Bennett and Matthew K. Grubb, nominal Defendant SandRidge Energy Inc., ("SandRidge," or the "Company"), (together, the "SandRidge Defendants"), and Defendant Tom L. Ward ("Ward"), (collectively, "Defendants"), respectfully submit this memorandum in response to Plaintiffs' Motion to Partially Lift PSLRA Discovery Stay and Brief in Support (the "Motion to Lift Stay").

## INTRODUCTION

Plaintiffs attempt, for the third time, to circumvent the clear requirement of the Private Securities Litigation Reform Act ("PSLRA") staying discovery in securities class actions until the legal merit of the operative complaint has been tested.  Although one complaint has already been dismissed in this action, and a nearly-identical one remains pending before the Court, Plaintiffs nonetheless seize upon unrelated developments with the Company — its filing for Chapter 11 reorganization and receipt of subpoenas from the Securities and Exchange Commission ("SEC") seeking documents pertaining to, inter alia, SandRidge's employment agreements — to claim the existence of extraordinary circumstances justifying the lifting of the PSLRA stay.  Plaintiffs argue that the funds necessary to resolve this case are rapidly depleting because of the Chapter 11 reorganization and the SEC investigation, adding purported urgency to their demands for discovery.  But their argument ignores the existence of a bankruptcy-remote escrow fund of $25 million created for the sole purpose of funding expenses related to the instant securities litigation, including any settlement or judgment.

Allowing Plaintiffs to profit from document production in unrelated proceedings would directly conflict with the intent of the PSLRA.  "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed."  *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 189 F.3d 909, 912 (9th Cir. 1999) (issuing

mandamus to correct erroneous lifting of PSLRA discovery stay), quoting *Medhekar v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996).  To prevent this practice, Congress imposed an automatic stay on all discovery, which "contemplates that 'discovery should be permitted in securities class actions only *after* the court has sustained the legal sufficiency of the complaint.'"  *Id.* at 912-13 (quoting S. REP. NO. 104-98, at 14 (1995) reprinted in U.S.C.C.A.N. 693) (emphasis added).

Because the Court has yet to sustain the Second Amended Complaint[1] in this case, discovery is inappropriate, notwithstanding Plaintiffs' effort to interject procedural developments only tenuously related to the claims at issue here.  This Court should implement Congress's clear mandate, follow prior precedent from this district, and refuse to lift the stay.

## BACKGROUND

Relevant background facts are fully set forth in the SandRidge Defendants' Motion to Dismiss Plaintiffs' Second Consolidated Amended Complaint, Dkt. 189.  A brief description of the background facts pertinent to this opposition to the motion to lift the discovery stay follows.

### A.    Dismissal of Plaintiff's First Amended Complaint and Mooting of Motions to Partially Lift PSLRA Stay.

On July 30, 2013, Plaintiffs filed the First Amended Complaint in this action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act based on alleged misrepresentations or omissions concerning three subjects:  SandRidge's capital expenditure ("CapEx") guidance, land acquisitions by the Ward Entities, and oil and gas production in the

---

[1]  On October 21, 2016, following the confirmation of SandRidge's Chapter 11 Amended Plan of Reorganization, and pursuant to an order of this Court, Dkt. 219, Plaintiffs filed a Third Amended Complaint, Dkt. 225, naming SandRidge as a nominal defendant solely to the extent necessary to recover on any claims against SandRidge from any remaining available insurance coverage.  Defendants filed motions to dismiss the Third Amended Complaint incorporating their motions to dismiss the Second Amended Complaint.  Dkt. 226, 227.

Mississippian. Dkt. 75.  Shortly after all Defendants filed their motions to dismiss the First

Amended Complaint, Plaintiffs moved on February 14, 2014, to partially lift the PSLRA

discovery stay, Dkt. 150, and supplemented their motion later that year, citing the need to obtain

discovery that had been produced in a parallel shareholder derivative action,  Dkt. 168.

In a series of orders entered from May 11, 2015, to October 27, 2015, the Court

dismissed the First Amended Complaint in its entirety.  Dkts. 179, 180, 184, 185.  The Court

dismissed the independent directors as defendants, and found that (1) the alleged misstatements

regarding SandRidge's CapEx were protected by the PSLRA's "safe harbor" provision at 15

U.S.C. § 78u-5(c)(1); (2) Plaintiffs failed to adequately plead loss causation with respect to their

allegations regarding transactions involving the Ward-Related Entities; and (3) Plaintiffs failed

to adequately plead that alleged misstatements about the value of SandRidge's wells in the

Mississippian were made with scienter. Dkt. 184.  The Court also dismissed the recently-added

Unitholder Claims (Counts III, IV, and V) for failure to comply with the notice requirements of

the Private Securities Litigation Reform Act. ("PSLRA"), 15 U.S.C. § 78u-4.[2] The Court granted

leave to re-plead a narrow set of claims against only four of the nineteen original defendants —

SandRidge, Bennett, Grubb and Ward.

In connection with this order, the Court found moot Plaintiffs' motion to lift the PSLRA

discovery stay, and noted that "[t]he prejudice of having to postpone discovery until after the

resolution of [a]. . .  pending motion[ ] to dismiss is not 'undue.' Rather, such delay is an

inherent part of the process in a PSLRA case." *Id*. at 32, n. 45 (quoting *Herrley v. Frozen Food*

---

[2] The Unitholder claims were asserted as an independent action under the caption *Duane & Virginia Lanier Trust v. SandRidge Energy Inc., et al.*, No. CIV-15-0634-M (W.D. Okla. Jun. 19, 2015).

*Exp. Indus., Inc.*, No. 3:13-CV-3004, 2013 WL 4417699, at *3 (N.D. Tex. Aug. 19, 2013))
(alteration in Dkt. 184).

### B.   Second Amended Complaint

Plaintiffs filed their Second Amended Complaint on October 23, 2015.  Dkt. 188
(hereinafter cited as "SAC").  The new pleading repackages, with some embellishment, the
allegations of the First Amended Complaint asserting that Defendants, throughout 2011 and
2012, (1) made false and misleading statements about SandRidge's projected capital expenditure
("CapEx"), (2) failed to disclose alleged front-running of SandRidge in the Mississippian Play by
entities related to Tom Ward, and (3) misrepresented the anticipated production from oil and gas
wells in the Mississippian.  As explained by the SandRidge Defendants' motion to dismiss, the
SAC does not cure the deficiencies of the First Amended Complaint.  Defendants' motions to
dismiss the SAC were fully briefed on April 25, 2016, and are pending decision by the Court.
Dkts. 189, 204, 209.

### C.   Derivative Action Settlement

On December 22, 2015, this Court entered a final order and judgment in the related
shareholder derivative litigation, No. CIV-13-102-W, approving the creation of a settlement fund
of $38 million in an escrow account, to be funded solely by SandRidge's insurance carriers, (the
"Escrow Fund").  *See In Re SandRidge Energy, Inc., Shareholder Derivative Litigation*, No.
CIV-13-102-W, Dkt. 350, Final Order and Judgment (W.D. Okla. Dec. 22, 2015).  The Escrow
Fund is earmarked in part "for the purpose of paying or reimbursing any attorneys' fees,
expenses, settlement obligations, or judgments arising out of the defense, settlement, or
resolution of the Securities Litigation," ***which is expressly defined as this action***, the related
*Lanier* action by unit holders, or any subsequent securities litigation asserting substantially

similar securities law violations.[3]  *In Re SandRidge Energy, Inc., Shareholder Derivative Litigation*, No. CIV-13-102-W Dkt. 301-1, Stipulation of Settlement §§ 1.27–1.28, 2.3 (W.D. Okla. Dec. 22, 2015); *see also In Re SandRidge Energy Inc., Shareholder Derivative Litigation Final Order and Judgment* at 5 ("The Settlement payment of $38 million in cash, which shall be paid to SandRidge, subject to deductions for certain expenses, including those that may be incurred in connection with *In re SandRidge Energy. Inc. Securities Litigation*. No. CIV-12-1341-W, together with the Corporate Governance Measures . . . represent an excellent result for SandRidge and its shareholders.").  The Court further approved an award of $13 million in attorneys' fees for the plaintiffs in the derivative litigation, leaving $25 million in the Escrow Fund available to settle the instant securities litigation. *In Re SandRidge Energy, Inc., Shareholder Derivative Litigation*, No. CIV-13-102-W, Dkt. 351 (W.D. Okla. Dec. 22, 2015); *see also* Motion to Lift Stay at 15 n. 10 (describing purpose of escrow fund and noting that "approximately $25 million remains in the Escrow Account").

This settlement fund is expressly protected from bankruptcy.  *See* Stipulation of Settlement § 2.7 ("The occurrence of an Insolvency Event with respect to any Party or Contributing Insurer shall not operate to stay, terminate, cancel, suspend, excuse, delay, impede or otherwise interfere with or impair the rights of the other Parties under the Escrow Agreement, or the performance by Escrow Agent of its duties under the Escrow Agreement.").

---

[3]  The Plaintiffs in the *Lanier* action have yet to file a consolidated complaint.  *See*  Dkt. 76, *Duane & Virginia Lanier Trust v. SandRidge Energy Inc., et al.*, No. CIV-15-0634-M (W.D. Okla, Oct. 27, 2015) (entering briefing schedule setting November 7, 2016 as initial date for filing Amended Complaint).

**D.      SandRidge Bankruptcy**

On May 18, 2016, SandRidge filed a notice of voluntary petition for bankruptcy with the Court, triggering an automatic stay of claims pending against SandRidge pursuant to 11 U.S.C. § 362(a)(3) ("Chapter 11").  On September 20, 2016, the Bankruptcy Court entered a confirmation order, Dkt. 223-8, Amended Order Confirming the Amended Joint Chapter 11 Plan of Reorganization of SandRidge Energy Inc. and Its Debtor Affiliates ("Confirmation Order"), *In re SandRidge Energy Inc., et al.*, No. 16-32488 (Bankr. S.D. Tx. Sep. 20 2016) appended as Ex. 8 to Declaration of Evan J. Kaufman in Support of Plaintiffs' Motion to Partially Lift PSLRA Discovery Stay ("Kaufman Decl."), confirming an amended plan of reorganization, Dkt. 223-5, Amended Joint Chapter 11 Plan of Reorganization of SandRidge Energy, Inc. and its Debtor Affiliates ("Amended Plan"), *In re SandRidge Energy Inc., et al.*, No. 16-32488 (Bankr. S.D. Tx. Sep. 20 2016) appended as Ex. 5 to Kaufman Decl.  The Plan of Reorganization, and the Confirmation Order, provides for a release of legal claims against SandRidge  "asserted or assertable," based on "the purchase, sale, or rescission of the purchase or sale of any security," or "any other transaction relating to any security" of SandRidge.[4]  Confirmation Order  ¶ 86; Amended Plan § VIII.F.

---

[4]  The Confirmation Order, and Amended Plan, provide an exception for the instant and related securities litigation.  *See* Confirmation Order ¶ 146. ("The Plan and this Confirmation Order do not, and nothing in the Plan or this Confirmation Order shall be interpreted to, (i) discharge, release, or otherwise impact any (x) claims (as defined under Section 101(5) of the Bankruptcy Code) or other Causes of Action asserted in, or that could have been asserted based upon the facts and circumstances alleged in, the complaints in *Duane & Virginia Lanier Trust v. SandRidge Energy, Inc., et. al*, Case No. CIV-15-00634-M (W.D. Ok.), *In re SandRidge Energy, Inc. Securities Litigation*, Case No. 5:12-cv-01341-W (W.D. Ok.), or *Barton W. Gernandt, Jr., et al., v. SandRidge Energy, Inc., et al.*, Case No. 15-CV-834-D (W.D. Ok.) . . . .").

**ARGUMENT**

I.   **Discovery in securities litigation is stayed pending the resolution of a motion to dismiss.**

The PSLRA provides that "<u>all</u> discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u–4(b)(3)(B). This provision reflects the intent of Congress to minimize the incentive for plaintiffs to use the high cost of discovery in securities actions as leverage to extract a settlement out of defendants, or to launch such actions on nothing more than speculation of wrongdoing, in the hopes of manufacturing a viable claim through discovery. *See Friedman v. Quest Energy Partners LP*, No. CIV-08-936-M, 2009 WL 5065690, at *2 (W.D. Okla. Dec. 15, 2009) (citing *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)); *see also In re Spectranetics Corp. Sec. Litig.*, No. 08-CV-02078, 2009 WL 3346611, at *2 (D. Colo. Oct. 14, 2009) ("The purpose of the discovery stay is to allow the court to determine the legal sufficiency of a complaint alleging securities fraud before corporate defendants are forced to engage in costly discovery, which in turn may unfairly coerce early settlement.") (citing S. REP. NO. 104–98, at 14 (1995)); *In re Thornburg Mortg., Inc. Sec. Litig.*, No. 07-CV-0815, 2010 WL 2977620, at *6 (D.N.M. July 1, 2010) ("Congress also enacted the mandatory stay of discovery to prevent plaintiffs from filing securities fraud lawsuits as a vehicle in order to conduct discovery in the hopes of finding a sustainable claims not alleged in the complaint.") (quoting *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004)).

The PSLRA carves out two exceptions to the discovery stay rule: if the court finds that "particularized discovery is necessary [1] to preserve evidence or [2] to prevent undue prejudice to that party." 15 U.S.C.A. § 78u-4(b)(3)(B). These exceptions are construed narrowly, and the burden is on the moving party to establish that such circumstances exist and justify lifting the

-7-

stay.  *See Spectranetics*, 2009 WL 3346611, at *4 ("[A] securities plaintiff must show the existence of 'exceptional circumstances' before lifting the discovery stay . . . .); *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1263 (N.D. Okla. 2001) ("[D]iscovery in this case must be stayed unless Plaintiffs can demonstrate that they fall within one of the exceptions . . . .").

**A.    The Exception for Prevention of Undue Prejudice is Narrowly Construed.**

The PSLRA exception for the prevention of "undue" prejudice acknowledges that some prejudice is the inevitable result of the imposition of a discovery stay in securities class actions. *See Sunrise Senior Living*, 584 F. Supp. 2d at 18 ("[A]ny stay of discovery inflicts a certain degree of prejudice.").  Accordingly, the concept of undue prejudice is understood to mean not just delay — which is "an inherent part of the process in a PSLRA case"[5] — but some additional prejudice that is "improper or unfair under the circumstances,"[6] *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d at 1265.

For example, in *In re WorldCom, Inc. Securities Litigation*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), following multiple civil and criminal investigations into the circumstances leading to the collapse of the second largest telecommunications company in the world, approximately 40 class action cases filed against WorldCom were centralized by the Judicial

---

[5] *Herrley v. Frozen Food Exp. Indus., Inc.*, No. 3:13-CV-3004, 2013 WL 4417699, at *3 (N.D. Tex. Aug. 19, 2013) (noting that "the prejudice of having to postpone discovery until after the resolution of the pending motions to dismiss is not 'undue,' but "[r]ather, such delay is an inherent part of the process in a PSLRA case").

[6]  As an example of "exceptional circumstances" that could justify lifting the stay, the House report on the discovery stay provision of the PSLRA suggested that "the *terminal illness* of an important witness might require the deposition of the witness prior to the ruling on the motion to dismiss."  H.R. REP. NO. 104-369, at 37 (1995) (emphasis added); *see Winer Family Trust v. Queen*, No. CIV.A. 03-4318, 2004 WL 350181, at *5 (E.D. Pa. Feb. 6, 2004) (lifting PSLRA solely to permit limited discovery of key witness who had been diagnosed with Stage IV brain cancer).

Panel on Multidistrict Litigation. *Id*. at 302-04.  One of these, a claim under the Employment

Retirement Income Security Act of 1974 ("ERISA") had already survived a motion to dismiss,

and the judge overseeing the multidistrict litigation ordered the plaintiffs in both the ERISA and

securities actions to "coordinate discovery," and to prepare for joint settlement discussions.  *Id*.

at 304-05.  After the securities plaintiffs moved to lift the discovery stay, the court found,

"[b]ased upon the unique circumstances of this case" — including, in particular, the prospect of

joint settlement talks with the ERISA plaintiffs, who had successfully obtained discovery that

they could use to leverage a more favorable settlement outcome relative to the securities

plaintiffs — that it would be prejudicial not to lift the stay.  *Id* at 305-06.

 In contrast, courts routinely reject the following circumstances as reflective of the

"ordinary" burden that the PSLRA discovery stay imposes on private securities plaintiffs:

- **ongoing governmental investigations**, *see Sunrise Senior Living*, 584 F. Supp. 2d at 18 ( "an SEC investigation occurring contemporaneously with private litigation is not at all an uncommon occurrence" but does not meet the PSLRA standard for undue prejudice) *Spectranetics*, 2009 WL 3346611, at *5 ("a securities plaintiff must show the existence of 'exceptional circumstances' before lifting the discovery stay—and other courts have found that ongoing government investigations are not exceptional") (collecting cases);

- **the formulation of effective litigation or settlement strategies**, *see Thornburg*, 2010 WL 2977620, at *7 (rejecting argument that discovery would "allow the Lead Plaintiffs to evaluate the Defendants' culpability with regard to the action, and decide whether the Lead Plaintiffs want to just settle out for policy limits at this time") (internal alteration omitted);

- **the fact that parties who are not jointly named in the pending litigation may have access to some documents that the plaintiffs do not**, *see Friedman*, 2009 WL 5065690, at *3 (rejecting plaintiffs' argument that "without the requested discovery they may suffer undue prejudice by being placed at a strategic disadvantage in comparison to other parties and that absent relief from the stay, lead plaintiffs will be the only player without the ability to develop its litigation strategy in a shifting legal landscape").

The limitation of "undue prejudice" to extraordinary situations preserves Congressional intent to require a plaintiff "to wait until its complaint has been legally tested before it can conduct discovery." *Spectranetics*, 2009 WL 3346611, at *1.

**B.    The exception for the need to preserve evidence must be imminent and not merely speculative.**

To establish the second exception justifying the lift of the PSLRA discovery stay — that particularized discovery is necessary to preserve evidence — a party may show that "the loss of evidence is imminent as opposed to merely speculative." *CFS-Related Securities Fraud Litigation*, 179 F. Supp. 2d at 1265. Where the discovery sought is from parties to the litigation and preservation orders are in place, courts routinely hold that discovery prior to a dispositive order is unnecessary to preserve evidence. *See, e.g.*, *Thornburg*, 2010 WL 2977620, at *7 (declining to lift stay even where individual defendants had previously absconded with evidence, finding that preservation measures taken by the corporation defendant and counsel were sufficient to override concerns about spoliation); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (finding the risk of loss of documents "minimal" where defendants represented that they retained copies of all the relevant documents, and that those would be preserved).

**II.    Plaintiffs have not met the requirements to justify lifting the PSLRA discovery stay.**

**A.    Plaintiffs have not shown undue prejudice.**

In their third attempt to persuade the Court to lift the stay of discovery, Plaintiffs advance two variations on their previous arguments that they will suffer undue prejudice: First, they claim that documents that have been produced to third parties — namely, the SEC and the Ad Hoc Committee representing SandRidge shareholders in the Company's Chapter 11 bankruptcy proceeding — will help Plaintiffs "make informed decisions regarding their claims, litigation

strategy, and potential settlement," and "enable Plaintiffs to better understand the strength of their claims." Dkt. 222 at 14.  Second, Plaintiffs assert that "time is of the essence" because the Company's director and officer liability policies "have been significantly depleted since Plaintiffs first filed their claims," and "and are likely to continue to be greatly reduced going forward."  *Id.*  Neither argument amounts to the types of extraordinary circumstances required to justify a lifting of the PSLRA discovery stay.

> 1.    A $25 million escrow fund dedicated solely to expenses for securities litigation guarantees that Plaintiffs' are not in competition with others for depleting settlement funds.

Plaintiffs' arguments about the purported depleting of funds necessary to resolve this matter are wholly without merit in light of the existence of a protected escrow fund of $25 million that is earmarked for expenses related to this action, including settlement payouts. Plaintiffs bury their acknowledgment of this escrow fund in a footnote, *see* Motion to Lift Stay, 15 n. 10, and disingenuously suggest that the funds potentially available to settle this securities action are rapidly depleting and are at risk of being awarded to other entities.  As the Stipulation of Settlement, and this Court's Final Order and Judgment approving that stipulation make clear, the funds available in this escrow account may not be used to pay out litigation or other expenses associated with any matter other than the instant action, No. 12-CV-1341-W, the related *Lanier* action brought by unitholders, or any other (yet-to-be-filed) securities litigation based on substantially similar allegations.  In light of the escrow fund, there is no meaningful risk that settlement funds will be depleted while the stay is in place, in contrast to the cases on which Plaintiffs rely.

The unique conditions present in *WorldCom* that justified lifting the discovery stay are simply not present here.  In that case, the third parties in question were fellow plaintiffs in a centralized multidistrict litigation, with whom the securities plaintiffs had been ordered by the

court to confer and develop a settlement strategy; accordingly, the court concluded that the securities plaintiffs would be "severely disadvantaged" if they were the only entity in the criminal and centralized civil proceedings without access to the documents in question during the *joint* settlement discussions. *WorldCom*, 234 F. Supp. 2d at 305-06. In contrast, Plaintiffs here are not required to engage in joint settlement discussions with plaintiffs from other actions. And they enjoy a unique advantage of having a $25 million escrow fund set aside for the now-exclusive purpose of paying out any litigation expenses associated with this action or the related unitholders action. Nor do they face any pressure from this Court or otherwise to settle or face the possible loss of their claims, as they are not engaged in *any* settlement negotiations, let alone court-ordered joint negotiations.

Similarly, in contrast to *In re Williams Securities Litigation*, No. 02-CV-72H (M), 2003 WL 22013464, at *1 (N.D. Okla. May 22, 2003), where the Court agreed that "time may run out for meaningful settlement negotiations before the motion to dismiss is ruled upon," there is no time pressure here because the Escrow Fund will remain available. And even if it the escrow did not exist, Plaintiffs wholesale speculation that the SEC or the Ad Hoc Committee representing shareholders in the SandRidge bankruptcy will pose a competitive threat to Plaintiffs' ability to receive a full settlement payout is insufficient to establish undue prejudice. In contrast to *WorldCom*, where "one of the causes of action in [a parallel] lawsuit has already survived a motion to dismiss," 234 F. Supp. 2d at 304, there are no parallel lawsuits filed by the Ad Hoc Committee or the SEC that pose such a threat. In support of this so-called threat, Plaintiffs point only to statements on a blog maintained by the Ad Hoc equity committee asserting that SandRidge "committed conspiracy and fraud." There is no basis for Plaintiffs' speculation that this blog post will materialize into an actual claim — let alone one that survives the releases

granted to SandRidge in the bankruptcy and is filed quickly enough to somehow pose a competitive threat to this 4-year old lawsuit.  Moreover, the request by the Ad Hoc committee for information regarding SandRidge's current asset valuation, including the value of oil and gas reserves in the Mississippian, are not likely to help establish whether SandRidge misrepresented the net value of these reserves in 2011 and 2012.

Finally, even if Plaintiffs could point to another party in active settlement negotiations with SandRidge — and they have not — this would not be enough to justify lifting the PSLRA discovery stay.  Indeed, Plaintiffs' argument that "time is of the essence" because available insurance funds are dwindling has been squarely rejected because it would render the discovery stay hollow: "If the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the 'undue prejudice' provision would essentially eviscerate the stay requirement."  *See In re Refco, Inc.*, No. 05-CV-8626, 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006).

<ol start="2">
<li>Improving Plaintiffs' litigation position is not a basis for lifting the stay.</li>
</ol>

Plaintiffs also argue that obtaining discovery prior to the resolution of a motion to dismiss will enable plaintiffs them to "better understand the strength of their claims," but this is precisely the outcome that Congress intended to prevent.  The PSLRA is designed to disincentivize plaintiffs from filing a securities class action complaint as a springboard to obtain discovery of a defendants' internal documents and then using that discovery to negotiate a settlement, without a court first passing on the legal merit of their complaint.  *See Spectranetics*, 2009 WL 3346611, at *2 ("The purpose of the discovery stay is to allow the court to determine the legal sufficiency of a complaint alleging securities fraud before corporate defendants are forced to engage in costly discovery, which in turn may unfairly coerce early settlement."); *Friedman*, 2009 WL 5065690, at *3 (rejecting plaintiffs' argument that PSLRA placed them "at a strategic disadvantage in

comparison to other parties," and that without discovery "plaintiffs will be the only player without the ability to develop its litigation strategy in a shifting legal landscape").

> ### 3. The SEC investigation does not create undue prejudice.

Courts repeatedly have held that the parallel investigation by and production of documents to governmental authorities like the SEC is commonplace with companies defending against securities fraud actions, and that this is an insufficient basis to override the prevailing stay of discovery. *See, e.g.*, *Sunrise Senior Living*, 584 F. Supp. 2d at 18 (noting that "an SEC investigation occurring contemporaneously with private litigation is not at all an uncommon occurrence" and drawing the "logical conclusion that Congress intended that the prejudice occasioned by the stay must exceed that resulting from routine SEC securities litigation"); *380544 Canada, Inc. v. Aspen Technology, Inc.*, No. 07-CV-1204, 2007 WL 2049738, at * 2 (S.D.N.Y. July 18, 2007) ("Counter to Plaintiffs' contention, even where the goals of the PSLRA are not frustrated and a plaintiff's discovery request is limited to documents already produced to government regulators, courts have refused to lift the discovery stay if the narrow statutory exceptions of evidence preservation or undue prejudice have not been met.") (collecting cases).

In sum, Plaintiffs have demonstrated only that they face the same inconvenience and inability to refine their litigation strategy through access to Defendants' internal documents as any private securities action plaintiff. This is exactly what is mandated by the PSLRA's discovery stay — and is not the "undue" prejudice that the exception is designed to avoid.

> ## B. Lifting the Stay is Not Necessary to Preserve Evidence.

Plaintiffs suggest that Defendants' production of documents to unrelated third parties is somehow linked to the possibility that these materials will not be preserved. Dkt. 222 at 16. Plaintiffs' purported concern that the materials "will be significantly more difficult to re-compile and produce" in the event that a data room established in the bankruptcy proceeding is de-

activated — and the related argument that they might not receive the materials "in the same order or format" as the Ad Hoc Committee — does not meet demonstrate the "imminent" loss of evidence that is necessary to lift the discovery stay.

In *CFS-Related Securities Fraud Litigation*, a motion to dismiss had been pending with the court for more than a year.  The court nevertheless rejected Plaintiffs' argument that "during any delay, evidence will invariably be lost, advertently or inadvertently" as a justification for lifting the PSLRA discovery stay.  The court explained that such speculation was insufficient to meet the plaintiffs' burden to "demonstrate[] a specific instance in which the loss of evidence is imminent."  179 F. Supp. 2d at 1265; *see also Sarantakis v. Gruttaduaria*, No. 02-CV-1609, 2002 WL 1803750, at *2 (N.D. Ill. Aug. 5, 2002) ("A party alleging that discovery is 'necessary to preserve evidence' must present more than mere 'generalizations of fading memories and allegations of possible loss or destruction.'") (quoting *In re Fluor Corp. Sec. Litig.*, No. SA CV 97–734, 1999 WL 817206, at *3 (C.D.Cal. Jan.15, 1999)).

Here Plaintiffs speculate that documents presently compiled in the data room will be "significantly more difficult to re-compile and produce," and assert a purported right to obtain those materials "in the same order and format" as the Ad Hoc Committee in the bankruptcy proceeding.  Without more, such inconveniences are not a valid ground for lifting the stay.  *See In re Williams Sec. Litig.*, 2003 WL 22013464, at *1 (finding the preservation of evidence rationale inapplicable where "Defendant has maintained copies of the information it has produced," and "multiple copies of the information sought are in the possession of the governmental bodies and the various law firms involved in those matters").

C.      **Plaintiffs' Arguments Regarding Burden and Legislative Intent do Not Warrant Lifting the Stay Mandated by Statute**.

Under the PSLRA, Plaintiffs bear the burden of showing that the discovery they seek is "necessary to preserve evidence or to prevent undue prejudice" to Plaintiffs.  15 U.S.C. § 78u–4(b)(3)(B).  Thus, proving that the discovery is not privileged or unduly burdensome, although necessary to compel the discovery that Plaintiffs seek, is not sufficient to overcome the mandatory PSLRA stay.

In any event, even reproducing the limited subset of the documents produced in the Derivative Action would not be burden free.   As one court has observed, "[s]ound litigation strategy and human nature both suggest that, if the Court allows discovery for the Lead Plaintiffs because of documents turned over to third-parties, the Defendants will look at the documents, too, thus reducing considerably the benefits of the stay to the Defendants that Congress intended them to have." *Thornburg*, 2010 WL 2977620, at *8 (D.N.M. July 1, 2010) (denying motion to lift PSLRA stay).  In other words, if the materials are produced, the Defendants will be forced to review them and analyze their applicability to the securities litigation—a burden that would be inappropriate before the Court has ruled on the legal sufficiency of the Plaintiffs' complaint.

Likewise, Plaintiffs' argument that partially lifting the stay does not undermine the purpose of the PSLRA depends wholly on its conclusory assertion that they allege a "compelling case for securities fraud."  In light of this Court's dismissal of the First Amended Complaint, and the minor changes made by Plaintiffs in the SAC, the merit of the complaint can hardly be called "compelling."  Moreover, evaluating the merits of the underlying complaint is beyond the scope of the instant motion.  *Spectranetics*, 2009 WL 3346611, at *9 ("[A] court cannot decide a motion to dismiss on the basis of a motion to modify a discovery stay.").  Even if Plaintiffs' requests comported with the underlying policy objectives of the PSLRA, which is not the case

here, "lifting the discovery stay in reliance only upon a showing of minimal burden to defendants and/or based upon the general policies behind the PSLRA circumvents the clear requirements of the discovery stay and its limited exceptions." *Friedman*, 2009 WL 5065690, at *4.

## CONCLUSION

Plaintiffs have failed to establish the compelling circumstances required to justify overriding a statutory mandate of staying discovery in private securities fraud actions until the opening pleading can be tested; accordingly, the Court should deny the motion to partially lift the PSLRA discovery stay.

Dated: November 7, 2016

Of Counsel:

COVINGTON & BURLING LLP

C. William Phillips (admitted *pro hac vice*)
Mark P. Gimbel (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

Respectfully submitted,

CROWE & DUNLEVY

*/s/ Thomas B. Snyder*
Thomas B. Snyder, Esq., OBA #31428
324 N. Robinson, Ste. 100
Oklahoma City, OK 73102
(405) 234-3254

*Attorneys for James D. Bennett and Matthew K. Grubb*

CONNER & WINTERS, LLP
Kiran A. Phansalkar, OBA #11470
Mitchell D. Blackburn, OBA #12217
1700 One Leadership Square
211 North Robinson
Oklahoma City, OK 73102
(405) 272-5711

*Attorneys for SandRidge Energy, Inc.*

George S. Corbyn, Jr. OBA # 1910
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK 73102
(405) 239-7055

LATHAM & WATKINS LLP
Margaret A. Tough (admitted *pro hac vice*)
Steven M. Bauer (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600


J. Christian Word (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Attorneys for Defendant Tom L. Ward*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2016, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing, which will send notification of such filing to all counsel registered through the ECF System.

CROWE & DUNLEVY

*/s/Thomas B. Snyder*
Thomas B. Snyder, Esq., OBA #31428
324 N. Robinson, Ste. 100
Oklahoma City, OK 73102
(405) 234-3254