UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) ) | No. 5:12-cv-01341-LRW <br><br> <u>CLASS ACTION</u> |
| This Document Relates To:<br><br>ALL ACTIONS. | ) ) ) ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
TO PARTIALLY LIFT PSLRA DISCOVERY STAY**

## TABLE OF CONTENTS

                                                                         **Page**

ARGUMENT .................................................................................................................. 2

A.     Partially Lifting the Stay Is Necessary to Prevent Undue Prejudice to Plaintiffs and the Class ................................................................................... 2

        1.     Plaintiffs Seek Relevant Documents .................................................. 2

        2.     Plaintiffs Have Shown Undue Prejudice ............................................ 4

B.     The Stay Should Be Lifted to Preserve Evidence .......................................... 8

C.     Partially Lifting the Stay Will Not Be Burdensome to Defendants .............. 9

D.     Partially Lifting the Stay Does Not Undermine the Legislative Purpose of the PSLRA Stay ........................................................................ 10

## TABLE OF AUTHORITIES

Page

**CASES**

*Alaska Elec. Pension Fund v. Olofson*,
   No. 08-2344-CM, 2009 U.S. Dist. LEXIS 46564
   (D. Kan. June 3, 2009) ............................................................................................. 2

*Friedman v. Quest Energy Partner LP,*
   No. CIV-08-936-M, 2009 U.S. Dist. LEXIS 117050
   (W.D. Okla. Dec. 15, 2009) ..................................................................................... 7

*In re Am. Funds Sec. Litig.*,
   493 F. Supp. 2d 1103 (C.D. Cal. 2007) ................................................................... 7

*In re CFS-Related Sec. Fraud Litig.(AUSA v. Bartmann)*,
   179 F. Supp. 2d 1260 (N.D. Okla. 2001) ................................................................ 8

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   235 F. Supp. 2d 549 (S.D. Tex. 2002) ..................................................................... 3

*In re FirstEnergy Corp. Sec. Litig.*,
   229 F.R.D. 541 (N.D. Ohio 2004) ........................................................................... 8

*In re LaBranche Sec. Litig.*,
   333 F. Supp. 2d 178 (S.D.N.Y. 2004) .............................................................. 5, 6, 9

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   387 F. Supp. 2d 1130 (D. Colo. 2005) ................................................................ 2, 3

*In re Spectranetics Corp. Sec. Litig.*,
   No. 08-cv-02048-REB-KLM, 2009 U.S. Dist. LEXIS 100748
   (D. Colo. Oct. 14, 2009) ...................................................................................... 6, 7

*In re Sunrise Senior Living Derivative Litig.*,
   584 F. Supp. 2d 14 (D.D.C. 2008) .......................................................................... 6

*In re Thornburg Mortg., Inc.*,
   No. CIV 07-0815 JB/WDS, 2010 U.S. Dist. LEXIS 71295
   (D.N.M. July 1, 2010) ......................................................................................... 7, 8

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 129 (S.D.N.Y. 2003) ..................................................................... 8

# TABLE OF AUTHORITIES

**Page**

*In re Williams*,
   No. 02-CV-72H (M), 2003 U.S. Dist. LEXIS 24304
   (N.D. Okla. May 22, 2003) .................................................................................. 8

*In re WorldCom Sec. Master File Litig.*,
   234 F. Supp. 2d 301 (S.D.N.Y. 2002) ..................................................................... 6, 7

*Pippenger v. McQuik's Oilube, Inc.*,
   854 F. Supp. 1411 (S.D. Ind. 1994) ............................................................................ 3

*Singer v. Nicor, Inc.*,
   No. 02 C 5168, 2003 U.S. Dist. LEXIS 26189
   (N.D. Ill. Apr. 24, 2003) ............................................................................................. 8

*Waldman v. Wachovia Corp.*,
   No. 08 Civ. 2913(SAS), 2009 U.S. Dist. LEXIS 1988
   (S.D.N.Y. Jan. 12, 2009) ............................................................................................. 9

**STATUTES, RULES AND REGULATIONS**

Private Securities Litigation Reform Act ...................................................................... *passim*

Plaintiffs seek a finite set of documents that have already been compiled, reviewed, and produced by the Company and/or the Defendants to the SEC and the Ad Hoc Committee. Even though the PSLRA imposes an automatic stay on discovery pending the ruling on a motion to dismiss, the Court may lift the stay to prevent undue prejudice and to preserve evidence. Here, both such exceptions exist and Defendants have failed to offer any justification for the Court not to modify the stay as requested in the Motion.[1]

The PSLRA discovery stay is designed to prevent fishing expeditions and forcing settlements of frivolous securities claims; Defendants do not (nor can they) show that Plaintiffs are engaging in either. Rather, Defendants argue the documents Plaintiffs seek are not relevant and attempt to minimize the prejudice Plaintiffs will suffer if the documents are not produced. The requested documents relate to the alleged misrepresentations regarding SandRidge's oil and gas reserves and are relevant to Plaintiffs' claims. SandRidge has filed for and exited from bankruptcy, D&O insurance is being depleted, and the sources of funds to compensate Class members are limited. Plaintiffs need the documents to remain on a level playing field with the parties who have already received them, and to evaluate their litigation and settlement strategy. Accordingly, Plaintiffs respectfully request that the Court partially lift the stay to allow the limited production of the requested documents requested in the Motion.

---

[1] Capitalized terms used herein are as defined in Plaintiffs' Motion to Partially Lift PSLRA Discovery Stay and Brief in Support ("Motion") [Dkt. No. 222], unless otherwise indicated herein.

## ARGUMENT

### A. Partially Lifting the Stay Is Necessary to Prevent Undue Prejudice to Plaintiffs and the Class

Defendants have failed to refute that Plaintiffs will suffer undue prejudice unless the stay is lifted. As set forth in Plaintiffs' opening brief, the requested documents have already been produced to other litigants adverse to SandRidge and the Defendants, funds potentially available to compensate Class members are rapidly depleting, and Plaintiffs need the documents already available to other constituencies to better understand their claims and make informed litigation decisions, including decisions about settlement. Pls. Mem. at 10-12.[2]

#### 1. Plaintiffs Seek Relevant Documents

Defendants argue the requested documents are not relevant to Plaintiffs' claims because they relate to misrepresentations about SandRidge's *current* oil and gas reserves not its reserves during the Class Period (2/24/11 to 11/8/12, inclusive). Defs. Mem. at 13. First, even though the time periods might differ slightly, the land areas in the Mississippian that contain SandRidge's oil and gas reserves are the same, regardless of the amount of production that has occurred in those areas.

Second, documents demonstrating misrepresentations of current reserves will show a pattern and practice by Defendants of misrepresenting reserves, evidencing scienter. *See, e.g., Alaska Elec. Pension Fund v. Olofson*, No. 08-2344-CM, 2009 U.S. Dist. LEXIS 46564,

---

[2] Pls. Mem. at ___ refers to the Motion. Defs. Mem. at ___ refers to Defendants' Opposition to the Motion (Dkt. No. 228). The Kaufman Decl. at ___ refers to the Declaration of Evan J. Kaufman submitted with the Motion (Dkt. No. 223). Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

at *8 (D. Kan. June 3, 2009); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1138-39, 1147 (D. Colo. 2005) (pattern of "accounting manipulations and misrepresentations" supported inference of scienter with respect to other accounting manipulations); *Pippenger v. McQuik's Oilube, Inc.*, 854 F. Supp. 1411, 1419 (S.D. Ind. 1994) (stating that scienter may be "established by a pattern of intentional deception"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 689 (S.D. Tex. 2002) (stating that unspecified misconduct, though time-barred, was admissible as "evidence of a scheme and scienter").

Documents produced to the Ad Hoc Committee relate to its allegations that SandRidge and its senior officers and directors had "committed conspiracy and fraud" by, *inter alia*, filing for bankruptcy protection when the Company was not insolvent and materially understating the value of SandRidge's oil and gas reserves.[3] Here, Plaintiffs allege that Defendants misrepresented SandRidge's reserves in the Mississippian and overstated the economic value of its oil producing assets. ¶¶130-148.[4] Thus, Defendants' pattern and practice of misrepresenting SandRidge's oil and gas reserves to serve their own interests is directly relevant to Plaintiffs' claims.

Similarly, the documents produced to the SEC are also relevant to Plaintiffs' claims. Defendants attempt to make it appear that the documents produced to the SEC are not relevant by arguing that those documents "pertain[]to, *inter alia*, SandRidge's employment

---

[3]  *See* https://www.sandridgesec.com/news/m.blog/39/july-1-2016-sandridge-stockholders-equity-committee-news.

[4]  "¶__" refers to paragraphs of the Third Consolidated Amended Complaint for Violations of Federal Securities Laws [Dkt. No. 225] (the "TAC").

agreements." Defs. Mem. at 1. Even though the SEC sought documents related to employment agreements, it also separately issued *two* subpoenas relating to the "levels of oil and gas reserves disclosed by the Company in its public filings," which directly relate to Plaintiffs' claims. Furthermore, documents related to the employment agreements are also probative because they appear to relate to SandRidge's violation of SEC rules by requiring employees to sign agreements prohibiting them from disclosing violations of the securities laws to the SEC, such as those based on Plaintiffs' claims in this action. SandRidge Form 10-Q dated August 15, 2016, Kaufman Decl. Ex. 1 at 33. Finally, contrary to Defendants' portrayal of the Motion as Plaintiffs' third motion to modify the stay, this is the first time Plaintiffs are seeking the requested documents.[5]

### 2.   **Plaintiffs Have Shown Undue Prejudice**

As set forth in Plaintiffs' opening brief, SandRidge's bankruptcy, which limits the potential funding of a settlement by SandRidge to available insurance, and the depletion of its insurance policies, warrant a lifting of the stay. Unless the documents are produced, Plaintiffs will be unduly prejudiced because they will not have access to the same information as, and thereby not be on a level playing field with, the Ad Hoc Committee and the SEC. The stay should be lifted so Plaintiffs can evaluate their litigation strategy in the same context as these other competing litigants.

---

[5]  Defendants complain that this is Plaintiffs' third motion to compel in order to make it appear as if Plaintiffs already sought relief with respect to the same or similar documents. Defs. Mem. at 1. This is the first time Plaintiffs seek the documents produced to the SEC and the Ad Hoc Committee. The documents sought herein are distinct from those previously sought by Plaintiffs, which consisted of documents cited by Defendant Ward in his first motion to dismiss [Dkt. No. 134] and the Mayer Brown report, which was provided to the SandRidge Derivative plaintiffs.

Indeed, on November 8, 2016, SandRidge disclosed that "the Company is in discussions with the SEC in an effort to resolve the Company's liability . . . ." SandRidge Form 10-Q dated November 8, 2016, appended as Ex. 1 to the Declaration of Evan J. Kaufman in Support of Plaintiffs' Reply Brief in Support of Motion to Partially Lift PSLRA Discovery Stay at 30.

Defendants argue that the existence of "a protected escrow fund of $25 million" should somehow alleviate Plaintiffs' concerns regarding limited settlement funds. Defs. Mem. at 11. Even though money has been set aside for a settlement with Plaintiffs, Defendants should not be permitted to set an artificial cap on the value of Plaintiffs' claims. Moreover, the $25 million escrow fund – and presumably any remaining insurance coverage – will be reduced by the costs of this action, the related *Lanier* action, and possibly any subsequently filed related action. Defs. Mem. at 4-5.

In similar circumstances, prejudice was found where plaintiffs were not provided with access to documents provided to the SEC. In *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178 (S.D.N.Y. 2004), the SEC and the New York Stock Exchange ("NYSE") conducted extensive investigations into the same alleged wrongdoing that also formed the basis of a securities class action. *Id.* at 180. As a result of those investigations, the defendant agreed to pay more than $63.5 million to settle the SEC's and NYSE's claims. *Id.* at 181. The court recognized that, as a result of the PSLRA discovery stay, the lead plaintiffs in the securities class action "will be the only interested party without access to those documents and will be prejudiced by their inability to make informed decisions about their litigation strategy in a rapidly shifting landscape." *Id.* at 183. The Court found that there was no burden on the

defendants and lifted the discovery stay to allow production of documents previously produced to the government regulators:

> The Lead Plaintiffs must now determine their litigation strategy, principally whether or not to seek an early settlement to benefit the class without further expense. The requested discovery is essential to determine that strategy and to assist in formulating an appropriate settlement demand. The Lead Plaintiffs will suffer undue prejudice in having to defer such decisions.

*Id*. at 184. The same reasoning should apply here, as it is clear that Plaintiffs and Class members will suffer the same undue prejudice as the lead plaintiffs in *LaBranche* if the PSLRA discovery stay remains in place with respect to the documents previously produced to the SEC and the Ad Hoc Committee.

Defendants attempt to recast Plaintiffs' undue prejudice as merely "ordinary." Defs. Mem. at 9. Defendants, however, conspicuously ignore the exigency caused by the Company's chapter 11 bankruptcy proceeding.[6] Courts routinely lift the PSLRA discovery stay when a corporate defendant undergoes bankruptcy proceedings and, particularly where, as here, related investigations and proceedings contribute to the rapidly shifting landscape.

Defendants cite *Sunrise Senior Living* for the proposition that "ongoing governmental investigations" are insufficient grounds for granting the Motion. Defs. Mem. at 9. *Sunrise Senior Living*, however, supports Plaintiffs' position that "[c]ourts have found undue prejudice warranting the lifting of a discovery stay when the defendant . . . [is] the subject of bankruptcy proceedings and the target of several government investigations and other civil actions." *In re Sunrise Senior Living Derivative Litig*., 584 F. Supp. 2d 14, 18 (D.D.C. 2008)

---

[6] The order confirming the Company's chapter 11 plan is on appeal by the Ad Hoc Committee.

- 6 -

(citing *In re WorldCom Sec. Master File Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)) (emphasis added).  Defendants' reliance on *Spectranetics* fails for the same reason.  The *Spectranetics* court stated, "[a]bsent 'unique circumstances' such as settlement negotiations or a ***defendant's pending bankruptcy***, the simple fact that the government is investigating a corporation does not unduly prejudice a private securities plaintiff."  *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM, 2009 U.S. Dist. LEXIS 100748, at *12 (D. Colo. Oct. 14, 2009) (citing *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007)) (emphasis added).

*Friedman,* relied upon by Defendants, is distinguishable because it involved mere allegations by plaintiffs that "a bankruptcy filing is possible." *Friedman v. Quest Energy Partner LP,* No. CIV-08-936-M, 2009 U.S. Dist. LEXIS 117050, at *11 (W.D. Okla. Dec. 15, 2009).  Moreover, the *Thornburg* action is inapposite because the court found that plaintiffs' counsel were engaged in a fishing expedition and was concerned that plaintiffs were "delaying the progress of litigation" in the hopes of receiving discovery while "drafting their motion for leave to amend the Complaint."  *In re Thornburg Mortg., Inc.*, No. CIV 07-0815 JB/WDS, 2010 U.S. Dist. LEXIS 71295, at *36-*37 (D.N.M. July 1, 2010).  Plaintiffs are engaging in no such gamesmanship here.  The motion to dismiss the TAC is already *sub judice*, and Plaintiffs are seeking discovery for proper purposes.

Defendants attempt to distinguish *Worldcom* by arguing that the facts here are not identical to those in *Worldcom*, where the court lifted the stay after ordering joint settlement discussions between different groups of litigants with access to different sets of documents.  Defs. Mem. at 8-9.  The court in *Worldcom*, however, never suggested that joint settlement

discussions were required in order to lift the stay. In fact, courts in this district and elsewhere, citing to *Worldcom*, have lifted the stay even though the parties were not in joint settlement discussions.[7] Here, even though Plaintiffs are not in joint settlement discussions with the SEC or Ad Hoc Committee, the Company is in settlement discussions with the SEC and Defendants have not ruled out discussions with the Ad Hoc Committee.

### B.   The Stay Should Be Lifted to Preserve Evidence

The stay should also be lifted to preserve evidence. Defendants have failed to refute that there is a significant risk the documents provided to the Ad Hoc Committee could be lost or destroyed. Defendants characterize any loss of documents in the electronic "data room" as a mere "inconvenience[.]" Defs Mem. at 15. Defendants cite to inapposite cases such as *CFS-Related Securities Fraud Litigation*,[8] where two evidence preservation orders had been entered by the court, *Thornburg*,[9] where "Defendants and the newly appointed bankruptcy trustee . . . provided adequate assurances that there will be no spoliation of evidence,"

---

[7]   *See*, *e.g.*, *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (partially lifting discovery stay to allow plaintiffs to obtain materials defendant had already produced to government investigators and a federal grand jury because without such materials, the plaintiffs "would be unfairly disadvantaged in pursuing litigation and settlement strategies"); *In re Williams*, No. 02-CV-72H (M), 2003 U.S. Dist. LEXIS 24304, at *13-*18 (N.D. Okla. May 22, 2003) (permitting modification of discovery stay to prevent undue prejudice to plaintiffs); *Singer v. Nicor, Inc.*, No. 02 C 5168, 2003 U.S. Dist. LEXIS 26189, at*5 (N.D. Ill. Apr. 24, 2003) (lifting stay where plaintiffs "may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies" had obtained in state and SEC investigations and proceedings).

[8]   *In re CFS-Related Sec. Fraud Litig.(AUSA v. Bartmann)*, 179 F. Supp. 2d 1260, 1264 (N.D. Okla. 2001).

[9]   *Thornburg*, 2010 U.S. Dist. LEXIS 71295, at *4.

*Vivendi*,[10] where defendants represented that relevant documents would be preserved, and *Williams*,[11] where defendants maintained copies of the information they had produced. Even though the Confirmation Order in the SandRidge Bankruptcy Proceeding might require that Defendants preserve evidence pursuant to standard document retention policies and applicable law,[12] Defendants have provided no assurances that the electronic "data room" of documents produced to the Ad Hoc Committee will be preserved in its current form (*i.e.*, with all of the documents compiled, reviewed, and ready to produce). There is thus a real risk that the data room will be dismantled without Plaintiffs' knowledge and relevant documents will be lost absent modification of the stay.

### C. Partially Lifting the Stay Will Not Be Burdensome to Defendants

Defendants do not dispute that Plaintiffs' requests are particularized. Defendants do, however, disingenuously argue they will be burdened by being "forced to review [] and analyze" the requested documents, which purportedly constitutes "a burden that would be inappropriate" at this juncture. Defs. Mem. at 16. To be clear, Plaintiffs are seeking the exact productions of documents that have already been made by Defendants. It is well-established that partially lifting the PSLRA discovery stay with respect to documents that a defendant has "already found, reviewed and organized" imposes no real burden. *See In re*

---

[10] *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003).

[11] *Williams*, 2003 U.S. Dist. LEXIS 24304, at *13.

[12] The Confirmation Order requires defendants to (i) maintain books, records, documents, files, and electronically stored information ("Books and Records") in accordance with their standard document retention policies, and (ii) preserve Books and Records potentially relevant to the prosecution of all pending litigation matters to the extent required by applicable laws or regulations. Kaufman Decl. Ex. 8 at ¶148.

*LaBranche Sec. Litig.*, 333 F. Supp. 2d at 183 (citations omitted); *see also Waldman v. Wachovia Corp.*, No. 08 Civ. 2913(SAS), 2009 U.S. Dist. LEXIS 1988, at *4-*5 (S.D.N.Y. Jan. 12, 2009) (same).

Here, Plaintiffs are seeking only those documents that have already been compiled, reviewed, and produced to the SEC and the Ad Hoc Committee. Plaintiffs have not requested that Defendants comb through the documents for any subset thereof. Moreover, the documents have already been reviewed for privilege, so there is no need for Defendants to re-review them. Any burden described by Defendants would be self-imposed and unnecessary. Defs. Mem. at 16.

### D. Partially Lifting the Stay Does Not Undermine the Legislative Purpose of the PSLRA Stay

Defendants concede that the purposes of the PSLRA stay are to: (i) minimize the incentive for plaintiffs to use the high cost of discovery in securities actions as leverage to extract settlements; and (ii) launch such actions on mere speculation, in the hopes of manufacturing a viable claim through discovery. Defs. Mem. at 7 (citing cases). Neither concern exists here. The TAC is extremely detailed and addresses the deficiencies raised by the Court when dismissing the First Amended Complaint. Among other things, the TAC added allegations based on the accounts of three former Company employees and strengthened Plaintiffs' scienter allegations. TAC, ¶¶21-24, 98, 123-129. The TAC alleges a compelling case for securities fraud and (particularly given the SEC's ongoing investigation and filed claim in the Sandridge Bankruptcy Proceeding) this action is far from frivolous. Accordingly, Plaintiffs respectfully request that the Court grant the Motion.

DATED:  November 14, 2016                ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
SAMUEL J. ADAMS (admitted *pro hac vice*)


                */s/ Evan J. Kaufman*
EVAN J. KAUFMAN
NY Bar Number: 2753614

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
sadams@rgrdlaw.com

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK  73105
Telephone:  405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone:  619/342-8000
619/342-7878 (fax)
ambere@zhlaw.com

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 14, 2016.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN