UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) ) | No. 5:12-cv-01341-LRW <br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | ) ) ) ) ) | |

**SUPPLEMENTAL MOTION AND NOTICE OF CEASE AND DESIST ORDER IN SUPPORT OF PLAINTIFFS' MOTION TO PARTIALLY LIFT PSLRA DISCOVERY STAY**

Lead Plaintiffs Laborers Pension Trust Fund for Northern Nevada, Construction Laborers Pension Trust of Greater St. Louis, and Vladimir Galkin and Angelica Galkin (collectively, "Plaintiffs") respectfully submit this supplemental motion and notice of the December 20, 2016 Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order (the "Order")[1] in support of Plaintiffs' motion to partially lift the PSLRA[2] discovery stay (the "Supplemental Motion").

The Order is the result of the SEC's investigation of SandRidge as discussed in Plaintiffs' opening and reply briefs in support of the Motion. *See* Motion at 2-4, Reply at 3-4. The Order describes allegations by a Whistleblower that SandRidge misrepresented its oil and gas reserves and failed to properly investigate and remedy its public disclosures concerning reserves. Ex. 1 at ¶¶18-24. The SEC found that SandRidge violated Section 21F(h) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 21F-17 under the Exchange Act by, among other things, limiting an employee's ability to communicate possible securities law violations with any governmental agency and retaliating against the Whistleblower. *Id.* at ¶27. The settlement between SandRidge and the SEC consists of a $1.4 million civil penalty and a host of remedial actions implemented by the Company. *Id.* at §4A-B.

---

[1] The Order is attached as Exhibit 1 to the Declaration of Evan J. Kaufman, filed concurrently herewith.

[2] Capitalized terms used herein are as defined in Plaintiffs' Motion to Partially Lift PSLRA Discovery Stay and Brief in Support (the "Motion") [Dkt. No. 222], unless otherwise indicated herein.

As described in the Motion, Plaintiffs seek (i) documents provided to the SEC by SandRidge and the Individual Defendants in connection with the SEC's investigation of SandRidge, and (ii) documents provided to the *Ad Hoc* Committee by SandRidge in connection with the SandRidge Bankruptcy Proceeding. *See* Motion at 1-2. As a result of the Order, Plaintiffs by this Supplemental Motion also seek a modification of the discovery stay to serve a subpoena on the SEC for documents concerning the Order.[3]

## DESCRIPTION OF THE ORDER

The SEC's findings of fact underscore the relevance of the SEC's investigation and Whistleblower's allegations to Plaintiffs' claims. The Order states the Whistleblower was hired in the Fall of 2012, near the end of Plaintiffs' Class Period (February 24, 2011 through November 8, 2012, inclusive) and was troubled about the Company's calculation of reserves. Ex. 1 at ¶¶18-24. According to the SEC, the Whistleblower raised concerns with SandRidge senior executives about how SandRidge calculated and publicly reported reserves:

> Beginning within the first months of the Whistleblower's employment, and continuing over the course of the next two and a half years, the Whistleblower raised with senior management at the company certain concerns the Whistleblower had regarding the company's process in calculating oil and gas reserves that are reported by the company in its periodic reports filed with the [SEC].

*Id.* at ¶19. The Whistleblower identified "risks and problems associated with the entire reserves process." *Id.* at ¶20. The allegations by the Whistleblower that SandRidge

---

[3] Plaintiffs have served a Freedom of Information Act ("FOIA") request on the SEC seeking production of substantially the same documents requested herein. Plaintiffs, however, cannot predict how long the SEC will take before producing documents in response to this FOIA request. It is also uncertain whether the SEC will agree to produce the full scope of documents sought by Plaintiffs in the FOIA request. Accordingly, Plaintiffs seek additional relief to serve a subpoena on the SEC requesting the production of documents.

misrepresented its reserves are consistent with Plaintiffs' allegations. *See* Third Amended Complaint [Dkt. No. 225], at ¶¶132-148.

As set forth in the Order, according to the Whistleblower, SandRidge, among other things, (i) failed to perform an adequate investigation in response to the Whistleblower's concerns (Ex. 1 at ¶¶19-22), (ii) conducted an "incomplete internal audit" (*id.* at ¶25), (iii) conditioned a promotion on the Whistleblower's agreement to "support management" (causing the Whistleblower to decline the promotion) (*id.* at ¶21), and (iv) failed to take appropriate action after the Whistleblower in early 2015 "met with a member of senior management to discuss the ethical concerns the Whistleblower had" regarding revisions to a map of oil and gas well locations used by SandRidge in its public disclosures. *Id.* at ¶23. Furthermore, according to the Order, SandRidge (i) searched the Whistleblower's external emails to determine if the Whistleblower had raised concerns to anyone outside of SandRidge (*id.* at ¶24), (ii) retaliated by terminating the Whistleblower, with SandRidge senior management expressing their desire for a replacement who would be less "disruptive" (*id.* at ¶25), and (iii) presented the Whistleblower with a separation agreement which prohibited the Whistleblower from contacting the SEC, in violation of Rule 21F-17 under the Exchange Act. *Id.* at ¶26.

The SEC also determined that, in violation of Rule 21F-17 under the Exchange Act, SandRidge had a widespread practice of using separation agreements with provisions that prohibited former employees from cooperating with governmental agencies. *Id.* at ¶12. In fact, the SEC determined that approximately 546 former SandRidge employees signed separation agreements with provisions that violated Rule 21F-17 from August 2011 through

April 2015.  *Id.*  The SEC found that these separation agreements amounted to more than just hypothetical harm, as "[m]any of the violative separation agreements were in place, and a large number of agreements were executed, at times when SandRidge was subject to investigation by the [SEC]."  *Id.* at ¶13.  Indeed, at least one former SandRidge employee refused to cooperate with the SEC's investigation, even after receiving a remediation letter advising the employee that the violative provisions were no longer in effect.  *Id.* at ¶17.

Moreover, SandRidge was notified on numerous occasions that its separation agreements contained inappropriate language but failed to take appropriate action.  Even though SandRidge generally agreed to modify such improper language in a separation agreement when an employee specifically requested it, the Company nonetheless continued to use the same violative language in its form separation agreements until confronted by the SEC.  *Id.* at ¶9.

Finally, following the SEC's investigation, SandRidge amended several of its corporate codes and policies, including its Code of Business Conduct and Ethics, Anti-Retaliation Policy, Conflicts of Interest Policy, Legal Matters Policy, and Securities Trading Policy.  *Id.* at ¶16.  These policies had previously included general prohibitions of communications with third parties and required employees to notify the Company when they were contacted by the government.  The amendments were intended to make clear to employees that those policies do not restrict employees from reporting to or communicating with the SEC or other government agencies.  *Id.*

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Supplemental Motion and partially lift the stay of discovery for the limited purpose of allowing Plaintiffs to obtain the requested discovery, consisting of: (i) all documents provided to the SEC by SandRidge and the Individual Defendants in connection with the SEC's investigation of SandRidge's violations of the federal securities laws as described in SandRidge's Form 10-Q filed on August 15, 2016; (ii) all documents provided to the *Ad Hoc* Committee by SandRidge in connection with the SandRidge Bankruptcy Proceeding; and (iii) leave to serve the SEC with a subpoena seeking documents concerning its investigation and settlement of claims as described in the Order.[4]

DATED: December 23, 2016

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
SAMUEL J. ADAMS (admitted *pro hac vice*)


*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN
NY Bar Number: 2753614

---

[4] By email dated December 22, 2016 directed to counsel for all defendants, Plaintiffs' counsel requested a telephonic meet and confer regarding Plaintiffs' request for a modification of the discovery stay to serve a subpoena on the SEC regarding the Order. Counsel for defendants Bennett and Grubb indicated that he was not available for a meet and confer until after January 2, 2017 and counsel for the other defendants have not yet responded as of the finalization of this brief. In light of defendants' opposition to the Motion, and their consistent objections during prior meet and confers to a lifting of the discovery stay, we believe it is highly unlikely that defendants would consent to the additional relief Plaintiffs are seeking herein. Plaintiffs deemed it necessary to submit this Supplemental Motion promptly.

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
sadams@rgrdlaw.com

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK  73105
Telephone:  405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone:  619/342-8000
619/342-7878 (fax)
ambere@zhlaw.com

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing.  Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 23, 2016.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN