UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) ) | No. 5:12-cv-01341-LRW <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | ) ) ) ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MOTION
AND NOTICE OF CEASE AND DESIST ORDER IN SUPPORT OF
PLAINTIFFS' MOTION TO PARTIALLY LIFT PSLRA DISCOVERY STAY**

Plaintiffs' pending Motion to Partially Lift PSLRA Discovery Stay (the "Motion"), filed on October 17, 2016, seeks documents produced by the Company to the *Ad Hoc* Committee and the SEC.[1]  The documents SandRidge produced to the SEC were in response to three subpoenas and include documents related to: (i) a Whistleblower's allegations that SandRidge misrepresented its oil and gas reserves; (ii) the circumstances of the Whistleblower's termination; and (iii) SandRidge's employment and separation agreements. Motion at 3-4.  On December 20, 2016, the SEC announced the Company had agreed to a $1.4 million settlement resolving claims it used restrictive separation agreements and fired the Whistleblower for internally reporting allegations analogous to the claims asserted by Plaintiffs in this action.  That settlement relates to only a subset of the SEC documents sought by Plaintiffs and there is still a risk the SEC's investigation will continue depleting any remaining insurance coverage.

The SEC settlement reveals that SandRidge, in violation of Rule 21F-17 under the Exchange Act, used nondisclosure provisions to prevent employees from contacting or cooperating with governmental agencies.  Order at ¶12.  The period of time in which these nondisclosure provisions were in effect, stretching from August 2011 through April 2015, spans the bulk of Plaintiffs' Class Period.  Thus, these improper provisions could have prevented additional SandRidge employees from reporting the Company's misstatements concerning reserves during the Class Period.

---

[1]   Capitalized terms used herein are as defined in the Motion, unless otherwise indicated herein.

After the announcement of the SEC settlement, Plaintiffs filed the Supplemental Motion and Notice of Cease and Desist Order in Support of Plaintiffs' Motion to Partially Lift PSLRA Discovery Stay [Dkt. No. 231] (the "Supplemental Motion") as soon as practicable to apprise the Court of the changed factual landscape and to ensure the Court has an up to date record before ruling on the Motion.[2]  Contrary to Defendants' characterization of the Supplemental Motion as a "fourth attempt" to lift the PSLRA stay, Plaintiffs merely sought to supplement the factual record and "support" the legal arguments already made in the Motion.  Supplemental Motion at 1.

## I.     ARGUMENT

### A.     Plaintiffs Seek Relevant Documents

Defendants suggest the documents sought by Plaintiffs are not relevant to their claims because the Whistleblower "was not hired until the end of the Class Period . . . and thus was not employed at SandRidge during the vast majority of the reserve estimates and representations at issue in Plaintiffs' Complaint." Def. Opp. at 3.  The Whistleblower, however, alleged the Company was already misrepresenting its oil and gas reserves at the start of his employment, so he would have been referring to conduct *during* the Class Period.  As described in the Order:

---

[2]  Defendants contend Plaintiffs failed to fulfill their meet and confer obligations. Defendants' Joint Opposition to Plaintiffs' Supplemental Motion to Partially Lift PSLRA Discovery Stay [Dkt. No. 233] ("Def. Opp.") at 1.  As described in the Supplemental Motion, Defendants were not available for a meet and confer until after January 2, 2017, more than 10 days after it was requested, and Plaintiffs were concerned about a potential ruling from the Court during that time period.

> Beginning within the first months of the Whistleblower's employment, and continuing over the course of the next two and a half years, the Whistleblower raised with senior management at the company certain concerns the Whistleblower had regarding the company's process in calculating oil and gas reserves that are reported by the company in its periodic reports filed with the [SEC].

Order at ¶19.

Defendants attempt to create the impression that SandRidge behaved appropriately by discussing its conduct after receiving notice on April 1, 2015 that the SEC was commencing enforcement actions regarding confidentiality agreements that violate the Dodd-Frank Act. Def. Opp. at 3 n.1.  This argument, however, ignores the SEC's findings that: (i) SandRidge had actual knowledge three years before April 1, 2015 that its confidentiality agreements contained violative language; and (ii) SandRidge entered into 113 separation agreements on or after April 1, 2015 that still contained the violative language.  Order at ¶¶11-12.

Furthermore, the SEC settlement demonstrates SandRidge failed to properly investigate the Whistleblower's concerns regarding its oil and gas reserve disclosures. *Id.* at ¶25.  SandRidge also wrongfully prevented current and former employees from reporting concerns to the SEC. *Id.* at ¶¶9-12.  Defendants attempt to downplay their wrongdoing by arguing the Order merely "raises concerns" about whether the Whistleblower was terminated in retaliation for voicing his concerns.  Def. Opp. at 3.  In reality, the SEC found that SandRidge retaliated against the Whistleblower for internally reporting conduct similar to that alleged by Plaintiffs.  Order at ¶¶4, 18-26.  These findings indicate that SandRidge took steps to ensure that the SEC would not learn of potential securities laws violations.

### B. Partially Lifting the Stay Is Necessary to Prevent Undue Prejudice to Plaintiffs and the Class

Defendants claim the SEC settlement, which merely encompasses a subset of the facts under SEC investigation, "eviscerates" Plaintiffs' arguments regarding undue prejudice. Def. Opp. at 6. To the contrary, the SEC settlement in no way undermines Plaintiffs' earlier arguments regarding prejudice, including the risk that further investigation by the SEC could exhaust any remaining insurance coverage.[3] *See* Motion at 7-12. Critically, there is no indication the SEC's partial settlement resolves its investigation into potential securities fraud violations alleged by the Whistleblower.

The SEC's response to Plaintiffs' FOIA request underscores the likelihood the SEC is still investigating SandRidge for potential violations of the federal securities laws. By letter dated January 11, 2017, the SEC informed Plaintiffs' counsel that it was "withholding records that may be responsive to your request under 5 U.S.C. §552(b)(7)(A), 17 CFR §200.80(b)(7)(i)."[4] In order for this exemption, commonly referred to as Exception 7(A), to apply, "disclosure of [the withheld] documents [must] interfere with pending enforcement proceedings." *Lewis v. I.R.S.*, 823 F.2d 375, 379 (9th Cir. 1987). If the SEC's investigation was concluded, Exception 7(A) would not apply to Plaintiffs' FOIA request. *See Barney v. IRS*, 618 F.2d 1268, 1273-74 (8th Cir. 1980) (explaining that once enforcement proceedings are "either concluded or abandoned, exemption 7(A) will no longer apply"); *Kilroy v. NLRB*,

---

[3] Defendants mischaracterize Plaintiffs' undue prejudice as deriving solely from the "fact that government entities have been provided . . . discovery." Def. Opp. at 6-7.

[4] The letter from the SEC is attached hereto as Exhibit 1 to the Declaration of Evan J. Kaufman, filed concurrently herewith.

- 4 -

633 F. Supp. 136, 142-43 (S.D. Ohio 1985) (holding that Exception 7(A) "applies only when a law enforcement proceeding is pending").

Even where regulatory authorities have concluded their investigation and reached a settlement with the corporate defendant, plaintiffs may still face undue prejudice. *See Waldman v. Wachovia Corp.*, No. 08 CIV. 2913(SAS), 2009 U.S. Dist. LEXIS 1988, at *4 (S.D.N.Y. Jan. 12, 2009) (granting motion to partially lift the PSLRA discovery stay and observing that "lead plaintiffs must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class").

### C. The Stay Should Be Lifted to Preserve Evidence

Plaintiffs should be permitted to serve a subpoena on the SEC in order to, in part, preserve evidence. Despite Defendants' speculation that the documents held by the SEC are "potentially subject" to record retention requirements, there is no guarantee that all records Plaintiffs seek will be preserved. Def. Opp. at 4. Even though Defendants assert they will comply with their obligations to preserve "any documents of relevance to Plaintiffs' claims," they fail to represent they will preserve all documents produced by SandRidge to the SEC, leaving open the possibility they will attempt to argue that some of the documents are not relevant and, therefore, didn't need to be preserved. *Id*. at 5.

## II. CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and partially lift the stay of discovery for the limited purpose of allowing Plaintiffs to obtain the requested discovery, consisting of: (i) all documents provided to the SEC by SandRidge and the

Individual Defendants in connection with the SEC's investigation of SandRidge's violations of the federal securities laws as described in SandRidge's Form 10-Q filed on August 15, 2016; (ii) all documents provided to the *Ad Hoc* Committee by SandRidge in connection with the SandRidge Bankruptcy Proceeding; and (iii) leave to serve the SEC with a subpoena seeking documents concerning its investigation and settlement of claims as described in the Order.

DATED:  January 20, 2017

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
SAMUEL J. ADAMS (admitted *pro hac vice*)

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
sadams@rgrdlaw.com

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK  73105
Telephone:  405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

ZELDES HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone:  619/342-8000
619/342-7878 (fax)
ambere@zhlaw.com

*Additional Plaintiffs' Counsel*

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 20, 2017.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN