## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. 5:12-cv-01341-W |
| This Document Relates To:<br><br>ALL ACTIONS. | |

**SECURITIES ACT DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO *LANIER* INTERVENORS' MOTION TO INTERVENE**

Dated:  April 4, 2018

# **Table of Contents**

Table of Authorities ...................................................................................................... ii

I.    Preliminary Statement .......................................................................................... 1

II.   Background ............................................................................................................ 4

    A.   SandRidge and the Commencement of This Action. .................................. 4

    B.   The Securities Act Claims Are Dismissed from This Action for
          Failure to Comply with the PSLRA. ............................................................ 5

    C.   The Securities Act Claims Are Separately Filed in the *Lanier* Action
          and Then Dismissed by Entry of Final Judgment. ...................................... 5

III.  Argument ................................................................................................................ 8

    A.   Intervention Should Be Denied Because the *Lanier* Intervenors'
          Securities Act Claims Have Been Extinguished, Leaving Them With
          No Claim or Interest to Pursue in this Action. ............................................ 8

    B.   The *Lanier* Intervenors May Not Intervene Because Their Motion is
          Untimely and Intervention Would Unduly Prejudice Defendants. ............ 15

    C.   Rule 23(d) Does Not Provide a Basis for Intervention. ............................ 18

    D.   Intervention is Improper Because There Is No Reason to Reconsider
          the Dismissal of the Securities Act Claims in This Action. ...................... 19

    E.   The *Lanier* Intervenors Have No Right to Be Heard on the Rule
          60(b) Motion, and Their Arguments Are In Any Event
          Unpersuasive. ............................................................................................ 20

IV.   Conclusion .......................................................................................................... 25

# Table of Authorities

**Cases**

*Am. Ass'n of People With Disabilities v. Herrera*,
  257 F.R.D. 236 (D.N.M. 2008) ................................................................. 8

*Bays Exploration, Inc. v. Pensa, Inc.*,
  No. CIV-07-0754-D, 2009 WL 10674519 (W.D. Okla. Mar. 13, 2009) .................... 23

*Bays Exploration, Inc. v. PenSa, Inc.*,
  No. CIV-07-754-D, 2011 WL 2441735 (W.D. Okla. June 15, 2011) ........................ 21

*Bender v. City of Rochester, N.Y.*,
  765 F.2d 7 (2d Cir. 1985) .................................................................... 10

*California Public Employees' Retirement System v. ANZ Securities, Inc.*,
  137 S. Ct. 2042 (2017) .............................................................. *passim*

*Colony Ins. Co. v. Burke*,
  698 F.3d 1222 (10th Cir. 2012) ............................................................ 9

*Cunningham v. Rolfe*,
  131 F.R.D. 587 (D. Kan. 1990) ............................................................. 8

*Doss v. Clearwater Title Co.*,
  551 F.3d 634 (7th Cir. 2008) ............................................................. 10

*Duane & Virginia Lanier Trust v. SandRidge Mississippian Trust I*,
  Case No. 15-CV-634-SLP (W.D. Okla.) ............................................... *passim*

*Equal Emp't Opportunity Comm'n v. Bok Fin. Corp.*,
  No. 11-1132 RB/LFG, 2013 WL 11955288 (D.N.M. Feb. 8, 2013) .......................... 17

*Foster v. Mountain Coal Co.*,
  61 F. Supp. 3d 993 (D. Colo. 2014) .................................................. 21, 25

*Freeman v. Gerber Prods. Co.*,
  396 F. Supp. 2d 1260 (D. Kan. 2005) ...................................................... 23

*Gaedeke Holdings VII, Ltd. v. Mills*,
  No. CIV-11-649-M, 2013 WL 2532501 (W.D. Okla. June 10, 2013) ....................... 17

*Hayes for Paul B. Hayes Family Tr. v. Chaparral Energy, LLC*,
  No. 14-CV-495-GKF-PJC, 2016 WL 9943157
  (N.D. Okla. Feb. 11, 2016) ............................................................... 17

*In re Cobalt International Energy, Inc. Securities Litigation*,
 No. H-14-3428, 2017 WL 3620590 (S.D. Tex. Aug. 23, 2017) ...................... 3, 13, 14

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
 847 F.3d 1221 (10th Cir. 2017) ..................................................................... 12

*Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*,
 619 F.3d 1223 (10th Cir. 2010) ................................................................ 15, 16

*Perez v. PBI Bank, Inc.*,
 69 F. Supp. 3d 906 (N.D. Ind. 2014) ............................................................. 10

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
 721 F.3d 95 (2d Cir. 2013) ........................................................................ 14, 24

*Servants of the Paraclete v. Does*,
 204 F.3d 1005 (10th Cir. 2000) ..................................................................... 21

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
 248 F. Supp. 3d 428 (S.D.N.Y. 2017) ............................................................. 12

*Slatten v. Jim Glover Chevrolet Lawton, LCC*,
 No. CIV-15-1180-D, 2016 WL 4690416 (W.D. Okla. Sept. 7, 2016) ....................... 23

*Smith v. Josten's Am. Yearbook Co.*,
 78 F.R.D. 154 (D. Kan. 1978) ........................................................................ 19

*St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*,
 605 F.2d 1169 (10th Cir. 1979) ..................................................................... 10

*Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation
 Comm'n*,
 787 F.3d 1068 (10th Cir. 2015) .................................................................... 8, 9

*Tri-State Truck Ins. v. First Nat'l Bank of Wamego*,
 No. 09-4158-SAC, 2011 WL 4688857 (D. Kan. Oct. 5, 2011) ................................ 15

*U.S. Truck Co. v. Nat'l Am. Ins. Co.*,
 186 F. Supp. 2d 1184 (W.D. Okla. 2002) ........................................................ 10

*Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*,
 232 F.R.D. 392 (D. Utah 2005) ..................................................................... 15

*Vigil v. Colo. Dep't of Corrections*,
 No. 09-cv-01676-PAB-KLM, 2011 WL 1518660
 (D. Colo. Apr. 20, 2011) .............................................................................. 21

*W. Energy All. v. Zinke*,
   877 F.3d 1157 (10th Cir. 2017) ........................................................... 8, 9, 15

*Walden v. Elrod*,
   72 F.R.D. 5 (W.D. Okla. 1976) .................................................................. 17

*XTO Energy, Inc. v. ATD, LLC*,
   No. CIV 14-1021 JB/SCY, 2016 WL 3148399 (D.N.M. Apr. 18, 2016) .................... 15

## Statutes and Rules

Private Securities Litigation Reform Act of 1995 ...................................... *passim*

Securities Act of 1933, 15 U.S.C. § 77 ................................................ *passim*

Securities Exchange Act of 1934 ....................................................... 4, 5

Fed. R. Civ. P. 23(d) .................................................................. 18, 19

Fed. R. Civ. P. 24 ..................................................................... *passim*

Fed. R. Civ. P. 54(b) .................................................................. 7

Fed. R. Civ. P. 59 ..................................................................... 21

## Other Authorities

18A Charles Alan Wright & Arthur R. Miller, Federal Practice &
   Procedure § 4448 (2d ed. 2002) .................................................... 10

This memorandum of law is respectfully submitted by all of the defendants previously named in the plaintiffs' claims under the Securities Act of 1933 ("Securities Act Defendants"),[1] in opposition to the Motion to Intervene of Ivan Nibur, Jase Luna, Matthew Willenbucher, the Duane & Virginia Lanier Trust, Deborah Rath, and Reed Romine (the "*Lanier* Intervenors").  Dkt. 273.

## I.   PRELIMINARY STATEMENT

This motion is as remarkable as it is meritless.  The *Lanier* Intervenors seek leave to intervene in this action so that they can prosecute Securities Act claims they are barred from asserting, here or anywhere else, by a final, unappealable judgment that they affirmatively elected not to oppose.[2]  The motion is frivolous and should be denied.

The *Lanier* Intervenors are all lead or proposed plaintiffs in the putative securities class action captioned *Duane & Virginia Lanier Trust v. SandRidge Mississippian Trust I*, Case No. 15-CV-634-SLP (W.D. Okla.) (the "*Lanier* Action").[3]  On December 5, 2017,

---

[1] The Securities Act Defendants joining in this opposition memorandum are SandRidge Mississippian Trust I ("Trust I"), SandRidge Mississippian Trust II ("Trust II"), James D. Bennett, Matthew K. Grubb and Tom L. Ward ("Officer Defendants"), Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T. Oliver, Jr., D. Dwight Scott, and Jeffrey S. Serota ("Director Defendants"), Randall D. Cooley, SandRidge Energy, Inc. ("SandRidge"), and Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. LLC, Raymond James & Associates, Inc., and RBC Capital Markets, LLC ("Underwriter Defendants").

[2] *See* Gimbel Decl. Ex. 1 (Judgment dismissing Securities Act claims).

[3] Nibur, Luna, Willenbucher, and the Duane & Virginia Lanier Trust were appointed Lead Plaintiffs on March 16, 2016.  *See* Dkt. 277-1 at 21 (*Lanier* docket report) and Dkt. 277-4 (*Lanier* Order).  On February 15, 2018, due to the death of lead plaintiff Lawrence Ross, Rath — who is the executor of Ross's estate — moved to substitute herself as lead plaintiff.  *See* Gimbel Decl. Ex. 2 (*Lanier* Mot. to Substitute Deborah Rath as Lead Plaintiff).  That same day, Romine moved to intervene as an additional proposed class representative and non-lead plaintiff.  Gimbel Decl. Ex. 3 (*Lanier* Romine Mot. to

1

a final judgment was entered dismissing the Securities Act claims asserted in the *Lanier* Action — precisely the same claims that the *Lanier* Intervenors now seek to assert here. The *Lanier* Intervenors did not oppose the entry of that judgment (the "*Lanier* Judgment"), in recognition of the fact that their claims were time-barred, and the *Lanier* Judgment has now become final and unappealable.

The *Lanier* Judgment has res judicata effect and forecloses the instant motion to intervene. To intervene under any theory, the *Lanier* Intervenors must demonstrate that they have a legally cognizable claim or protectable legal interest that will be affected by the current litigation. The Lanier Intervenors cannot make such a showing, because the *Lanier* Judgment extinguished their Securities Act claims, leaving them with no claims to pursue in this litigation and no interest in its outcome. *See* Opening Mem. at 18 n.4 ("The *Lanier* Complaint sets out the Securities Act Claims for which the Trust Lead Plaintiffs seek to intervene.").

The *Lanier* Intervenors completely ignore the *Lanier* Judgment and its preclusive effect; the judgment is not even mentioned once in their motion papers. Instead, the *Lanier* Intervenors focus on the statute of repose, contending that although they "cannot pursue the Securities Act Claims in the *Lanier* Action or any separate action because they are precluded by the statute of repose," Opening Mem. at 19, they can somehow do so in this action, where Securities Act claims were asserted by different plaintiffs in a prior complaint before the statute of repose expired. This argument is untenable. The

---

Intervene and Supporting Brief). Both Ross's and Romine's motions remain pending as of the date of this opposition.

Securities Act claims in this action were dismissed nearly three years ago for failure to comply with the notice and lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and those defects have never been cured in this action. Thus, unless this Court reconsiders that dismissal and excuses the continued non-compliance with the PSLRA, no plaintiff can pursue Securities Act claims in this case.

Moreover, as defendants have pointed out in their Opposition to Plaintiffs' Motion for Relief from Dismissal Orders Under Rule 60(b)(6), Dkt. 276, there is no reason to grant reconsideration. Not only has the notice defect that prompted dismissal of the Securities Act claims never been corrected, but even if it were, the statute of repose has run and would bar re-assertion of the dismissed claims. The *Lanier* Intervenors effectively concede this point by acknowledging that, in light of the U.S. Supreme Court's decision in *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017) ("*CalPERS*"), the Court's prior dismissal "of the Securities Act Claims in this action in order to allow a more suitable lead plaintiff to come forward . . . bar[s] that suitable lead plaintiff from raising the claims." Opening Mem. at 2.

The *Lanier* Intervenors argue that *In re Cobalt International Energy, Inc. Securities Litigation*, No. H-14-3428, 2017 WL 3620590 (S.D. Tex. Aug. 23, 2017) supports a different result. Opening Mem. at 3. It does not. In *Cobalt*, the court held only that a putative class action *properly filed* within the statute of repose can "satisfy the statute of repose for class members who do not opt out." 2017 WL 3620590, at *3. Here, however, the Securities Act claims at issue were *not* properly filed and were consequently dismissed. Moreover, unlike in *Cobalt*, the *Lanier* Intervenors' claims have

3

separately been extinguished by a final, non-appealable judgment.  Nothing in *Cobalt*

suggests that a previously adjudicated claim can somehow be revived through a motion to

intervene.  The *Lanier* Intervenors' motion should be denied.

## II.    BACKGROUND

The Securities Act Defendants provided much of the relevant background in their

Opposition to Plaintiffs' Motion for Relief from Dismissal Orders Under Rule 60(b)(6),

Dkt. 276, which is incorporated in full into this opposition.  A summary is set forth

below.

### A.    SandRidge and the Commencement of This Action.

SandRidge is an oil and gas exploration and development company.  In separate

transactions in 2011 and 2012, SandRidge conveyed overriding royalty interests in

certain well locations to SandRidge Mississippian Trust I ("Trust I") and SandRidge

Mississippian Trust II ("Trust II").  Common units representing interests in royalties to be

received by both Trusts were sold in public offerings in 2011 and 2012.

The initial complaint in this consolidated action was filed on December 5, 2012.

In it, plaintiffs asserted claims against SandRidge and other defendants under the

Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, on behalf

of a putative class of purchasers of SandRidge common stock.  Dkt. 1 at ¶ 1.  After

another initial complaint was filed asserting substantially similar claims, the Court

consolidated the actions and appointed lead plaintiffs on March 6, 2013.  Dkt. 60.

**B.      The Securities Act Claims Are Dismissed from This Action for Failure to Comply with the PSLRA.**

On July 23, 2013, and as corrected on July 30, 2013, lead plaintiffs filed their amended complaint, adding new plaintiffs and new claims. Specifically, three new plaintiffs for the first time purported to assert claims under the Securities Act on behalf of unitholders in Trust I and Trust II against the Securities Act Defendants. Dkts. 67 & 75 at 159-165.

In a series of orders entered between May and August 2015, the Court dismissed all of these Securities Act claims "without prejudice" because the new unitholder plaintiffs had failed to comply with the notice and lead plaintiff provisions of the PSLRA. *See* Dkts. 179, 180 (Underwriter Defendants, Trust I, Trust II); Dkts. 184, 185 (SandRidge, individual defendants). As the Court explained, none of the newly-added plaintiffs had served notice of their intention to assert Securities Act claims on behalf of unitholders in Trust I or Trust II, as the PSLRA requires. *See* Dkts. 179, 180 (Underwriter Defendants, Trust I, Trust II); Dkts. 184, 185 (SandRidge, individual defendants). Rather, the only PSLRA notice served in connection with the action was limited to claims of common stockholders in SandRidge and did not give fair notice of the commencement of an action on behalf of unitholders in either Trust. *See id.*

**C.      The Securities Act Claims Are Separately Filed in the *Lanier* Action and Then Dismissed by Entry of Final Judgment.**

On June 9, 2015, a new plaintiff, the Duane & Virginia Lanier Trust, commenced a new and separate action, the *Lanier* Action, asserting claims under both the Securities Act and the Exchange Act on behalf of a putative class of purchasers of Trust I and Trust

5

II common units, and against the Securities Act Defendants.  *See* Gimbel Decl. Ex. 4

(*Lanier* Action Compl.).  According to the initial complaint filed in the *Lanier* Action,

the dismissal of the Securities Act claims from this action prompted the commencement

of the *Lanier* Action.  *Id*. ¶ 84 ("Plaintiffs filed the instant class action as soon as

reasonably possible after learning that the Lead Plaintiffs in the SandRidge Energy

Action had dismissed the claims alleged herein for no consideration.").  As required by

the PSLRA, counsel for the new plaintiff issued a press release announcing the filing of

this new and separate action on behalf of Trust I and Trust II unitholders.  *See* Dkt. 277-2

(*Lanier* press release).  Thereafter, lead plaintiffs were selected for the *Lanier* Action in

an order entered on March 16, 2016.  *See* Dkt. 277-1 at 21 (*Lanier* docket report).

On November 11, 2016, the *Lanier* Action lead plaintiffs filed a consolidated

amended complaint, joining additional named plaintiffs Ivan Nibur, Lawrence Ross, Jase

Luna, and Matthew Willenbucher.[4]  The Securities Act claims asserted in this *Lanier*

Action complaint are the same Securities Act claims, asserted against the same

defendants, that the *Lanier* Intervenors now seek to assert in this action.  *See* Opening

Mem. at 18 n.4 ("The *Lanier* Complaint sets out the Securities Act Claims for which the

Trust Lead Plaintiffs seek to intervene.").

---

[4] Lead plaintiff Ross has since died, and the executor of his estate, Deborah Rath, has moved to substitute herself as lead plaintiff.  *See* Gimbel Decl. Ex. 2 (*Lanier* Mot. to Substitute Deborah Rath as Lead Plaintiff).  Also "prompted by the death of Lead Plaintiff Lawrence Ross," Reed Romine has moved to intervene in the *Lanier* Action as an additional proposed class representative and non-lead plaintiff.  Gimbel Decl. Ex. 5 at 2-3 & n.1 (*Lanier* Romine Reply Mem. of Mot. to Intervene); *see also id.* Gimbel Decl. Ex. 3 (*Lanier* Romine Mot. to Intervene and Supporting Brief).

On January 13, 2017, defendants filed motions to dismiss the amended complaint in the *Lanier* Action, asserting among other things that the three-year statute of repose set forth in section 13 of the Securities Act barred plaintiffs' Securities Act claims.   Dkt. 277-6.   After the motions were fully briefed, the Supreme Court issued its decision in *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017) ("*CalPERS*"), which confirmed that the three-year statute of repose in section 13 of the Securities Act was not subject to tolling.   *See CalPERS*, 137 S. Ct. at 2054-55. Defendants filed a notice of supplemental authority attaching that opinion.   Dkt. 277-7.

On July 28, 2017, the *Lanier* Action plaintiffs (who include all of the *Lanier* Intervenors and/or their privies) filed a notice of non-opposition to the dismissal of the Securities Act claims in light of *CalPERS*.   *See* Gimbel Decl. Ex. 6 (*Lanier* Plaintiffs' Notice of Non-Opposition).   Following the entry of an order dismissing the Securities Act claims as time-barred, on December 5, 2017, the Court entered final judgment (the "*Lanier* Judgment") pursuant to Rule 54(b) of the Federal Rules of Civil Procedure in favor of the *Lanier* Action defendants on all Securities Act claims.   *See* Gimbel Decl. Ex. 1 (*Lanier* Judgment dismissing the Securities Act Claims).

The *Lanier* Action plaintiffs did not oppose the entry of the *Lanier* Judgment.   *See* Gimbel Decl. Ex. 7 (Defendants' Unopposed Motion for Entry of Judgment).   On January 4, 2018, the time to appeal that judgment lapsed, with no appeal having been filed.   *See* Fed. R. App. P. 4(a) (requiring the filing of a notice of appeal within 30 days of entry of judgment).   The *Lanier* Judgment is therefore unappealable.

### III.   ARGUMENT

To intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure, the *Lanier* Intervenors must show that: "(1) the application is timely; (2) [they] claim[ ] an interest relating to the property or transaction which is the subject of the action; (3) [their] interest may as a practical matter be impaired or impeded; and (4) [their] interest is [not] adequately represented by existing parties." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017); *see also* Fed. R. Civ. P. 24(a).

To intervene permissively under Rule 24(b), the *Lanier* Intervenors must show that: (1) the motion is "timely," and (2) they "ha[ve] a claim or defense that shares with the main action a common question of law or fact." *Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015).  The Court has broad discretion to deny a motion for permissive intervention.  *See Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 248–49 (D.N.M. 2008); *Cunningham v. Rolfe*, 131 F.R.D. 587, 590 (D. Kan. 1990).  "In exercising its discretion[,] 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Tri-State Generation & Transmission Ass'n*, 787 F.3d at 1074 (quoting Fed. R. Civ. P. 24(b)(3)).

Under either standard, leave to intervene should be denied.

### A.   Intervention Should Be Denied Because the *Lanier* Intervenors' Securities Act Claims Have Been Extinguished, Leaving Them With No Claim or Interest to Pursue in this Action.

To intervene in this action, the *Lanier* Intervenors must demonstrate that they have some protectable claim or interest that can be pursued in the litigation.  To justify

mandatory intervention, for example, the *Lanier* Intervenors must demonstrate that they have "an interest relating to the property or transaction which is the subject of the action" that could be impaired if intervention is not granted. *Zinke*, 877 F.3d at 1164.[5]  Likewise, to justify permissive intervention, the *Lanier* Intervenors must show that they have "a claim or defense that shares with the main action a common question of law or fact." *Tri-State Generation & Transmission Ass'n*, 787 F.3d at 1074 (citation omitted).  Here, these requirements cannot be satisfied because the *Lanier* Intervenors no longer have any interest in the Securities Act claims they seek to pursue by intervening in this action; their claims have been extinguished by a final judgment.

As the *Lanier* Intervenors concede, the Securities Act claims they seek to pursue by intervening in this case are the very same claims they formerly asserted in the *Lanier* Action.  *See* Opening Mem. 17-18 & n.4 ("The *Lanier* Complaint sets out the Securities Act Claims for which the Trust Lead Plaintiffs seek to intervene.").  Because those claims were extinguished by the *Lanier* Judgment, res judicata bars the *Lanier* Intervenors from relitigating them here or anywhere else, leaving the *Lanier* Intervenors with no legally protectable interest that would justify intervention.

"To apply the doctrine of res judicata, the following elements must be satisfied: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action, and (4) the

---

[5] In fact, "the basic purpose of intervention of right is to permit a non-party to protect its otherwise-inadequately-represented interest in the action, by conferring party status upon the non-party." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1239 (10th Cir. 2012) (citation omitted).

plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit."
*U.S. Truck Co. v. Nat'l Am. Ins. Co.*, 186 F. Supp. 2d 1184, 1187 (W.D. Okla. 2002)
(citation omitted).  Each element is satisfied here.

*First*, the *Lanier* Judgment was issued on the merits.  Specifically, in the *Lanier*
Action, the court dismissed "the Securities Act claims asserted against all of the
defendants on the ground that the claims are time-barred under the statute of repose . . . ."
Gimbel Decl. Ex. 8 (*Lanier* Order Granting Mot. for Entry of Judgment Pursuant to Fed.
R. Civ. P. 54(b) on All Claims Under the Securities Act of 1933); *see also Doss v.
Clearwater Title Co.*, 551 F.3d 634, 638-39 (7th Cir. 2008) (holding that a dismissal
based on a lapsed repose period was an adjudication on the merits); *Perez v. PBI Bank,
Inc.*, 69 F. Supp. 3d 906, 909 (N.D. Ind. 2014) ("[*Doss*] holds that a dismissal of a case
based on a statute of repose is a not [sic] dismissal for want of jurisdiction; instead, it is a
dismissal on the merits.").

*Second*, there is an identity of parties between the two actions: the Securities Act
claims dismissed by the *Lanier* Judgment were asserted by the very same parties and/or
their privies — proposed intervenors Duane & Virginia Lanier Trust, Nibur, Ross (now
deceased and represented here by Rath as executor of his estate),[6] Romine,[7] Luna, and

---

[6] An executor is to be treated the same as the deceased individual for the purposes of res
judicata. *See, e.g., Bender v. City of Rochester, N.Y.*, 765 F.2d 7, 12 (2d Cir. 1985) ("The
administrator of a decedent's estate is in privity . . . with the decedent . . . ."); 18A
Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4448 (2d ed.
2002) (stating that "executors . . . are familiar examples" of preclusion by representation).

[7] While Romine was not a named party to the *Lanier* Judgment, he is in privity with the
other *Lanier* Intervenors.  Privity requires "a substantial identity between the issues in
controversy and showing that the parties in the two actions are really and substantially in
interest the same."  *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d

Willenbucher — against the very same Securities Act Defendants that the *Lanier*
Intervenors seek to pursue in this action if intervention were granted. *See* Dkt. 277-9;
Dkt. 277-10 (*Lanier Trust* Dkt. 145); Dkt. 277-11 (*Lanier Trust* Dkt. 146).[8]

   *Third*, there is an identity of the causes of action at issue. The *Lanier* Intervenors
concede that, if allowed to intervene, they will pursue the same Securities Act claims that
they asserted in the *Lanier* Action. *See* Opening Mem. at 18 n.4 ("The *Lanier* Complaint
sets out the Securities Act Claims for which the Trust Lead Plaintiffs seek to intervene.").
These are the same Securities Act claims that the *Lanier* Judgment dismissed. Gimbel
Decl. Ex. 1 (*Lanier* Judgment dismissing the Securities Act Claims).

   *Fourth*, it is undisputable that all parties had a full and fair opportunity to litigate
the Securities Act claims that were dismissed by the *Lanier* Judgment, including the
opportunity to file briefs in opposition to dismissal, and the opportunity to comment on

---

1169, 1174 (10th Cir. 1979). Romine has repeatedly represented that his interests are the
same as the lead plaintiffs in the *Lanier* Action, who share his counsel. For example,
Romine filed papers in the *Lanier* Action conceding that he "asserts no claims outside of
those in the Complaint," his "claims address substantially identical questions of law and
fact as the 'main action,'" Gimbel Decl. Ex. 3 at 3, and he "is situated no differently than
any other proposed class representative" (*i.e.*, the other *Lanier* Intervenors), *id.* Ex. 5 at 6.

   Additionally, in a sworn declaration, Romine confirmed that he "read the initial
complaint and reviewed and authorized the filing of the Consolidated Amended
Complaint For Violations of the Federal Securities Laws" — *i.e.*, the *Lanier* Action
complaint that contains the Securities Act claims now at issue here — and
"communicated with counsel throughout the course of [the *Lanier*] action." *Id.* Ex. 9 ¶¶
4, 14 (Romine Decl.).

[8] The *Lanier* Judgment was entered "in favor of Defendants SandRidge Mississippian
Trust I, SandRidge Mississippian Trust II, James D. Bennett, Matthew K. Grubb, Tom L.
Ward, Jim J. Brewer, Everett R. Dobson, William A. Gilliland, Daniel W. Jordan, Roy T.
Oliver, Jr., Jeffrey S. Serota, Randall D. Cooley, SandRidge Energy, Inc. . . , Citigroup
Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan
Stanley & Co. LLC, Raymond James & Associates, Inc., and RBC Capital Markets, LLC
. . . ." Gimbel Decl. Ex. 1 (*Lanier* Judgment dismissing the Securities Act Claims).

the impact of the Supreme Court's decision in *CalPERS*, which made clear that the *Lanier* Intervenors' claims were time-barred by operation of the statute of repose.[9]

Because all of the requirements of res judicata are satisfied, the *Lanier* Intervenors are precluded from pursuing the Securities Act claims dismissed by the *Lanier* Judgment, here or anywhere else. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) ("The doctrine of res judicata, or claim preclusion, will prevent a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." (citation omitted)).

Even if the *Lanier* Judgment had not extinguished their Securities Act Claims, the *Lanier* Intervenors would have no legally cognizable interest in pursuing those claims because the claims are now irrevocably barred by the statute of repose. Section 13 of the Securities Act, 15 U.S.C. § 77m, imposes a three-year statute of repose on Securities Act claims. *See* U.S.C. § 77m. The statute of repose "permits no exceptions"; it is not subject to tolling of any kind and "cannot be circumvented by the relation-back doctrine." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 451 (S.D.N.Y. 2017); *see also* 15 U.S.C. § 77m ("*In no event* shall any such action be brought . . . more than three years after the security was" offered (emphasis added)). Because none of the *Lanier* Intervenors ever filed a complaint asserting the Securities Act claims within the statute of repose, the claims are irrevocably time-barred. Indeed, proposed intervenors Duane &

---

[9] Even Romine has admitted in a sworn declaration that he "reviewed and authorized the filing of the" the *Lanier* Action complaint that asserted the Securities Act claims at issue, and "communicated with counsel throughout the course of [the *Lanier*] action." Gimbel Decl. Ex. 9 ¶¶ 4, 14 (Romine Decl.).

Virginia Lanier Trust, Nibur, Ross (now by Rath as executor of his estate), Luna, and Willenbucher each agreed to dismiss their Securities Act claims in the *Lanier* Action precisely because they were barred by the statute of repose. *See, e.g.*, Gimbel Decl. Ex. 8 (*Lanier* Order Granting Mot. for Entry of Judgment Pursuant to Fed. R. Civ. P. 54(b) on All Claims Under the Securities Act of 1933) ("Based on the holding in *CalPERS*, plaintiffs did not oppose dismissal of the Securities Act claims as barred by the statute of repose.").[10]

The *Lanier* Intervenors attempt to circumvent the statute of repose by relying on a single, unpublished, out-of-circuit case: *In re Cobalt International Energy, Inc. Securities Litigation*, No. H-14-3428, 2017 WL 3620590 (S.D. Tex. Aug. 23, 2017) (slip copy). Their reliance is misplaced. In *Cobalt*, the defendants sought reconsideration of a class certification ruling after the U.S. Supreme Court issued its decision in *CalPERS*, arguing that *CalPERS* barred class certification because the claims of unnamed class members had not been filed within the statute of repose. The *Cobalt* court denied the motion, finding *CalPERS* inapposite. The court reasoned that *CalPERS* concerned putative class members who had opted out of a class action and pursued time-barred lawsuits, but "there is nothing in the *CalPERS* decision that suggests a timely-filed class 'action' does not satisfy the statute of repose for class members who do not opt out." *Id.* at *3. Thus,

---

[10] To this day, years after the statute of repose has expired, Romine has never filed any complaint asserting any Securities Act claims against Securities Act Defendants. His pending motion to intervene in the *Lanier* Action seeks only to add him as an additional named plaintiff in an action where the Securities Act claims have long since been dismissed. *See* Gimbel Decl. Ex. 5 at 1 (*Lanier* Romine Reply Mem. of Mot. to Intervene).

the court held simply that a putative class action preserves the claims of unnamed class members *if properly filed within the repose period*.

Here, unlike in *Cobalt*, no Securities Act claims were *properly filed* within the repose period.  To the contrary, when the Securities Act claims were initially asserted on behalf of a putative class in this action, they were dismissed for failure to comply with the PSLRA's notice and lead plaintiff provisions.  Because the Securities Act claims were not properly asserted in this action and were dismissed, the filing of the claims did not satisfy the statute of repose for other members of the putative class.  Nor can other members of the putative class take advantage of the defective filing to revive otherwise time-barred claims.  As the Second Circuit has held, "neither Federal Rule of Civil Procedure 24 nor the Rule 15(c) 'relation back' doctrine permits members of a putative class, who are not named parties, to intervene in [a] class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 101 (2d Cir. 2013).

The *Lanier* Intervenors also cannot rely on *Cobalt* to restore the Securities Act claims that they are barred from pursuing by res judicata.  *Cobalt* did not involve claims that were extinguished by a final judgment in another action, and it nowhere suggests that a plaintiff may avoid the effect of a final judgment by seeking, through intervention, to reassert previously adjudicated claims.

**B.      The *Lanier* Intervenors May Not Intervene Because Their Motion is Untimely and Intervention Would Unduly Prejudice Defendants.**

"Both intervention as of right and permissive intervention require that a motion to intervene be timely." *Tri-State Truck Ins. v. First Nat'l Bank of Wamego*, No. 09-4158-SAC, 2011 WL 4688857, at *3 (D. Kan. Oct. 5, 2011); *see also XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 3148399, at *20 (D.N.M. Apr. 18, 2016).  Although the timeliness of an intervention motion is determined "in light of all of the circumstances," three factors are "particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Zinke*, 877 F.3d at 1164 (citations omitted).  "A party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 232 F.R.D. 392, 396 (D. Utah 2005) (citation omitted); *see also Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) ("When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention."); *id.* ("[W]e . . . measure delay from when the movant was on notice that its interests may not be protected by a party already in the case.").

All three factors weigh in favor of denying the *Lanier* Intervenors' motion as untimely.  *First*, the *Lanier* Intervenors have been on notice of their interests in this action since the Securities Act claims were dismissed in 2015.  The Court's decision dismissing the claims made clear that the claims were improperly asserted on behalf of

unitholders in Trust I and Trust II by plaintiffs who had failed to comply with the notice and lead plaintiff provisions of the PSLRA.  *E.g.*, Dkt. 180 at 23 (dismissing Securities Act claims "in the absence of compliance with the PSLRA").  Any Trust I or Trust II unitholder who was concerned about the potential impact of that ruling on his or her claims was free to file a motion to intervene at that time.  But instead of intervening, *Lanier* Intervenors chose to pursue Securities Act claims in a separate action, the *Lanier* Action.  Specifically, in June 2015 — after the first order was issued dismissing the Securities Act claims from this action for failing to comply with the PSLRA — the *Lanier* Action was commenced with a complaint asserting that "Plaintiffs filed the instant class action as soon as reasonably possible after learning that the Lead Plaintiffs in the SandRidge Energy Action had dismissed the claims alleged herein for no consideration." Gimbel Decl. Ex. 4 ¶ 84 (*Lanier* Action Compl.).  The *Lanier* Intervenors deliberately chose to commence a new action rather than intervene in this case.

The *Lanier* Intervenors also elected not to intervene in June 2017, when the Supreme Court's decision in *CalPERS* was issued.  *See* Gimbel Decl. Ex. 6 (*Lanier* Plaintiffs' Notice of Non-Opposition).  Although the statute of repose problem that prompted the current intervention motion was by that point indisputable,[11] the *Lanier* Intervenors inexplicably waited another eight months before attempting to cure the problem through this intervention motion — an inexcusable delay.  *See, e.g.*, *Tyson*

_____

[11] It was clear long before the decision in *CalPERS* that the statute of repose could not be tolled.  *See* Opp. to Plaintiffs' Mot. for Relief from Dismissal Orders Under Rule 60(b)(6), Dkt. 276 at 17-18.

*Foods, Inc.*, 619 F.3d at 1235 (finding motion to intervene filed on September 2, 2009

untimely, in part because the movant was "certainly aware of the risk to its interests in

early 2009"); *Walden v. Elrod*, 72 F.R.D. 5, 10 (W.D. Okla. 1976) (finding motion to

intervene untimely in part because "Applicant has had knowledge of the instant lawsuits

for almost one year prior to the filing of the instant Motions to Intervene").[12]

The *Lanier* Intervenors have no legitimate explanation for any of these delays.

While they suggest that their motion to intervene was prompted by the Rule 60(b) Motion

for Reconsideration filed by the existing plaintiffs in this action, that motion was itself

untimely. Before the existing plaintiffs filed their reconsideration motion, they waited

more than 32 months from the entry of the first dismissal orders, more than 7 months

from the issuance of *CalPERS*, and more than 5 months from the entry of the order

dismissing the Securities Act claims in the *Lanier* Action. As explained in detail in the

Securities Act Defendants' brief in opposition to the motion for reconsideration, by any

of these measures the existing plaintiffs failed to seek reconsideration within a reasonable

period of time. *See* Opp. to Plaintiffs' Mot. for Relief from Dismissal Orders Under Rule

60(b)(6), Dkt. 276 at 13-16.

---

[12] *See also Hayes for Paul B. Hayes Family Tr. v. Chaparral Energy, LLC*, No. 14-CV-495-GKF-PJC, 2016 WL 9943157, at *2 (N.D. Okla. Feb. 11, 2016) (finding motion to intervene filed on January 8, 2016 untimely, in part because proposed intervenor "could have moved to intervene" by September 2015); *Gaedeke Holdings VII, Ltd. v. Mills*, No. CIV-11-649-M, 2013 WL 2532501, *3 (W.D. Okla. June 10, 2013) (finding motion to intervene filed on April 25, 2013 untimely because proposed intervenor "admitted to . . . knowing about this lawsuit since January, 2013"); *Equal Emp't Opportunity Comm'n v. Bok Fin. Corp.*, No. 11-1132 RB/LFG, 2013 WL 11955288, at *10 (D.N.M. Feb. 8, 2013) (finding motion to intervene untimely because proposed intervenor "waited approximately ten months before filing the motion to intervene").

Because of this unreasonable delay, the Securities Act Defendants would face severe prejudice if intervention were allowed.  As explained above, *see* Part III.A, the only claims the *Lanier* Intervenors seek to pursue are Securities Act claims that were disposed of four months ago by the *Lanier* Judgment.  Allowing the *Lanier* Intervenors to revive those claims would make a mockery of the finality that judgment was intended to provide and render meaningless the many months of motion practice that produced it.

Furthermore, allowing intervention now would throw the case into disarray.  The few remaining claims in this case have proceeded to discovery.  Introducing new claims and new lead plaintiffs at this stage would derail the schedule established by this Court, require new rounds of motion practice on threshold issues, and substantially prolong the resolution of this action.

Finally, the *Lanier* Intervenors have failed to identify any prejudice they would suffer if their motion is denied.  They claim they will suffer "severe prejudice without the reinstatement of the Securities Act Claims."  Opening Mem. at 17.  But, as discussed above, they already had an opportunity to litigate the Securities Act claims in the *Lanier* Action, and did not oppose the entry of a judgment dismissing those claims.  Having acceded to the entry of a judgment dismissing their Securities Act claims as barred by the statute of repose, the *Lanier* Intervenors can hardly be heard to complain that it is prejudicial to be prevented from re-litigating the claims here.

### C.    Rule 23(d) Does Not Provide a Basis for Intervention.

The *Lanier* Intervenors argue that "Federal Rule of Civil Procedure 23(d) permits intervention for the purposes of improving or strengthening the representation of the

class."  Opening Mem. at 22.  The *Lanier* Intervenors are wrong, because Rule 23(d) does not allow intervention on this basis alone; an intervenor must still meet the requirements of Rule 24.[13]

Even if Rule 23(d) provided such an independent basis for intervention, it would not exist here, because the *Lanier* Intervenors cannot *improve* or *strengthen* the representation of any putative class member for several reasons.  *First*, there is no class for the *Lanier* Intervenors to represent, because all of the claims asserted on behalf of Trust unitholders have been dismissed from this action.  *Second*, even if the Court were to reconsider the decision to dismiss those claims from this action, allowing the *Lanier* Intervenors to intervene would not *improve* or *strengthen* the representation of any class of Trust unitholders because the *Lanier* Intervenors' Securities Act claims are barred by res judicata and the statute of repose.  Representation of the class is not *improved* or *strengthened* by the intervention of plaintiffs whose claims are patently defective.

## D.  Intervention is Improper Because There Is No Reason to Reconsider the Dismissal of the Securities Act Claims in This Action.

As the *Lanier* Intervenors concede, their motion to intervene is entirely contingent on this Court granting the existing plaintiffs' Motion for Relief from Dismissal Orders

---

[13] The *Lanier* Intervenors cite a single in-circuit case in support of their reliance on Rule 23(d) as an independent basis for intervention, but that case stands only for the unremarkable proposition that "Rule 23(d) specifically contemplates intervention in class suits, especially by persons properly members of the class who are no longer adequately represented by existing parties."  *Smith v. Josten's Am. Yearbook Co.*, 78 F.R.D. 154, 172 (D. Kan. 1978).  While it is true that Rule 23(d) "specifically contemplates intervention in class suits," it does not purport to relieve intervenors from meeting the requirements of Rule 24.

Under Rule 60(b)(6). *E.g.*, Opening Mem. at 16 ("The Trust Lead Plaintiffs' intervention depends on the Court's reinstatement of the Securities Act claims pursuant to the Rule 60 Motion, which is still pending before the Court.").  For the reasons set forth in Defendants' opposition to that motion, Dkt. 276, which is incorporated by reference here, this Court should deny plaintiffs' Rule 60(b) motion in its entirety, and with it, the *Lanier* Intervenors' motion to intervene.

### E.    The *Lanier* Intervenors Have No Right to Be Heard on the Rule 60(b) Motion, and Their Arguments Are In Any Event Unpersuasive.

In their motion to intervene, the *Lanier* Intervenors offer additional reasons for granting plaintiffs' Rule 60(b) motion.  All of their arguments should be disregarded because the *Lanier* Intervenors have no right to be heard on the issue.  The *Lanier* Intervenors are not parties to this action; have not sought or received permission from the Court to opine as amici or otherwise; and therefore have no right to be heard on the Rule 60(b) motion.  In addition, as discussed above, the *Lanier* Intervenors have no legally cognizable interest in the outcome of the motion, because they are barred from asserting the Securities Act claims that the Rule 60(b) motion seeks to revive.

Even assuming that the *Lanier* Intervenors could be heard on the Rule 60(b) motion, their arguments would be unpersuasive.  They contend that plaintiff's Rule 60(b) motion should be construed as a motion for reconsideration of an interlocutory order. *See, e.g.*, Opening Mem. at 8.  Construing the motion in this fashion would make no

difference because the standard for granting reconsideration of an interlocutory order is also unsatisfied.[14]

"[T]o succeed in a motion to reconsider [an interlocutory order], a party must set forth facts or law of a *strongly convincing nature* to induce the court to reverse its prior decision," and "[a] motion to reconsider should be denied unless it clearly demonstrates *manifest error of law or fact* or presents newly discovered evidence." *Foster v. Mountain Coal Co.*, 61 F. Supp. 3d 993, 998 (D. Colo. 2014) (emphasis added) (citations omitted). Motions for reconsideration of interlocutory orders are improper when they "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see also Vigil v. Colo. Dep't of Corrections*, No. 09-cv-01676-PAB-KLM, 2011 WL 1518660, at *1 (D. Colo. Apr. 20, 2011) ("'[I]n order to avoid the inefficiency which would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders.' . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'" (citations omitted)).

---

[14] In fact, this Court sometimes analyzes motions to reconsider interlocutory orders under the same strict standards as motions brought under Rules 59 and 60. *See, e.g., Bays Exploration, Inc. v. PenSa, Inc.*, No. CIV-07-754-D, 2011 WL 2441735, at *1 (W.D. Okla. June 15, 2011) ("Where a motion seeks reconsideration of an interlocutory order, . . . . courts apply the legal standards applicable to a Rule 59(e) motion to alter or amend a judgment. . . . Where, as here, the motion is filed beyond the deadline set forth in Rule 59(e), a motion to reconsider is generally analyzed under the requirements of Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is 'extraordinary and may only be granted in exceptional circumstances.'" (citations omitted)).

Here, neither the *Lanier* Intervenors nor the plaintiffs in this action have pointed to any "manifest error of law or fact" or any "newly discovered evidence" that would justify reconsideration. The relevant facts and legal principles that caused the Court to dismiss the Securities Act claims remain exactly the same today as they were when the Court issued its decision: dismissal was mandated by the PSLRA because the plaintiffs in this action never complied with the notice and lead plaintiff requirements of the statute. *See* Dkt. 179 at 20 (Order on Mot. to Dismiss Am. Compl. entered May 11, 2015); Dkt. 180 (Order granting Trusts' Motion to Dismiss Corrected Consol. Am. Compl. entered May 11, 2015); Dkts. 184, 185 (Order granting Mot. to Dismiss Plaintiffs' Consol. Am. Compl. and Order granting Ward's Mot. to Dismiss, both entered Aug. 27, 2015); *see also* 15 U.S.C. § 77z-1(a)(3). The fact that different plaintiffs in a separate lawsuit (the *Lanier* Action) *subsequently* published notice is not a change in the law, or "newly discovered" evidence, that would justify reconsideration; it is a *subsequent* event of no relevance whatsoever to the Court's decision.

Moreover, the plaintiffs in this action could have raised the possibility of reviving their Securities Act claims by curing the notice defect three years ago in the briefing regarding the dismissal of those claims. The Court even acknowledged this at the time.[15]

---

[15] Specifically, the Court noted that plaintiffs in this action might have requested permission to republish notice instead of having their claims dismissed, but that "neither the Lead Plaintiffs nor the Trust Plaintiffs [had] suggested" such a remedy "in case the Court found the [Securities Act Defendants'] arguments meritorious." Dkt. 179 at 21. Having been provided no alternative by the plaintiffs in their arguments, the Court granted the motions to dismiss the plaintiffs' Securities Act claims "without prejudice." *Id.* The plaintiffs made no subsequent attempt to cure the issues identified in the Court's dismissal orders.

Instead, the plaintiffs failed to seek leave to republish notice.  *See* Dkt. 179 at 20-21

(Court remarking that "neither the Lead Plaintiffs nor the Trust Plaintiffs have suggested

[republishing] . . . .").  This failure forecloses reconsideration.  *See Slatten v. Jim Glover*

*Chevrolet Lawton, LCC*, No. CIV-15-1180-D, 2016 WL 4690416, at *2 (W.D. Okla.

Sept. 7, 2016) ("Defendant is plainly advancing arguments that could have been raised in

prior briefing and seeking a second bite at the proverbial apple."); *Bays Exploration, Inc.*

*v. Pensa, Inc.*, No. CIV-07-0754-D, 2009 WL 10674519, at *2 (W.D. Okla. Mar. 13,

2009) ("The issues raised in the motion to reconsider could and should been brought to

the Court's attention at the time it initially ruled on the respective motions to compel.");

*see also Freeman v. Gerber Prods. Co.*, 396 F. Supp. 2d 1260, 1261-62 (D. Kan. 2005)

("Gerber should have moved for reconsideration of the court's claim construction order

months ago if Gerber genuinely believed reconsideration was warranted . . . .").

The *Lanier* Intervenors nevertheless argue that reconsideration should be granted

because of the following "changes of fact": (1) the PSLRA notice in the *Lanier* Action

purportedly "cured the defect that led the Court to dismiss the Securities Act Claims from

this Action," and (2) "The Trust Lead Plaintiffs were then duly appointed [as lead

plaintiffs] . . . . [to] represent the interests of purchasers of the common units issued in the

Trust Offerings."  Opening Mem. at 9; *see also id.* at 2.  These "changes of fact" do not

justify reconsideration.  The *Lanier* Intervenors provide no legal authority to explain how

the PSLRA notice in the *Lanier* Action did anything to cure the notice defect in this

action, and Securities Act Defendants are not aware of any.  The *Lanier* Intervenors also

provide no legal authority to explain how any appointment as lead plaintiff in the *Lanier*

Action is relevant to this action, especially where the *Lanier* court's order expressly limited their counsel's responsibilities to "the prosecution of *this* litigation" — *i.e.*, the *Lanier* Action. *See* Dkt. 277-4 (*Lanier* Order) (emphasis added).

As a factual matter, no plaintiff in this action has done anything to cure the deficiencies that caused the dismissal of the Securities Act claims. *See* Dkt. 276 at 9-13. And those deficiencies cannot be cured by the *Lanier* Intervenors now. *See IndyMac*, 721 F.3d at 111-12 ("[N]either Rule 24 nor the Rule 15(c) 'relation back' doctrine permits members of a putative class, who are not named parties, to intervene in the class action as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction.").

There also has been no change in law affecting the dismissal orders that would warrant reconsideration. The only change in law the *Lanier* Intervenors point to is *CalPERS*. *See* Opening Mem. at 7. But *CalPERS* is irrelevant to this Court's reconsideration of its dismissal orders, because *CalPERS* did not change the law that the Court applied in dismissing the Securities Act claims. *See* Dkt. 276 at 9-13.[16] The Securities Act claims were dismissed because the plaintiffs in this action did not comply with the PSLRA's notice and lead plaintiff requirements, and they still have not done so. *See id.*

---

[16] Moreover, *CalPERS* cannot be considered a "bolt out of the blue," as the *Lanier* Intervernors claim (Opening Mem. at 7), because *CalPERS* was consistent with the overwhelming weight of authority at the time the Securities Act claims were dismissed from this case. *See* Dkt. 276 at 16-18.

For these reasons, there has been neither a change of facts nor a change of law —
much less a manifest error of fact or law — justifying reconsideration.  *See Foster*, 61 F.
Supp. 3d at 998.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the
*Lanier* Intervenors' Motion to Intervene.

Dated:  April 4, 2018

SNYDER LAW, PLLC

Of Counsel:

By:    */s/ Thomas B. Snyder*
        Thomas B. Snyder (OBA #31428)
        tom@lawokc.com

C. William Phillips*
cphillips@cov.com
Mark P. Gimbel*
mgimbel@cov.com
Swati R. Prakash*
sprakash@cov.com
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

3030 Oklahoma Tower
210 Park Avenue, Suite 3030
Oklahoma City, OK 73102
(405) 232-3800

*Attorneys for Defendants James D. Bennett,
Matthew K. Grubb, and Former Defendants
Randall D. Cooley, Jim J. Brewer, Everett R.
Dobson, William A. Gilliland, Daniel W.
Jordan, Roy T. Oliver, D. Dwight Scott, and
Jeffrey S. Serota*

* Admitted *pro hac vice*

25

RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS, P.C.

Of Counsel:                                    By:   /s/ Robert A. Nance
                                                    Robert A. Nance (OBA # 6581)
John J. Clarke, Jr.*                                rnance@riggsabney.com
john.clarke@dlapiper.com
DLA PIPER LLP (US)                             528 N.W. 12th Street
1251 Avenue of the Americas                    Oklahoma City, Oklahoma 73103
New York, New York 10020                       (405) 843-9909
(212) 335-4500

                                               *Attorneys for Former Defendants  Citigroup
* Admitted *pro hac vice*                       *Global Markets Inc., Merrill Lynch, Pierce,*
                                               *Fenner & Smith Incorporated, Morgan*
                                               *Stanley & Co. LLC, Raymond James &*
                                               *Associates, Inc. and RBC Capital Markets,*
                                               *LLC*


Of Counsel:                                    WILSON LAW FIRM

W. Stephen Benesh*                             By:   /s/ Ryan S. Wilson
steve.benesh@bracewell.com                          Ryan S. Wilson (OBA #14340)
Patrick A. Caballero*                               ryan@RSWilsonlaw.com
patrick.caballero@bracewell.com
David B. Springer*                             Post Office Box 891390
david.springer@bracewell.com                   Oklahoma City, OK 73189
BRACEWELL LLP                                  (405) 246-0092
111 Congress Avenue, Suite 2300
Austin, TX 78701                               *Attorneys for Defendants SandRidge*
(512) 494-3680                                 *Mississippian Trust I and SandRidge*
                                               *Mississippian Trust II*
* Admitted *pro hac vice*

26

CORBYN HAMPTON LAW FIRM

Of Counsel:                          By:   */s/ George S. Corbyn, Jr.*
                                          George S. Corbyn, Jr. (OBA # 1910)
J. Christian Word*                        gcorbyn@corbynhampton.com
christian.word@lw.com
LATHAM & WATKINS LLP                 211 North Robinson, Suite 1910
555 Eleventh Street, NW, Suite 1000  One Leadership Square
Washington, DC 20004                 Oklahoma City, OK 73102
(202) 637-2200                       (405) 239-7055

* Admitted *pro hac vice*            *Attorneys for Defendant Tom L. Ward*


                                     CONNER & WINTERS, LLP


                                     By:   */s/ Kiran A. Phansalkar*
                                          Kiran A. Phansalkar (OBA #11470)
                                          kphansalkar@cwlaw.com
                                          Mitchell D. Blackburn (OBA #12217)
                                          mblackburn@cwlaw.com

                                     211 N. Robinson, Suite 1700
                                     Oklahoma City, OK 73102
                                     (405) 272-5711
                                     mblackburn@cwlaw.com

                                     *Attorneys for SandRidge Energy, Inc.*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

*/s/ Thomas B. Snyder*
Thomas B. Snyder