# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. CIV-12-1341-G |
| This Document Relates To:<br><br>ALL ACTIONS. | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO STRIKE PORTIONS OF BJORN I. STEINHOLT'S REBUTTAL EXPERT REPORT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

I.      PROCEDURAL HISTORY. ...................................................................... 3

II.     THE PARTIES' EXPERT DISCLOSURES. ........................................... 5

ARGUMENT ..................................................................................................... 8

I.      MR. STEINHOLT'S OPINION CONCERNING THE AUGUST 5, 2011
STOCK DROP SHOULD BE STRICKEN. .......................................... 9

       A.    *The Rebuttal Report's Discussion of the August 5, 2011 Stock Drop
Improperly Supplements Mr. Steinholt's Initial Report.* ............................... 9

       B.    *Mr. Steinholt's Opinion Should Also Be Stricken as Contrary to this
Court's August 2017 Order.* ....................................................................... 12

II.     MR. STEINHOLT'S NEW METHOD FOR CALCULATING
INFLATION SHOULD BE STRICKEN. ............................................ 14

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashike v. Mullen Crane & Transp., Inc.*,
No. 2:12-CV-0011, 2014 WL 61142 (D. Utah Jan. 8, 2014) ........................ 9

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
No. 03 C 7713, 2005 WL 1300763 (N.D. Ill. Feb. 22, 2005) ............................ 10, 12

*Barcus v. Phoenix Ins. Co.*,
No. 17-2492-JWL-KGG, 2018 WL 6933299 (D. Kan. Aug. 17, 2018) ...................... 9

*Bd. of Cty. Comm'rs of Cty. of Kay, Okla. v. Freeport-McMoran Copper & Gold, Inc.*,
No. CIV-12-601-C, 2013 WL 7802171 (W.D. Okla. Sept. 5, 2013) ......................... 11

*Cohlmia v. Ardent Health Servs., LLC*,
254 F.R.D. 426 (N.D. Okla. 2008) ............................................................. 14

*D'Andrea Bros. LLC v. United States*,
No. 08-286C, 2012 WL 644010 (Fed. Cl. Feb. 10, 2012).......................... 10

*Franklin v. United States*,
No. 12-cv-1167-KBM/CEG, 2013 WL 11336866 (D.N.M. Dec. 19, 2013) ....................................................................................... 11, 14

*Lowe v. CVS Pharmacy, Inc.*,
No. 14 C 3687, 2017 WL 2152385 (N.D. Ill. May 17, 2017) ...................... 8

*Matthews v. Pennsylvania Life Ins. Co.*,
No. 2:12-CV-896-TC-PMW, 2014 WL 2818661 (D. Utah June 23, 2014) ................................................................................. 8, 11

*Oklahoma v. Tyson Foods, Inc.*,
No. 05-CV-329-GKF-PJC, 2009 WL 1065668 (N.D. Okla. Apr. 17, 2009) ....................................................................................... 14

*RMD, LLC v. Nitto Americas, Inc.*,
No. 09-2056-JAR-DJW, 2012 WL 5398345 (D. Kan. Nov. 5, 2012).......................... 8

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*,
No. 14-CV-00134-PAB-KMT, 2016 WL 1597529 (D. Colo. Apr. 21, 2016) ..................................................................................... 8, 9

*Stephenson v. Wyeth LLC*,
    No. 04-2312-CM, 2011 WL 4900039 (D. Kan. Oct. 14, 2011) .............................. 8, 10

*STS Software Sys., Ltd. v. Witness Sys., Inc.*,
    No. 1:04-CV-2111-RWS, 2008 WL 660325 (N.D. Ga. Mar. 6, 2008) ....................... 12

## Other Authorities

Fed. R. Civ. P. 26 ......................................................................................................... *passim*

Defendants James Bennett, Matthew Grubb, and Tom Ward, and nominal defendant SandRidge Energy, Inc. ("SandRidge") respectfully submit this Memorandum in Support of their Motion to Strike Portions of Bjorn I. Steinholt's Rebuttal Expert Report.

## INTRODUCTION

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) limits rebuttal reports of experts to opinions "intended *solely to contradict or rebut* evidence on the same subject matter identified by" the other party. (Emphasis added.) The purported "rebuttal" report of Plaintiffs' damages expert, Bjorn Steinholt, ignores this limitation entirely, offering two completely new opinions that are not intended "solely to contradict or rebut" opinions offered by Defendants' expert, but to expand Plaintiffs' damages theory to encompass a new stock drop, and to offer a completely new method of calculating damages. The report goes far beyond the bounds of permissible rebuttal.

In his initial expert report, Mr. Steinholt offered a simple damages theory, opining that SandRidge's stock price was inflated by 60 cents on each day of the putative class period. Mr. Steinholt calculated this amount by reference to the purportedly "abnormal" return that occurred on November 9, 2012, when Plaintiffs allege that the stock price dropped in response to certain negative disclosures about the performance of oil and gas properties in the Mississippian. In response, Defendants' damages expert, Steven Grenadier, identified a number of problems with Mr. Steinholt's damages analysis, including that it fails to demonstrate loss causation and fails to account for certain

changes during the putative class period, such as changes in the relative prices of oil and gas.

Rather than limiting his rebuttal report to addressing these criticisms, Mr. Steinholt chose to completely reinvent Plaintiffs' damages case by offering two new opinions that cannot even remotely be described as rebuttal. First, Mr. Steinholt opined for the first time that Plaintiffs could recover damages resulting from a second stock drop on August 5, 2011. Second, he introduced a new variable methodology for calculating alleged inflation during the putative class period, abandoning the constant 60 cents per share inflation theory in his initial report in favor of a new calculation in which the amount of alleged price inflation varies on every day of the putative class period.

A rebuttal report is not the proper place for either of these two new theories. Mr. Steinholt's attempt to "supplement" his expert report by introducing a distinct, unrelated stock drop is far beyond the scope of a proper rebuttal. Moreover, Mr. Steinholt's conclusion that Plaintiffs can recover damages resulting from the August 5, 2011 stock drop is contrary to this Court's August 2017 order dismissing the allegations related to that stock drop from the case. The introduction of a new variable inflation theory that appears to drastically increase Plaintiffs' damages claim is likewise inappropriate. Rebuttal reports are for contradicting or rebutting opposing arguments — not for advancing new theories that should have been disclosed at the outset.

Worse, Plaintiffs' effort to suddenly introduce two new theories at the close of expert discovery lacks any legitimate justification. Neither Mr. Steinholt's opinion about the August 5, 2011 stock drop nor his new damages calculation relies on any evidence or

facts uncovered after disclosure of his initial report. By waiting until rebuttal, Plaintiffs plainly intended to sandbag Defendants with new theories after Defendants' expert had already submitted his own report. The Court should not tolerate this transparent gamesmanship. Mr. Steinholt's rebuttal report should be stricken in relevant part.

**BACKGROUND**

## I.   PROCEDURAL HISTORY.

This is a stock drop class action. Plaintiffs filed the operative Complaint on October 21, 2016, alleging three categories of claims. *See* Third Amended Complaint (the "Complaint" or "Compl."), Dkt. 225. *First*, Plaintiffs claimed that SandRidge issued Capital Expenditures ("CapEx") guidance that was false or misleading. *See, e.g., id.* ¶¶ 105–106. *Second*, Plaintiffs claimed that Defendants misleadingly failed to disclose certain alleged transactions between SandRidge and entities affiliated with SandRidge's CEO, Tom Ward (the so-called "Ward-related entities"). *See, e.g., id.* ¶¶ 81–104. *Third*, Plaintiffs claimed that Defendants misrepresented the performance of SandRidge wells in the Mississippian formation. *See, e.g., id.* ¶¶ 132–145.

In the Complaint, Plaintiffs alleged that the August 5, 2011 drop in SandRidge's stock price was caused by SandRidge's announcement that it was increasing its CapEx "in large part for land acquisition and development in the Mississippian (benefitting the land and mineral rights owned by the Ward-related entities)." *Id.* ¶ 204. Plaintiffs did not allege that the August 5, 2011 stock drop was caused by statements about the performance of SandRidge Mississippian wells. By contrast, Plaintiffs alleged that the November 9, 2012 stock drop was caused by the alleged disclosure that "SandRidge had

been overstating the value of its Mississippian assets throughout the Class Period." *Id.*
¶¶ 298–307.

Defendants moved to dismiss the Complaint and, on August 1, 2017, the Court
granted Defendants' motion in part. *See* Dkt. 239, 240. Specifically, the Court dismissed
Plaintiffs' claim that Defendants had issued false or misleading CapEx guidance, holding
that the statements related to CapEx guidance were protected by the PSLRA safe-harbor
as forward-looking statements. *See* Dkt. 239, at 24. The Court also dismissed Plaintiffs'
claim related to the Ward-related entities, holding that the Complaint failed to plead loss
causation with respect to the disclosures about transactions of the Ward-related entities.
*See id.* at 29. The Court denied the motion to dismiss Plaintiffs' claim concerning
information about the performance of Mississippian wells. As a result, only one stock
drop should remain in the case — the November 9, 2012 stock drop, which the
Complaint alleges occurred in response to disclosures about the Mississippian.[1]

---

[1] Since the August 2017 decision narrowing Plaintiffs' claims to a single stock drop,
Plaintiffs have made repeated efforts to improperly reintroduce the August 5, 2011 stock
drop into this case by connecting the stock drop to Defendants' statements about the gas-
to-oil ratio in the Mississippian. For example, in Plaintiffs' motion for class certification,
they argued for the first time that the price of SandRidge stock declined on August 5,
2011 as a result of the Company's announcement of an "unfavorable gas to oil mix." *See*
Dkt. 268, at 3. In their opposition brief, Defendants pointed out that Plaintiffs' claim that
the August 4 and 5, 2011 disclosures revealed an "unfavorable gas to oil mix" did not
appear in the Complaint, which instead pleads the opposite — that SandRidge announced
*increased* oil production and *failed to disclose* negative facts about the gas to oil ratio in
the Mississippian. *See* Dkt. 329, at 18–19; Dkt. 225 ¶ 200. Indeed, the Complaint does
not even allege facts establishing that Defendants had knowledge of Mississippian
underperformance until much later. *See, e.g.,* Dkt. 225 ¶ 320.

## II.     THE PARTIES' EXPERT DISCLOSURES.

Pursuant to the Court's Amended Scheduling Order, *see* Dkt. 399, Plaintiffs served the Expert Report of Bjorn I. Steinholt, Plaintiffs' damages expert, on March 1, 2019. Ex. 1 (the "Initial Report"). Mr. Steinholt's Initial Report argued that Defendants' allegedly false or misleading statements about SandRidge's Mississippian wells caused the price of SandRidge stock to be artificially inflated throughout the putative class period. *See id.* ¶ 12. According to Mr. Steinholt, "the inflation from the first misrepresentation that concealed the alleged truth … through its disclosure after the market closed on November 8, 2012, is at least $0.60 per share." *Id.* ¶ 81. Mr. Steinholt attached an exhibit to his Initial Report showing constant inflation of 60 cents per share on each day of the putative class period. *See id.*, Ex. D.

The Initial Report made clear that Mr. Steinholt's analysis was based on a single stock drop: the price decline on November 9, 2012. For example, Mr. Steinholt stated that "disclosure of the alleged truth" occurred on November 8, 2012, and that "[t]he quantification of the inflation, in this case, is simply the abnormal return on November 9, 2012 …." *Id.* ¶¶ 12, 80. Although Mr. Steinholt observed that Plaintiffs had made allegations about the August 5, 2011 stock drop, his Initial Report expressly declined to analyze that stock drop; instead, Mr. Steinholt purported to reserve the right to "supplement" his report related to that stock drop after the close of fact discovery. *Id.* ¶ 73.

In accordance with the Court's Second Amended Scheduling Order, *see* Dkt. No. 410, Defendants served the Expert Report of Steven R. Grenadier, Defendants' damages

expert, on April 4, 2019. *See* Ex. 2. Mr. Grenadier responded to the arguments raised in Mr. Steinholt's Initial Report, including by showing that Mr. Steinholt failed to articulate a "but-for" disclosure required to demonstrate loss causation (i.e., what the Defendants should and could have disclosed to avoid misleading the market) and to remove the price impact of confounding factors that affected the November 9, 2012 stock drop. *See id.* ¶¶ 6.a–b. In addition, Mr. Grenadier criticized Mr. Steinholt's claim that the alleged inflation in SandRidge's stock price remained constant throughout the putative class period because, under Plaintiffs' theory of liability, the alleged inflation should have fluctuated in response to factors that varied over the course of the putative class period, including the extent of SandRidge's holdings in the Mississippian and the relative market prices of oil and gas. *See id.* ¶¶ 6.c, 57–78. Like Mr. Steinholt's Initial Report, Mr. Grenadier's report focused only on the November 9, 2012 stock drop.

On April 29, 2019, Plaintiffs served the Rebuttal Expert Report of Bjorn I. Steinholt. *See* Ex. 3 (the "Rebuttal Report"). The Rebuttal Report introduced two new damages arguments that drastically altered Mr. Steinholt's analysis. *First*, the Rebuttal Report claimed to "supplement" the analysis in the Initial Report "to include damages related to the August 5, 2011 disclosure." *See id.* ¶ 70. The Rebuttal Report asserted for the first time that the increased CapEx SandRidge announced on August 5, 2011 produced the August 5, 2011 stock drop and that the announcement of increased CapEx was part of a "fraudulent scheme" to mask the underperformance of Mississippian wells. *Id.* ¶ 81. The Rebuttal Report opined that this alleged "fraudulent scheme" had a $0.81

per share impact that is recoverable "in addition to" the inflation purportedly demonstrated by the November 9, 2012 stock drop. *Id.* ¶ 83.

*Second*, the Rebuttal Report introduced an "improve[d]" approach for calculating per share inflation throughout the putative class period by shifting from a constant level of inflation to a new, variable inflation theory. *See id.* ¶ 65.  Unlike the constant level of inflation alleged in the Initial Report, the amount of alleged inflation calculated under this new method in the Rebuttal Report fluctuates on a daily basis, on some days ranging as high as $1.28 per share — more than double the $0.60 of inflation alleged in the Initial Report.  *See* Rebuttal Report, Ex. A.  As a result, the new methodology appears to dramatically increase the potential amount of Plaintiffs' damages.  The Rebuttal Report claims that Mr. Steinholt introduced this new approach to "improve" upon his previous approach by accounting for the relative movements in the prices of oil and gas throughout the putative class period, a problem which Mr. Grenadier pointed out in his expert report, and which Mr. Steinholt conceded was a flaw of his initial approach. *See id.* ¶ 65.  The Rebuttal Report does not, however, explain how the new method accounts for changes in the relative prices of oil and gas — let alone why it is appropriate for the alleged inflation to vary from day-to-day, sometimes significantly.

The deadline for Defendants' expert reports has passed, and accordingly, Defendants have not had — and will not have — an opportunity to respond to the two new damages theories introduced in the Rebuttal Report.  With Mr. Steinholt's deposition upcoming, and the deadline for the close of expert discovery looming, Defendants bring

this motion on an expedited basis to strike the portions of Mr. Steinholt's Rebuttal Report related to the August 5, 2011 stock drop or his new variable inflation methodology.

## ARGUMENT

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) provides that rebuttal reports must be limited to opinions "intended *solely* to contradict or rebut evidence on the same subject matter identified by another party." (emphasis added). Because an expert rebuttal report is limited to contradicting or rebutting the opposing party's expert report, the rebuttal report may not be used to advance new arguments in support of the expert's initial opinions. *See RMD, LLC v. Nitto Americas, Inc.*, No. 09-2056-JAR-DJW, 2012 WL 5398345, at *11 (D. Kan. Nov. 5, 2012); *Lowe v. CVS Pharmacy, Inc.*, No. 14 C 3687, 2017 WL 2152385, at *2 (N.D. Ill. May 17, 2017). "A party also may not use a rebuttal expert to introduce new legal theories." *Stephenson v. Wyeth LLC*, No. 04-2312-CM, 2011 WL 4900039, at *1 (D. Kan. Oct. 14, 2011). Purported "rebuttal" reports that "address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-CV-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. Apr. 21, 2016) (citation omitted).

Failure to comply with Rule 26(a) justifies exclusion of the expert disclosure at issue unless the failure was substantially justified and causes no prejudice to the opposing party. *See Matthews v. Pennsylvania Life Ins. Co.*, No. 2:12-CV-896-TC-PMW, 2014 WL 2818661, at *2 (D. Utah June 23, 2014). The non-moving party has the burden of

showing that it was substantially justified in failing to comply with Rule 26(a) and that its failure was harmless. *Spring Creek*, 2016 WL 1597529, at *4.

## I. MR. STEINHOLT'S OPINION CONCERNING THE AUGUST 5, 2011 STOCK DROP SHOULD BE STRICKEN.

### A. The Rebuttal Report's Discussion of the August 5, 2011 Stock Drop Improperly Supplements Mr. Steinholt's Initial Report.

Mr. Steinholt's analysis of the August 5, 2011 stock drop goes well beyond the scope of a proper rebuttal report. Mr. Grenadier's report did not even mention the August 5, 2011 stock drop, let alone analyze its causes and impact on Plaintiffs' damages claim. As a result, there was nothing related to this stock drop for Mr. Steinholt to "contradict or rebut" in his Rebuttal Report. Indeed, even Mr. Steinholt does not claim that his analysis is meant to contradict or rebut Mr. Grenadier's opinions. His analysis of the August 5, 2011 stock drop does not reference Mr. Grenadier's report at all. *Cf. Ashike v. Mullen Crane & Transp., Inc.*, No. 2:12-CV-0011, 2014 WL 61142, at *4 (D. Utah Jan. 8, 2014) (noting rebuttal report's failure to mention opposing expert's report as basis for finding that it was improperly "being used to bolster Plaintiff's case-in-chief").

In truth, Mr. Steinholt's analysis of the August 5, 2011 stock drop is an improper and belated attempt to bolster Plaintiffs' case-in-chief by advancing a completely new damages theory. *See Barcus v. Phoenix Ins. Co.*, No. 17-2492-JWL-KGG, 2018 WL 6933299, at *2 (D. Kan. Aug. 17, 2018) (striking rebuttal expert report that "only supports Plaintiff's primary contentions and does not rebut any new elements of the defense expert claims"). It is far too late in the day for Plaintiffs to reinvent their damages case in this manner. Plaintiffs bear the burden of proving loss causation and

damages, and were therefore required to submit a complete statement of Mr. Steinholt's opinions on these issues in the Initial Report. *See Stephenson*, 2011 WL 4900039, at *1. Waiting until rebuttal to present an entirely new basis for damages is improper and warrants exclusion. *See, e.g.*, *D'Andrea Bros. LLC v. United States*, No. 08-286C, 2012 WL 644010, at *3 (Fed. Cl. Feb. 10, 2012) (striking expert disclosure of new damages theory on rebuttal that increased potential damages).

Mr. Steinholt's concession that his analysis of the August 5, 2011 stock drop was intended to "supplement" his Initial Report confirms that the analysis is inappropriate and should be stricken.   Steinholt Rebuttal, ¶ 70.   Absent exceptional circumstances not present here, a party may not "supplement" its initial expert report on rebuttal. *See, e.g.*, *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005).   Under Rule 26(e), the right to supplement is reserved for the narrow circumstance where a "party learns that in some material respect the [prior] disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A).   It does not give "license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report or submit [a] supplemental expert report that states additional opinions or rationales or seeks to strengthen or deepen opinions expressed in the original expert report." *Bd. of Cty. Comm'rs of Cty. of Kay, Okla. v.*

*Freeport-McMoran Copper & Gold, Inc.*, No. CIV-12-601-C, 2013 WL 7802171, at *1 (W.D. Okla. Sept. 5, 2013) (citation and internal quotation marks omitted).[2]

Moreover, there is no legitimate justification for Mr. Steinholt's delay in offering opinions about the August 5, 2011 stock drop. The issue of whether the August 5, 2011 disclosure resulted in recoverable damages has been known to Plaintiffs since they filed their Amended Complaint six years ago, if not earlier. *See* Dkt. 75, ¶ 220. Mr. Steinholt himself expressly chose not to offer an opinion on this issue in his Initial Report even though he was aware of it at the time and, indeed, had known about the stock drop since submitting his report on class certification over a year ago. *See* Initial Report, ¶ 73; *see also* Dkt. 269-4, at ¶ 40. Moreover, the only evidence Mr. Steinholt cites in support of his analysis on "rebuttal," other than his Initial Report and the Complaint, are public disclosures from the putative class period such as press releases, earnings call transcripts, and analyst reports — all of which have been available to Plaintiffs since before this case was even filed. *See* Rebuttal Report, ¶¶ 70–83. Because nothing prevented Mr. Steinholt from making use of this information and offering opinions about the August 5, 2011 stock drop in his Initial Report, his delay is not and cannot be substantially justified. *See Matthews*, 2014 WL 2818661, at *2 (holding that new evidence presented in rebuttal expert report was improper because it related to "a key issue in this case from the outset").

---

[2] The fact that Mr. Steinholt purported to reserve the right to supplement his analysis later does not alter these well-established rules. *See Franklin v. United States*, No. 12-cv-1167-KBM/CEG, 2013 WL 11336866, at *4 (D.N.M. Dec. 19, 2013).

Finally, Defendants are prejudiced by this disclosure.  By waiting until rebuttal, after Defendants' only opportunity to serve expert reports, Plaintiffs deprived Defendants of any opportunity to respond.  The purpose of the expert disclosure rules is to safeguard against this kind of unfair surprise.  *See, e.g.*, *STS Software Sys., Ltd. v. Witness Sys., Inc.*, No. 1:04-CV-2111-RWS, 2008 WL 660325, at *2 (N.D. Ga. Mar. 6, 2008) ("The Court notes that Plaintiffs will suffer prejudice as a result of the untimely disclosure of these opinions because Plaintiffs' experts did not have an opportunity to respond to the new opinions submitted in Defendant's rebuttal reports."); *Baldwin*, 2005 WL 1300763, at *2 (finding prejudice where "[t]here is no disruption of trial, but discovery has now closed and defendant's belated disclosure comes when depositions are soon to commence").  Consistent with that purpose, the Court should strike all opinions in Mr. Steinholt's rebuttal report relating to the August 5, 2011 stock drop.

> B.     *Mr. Steinholt's Opinion Should Also Be Stricken as Contrary to this Court's August 2017 Order.*

Mr. Steinholt's analysis of the August 5, 2011 stock drop should be stricken for the additional and independent reason that the Court already has dismissed Plaintiffs' allegations related to that stock drop.  In the Complaint, Plaintiffs tied the August 5, 2011 stock price drop directly to two sets of claims that the Court dismissed in its August 2017 Order, the CapEx claims and the Ward-related entities claims:

> On August 4, 2011, among other things, Defendants announced that the Company was accelerating activities in the Mississippian and that the Company's capital expenditures were being increased by $500 million, from $1.3 billion to $1.8 billion due in large part to increased spending in the Mississippian, which benefitted the Ward-related entities .... In response to the Company's announcements on August 4, 2011 and

related Conference Call on August 5, 2011, the price of SandRidge common stock fell.

Compl. ¶ 343.  By order dated August 1, 2017, the Court dismissed both of these claims from the case, holding that the claims relating to SandRidge's disclosure of increased CapEx were barred by the safe harbor provision of the PSLRA and that Plaintiffs could not establish loss causation with respect to disclosures about the Ward-related entities. *See* Dkt. 239, at 20–24, 28–29.  Mr. Steinholt's Rebuttal Report is a transparent effort to circumvent this ruling and resuscitate Plaintiffs' claim arising from SandRidge's announcement of increased capital expenditures in August 2011.

Indeed, the Rebuttal Report makes no effort to argue that the disclosures on August 4 and 5, 2011 revealed any "truth" concerning the alleged underperformance of Mississippian wells.  For example, the Rebuttal Report does not argue, as Plaintiffs have previously, that the stock drop was caused by SandRidge's disclosures of a rising gas-to-oil ratio in the Mississippian.  Instead, the report rejects this theory and concedes that the August 5, 2011 stock drop resulted from the "swift and severe" reaction to SandRidge's decision to increase CapEx for 2011.  Rebuttal Report, ¶ 75.  This concession that the August 5, 2011 stock drop resulted from increased capital expenditures makes clear that the report is attempting to assert the very same claim about the market's reaction to increased capital expenditures that the Court previously dismissed from the case. Because the Court dismissed this claim from the case, Plaintiffs should not be allowed to resuscitate it by smuggling it into a purported Rebuttal Report.

## II.    MR. STEINHOLT'S NEW METHOD FOR CALCULATING INFLATION SHOULD BE STRICKEN.

In addition to introducing a new stock drop in his Rebuttal Report, Mr. Steinholt also introduces an entirely new method for calculating the alleged inflation in SandRidge's stock price.  While Mr. Steinholt's Initial Report opined that the level of inflation remained constant on each day of the putative class period at $0.60 per share, his Rebuttal Report argues that the amount of inflation changed daily.  This effort to radically revamp his method for calculating damages is not appropriate rebuttal.

A rebuttal report is not "an opportunity for the correction of any oversights in the plaintiff's case in chief." *Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 WL 1065668, at *1 (N.D. Okla. Apr. 17, 2009).  Nor may a rebuttal report "seek[] to strengthen, bolster, and expand the earlier report and opinions." *Franklin*, 2013 WL 11336866, at *3.  Indeed, Mr. Steinholt's shift to a variable inflation methodology would not have been appropriate even if he had submitted it as a supplemental opinion under Rule 26(e) "in a timely manner" after Mr. Grenadier's report.  Rule 26(e) does not provide "a second bite at the apple … to correct fatal defects" in an initial report. *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008).

Like Mr. Steinholt's analysis of the August 5, 2011 stock drop, the inclusion of this completely different damages methodology is neither substantially justified nor harmless.  In support of his new approach, Mr. Steinholt cites academic literature that was accessible to him when he wrote his Initial Report, including an article he relied on in his Initial Report. *Compare* Initial Report n.99, *with* Rebuttal Report n.111. Because

there is no question that this material was available to Mr. Steinholt before he submitted his Initial Report, he lacks any substantial justification for failing to consult this literature and to offer this "improve[d]" damages analysis at the time of his Initial Report.

Moreover, Defendants are significantly prejudiced by Plaintiffs' delayed disclosure. Mr. Steinholt's new approach appears to drastically increase Plaintiffs' damages claim by increasing the alleged inflation per share on nearly every day of the putative class period. *See* Rebuttal Report, Ex. A. It also raises several new potential problems for Plaintiffs' damages case, including how the rate of alleged inflation could vary on each day of the putative class period, sometimes substantially, even when there was no change in SandRidge's disclosures that could have affected the amount of inflation. But because the deadline for Defendants' expert reports passed over a month ago, Defendants' expert has not had the opportunity to respond to Mr. Steinholt's analysis or address these deficiencies. Nor is there even sufficient time remaining in the discovery schedule for such an analysis to take place. To avoid the obvious prejudice that would result from allowing Mr. Steinholt to present a completely new damages theory at this late hour, an order striking this portion of the Rebuttal Report is the proper remedy.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike paragraphs 65 through 83 and Exhibit A of the Rebuttal Expert Report of Bjorn I. Steinholt.

Dated:  May 17, 2019

Respectfully submitted,

CROWE & DUNLEVY

/s/ Evan G.E. Vincent

COVINGTON & BURLING LLP

Mark P. Gimbel (admitted *pro hac vice*)

mgimbel@cov.com

C. William Phillips (admitted *pro hac vice*)

cphillips@cov.com

The New York Times Building

620 Eighth Avenue

New York, NY 10018-1405

(212) 841-1000

Evan G.E. Vincent, OBA #22325

evan.vincent@crowedunlevy.com

324 North Robinson Avenue Suite 100

Oklahoma City, OK 73102

(405) 239-6696

*Attorneys for Defendants James D.*
*Bennett and Matthew K. Grubb*

CONNER & WINTERS, LLP

/s/ Kiran A. Phansalkar

Kiran A. Phansalkar, OBA #11470

(*Signed by filing Attorney with permission*
*of Attorney*)

kphansalkar@cwlaw.com

211 North Robinson

Oklahoma City, OK 73102

(405) 272-5711

*Attorneys for Nominal Defendant*
*SandRidge Energy, Inc.*

LATHAM & WATKINS LLP
J. Christian Word (*pro hac vice*)
christian.word@lw.com
Stephen P. Barry (*pro hac vice*)
stephen.barry@lw.com
Norman G. Anderson (*pro hac vice*)
norman.anderson@lw.com
David L. Johnson (*pro hac vice*)
david.johnson@lw.com
555 11th St. NW, Suite 1000
Washington, D.C. 20004-1304

Steven M. Bauer (*pro hac vice*)
steven.bauer@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111

CORBYN HAMPTON PLLC

*/s/ George S. Corbyn, Jr.*
George S. Corbyn, Jr., OBA #1910
(*Signed by filing Attorney with permission of Attorney*)
gcorbyn@corbynhampton.com
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK 73102
(405) 239-7055

*Attorneys for Defendant Tom L. Ward*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. CIV-12-1341-G |
| This Document Relates To: ALL ACTIONS. | |

## <u>DECLARATION OF MARK P. GIMBEL</u>

I, Mark P. Gimbel, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.     I am a member of Covington & Burling LLP ("Covington"), which serves as counsel to individual defendants James D. Bennett and Matthew K. Grubb and nominal defendant SandRidge Energy, Inc. ("SandRidge").  I have been admitted pro hac vice in the above-captioned action.  This declaration is based on my personal knowledge and on my examination of documents produced in discovery.

2.     I provide this declaration to submit certain exhibits cited in the memorandum of law submitted by nominal defendant SandRidge and defendants James D. Bennett, Matthew K. Grubb, and Tom L. Ward (collectively, "Defendants") in support of their motion to strike portions of Bjorn I. Steinholt's Rebuttal Expert Report in the above-captioned action.

3.      I made a good faith effort to resolve this dispute by meeting and conferring telephonically with Plaintiffs' counsel on May 17, 2019.   Because of the distance between Defendants' counsels' offices (in New York, New York) and Plaintiffs' counsel's offices (in Melville, New York) and the urgency of this matter, a personal conference was not feasible.   Despite our efforts to resolve this dispute, the parties were unable to reach agreement.

4.      Attached as **Exhibit 1** is a true and correct copy of the Expert Report of Bjorn I. Steinholt, CFA, served on March 1, 2019.

5.      Attached as **Exhibit 2** is a true and correct copy of the Expert Report of Steven Grenadier, Ph.D., served on April 4, 2019.

6.      Attached as **Exhibit 3** is a true and correct copy of the Rebuttal Expert Report of Bjorn I. Steinholt, CFA, served on April 29, 2019.

Executed on May 17, 2019 in New York, New York.


/s/ *Mark P. Gimbel*
Mark P. Gimbel

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2019, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

| | |
|---|---|
| Darren B. Derryberry | dderryberry@derryberrylaw.com |
| David A. Rosenfeld | drosenfeld@rgrdlaw.com |
| Evan J. Kaufman | ekaufman@rgrdlaw.com |
| Mario Alba | malba@rgrdlaw.com |
| Sean T. Masson | smasson@rgrdlaw.com |
| Scott A. Graham | scott@lawtulsa.com |
| Jonathan Horne | jhorne@rosenlegal.com |
| Laurence M. Rosen | lrosen@rosenlegal.com |
| Nicholas G. Farha | nick@farhalawfirm.com |
| C. Williams Phillips | cphillips@cov.com |
| Christopher Yuk Lun Yeung | cyeung@cov.com |
| Elisa S. Solomon | esolomon@cov.gom |
| Kiran A. Phansalkar | kphansalkar@cw.com |
| Mitchell D. Blackburn | mblackburn@cwlaw.com |
| Mark P. Gimbel | mgimbel@cov.com |
| Swati R. Prakash | sprakash@cov.com |
| David L. Johnson | david.johnson@lw.com |
| Everett C. Johnson, Jr. | everett.johnson@lw.com |
| James C. Word | christian.word@lw.com |
| Margaret A. Tough | margaret.tough@lw.com |
| Norman G. Anderson | norman.anderson@lw.com |
| Stephen P. Barry | stephen.barry@lw.com |
| Steven M. Bauer | steven.bauer@lw.com |
| John E. Barbush | j.barbush@coxinet.net |
| Richard W. Gonnello | rgonnello@faruqilaw.com |
| Avital O. Malina | amalina@rgrdlaw.com |
| Christopher T. Gilroy | cgilroy@rgrdlaw.com |
| Francis P. Karam | fkaram@rgrdlaw.com |
| Michael G. Capeci | mcapeci@rgrdlaw.com |
| Samuel H. Rudman | srudman@rgrdlaw.com |

*s/ Evan G. E. Vincent*

3