**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SANDRIDGE MISSISSIPPIAN TRUST I, et al.,<br><br>Defendants. | Case No. 15-CV-00634-G |
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. 12-CV-01341-G<br><br>Relating to All Actions |

**DECLARATION OF STEPHEN P. BARRY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION UNDER RULE 54(B)**

I, Stephen P. Barry, do declare and state as follows:

1. I am an associate at the law firm of Latham & Watkins LLP, counsel to Defendant Tom L. Ward ("Mr. Ward") in the above-captioned case. I am licensed to practice law in the District of Columbia and Virginia, and am admitted *pro hac vice* to this Court. I have personal knowledge of the facts stated in this declaration.

2. I submit this declaration in support of Defendants' concurrently filed Motion for Reconsideration Under Rule 54(B) (the "Motion for Reconsideration"). Listed immediately below are descriptions of the documents attached as exhibits hereto, with a recitation of certain relevant facts supporting the Motion for Reconsideration following thereafter.

3. Attached hereto as **Exhibit 1** is a true and correct copy of excerpts of the Deposition Transcript of Michael Hale (Dec. 7, 2018).

4. Attached hereto as **Exhibit 2** is a true and correct copy of excerpts of the Deposition Transcript of Maggie Silvertooth (Dec. 20, 2018).

5. Attached hereto as **Exhibit 3** is a true and correct copy of excerpts of the Deposition Transcript of [redacted] (Dec. 6, 2018). (Filed Under Seal)

6. Attached hereto as **Exhibit 4** is a true and correct copy of excerpts of the Deposition Transcript of [redacted] (March 18-19, 2019). (Filed Under Seal)

7. Attached hereto as **Exhibit 5** is a true and correct copy of excerpts of the Deposition Transcript of [redacted] (Nov. 29, 2018). (Filed Under Seal)

8. Attached hereto as **Exhibit 6** is a true and correct copy of a February 6, 2018 letter from my colleague, Christian Word, to Jonathan Horne, counsel for the *Lanier* Plaintiffs.[1]

9. Attached hereto as **Exhibit 7** is a true and correct copy of a February 15, 2018 letter from Mr. Horne to Mr. Word.

10. Attached hereto as **Exhibit 8** is a true and correct copy of email correspondence between counsel for Defendants and counsel for the *Lanier* Plaintiffs between March 19, 2018 and May 15, 2018.

11. Attached hereto as **Exhibit 9** is a true and correct copy of the *Lanier* Plaintiffs' April 13, 2018 Amended Initial Disclosures. (Filed Under Seal)

12. Attached hereto as **Exhibit 10** is a true and correct copy of a letter dated May 2, 2018 Mr. Horne.

13. Attached hereto as **Exhibit 11** is a true and correct copy my September 7, 2018 email to Mr. Horne.

14. Attached hereto as **Exhibit 12** is a true and correct copy of the *Lanier* Plaintiffs' Second Amended Initial Disclosures, dated September 7, 2018. (Filed Under Seal)

[1] The *Lanier* case is captioned *Duane & Virginia Lanier Trust, et al. v. SandRidge Mississippian Trust I, et al.*, Case No. 15-CV-00634-G (W.D. Okla.). The *Glitz* case is captioned *In re SandRidge Energy, Inc. Securities Litigation*, Case No. 12-CV-01341-G (W.D. Okla.).

15. Attached hereto as **Exhibit 13** is a true and correct copy of the *Lanier* Plaintiffs' Supplemental Responses and Objections to Defendant Tom L. Ward's First Set of Interrogatories to Lead Plaintiffs, dated September 7, 2018. (Filed Under Seal)

16. Attached hereto as **Exhibit 14** is a true and correct copy of Non-Party The Rosen Law Firm P.A.'s Responses and Objections to Defendants' Subpoena for Documents, dated March 11, 2019, along with the cover email transmitting the response.

17. Attached hereto as **Exhibit 15** is a true and correct copy of a March 12, 2019 letter from my colleague, Steven Bauer, to Josh Baker, counsel for the *Lanier* Plaintiffs.

18. Attached hereto as **Exhibit 16** is a true and correct copy of a March 13, 2019 letter from Mr. Baker to Mr. Bauer.

19. Attached hereto as **Exhibit 17** is a true and correct copy of email correspondence between Mr. Johnson and counsel for *Glitz* and *Lanier* Plaintiffs between December 3 and December 4, 2018. (Filed Under Seal)

20. Attached hereto as **Exhibit 18** is a true and correct copy of an Affidavit of Due Diligence from Jeff Cox, a Private Process Server, dated December 14, 2018. (Filed Under Seal)

21. Attached hereto as **Exhibit 19** is a true and correct copy of a February 13, 2018 letter from Mr. Gimbel to Mr. Gilroy.

22. Attached hereto as **Exhibit 20** is a true and correct copy of a March 9, 2018 letter from Mr. Word to Mr. Kaufman, counsel for the *Glitz* Plaintiffs.

23. Attached hereto as **Exhibit 21** is a true and correct copy of email correspondence between counsel for Defendants and counsel for *Glitz* Plaintiffs between March 30, 2018 and May 10, 2018.

24. Attached hereto as **Exhibit 22** is a true and correct copy of a May 11, 2018 letter from Christopher Gilroy, counsel for the *Glitz* Plaintiffs, to Christopher Yeung, counsel for Defendants James Bennett and Matthew Grubb. (Filed Under Seal)

***Lanier* Former Employees (15-CV-00634-G)**

25. On December 22, 2017, my client—Mr. Ward—issued interrogatories to Lead Plaintiffs in the action captioned *Duane & Virginia Lanier Trust, et al. v. SandRidge Mississippian Trust I, et al.*, No. 15-cv-00634-G (W.D. Okla.)—Ivan Nibur, Lawrence Ross, Jase Luna, Matthew Willenbucher, and the Duane & Virginia Lanier Trust (collectively, the "*Lanier* Plaintiffs"). Among other things, Mr. Ward requested the identities of the three purported former employees of SandRidge Energy, Inc. referenced anonymously in the Consolidated Amended Complaint (Dkt. 78) as "FE 1," "FE 2," and "FE 3." Specifically, Interrogatory No. 4 stated, in relevant part:

> Identify all persons with whom You have communicated concerning this Action, including, but not limited to, the following: (a) "Former Employee No. 1 ('FE 1')" mentioned in paragraph 64 of the Complaint; (b) "Former Employee No. 2 ('FE 2')" mentioned in paragraph 65 of the Complaint; (c) "Former Employee No. 3 ('FE 3')" mentioned in paragraph 66 of the Complaint; (d) "SandRidge CW 1" mentioned in paragraph 71 of the Complaint; and (e) "SandRidge CW 2" mentioned in paragraph 71 of the Complaint.

Defendants James Bennett and Matthew Grubb included a similar request in their November 22, 2017 interrogatories to the *Lanier* Plaintiffs.

26. Each of the six *Lanier* Plaintiffs served substantively identical responses to Mr. Ward's interrogatories between January 22, 2018 and January 27, 2018 refusing to provide identifying information for the three confidential witnesses cited in their complaint, and stating, in relevant part: "Plaintiff[s] object[] that information sufficient to identify FE 1, FE 2, and FE 3 is protected by the attorney work-product doctrine."

27. On February 6, 2018, my colleague, J. Christian Word, sent a letter to counsel for the *Lanier* Plaintiffs, Jonathan Horne, describing various deficiencies in the *Lanier* Plaintiffs' discovery responses. Among other things, Mr. Word advised: "Plaintiffs' refusal to name the three confidential witnesses—allegedly former SandRidge employees—on the grounds that 'information sufficient to identify' those individuals 'is protected by the attorney work-product doctrine' is simply wrong." Ex. 6 at 3. Accordingly, Mr. Word's letter reiterated the request that the *Lanier* Plaintiffs identify the three former-employee witnesses cited in their Consolidated Amended Complaint. *Id.*

28. Counsel for the *Lanier* Plaintiffs, Mr. Horne, responded by letter on February 15, 2018, asserting that "Ward is not entitled to know the identity of the confidential witnesses cited in the complaint, as that information is protected work product," and arguing that "Ward has not made any showing concerning his need for the information or his undue hardship in obtaining it." Ex. 7 at 2.

29. On March 8, 2018, I conferred telephonically with Plaintiffs' counsel, including Mr. Horne and his associate Josh Baker, with additional counsel for all Defendants and local counsel also in attendance. During the call, Mr. Horne reiterated

his work-product objection to identifying the three former-employee witnesses listed in the Consolidated Amended Complaint. Mr. Horne further stated that the *Lanier* Plaintiffs did not intend to rely upon FE1, FE2, and FE3 as witnesses at trial, and thus argued that Defendants had no need to discover the identities of those individuals. Finally, Mr. Horne stated that he or his investigator had promised or otherwise represented to the three former-employee witnesses that their identities would not be publicly disclosed. When pressed for details concerning any such promises or representations, Mr. Horne said he would check to see if such statements were in fact made to all three individuals.

30. On March 19, 2018, Mr. Horne wrote an email to counsel for all Defendants in the *Lanier* action stating: "We will amend our responses to interrogatories to name the confidential witnesses." Ex. 8 at 8.

31. On April 11, 2018, Christopher Yeung, counsel for Defendants James Bennett and Matthew Grubb, emailed Mr. Horne, stating: "It has been over three weeks since Plaintiffs agreed to name the confidential witnesses mentioned in the Complaint, but Plaintiffs still have not done so. Please disclose the names of the confidential witnesses by the end of the week." *Id.*

32. Two days later, on April 13, 2018, instead of serving amended interrogatory responses as promised, the *Lanier* Plaintiffs served Amended Initial Disclosures identifying three additional individuals as third parties likely to have discoverable information. These Amended Initial Disclosures did not specify which, if any, of these newly-disclosed individuals was "FE 1," "FE 2," or "FE 3." Ex. 9 at 3. Furthermore, despite adding only names and contact information for three individuals,

the *Lanier* Plaintiffs designated the entirety of their Amended Initial Disclosures as "Highly Confidential – Attorneys' Eyes Only," including all of the types of information that the *Lanier* Plaintiffs had previously included in their original initial disclosures without any confidentiality designation. Ex. 9.

33. On April 16, 2018, my colleague, David Johnson, sent the *Lanier* Plaintiffs' counsel an email requesting that the *Lanier* Plaintiffs (1) amend their interrogatory responses to identify the confidential witnesses, as Plaintiffs had committed to do on March 19, 2018; and (2) remove any confidentiality designation on the Amended Initial Disclosures and anticipated interrogatory responses insofar as "an individual's name and address is not non-public 'personal confidential information' within the meaning of the April 9 Protective Order, let alone 'extremely sensitive' information warranting a Highly Confidential designation." Ex. 8 at 7.

34. On April 19, 2018, Mr. Horne responded to Mr. Johnson's email, asserting that "[t]he names of the former employees are entitled to a confidentiality designation." However, Mr. Horne did not contend that the names of FE1, FE2, and FE3 were entitled to the Highly Confidential – Attorneys' Eyes Only designation that the *Lanier* Plaintiffs had applied to their Amended Initial Disclosures. *See id*. at 6.

35. Mr. Johnson then replied to Mr. Horne by email the same day, again asking the *Lanier* Plaintiffs to honor their representation that they would provide amended interrogatory responses identifying the former-employee witnesses, and also asking Mr. Horne to explain the basis for his claim that the former-employee witnesses' names are confidential. *See id*.

36. Mr. Horne did not respond to Mr. Johnson's April 19, 2018 email. *See id.* at 5-6.

37. On April 28, 2018, I sent another email to Mr. Horne again requesting amended interrogatory responses identifying the three former-employee witnesses. *See Id.* at 4-5.

38. The *Lanier* Plaintiffs responded by letter on May 2, 2018, stating: "We still do not understand what Defendants seek from this request. Defendants have been provided with the names and, if known, contact information of the confidential witnesses. Plaintiffs have no personal knowledge of the names or, for that matter, anything else concerning the confidential witnesses. Until we know what Defendants seek from this request, we will not produce amended interrogatory answers." Ex. 10 at 2.

39. On May 6, 2018, my colleague Mr. Johnson again wrote to Mr. Horne regarding this issue. Mr. Johnson again explained that the names and addresses of the former-employee witnesses cannot be properly designated as Confidential or Highly Confidential. Mr. Johnson requested that the *Lanier* Plaintiffs remove any confidentiality designation as to the former-employee witnesses' names, and also asked yet again that Plaintiffs produce the amended interrogatory responses they had committed to provide nearly two months earlier. *See* Ex. 8 at 3-4.

40. The next day, on May 7, 2018, Mr. Horne responded that "[s]ome confidentiality is necessary to protect the witnesses from retaliation," and added that the *Lanier* Plaintiffs were "willing to negotiate the scope of that confidentiality and associated provisions." *Id.* at 3.

41. Mr. Johnson and I spoke with Mr. Horne by phone later that same day — on May 7, 2018. During the call, the parties attempted to negotiate terms pursuant to which the *Lanier* Plaintiffs would be willing both to amend their initial disclosures (to exclude improper confidentiality designations) and to produce amended interrogatory responses containing identifying information for each individual former-employee witness. Mr. Johnson summarized the substance of the parties' tentative terms in an email to Mr. Horne the same day, as follows:

> 1. Plaintiffs will submit a second amended initial disclosure without any confidentiality designation. The amended initial disclosure will reference an exhibit containing the names and contact information of the three individuals identified in Section I(C) of plaintiffs' first amended initial disclosure. Plaintiffs may mark the exhibit as "CONFIDENTIAL" under the April 9, 2018 Stipulated Protective Order, subject to the additional limitation that the content of the exhibit will not be shared with SandRidge Energy's human resources personnel.
>
> 2. Plaintiffs will submit amended interrogatory responses identifying which of the three individuals is FE 1, which is FE 2, and which is FE 3, as referenced in the amended complaint. Plaintiffs may disclose that information in an exhibit to their amended interrogatory responses marked CONFIDENTIAL, with the additional limitation that the content of the exhibit will not be shared with SandRidge Energy's human resources personnel.
>
> 3. All parties will reserve their rights to challenge the designation of witness names and contact information as Confidential prior to the close of fact discovery. No party will argue that a challenge prior to the close of fact discovery to the designation of witness names and contact information as Confidential is untimely under Paragraph 6 of the Stipulated Protective Order.

Ex. 8 at 2.

42. Following that email, Mr. Johnson and I again spoke with Mr. Horne by phone. During the follow-up call, Mr. Horne claimed that different or additional confidentiality protections were needed for the former-employee witnesses, apart from the protective terms set forth in Mr. Johnson's May 7, 2018 email. Mr. Horne committed to propose further terms to fit his conception of the protection that the former-employee witnesses purportedly required.

43. A week later, Mr. Horne had not proposed any new confidentiality designation for the former-employee witnesses, nor any terms pursuant to which the *Lanier* Plaintiffs would be willing to amend their initial disclosures and interrogatory responses as requested. Thus, on May 14, 2018, I sent Mr. Horne an email reiterating Defendants' position that the *Lanier* Plaintiffs' designation of the witness names and addresses as Highly Confidential was improper. *See id*. at 1.

44. Mr. Horne responded to my email on May 15, 2018, stating that the *Lanier* Plaintiffs would re-serve initial disclosures with confidential designations subject to the conditions set forth in Mr. Johnson's May 7, 2018 email. *See id*.

45. Months then passed, while the parties were briefing class certification issues and a motion for partial judgment on the pleadings, without the *Lanier* Plaintiffs serving either amended interrogatory responses or amended initial disclosures identifying the former-employee witnesses. Thus, on September 7, 2018, I emailed Mr. Horne again requesting that the *Lanier* Plaintiffs comply with the parties' agreement. *See* Ex. 11.

46. Later the same day, the *Lanier* Plaintiffs served their Second Amended Initial Disclosures in compliance with the agreement discussed above, Ex. 12, as well as

Supplemental Responses and Objections to Mr. Ward's First Set of Interrogatories, which identified [redacted] as "FE 1," [redacted] as "FE 2," and [redacted] as "FE 3." Ex. 13 at 6.

47. On March 4, 2019, Defendants served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action on *Lanier* Plaintiffs' counsel the Rosen Law Firm. The Subpoena requested, among other things, "[a]ll Documents constituting or concerning any communications between You and any Confidential Witness," as well as "[a]ll Documents constituting or concerning any communications between You and any former employee of SandRidge Energy, Inc."

48. On March 11, 2019, the Rosen Law Firm submitted its Responses and Objections to Defendants' Subpoena for Documents. The cover email transmitting those responses stated that "The Rosen Law Firm's production as described in the responses is contingent upon Defendants' agreement not to share the contents thereof with human resources personnel of SandRidge Energy Inc., as was similarly agreed with respect to Exhibit A to Plaintiffs' supplemental responses to Defendant Ward's first set of interrogatories." Ex. 14 at 2.

49. The Rosen Law firm objected to the subpoena request for communications with "any former employee of SandRidge Energy, Inc.," as seeking "information or documents protected by the attorney-client privilege," among other objections. *See* Ex. 14, Response to Request Nos. 2-4. Nonetheless, the Rosen Law Firm agreed to produce "notes from a phone conversation" with FE 3 and "portions

of a memorandum" authored by the Rosen Law Firm's "investigator concerning FE 3." *See id.* The Rosen Law Firm, however, refused to produce any record of communications with FE 1 or FE 2 and stated that it was "withholding further responsive documents" based on its objections. *Id.*

50. On March 12, 2019, my colleague, Steven Bauer, sent a letter to counsel for the *Lanier* Plaintiffs, Josh Baker, asking: "1. After hearing the testimony of these witnesses, what is your basis to ask for an agreement to withhold any material from SandRidge employees? 2. What is your justification for agreeing to produce some responsive documents and not others? 3. When will you provide a privilege log?" Ex. 15.

51. Mr. Baker responded to the letter on March 13, 2019. Mr. Baker stated that the Rosen Law Firm insisted on withholding documents from SandRidge personnel because "[t]he documents we intend to produce include identifying characteristics of a confidential witness who is a former employee of SandRidge." Ex. 16. With respect to Mr. Bauer's two additional questions, Mr. Baker refused to provide any further explanation for the Rosen Law Firm's decision to produce documents relating to FE 3, but not FE 1 or FE 2; and also refused to specify when the Rosen Law Firm would produce a privilege log. *Id.* To date, Plaintiffs have not produced such a privilege log.

52. After learning the identities of the *Lanier* former employee witnesses, Defendants deposed or attempted to depose each of the former employees.

53. On December 6, 2018, Defendants deposed *Lanier* FE 1, identified as [redacted]. Defendants deposed [redacted] again on March 18-19, 2019.

54. On November 29, 2018, Defendants deposed *Lanier* FE 3, identified as [redacted]

55. Defendants attempted to serve a subpoena on *Lanier* FE 2, identified as [redacted], for a deposition on December 18, 2019. Defendants' process server attempted on four separate occasions to serve [redacted] Ex. 18.

56. On December 3, 2018, my colleague Mr. Johnson sent an email to Mr. Horne and Mr. Kaufman requesting that Plaintiffs' counsel accept service on behalf of [redacted] Ex. 17. Mr. Horne replied on December 4, 2018, stating that Plaintiffs lacked "authority to accept service on behalf of [redacted]" *Id.*

***<u>Glitz</u>* <u>Former Employees (12-CV-01341-G)</u>**

57. On November 15, 2017, Lead Plaintiffs in the case captioned *In re SandRidge Energy Inc.*, No. 12-cv-1341-G (W.D. Okla.)—Laborers Pension Trust Fund for Northern Nevada, Construction Laborers Pension Trust of Greater St. Louis, and Vladimir Galkin and Angelica Galkin (collectively, the "*Glitz* Plaintiffs")—served their Initial Disclosure Statement Pursuant to Federal Rule of Civil Procedure 26(A)(1). The section of that disclosure identifying individuals likely to have discoverable information included, among individuals, thirty-two current or former SandRidge officers, directors, and employees.

58. On December 29, 2017, Mr. Ward issued interrogatories to the *Glitz* Plaintiffs that—similar to the above-described requests issued in the *Lanier* action—

requested the identities of the individuals designated in the Third Consolidated Amended Complaint (Doc. No. 225) as "FE 1," "FE 2," and "FE 3." Defendants James Bennett and Matthew Grubb included a similar request in their December 6, 2017 interrogatories.

59. On January 24, 2018, the *Glitz* Plaintiffs responded to Mr. Ward's interrogatories. The *Glitz* Plaintiffs did not identify the three former-employee witnesses cited in the complaint. Instead, after objecting that "disclosure of a FE's identity could result in harassment or retribution against any or all of the FEs," the *Glitz* Plaintiffs referred Mr. Ward to their initial disclosures, which the *Glitz* Plaintiffs represented "disclosed the names of the FEs" among a list of other individuals "with knowledge or information concerning the matters at issue in this Action, and the Amended Complaint." The *Glitz* Plaintiffs included a substantively identical response to Mr. Bennett and Mr. Grubb's interrogatory seeking the same information.

60. On March 9, 2018, my colleague Mr. Word sent a letter to counsel for the *Glitz* Plaintiffs, Evan Kaufman, requesting that the *Glitz* Plaintiffs identify the former-employee witnesses cited in the Third Amended Consolidated Complaint instead of requiring Mr. Ward to blindly guess which of the thirty-plus individuals listed in the *Glitz* Plaintiffs' Initial Disclosure were the former-employee witnesses. Ex. 20 at 8-10. Counsel for Defendants Mr. Bennett and Mr. Grubb sent a letter to *Glitz* Plaintiffs requesting the same information on February 13, 2018. Ex. 19.

61. On March 30, 2018, counsel for all parties in the *Glitz* action participated in a telephone call to discuss outstanding discovery disputes. Counsel

for Mr. Bennett and Mr. Grubb, Christopher Yeung, summarized the portion of that telephone call relating to the former-employee witnesses in a March 30, 2018 email, as follows:

> Plaintiffs still were considering whether to identify the confidential witnesses referred to as Former Employee Nos. 1, 2, and 3 in the Third Amended Complaint, and any other former employees of SandRidge that Plaintiffs interviewed as part of Plaintiffs' counsel's pre-suit investigation, in response to Interrogatory Nos. 1 and 3 of Defendants Bennett and Grubb. To facilitate such disclosure, we were willing to agree that such identification in response to those interrogatories would not constitute a waiver of work product protection. You agreed to consider our proposal.

Ex. 21 at 2.

62. Mr. Kaufman did not respond to Mr. Yeung's email. *See* Ex. 21 at 1.

63. On May 8, 2018, Mr. Yeung emailed Mr. Kaufman again regarding the disclosure of the former employees' identities. *See id.*

64. On May 10, 2018, Mr. Kaufman responded: "Chris - I expect to get back to you today or tomorrow about the below." *Id.*

65. On May 11, 2018, counsel for the *Glitz* Plaintiffs wrote to Defendants and identified the former employees referenced in the Third Amended Consolidated Complaint. Their letter did not identify which former employee corresponded to which allegations in the Third Amended Consolidated Complaint. *See* Ex. 22.

66. After learning the identities of the former employee witnesses, Defendants deposed or attempted to depose each of the former employees.

67. On December 7, 2018, Defendants deposed *Glitz* FE 2, identified as Michael Hale.

68. On December 20, 2018, Defendants deposed *Glitz* FE 3, identified as Maggie Silvertooth.

69. Defendants attempted to serve a subpoena on *Glitz* FE 1, identified as [redacted], for a deposition on December 18, 2019. Defendants' process server attempted on four separate occasions to serve [redacted] Ex. 18.

70. On December 3, 2018, my colleague Mr. Johnson sent an email to Mr. Horne and Mr. Kaufman requesting that Plaintiffs' counsel accept service on behalf of [redacted] Ex. 17. Mr. Horne replied on December 4, 2018, stating that Plaintiffs lacked "authority to accept service on behalf of [redacted]" *Id.*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and abilities.

Executed this 2nd day of April 2020.

Stephen P. Barry *(admitted pro hac vice)*
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: stephen.barry@lw.com

*Attorney for Defendant Tom L. Ward*