# EXHIBIT 19

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated,
Plaintiffs,
vs.
SANDRIDGE MISSISSIPPIAN TRUST I et al.,
Defendants.

Case No.CIV-15-634-G

Volume I

VIDEO DEPOSITION OF LANCE GALVIN

TAKEN ON BEHALF OF THE LEAD PLAINTIFFS

ON JANUARY 8, 2019 BEGINNING AT 10:04 A.M.

IN OKLAHOMA CITY, OKLAHOMA

APPEARANCES:

On behalf of the Lead Plaintiffs:

MR. FRANCIS KARAM
MR. CHRIS GILROY (via telephone)
MR. EVAN KAUFMAN (via telephone)
ROBBINS, GELLER, RUDMAN & DOWD
58 South Service Road, Suite 200
Melville, New York 11747
631.367.7100
fkaram@rgrdlaw.com
cgilroy@rgrdlaw.com
ekaufman@rgrdlaw.com

ALSO PRESENT: Lynn Pittinger

(Appearances continued on Page 2)

Reported by:
Cheryl D. Rylant,
CSR, RPR,

Job No. 10051025

**data?**

MR. PHILLIPS: Objection to form.

THE WITNESS: I don't recall.

**Q. (By Mr. Karam) Did you offer methodologies to them?**

A. Again, I don't recall.

**Q. Did you criticize their methodologies at any time?**

A. I don't recall.

**Q. Did you, at any time, suggest that they change the parameters of their type curve?**

A. I don't specifically recall.

**Q. Do you recall -- well, describe for me the process by which Netherland Sewell created a type curve at the end of 2011 for SandRidge?**

A. I think I could describe a generic process. I don't know that I can recall and describe that specific time period process.

**Q. Okay. Well, do your best to be as close as possible to -- to what -- what happened in 2011. And if you can't, you can tell me generally.**

MR. PHILLIPS: Objection to form. I think he just told you that he can't and that he would tell you generally.

**Q. (By Mr. Karam) Tell me generally first, and**

**then we'll see if we can refresh your memory specifically.**

A. We would provide Netherland Sewell a database of PDP wells and the production, the daily production and monthly production data of those wells in a database form. They go and take that data and do their interpretation, their analysis, their evaluation, their forecast work, and use that data, then, to come up with type curves that would, then, be used as part of the reserve report.

**Q. Did you supply them with all of the data on the PDP wells? Forgive me for interrupting. Let's just confine ourselves to the Mississippian --**

A. Okay.

**Q. -- to SandRidge's Mississippian wells.**

A. Okay.

**Q. So -- so my question would be specifically, in -- at the end of 2011, did you supply Netherland Sewell, you being SandRidge, with all of the data for SandRidge's PDP wells in the Mississippian?**

A. "All of the data" is pretty broad. We provided them production data, we provided them well header information allowing them to generate maps. We provided them -- it's my recollection anyway that we provided them LOS/LOE information that would allow

them to validate the other input parameters for differentials in the LOE.

**Q. But you -- you did --**

MR. PHILLIPS: I'm sorry, were you finished?

THE WITNESS: I'm -- I'm finished.

**Q. (By Mr. Karam) Okay. You did provide them with all of the production information on the PDP wells in the Mississippian?**

A. To the best of my knowledge.

**Q. So let's take a look at -- this will be No. 17, Galvin No. 17.**

(Whereupon, Galvin Exhibit No. 17 was marked for identification and made part of the record.)

MR. KARAM: Does everyone have these, the document?

**Q. (By Mr. Karam) This is -- Galvin No. 17 is SandRidge_Securities_0456113.**

**Do you recognize this, Mr. Galvin?**

A. It was a long time ago. I was copied on this, though.

**Q. This is an e-mail sent by David Miller to you; is that correct?**

A. Correct.

wells, certainly.

**Q. And certain of them will be outside the area that's productive, right?**

A. Well, once you define what area is not productive, the goal would be to not drill in there.

**Q. That's always the goal, right?**

A. True.

**Q. The goal is to have every well be productive, right?**

A. That's true.

**Q. You don't want to spend $3 million drilling a well and have it not be productive, right?**

A. Uh-huh.

**Q. Is that yes?**

A. Yes.

**Q. So I guess what I'm saying is, the -- the reserves are a prediction into the future, and you can't rule out that future wells will be drilled in areas that will not be productive?**

A. That's true.

**Q. So do you know if these designations where it says "geographically distant from the core area, still optimizing drilling plans," this is all recorded on a map somewhere?**

MR. PHILLIPS: Objection.

**know, right?**

A. Correct. With specificity, we have not seen that list. And this was Mr. Miller's first pass with those wells excluded, and I don't know that his final pass excluded any wells.

**Q. Okay. So did -- did Ms. Austin have the authority on her own to exclude -- to suggest or make a list of wells to exclude from that yearend type curve?**

A. I mean, ultimately the authority lied -- lays with Netherland Sewell when they're making their -- their type curves that they're publishing. I think probably there was some conversation between Lindsey and others, myself potentially, Rodney Johnson, about we would suggest that these are the potential wells to exclude.

**Q. Anybody else besides your -- Lindsey Austin, yourself, and Rodney Johnson, who was involved, if you know?**

A. I don't know. There could be.

**Q. Who -- who could it be if it was?**

A. You know, the -- there could be geologists informing us about what was going on with a particular well that was, you know, in one of these geographically remote areas, that they would have

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated,
Plaintiffs,
vs.

SANDRIDGE MISSISSIPPIAN TRUST I et al.,

Defendants.

Case No.CIV-15-634-G

Volume II

VIDEO DEPOSITION OF LANCE GALVIN

TAKEN ON BEHALF OF THE LEAD PLAINTIFFS

ON JANUARY 9, 2019 BEGINNING AT 9:09 A.M.

IN OKLAHOMA CITY, OKLAHOMA

APPEARANCES:

On behalf of the Lead Plaintiffs:

MR. FRANCIS KARAM
MR. CHRIS GILROY (via telephone)
ROBBINS, GELLER, RUDMAN & DOWD
58 South Service Road, Suite 200
Melville, New York 11747
631.367.7100
fkaram@rgrdlaw.com
cgilroy@rgrdlaw.com

ALSO PRESENT: Lynn Pittinger

(Appearances continued on Page 227)

Reported by:
Cheryl D. Rylant,
CSR, RPR,

Job No. 10051026

**Mississippian Trust II?**

MR. PHILLIPS: Objection.

THE WITNESS: Could I get that again, please?

**Q. (By Mr. Horne) Yeah. No, that's -- that's -- that's definitely a fair qualification. Let me see if I can break it down.**

**So as of yearend 2011, SandRidge obtained a report from Netherland Sewell that included a type curve; is that correct?**

A. That reserve report would have included our PDP reserves and our PUD reserves that were based on the type curve.

**Q. Okay. And that report was used to generate reserve estimates for SandRidge Mississippian Trust II; is that correct?**

A. I don't know that I can recall -- I recall specifically if we used that or whether -- if there was an interim report prepared specifically for Trust II.

**Q. That's a good qualification.**

**The type curve from that report was used to generate the SandRidge Mississippian Trust II report; is that correct?**

A. I'd have to verify that, but I believe that