# EXHIBIT 7

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUANE & VIRGINIA LANIER TRUST, individually and on behalf of all others similarly situated, Plaintiffs, vs. SANDRIDGE MISSISSIPPIAN TRUST I, et al., Defendants. | Case No. CIV-15-634-G |
| In re: SANDRIDGE ENERGY, INC. SECURITIES LITIGATION, | Case No. CIV-12-1341-G |
| This Document Relates to: ALL ACTIONS | |

VOLUME I

VIDEOTAPED DEPOSITION OF RODNEY JOHNSON
TAKEN ON BEHALF OF THE PLAINTIFFS
IN OKLAHOMA CITY, OKLAHOMA
ON MARCH 14, 2019

REPORTED BY: DAVID BUCK, CSR

factors.

Q. (By Mr. Horne) Okay. And looking at this number of factors, SandRidge reached different conclusions for the west and the east however defined. Is that correct?

MR. PHILLIPS: Objection, lacks foundation.

THE WITNESS: I don't believe this is conclusive. This is early on intermediate work product.

Q. (By Mr. Horne) Okay. Well, then SandRidge reached different expectations. Is that correct?

MR. PHILLIPS: Objection, lacks foundation.

THE WITNESS: No, sir. I don't believe that's correct.

Q. (By Mr. Horne) Well, I mean, your e-mail says if we don't want to advertise the different expectation to the east.

Do you see that?

A. Yes, sir.

Q. Okay. So did SandRidge reach different expectations to the east?

MR. PHILLIPS: Objection, asked and answered, lacks foundation.

THE WITNESS: Intermediate work product, prior to Netherland Sewell doing their analysis.

Q. (By Mr. Horne) Did you mention to Netherland

Sewell that SandRidge had different expectations to the east at this time?

MR. PHILLIPS: Objection, assumes facts not in evidence.

THE WITNESS: I don't remember.

Q. (By Mr. Horne) Okay. Would it have been something that you should have shared with Netherland Sewell?

MR. PHILLIPS: Objection, lacks foundation.

THE WITNESS: Netherland Sewell is an independent engineering firm. They do their own independent engineering and we provided all the source data. And they would have been primarily responsible for booking a PUD expectation based on completed wells.

Q. (By Mr. Horne) Okay. And so Netherland Sewell is acting independent -- is analyzing independently of SandRidge. Is that correct?

A. Netherland Sewell is responsible for coming up an independent analysis with interaction as we've stated before.

Q. Okay. And what was SandRidge's function in Netherland Sewell's analysis?

MR. PHILLIPS: Objection, lacks foundation.

THE WITNESS: To provide data and interaction and discussion on engineering methodologies and -- and

approaches.

Q. (By Mr. Horne) Okay. And ana -- I'm sorry.

A. And Netherland Sewell would come up with their own independent thought.

Q. Okay.

MR. HORNE: Let's mark this --

THE REPORTER: Thirty-six, 36.

MR. HORNE: -- 36.

(Deposition Exhibit Number 36 marked for identification purposes and made part of the record.)

Q. (By Mr. Horne) And let me tell you that 36 is -- the first page of 36 is the metadata sheet for the following three documents and the first document is an e-mail Bates stamped SD-SECURITIES-0937646 and it's two attachments. And take a moment to review and let me know when you're done.

A. Okay.

Q. Okay. Can you tell me what 36 is?

A. Thirty-six looks like an intermediate work product in November looking at sensitivities.

Q. Okay. And what is a run?

A. I'm sorry?

Q. What -- Ms. Austin's e-mail says, Rodney mentioned he'd like to review the 100 bopd IP/no gas

MR. PHILLIPS: Objection.
THE WITNESS: I believe at this time we were recommending that -- that they be booked as probables.
Q. (By Mr. Horne) Okay. In the year-end 2010 process, did -- were offsets to vertical only step out production booked as PUDs?
A. I believe Netherland Sewell may have had some, yes. But I don't remember the specifics.
Q. Okay. Just -- I just want to clear it up. So, in year-end 2010 you believe that offsets to verticals only were booked as PUDs?
A. I believe there were some at the end of 2010, yes.
Q. Okay. Why the change?
A. This was a recommendation and I don't remember the specifics.
Q. Do you remember anything about the reason for the change?
A. No, sir.
Q. Why don't you turn --
A. And -- I'm sorry.
Q. No, no, that's all right.
A. For the record, it was a recommendation, preliminary work product as a recommendation to Netherland Sewell but Netherland Sewell hundred

percent engineered our reserves and was a hundred percent responsible for their decision.

Q. Okay. Why don't you turn to the second attachment, the one that looks like this. (Indicating.)

A. Okay.

Q. Now, I'm going to direct you to Page 3.

Do you see that?

A. Okay.

Q. Now, the title of the slide is Grant County 26 scattered wells, new area, recent significant success.

Do you see that?

A. Yes, sir.

Q. Okay. And do you have any reason to doubt that there were at least 26 wells drilled in Grant County at this point?

A. That's what the chart says, yes, sir.

Q. Okay. Now, can you turn to the first e-mail which is the letter from Mr. Galvin? Did you have any role in drafting this letter?

MR. PHILLIPS: You mean the first attachment, not the first e-mail?

MR. HORNE: Didn't I say the first attachment?

MR. PHILLIPS: No, you said first e-mail.