## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | No. CIV-12-1341-G<br>Relating to All Securities Actions |

### DEFENDANT SANDRIDGE ENERGY, INC.'S RESPONSE TO LEAD PLAINTIFFS' MOTION TO COMPEL AND BRIEF IN SUPPORT

Defendant SandRidge Energy, Inc. ("SandRidge"), by and through its counsel of record, offers the following response to the Lead Plaintiffs' Motion to Compel [Dkt. No. 463] and Brief in Support [Dkt. No. 464] (collectively, "the Motion"). The Motion, which seeks to compel different responses to requests for admission and additional information as well as document production related to certain meetings, oversteps the boundaries of discovery set out by the Federal Rules of Civil Procedure. The Rules do not, as Lead Plaintiffs desire, permit an order compelling a party to change previously-given responses to requests for admission. The Rules also demarcate the bounds of discovery not just with relevancy, as Lead Plaintiffs imply, but also with considerations of proportionality. Given the tremendous undertaking that SandRidge has already made in responding to discovery, obtaining the information Lead Plaintiffs now seek is wholly disproportionate to the needs of the case, especially since there is no clear evidence that the specific documents exist or would be located given SandRidge's previous exhaustive search.  SandRidge respectfully requests the Court deny the Motion entirely.

## I. SandRidge Has Responded to the Requests for Admission as Rule 36 Requires

At the outset, the Motion should be denied as to the Requests for Admission because the Federal Rules of Civil Procedure do not permit a party to seek an order compelling another party to change its response to a Request for Admission, as the Lead Plaintiffs seek here. Rule 37 states that a party may move to compel a response to a deposition question, designation of a corporate representative, an interrogatory response, or production or inspection of tangible things. Fed. R. Civ. P. 37(a)(3)(B)(i)-(iv). Noticeably absent from this list is a motion to compel any different response, and that absence demonstrates that Requests for Admission are not encompassed in the federal courts' power to compel. See Thymes v. Verizon Wireless, Inc., No. CV 16-66 KG/WPL, 2017 WL 4534838, at *4 (D.N.M. Feb. 9, 2017) ("Federal Rule of Civil Procedure 37 does not provide a mechanism by which parties may dispute responses to Requests for Admission."); cf. Salazar v. Bocanegra, No. 12CV0053 MV/LAM, 2012 WL 12903998, at *1 (D.N.M. July 27, 2012) ("The Court cannot force Plaintiff to admit any fact in this case.").[1]

Rule 36, which governs Requests for Admission, provides that a party may object to a request and must either admit, deny, or state that the matter cannot be admitted or denied. Fed. R. Civ. P. 36(a)(4)-(5). The evidence submitted with the Motion amply demonstrates that SandRidge, in addition to making objections, offered one of the relevant types of responses to each of the Requests for Admission at issue. See generally Exhibit K to Affidavit in Support [Dkt. No. 468]. It did not simply rest on its objections. In fact,

---

[1] A copy of these cases and all other unpublished cases referenced in this response are included as Exhibit 3, for the Court's convenience.

SandRidge's responses, which include partial admissions and partial denials of specific documents as opposing party statements and/or business records subject to Fed. R. Evid. 803(6), show that it made a careful determination of what should and should not be admitted. See id. at 8-9, 17-18. Thus, SandRidge has indisputably complied with Rule 36's mandate to admit, deny, or state an inability to admit or deny.

What Lead Plaintiffs want is for the Court to force SandRidge to change its previous denials to admissions, but this goes well beyond what Rule 36 would allow. Rule 36 states that a party may move to determine the sufficiency of an answer or objection to a Request for Admission. Fed. R. Civ. P. 36(a)(6). However, the question of sufficiency generally revolves around whether the response was specific to the request or whether, in the case of an inability to admit or deny the request, the explanation given provides enough detail. See Foretich v. Chung, 151 F.R.D. 3, 5 (D.D.C. 1993) (citing 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 2251 (1970)). As several district courts in this circuit have concluded, "a denial is specific and is a proper response to a request for admission, and a party is not required to state the reasons why it denied a request for admission." Thymes, 2017 WL 4534838, at *4; see also Ash Grove Cement v. Employers Ins. of Wausau, No. 05-2339-JWL, 2007 WL 2333350, at *2 (D. Kan. Aug. 16, 2007). While the responding party can explain the basis for its denial, "[t]he additional information provided is superfluous to the responsibility imposed by Rule 36 for Defendants to admit or deny the request. The Rule requires nothing more." Fatihah v. Neal, No. CIV-16-058-JHP, 2017 WL 2559992, at *3 (E.D. Okla. May 22, 2017), report and recommendation adopted, No. 16-CV-058-JHP, 2017 WL 2559943 (June 13, 2017).

Here, SandRidge partially admitted and partially denied the requests in question, and that is all the Rule requires. See Nat'l Semiconductor Corp. v. Ramtron Int'l Corp., 265 F. Supp. 2d 71, 74–75 (D.D.C. 2003) ("Hence, the validity, or *bona fides,* of a qualified answer to a request for admission must await the trial to see if the party forced to prove what was not admitted can meet the requirements of [Rule 37(c)(2)]."); see also Ash Grove, 2007 WL 2333350, at *2 ("The Court does not at this point determine the merit or lack of merit for the substantive content of a request for admission. This is not a dispositive motion.").[2] Accordingly, the Motion should be denied as to the Requests for Admission, as there is no basis for the motion.

## II. SandRidge Has Already Performed an Exhaustive Search Encompassing the Records Lead Plaintiffs Seek, Making the Motion's Request an Undue Burden and Disproportionate to the Needs of the Case

Lead Plaintiffs seek supplementation of SandRidge's responses to two interrogatories, but in doing so Lead Plaintiffs ignore the comprehensive efforts SandRidge has already made in responding to discovery. Lead Plaintiffs ask the Court to compel supplementation as to Interrogatory No. 10, which asks SandRidge to identify presentations made to its executive committee about the status of SandRidge's reserves, and Interrogatory No. 13, which asks SandRidge to identify all participants, presentations,

---

[2] Although not relevant at this time, SandRidge would note that Lead Plaintiffs in the Motion have not actually proven that SandRidge should have admitted the matters in question. For example, although the Lead Plaintiffs state with certainty that specific documents were created or authored by SandRidge's employees or agents, the documents themselves do not always support such certainty. Compare, e.g., Lead Plaintiffs' Brief in Support [Dkt. No. 464], at 11 (stating that Ex. A Nos. 1 and 15 were created by SandRidge employees), with Exhibit A to Affidavit in Support [Dkt. No. 467], at 4, 155 (identifying the documents' authors as "bdavis3" and "-32768" respectively). Lead Plaintiffs offer no evidence that "bdavis3" and "-32768" were SandRidge employees, only their own implicit assertion that they were. While specific responses as to each document would be a waste of judicial resources at this time, where Lead Plaintiffs have not yet attempted to prove the authenticity of the claimed evidence at trial, SandRidge believes that, as required by Rule 37(c)(2), it has reasonable basis to deny the requests made.

documents, and meeting minutes related to the July 12, 2012 "Mid-Year PUD Review." Yet in asserting their argument, Lead Plaintiffs make no mention of SandRidge's previous discovery efforts, even though the extent of those efforts demonstrates why Lead Plaintiffs' argument would impose an undue and disproportionate burden on SandRidge.

Discovery in this case has been extensive, as the Court undoubtedly knows. The parties appeared at a hearing on November 28, 2018 on a variety of discovery-related motions. See Minute Entry dated November 28, 2018 [Dkt. No. 387]. Among the many issues to be resolved that day was the scope of electronic discovery to SandRidge. See Exhibit 1, Yeung Declaration, at 2 and identified exhibits. As the Court may recall, during the November 28, 2018 hearing the parties agreed to sweeping e-discovery, using more than 250 search terms and search term combinations to obtain documents from fifteen different SandRidge custodians. Id. at 1-2. The custodians included each of the individuals named as a defendant in this case as well as several employees in SandRidge's Reservoir Engineering Department, most notably the head of that Department. Id. at 2. The search terms included a variety of terms that would have returned any documents or presentations related to SandRidge's reserves in the Mississippian formation, including both standalone terms for the Mississipian (e.g. "Mississipian," "Midcon*," "Horizontal Miss," "Miss Horizontal," "Miss hz," and "Miss lime") and search terms and combinations (for terms such as "PUD," "proved undeveloped," "type curve," "reserves," and "reserve report"). Id. at 2-3.

SandRidge carried out the agreed-upon searches using the agreed search terms and specified custodians, but in addition also carried out searches of the shared folders of the

Reservoir Engineering Department that did not belong to any individual custodian. Id. at 3. The Reservoir Engineering Department subfolders searched and produced included several directly related to Interrogatory Nos. 10 and 13, including those titled "Reserve Review," "Yearend Reserves," and "PUD Review" for the years 2011 and 2012. Id. SandRidge produced more than 500,000 individual documents encompassing more than 2.7 million pages as a result of its efforts. Id. at 1. The production process involved more than simply the efforts of outside counsel; many employees within SandRidge were required to assist in gathering, organizing, reviewing, and producing the documents. See Exhibit 2, Thompson Declaration, at 1. SandRidge personnel were required to identify the potential document repositories and custodians and then review the relevant drives for potentially responsive documents. Id. These employees often had to review these documents with outside counsel and would, at either outside counsel's or Lead Plaintiffs' counsel's request, review SandRidge's files manually for additional documents or information. Id. SandRidge conducted a separate but similar process to gather and produce e-mails. Id. at 2. This was not a simple process taking only a few days, or even weeks. Rather, the process "was iterative and lasted several months." Id. at 2.

Rule 33 permits a party to respond to an interrogatory through production of business records. Fed. R. Civ. P. 33(d). As may not be a surprise to the Court given the passage of time and reductions in SandRidge's personnel, SandRidge must rely on documents in making its responses to Lead Plaintiffs' interrogatories. Given the search terms used and the custodians/areas searched, the document production to date would include all of the documents SandRidge could reasonably locate regarding the meetings at

6

issue in Interrogatory Nos. 10 and 13. Lead Plaintiffs' counsel acknowledges that the prior production includes documents on those topics, counsel simply characterizes said production as "very few." <u>See</u> Exhibit N to Affidavit in Support [Dkt. No. 468], at 4. This is a tacit admission and acknowledgment that the production efforts, which Lead Plaintiffs agreed to, would in fact have located responsive documents and did in fact do so, but just not in quantity and scale of Lead Plaintiffs' hopes.   As implied by its counsel, SandRidge at this point is not aware of any additional documents not previously produced or other locations that it could search that might yield new responsive documents. <u>Id.</u> at 1.

In spite of this, Lead Plaintiffs ask the Court to compel SandRidge to return to the well for more.  This would impose an undue and disproportionate burden on SandRidge. The scope of discovery under Rule 26 includes information "that is relevant to any party's claim or defense **and** proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Relevance alone is not enough—the discovery must be both relevant and proportional. In evaluating proportionality, courts are to look to "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." <u>Id.</u> "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional, and all proportionality determinations must be made on a case-by-case basis." <u>Ad Astra Recovery Servs., Inc. v. Heath</u>, No. 18-1145-JWB-ADM, 2019 WL 4466903, at *4 (D. Kan. Sept. 18, 2019)

(quoting <u>Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.</u>, 322 F.R.D. 1, 6 (D.D.C. 2017)).

Here, the extensive search already accomplished tilts these factors in favor of denying Lead Plaintiffs' request. No party, not even SandRidge, currently knows whether the information that Lead Plaintiffs seek exists. For SandRidge to determine what information, if any, may still exist, it would have to perform a new search of its electronic files, presumably using less relevant search terms and searching in areas less likely to contain the information given that the most relevant terms and most likely sources of documents have been searched. In light of the extensive nature of SandRidge's initial searches—one that took numerous employees several months to complete and involved the hiring of a third-party vendor in addition to outside counsel, <u>see</u> Exhibit 2, Declaration of Thompson, at 1-2—requiring a new search just to determine if information still exists would impose an extreme burden and expense on SandRidge with minimal, if any, benefit to the case. Additionally, while Lead Plaintiffs have argued that the information is relevant, they have offered no argument for how requiring an additional ESI search would not be burdensome other than that "the information goes toward the key allegations in the case." Motion [Dkt. 466], at 17, 19. However, given that SandRidge has already produced documents regarding the meetings at issue and the individual defendants have testified about the presentations made during those meetings, the fact that additional documents—

if they exist at all—could "bolster Plaintiffs' scienter claims" does not outweigh the tremendous burden that an additional search would place on SandRidge.[3]

"Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." Murphy v. Deloitte & Touche Grp. Ins. Plan, 619 F.3d 1151, 1163 (10th Cir. 2010). Here, SandRidge has already searched for exactly the types of documents Lead Plaintiffs seek in exactly the places they are most likely to be located. They did so pursuant to an agreement between the parties as to how the search should be conducted. Lead Plaintiffs even agree that the search returned responsive information. What Lead Plaintiffs' request now is nothing more than a fishing expedition, in the hope that some new search—presumably with new search terms and of less obvious files than the previous search—will mysteriously discover what they seek. However, in light of the expense and effort involved in that search as well as SandRidge's previous efforts, such a search would be disproportionate to the needs of the case and so is outside the scope of discovery. Accordingly, the Court should deny the Motion as it pertains to Interrogatory Nos. 10 and 13.

## CONCLUSION

In view of the foregoing, Sandridge respectfully requests the Court deny the Motion in all respects.

---

[3] It is notable Lead Plaintiffs' Motion does not provide this Court any help as to why it is that what has been produced or testified to previously is inadequate for the needs of Lead Plaintiffs to oppose the various dispositive and Daubert motions recently filed.

Respectfully submitted,

s/ J. Christopher Davis
J. Christopher Davis, OBA No. 16639
Jason L. Callaway, OBA No. 31958
JOHNSON & JONES, P.C.
Two Warren Place
6120 S. Yale, Suite 500
Tulsa, Oklahoma 74136
Telephone: (918) 584-6644
Facsimile: (888) 789-0940
cdavis@johnson-jones.com
jcallaway@johnson-jones.com

And -

Herbert Beigel, *pro hac vice*
5641 N. Chieftan Trail
Tucson, AZ 85750
Telephone: 520-825-1995
Facsimile: 520-844-6215
hbeigel@me.com
**COUNSEL FOR DEFENDANT
SANDRIDGE ENERGY, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 16, 2020, a true and correct copy of the foregoing was filed and served via the CM/ECF e-file system and/or U.S Mail upon the following:

Amy H Bond     abond@cov.com
Avital O Malina     amalina@rgrdlaw.com
C Williams Phillips     cphillips@cov.com
Christopher T Gilroy     cgilroy@rgrdlaw.com
Christopher Yuk Lun Yeung     cyeung@cov.com
Darren B Derryberry     dderryberry@derryberrylaw.com
David A Rosenfeld     drosenfeld@rgrdlaw.com
David L Johnson     david.johnson@lw.com,
Elisa S Solomon     esolomon@cov.com
Evan G E Vincent     evan.vincent@crowedunlevy.com
Evan J Kaufman     ekaufman@rgrdlaw.com
Everett C Johnson , Jr     everett.johnson@lw.com
Francis P Karam     fkaram@rgrdlaw.com
George S Corbyn , Jr     gcorbyn@corbynlaw.com
Herbert Beigel     hbeigel@me.com
James C Word     christian.word@lw.com
Joe M Hampton     jhampton@hbplawok.com
John E Barbush     j.barbush@coxinet.net
Jonathan Horne     jhorne@rosenlegal.com
Jordan S Joachim     jjoachim@cov.com
Kiran A Phansalkar     kphansalkar@cwlaw.com
Laurence M Rosen     lrosen@rosenlegal.com
Margaret A Tough     margaret.tough@lw.com
Mario Alba     malba@rgrdlaw.com
Mark P Gimbel     mgimbel@cov.com
Mark S Reich     mreich@rgrdlaw.com
Michael G Capeci     mcapeci@rgrdlaw.com
Mitchell D Blackburn     mblackburn@cwlaw.com
Nicholas G Farha     nick@farhalawfirm.com
Norman G Anderson     norman.anderson@lw.com
Richard W Gonnello     rgonnello@faruqilaw.com
Samuel H Rudman     srudman@rgrdlaw.com
Scott A Graham     scott@lawtulsa.com
Stephen P Barry     stephen.barry@lw.com
Steven M Bauer     steven.bauer@lw.com
Swati R Prakash     sprakash@cov.com, swati-prakash-3569@ecf.pacerpro.com


s/J. Christopher Davis