## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) | No. 5:12-cv-01341-G<br><br>CLASS ACTION |
| ——————————————————— | ) | |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) | |
| ——————————————————— | ) | |

## PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF DEFINITIONS ..................................................................................x

I.      PRELIMINARY STATEMENT ............................................................... 1

II.     RESPONSE TO BENNETT AND GRUBB STATEMENT OF
        UNDISPUTED FACTS ........................................................................... 4

III.    RESPONSE TO WARD'S STATEMENT OF UNDISPUTED FACTS............... 11

IV.     PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS PRECLUDING
        JUDGMENT AS A MATTER OF LAW ................................................... 14

        A.      SandRidge Knowingly Overstated the Economics and Reserves for
                Its Holdings in the Mississippian.......................................... 14

                1.      SandRidge Pressured NSAI to Manipulate the 2011 and 2012
                        Type Curves .......................................................... 14

                2.      Defendants Knowingly Misrepresented the Economics of the
                        Mississippian ......................................................... 18

                3.      Defendants Ward and Grubb Had Motives to Misrepresent
                        the Mississippian ................................................... 28

        B.      The Individual Defendants Exercised Control Over and Influenced
                SandRidge's Day-to-Day Operations .................................... 30

        C.      SandRidge Common Stock Declines in Response to Negative News
                Related to the Fraud .............................................................. 31

V.      ARGUMENT .................................................................................... 32

        A.      Standard of Review .............................................................. 32

        B.      At Minimum There Are Disputed Facts About Whether Defendants
                Made Materially False and Misleading Statements ................. 33

                1.      Defendants Misrepresented Facts Concerning SandRidge's
                        Production and Reserves in the Mississippian................... 34

                2.      Defendants Misrepresented the Amount of Oil Relative to
                        Gas ...................................................................... 36

Page

    3.    Misleading Statements About the Geology and Consistency of the Mississippian .................................................................................. 38

C.    The Court Has Already Held that Defendants' Materially False and Misleading Statements Are Actionable ............................................. 39

    1.    As the Court Correctly Held, Defendants' Statements Are Not Protected by the Safe Harbor or Bespeaks Caution Doctrine ........... 45

    2.    Defendants Arguments About SandRidge's Production Results Are Without Merit .................................................................. 47

D.    Plaintiffs Do Not Assert Theories Not Alleged in the Complaint ................ 50

E.    There Is a Triable Issue of Fact on Scienter ..................................................... 51

    1.    There Is Direct Evidence of Defendants' Actual Knowledge .......... 52

    2.    Defendants' Attempts to Negate the Evidence of Scienter Are Contradicted by the Record and Legal Precedent ............................. 56

VI.    THERE IS NO BASIS FOR SUMMARY JUDGMENT ON LOSS CAUSATION ............................................................................................................. 61

VII.    DEFENDANTS ARE CONTROL PERSONS UNDER SECTION 20(A) ............ 64

VIII.    CONCLUSION ............................................................................................................. 65

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aldridge v. A.T. Cross Corp.*,
284 F.3d 72 (1st Cir. 2002) ................................................................................58, 59

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................32, 60

*Arizona v. California*,
460 U.S. 605 (1983).......................................................................................................39

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).......................................................................................................33

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)........................................................................................36

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002)..................................................................................47, 50

*Caiola v. Citibank, N.A., N.Y.*,
295 F.3d 312 (2d Cir. 2002).................................................................................47, 48

*Caremark, Inc. v. Coram Healthcare Corp.*,
113 F.3d 645 (7th Cir. 1997)........................................................................................63

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................4, 32, 62

*Del Noce v. Delyar Corp.*,
72 Civ. 1819-CLB, 1976 WL 813
(S.D.N.Y. July 30, 1976)........................................................................................43, 44

*Dobbs v. Anthem Blue Cross & Blue Shield*,
600 F.3d 1275 (10th Cir. 2010) ...................................................................................39

*Dougherty v. Esperion Therapeutics, Inc.*,
905 F.3d 971 (6th Cir. 2018)........................................................................................45

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).......................................................................................................62

**Page**

*Entek GRB, LLC v. Stull Ranches, LLC,*
    840 F.3d 1239 (10th Cir. 2016) ..................................................................39, 42

*Erber v. Williams Cos., Inc.,*
    No. 16-CV-131-JHP-FHM, 2017 WL 930828
    (N.D. Okla. Mar. 8, 2017), *aff'd,*
    *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.,*
    889 F.3d 1153 (10th Cir. 2018) ...................................................................... 44

*FindWhat Inv'r Grp. v. FindWhat.com,*
    658 F.3d 1282 (11th Cir. 2011) ...................................................................... 50

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,*
    No. 13-3935, 2015 WL 4879217
    (E.D. La. Aug. 14, 2015) ................................................................................ 59

*Gabriel Capital, L.P. v. NatWest Fin., Inc.,*
    122 F. Supp. 2d 407 (S.D.N.Y. 2000) ............................................................ 65

*Gebhart v. S.E.C.,*
    595 F.3d 1034 (9th Cir. 2010) ....................................................................... 52

*Hsingching Hsu v. Puma Biotechnology, Inc.,*
    No. 5ACV15-00865 AG(JCGx), 2018 WL 4945703
    (C.D. Cal. Oct. 5, 2018) ...........................................................................33, 63

*Huffman v. Saul Holdings Ltd. P'Ship,*
    262 F.3d 1128 (10th Cir. 2001) ..................................................................... 42

*In re BP p.l.c. Sec. Litig.,*
    No. 4:10-MD-2185, 2016 WL 3090779
    (S.D. Tex. May 31, 2016) ............................................................................... 47

*In re Celestica Inc. Sec. Litig.,*
    No. 07 Civ. 0312 (GBD), 2014 WL 4160216
    (S.D.N.Y. Aug. 20, 2014) .............................................................................. 34

*In re Emp. Sols. Secs. Litig.,*
    No. CIV 97-545-PHX-RGS-OMP, 1998 U.S. Dist. LEXIS 16444
    (D. Ariz. Sept. 29, 1998) ............................................................................... 43

**Page**

*In re Entropin, Inc. Sec. Litig.*,
   487 F. Supp. 2d 1141 (C.D. Cal. 2007) ................................................................. 61

*In re Genworth Fin. Inc. Sec. Litig.*,
   103 F. Supp. 3d 759 (E.D. Va. 2015) .................................................................... 43

*In re Gold Res. Corp. Sec. Litig.*,
   957 F. Supp. 2d 1284 (D. Colo. 2013) .............................................................. 46, 55

*In re Hansen Nat. Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................................. 57

*In re Ikon Office Solutions, Inc.*,
   277 F.3d 658 (3d Cir. 2002) .............................................................................. 57, 58

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................................................... 53

*In re Miller Indus., Inc.*,
   120 F. Supp. 2d 1371 (N.D. Ga. 2000) ................................................................. 52

*In re Novatel Wireless Sec. Litig.*,
   830 F. Supp. 2d 996 (S.D. Cal. 2011) ............................................................. 51, 62

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. Apr. 21, 2010) ......................................... 44, 56, 58

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
   209 F. Supp. 2d 1106 (D. Colo. 2002) .................................................................. 37

*In re Sprint Corp. Sec. Litig.*,
   232 F. Supp. 2d 1193 (D. Kan. 2002) ............................................................... 44, 45

*In re Vivendi Universal, S.A. Sec. Litig.*,
   No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 10695884
   (S.D.N.Y. Apr. 6, 2009) ....................................................................................... 63

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................. 44

**Page**

*In re Williams Sec. Litig.-WCG Subclass,*
   558 F.3d 1130 (10th Cir. 2009) ........................................................................... 64

*In re WRT Energy Secs. Litig.,*
   No. 96 Civ. 3610 (JFK), 1999 U.S. Dist. LEXIS 3883
   (S.D.N.Y. Mar. 31, 1999) ..................................................................................... 43

*In re Zagg, Inc. Sec. Litig.,*
   797 F.3d 1194 (10th Cir. 2015) ........................................................................... 52

*Janus Capital Grp., Inc. v. First Deriv. Traders,*
   564 U.S. 135 (2011) ...................................................................................... 64, 65

*Jensen v. Kimble*
   1 F.3d 1073 (10th Cir. 1993) ............................................................................... 49

*Julianello v. K-V Pharm. Co.,*
   791 F.3d 915 (8th Cir. 2016) ............................................................................... 45

*Karacand v. Edwards,*
   53 F. Supp. 2d 1236 (D. Utah 1999) ............................................................. 40, 44

*Lints v. Graco Fluid Handling (A) Inc.,*
   347 F. Supp. 3d 990 (D. Utah 2018) .................................................................... 32

*Lorenzo v. SEC,*
   139 S. Ct. 1094 (2019) ......................................................................................... 65

*Loudermilk v. Best Pallet Co., LLC,*
   636 F.3d 312 (7th Cir. 2011) ............................................................................... 60

*Lynn v. Maddox,*
   No. CIV.A. 12-3104-MLB, 2014 WL 6863462
   (D. Kan. Dec. 3, 2014) ........................................................................................... 1

*Maher v. Durango Metals, Inc.,*
   144 F.3d 1302 (10th Cir. 1998) ........................................................................... 65

*Martinez v. Roscoe,*
   100 F.3d 121 (10th Cir. 1996) ............................................................................. 42

**Page**

*Matrixx Initiatives, Inc. v. Siracusano,*
   563 U.S. 27 (2011) ....................................................................................................... 61

*McDonald v. Kinder-Morgan, Inc.,*
   287 F.3d 992 (10th Cir. 2002) ................................................................................ 48, 49

*McIlravy v. Kerr-McGee Coal Corp.,*
   204 F.3d 1031 (10th Cir. 2000) ..................................................................................... 42

*Meyer v. Jinkosolar Holdings Co., Ltd.,*
   761 F.3d 245 (2d Cir. 2014) .......................................................................................... 48

*Nguyen v. Radient Pharms. Corp.,*
   946 F. Supp. 2d 1025 (C.D. Cal. 2013) ................................................................... 49, 63

*Norton v. Liddel,*
   620 F.2d 1375 (10th Cir. 1980) ..................................................................................... 32

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
   380 F.3d 1226 (9th Cir. 2004) ....................................................................................... 52

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund,*
   135 S. Ct. 1318 (2015) ................................................................................................... 43

*P.H. Glatfelter Co. v. Voith, Inc.,*
   784 F.2d 770 (7th Cir. 1986) ......................................................................................... 51

*Patriot Exploration, LLC v. SandRidge Energy, Inc.,*
   951 F. Supp. 2d 331 (D. Conn. 2013) ....................................................................... 46, 47

*Provenz v. Miller,*
   102 F.3d 1478 (9th Cir. 1996) .............................................................................. 51, 52, 62

*Robert Edward Auctions, LLC v. Nash,*
   No. 10-3759, 2010 WL 11695034
   (D.N.J. Nov. 5, 2010) ..................................................................................................... 55

*Rodenfels v. PDC Energy,*
   No. 16-cv-00251-PAB-STV, 2017 WL 1197297
   (D. Colo. Mar. 30, 2017) ............................................................................................... 48

*Russillo v. Scarborough,*
   935 F.2d 1167 (10th Cir. 1991) ....................................................... 32

*S.E.C. v. Lucent Techs., Inc.,*
   610 F. Supp. 2d 342 (D.N.J. 2009)................................................... 57

*S.E.C. v. Phan,*
   500 F.3d 895 (9th Cir. 2007).............................................................. 49

*S.E.C. v. Todd,*
   642 F.3d 1207 (9th Cir. 2011) ........................................................... 65

*Sawant v. Ramsey,*
   No. 3:07-CV-980 VLB, 2010 WL 3937403
   (D. Conn. Sept. 28, 2010).................................................................. 41

*SEC v. Research Automation Corp.,*
   585 F.2d 31 (2d Cir. 1978)................................................................. 60

*Secs. & Exch. Comm'n v. McNamee,*
   481 F.3d 451 (7th Cir. 2007).............................................................. 59

*Sgalambo v. McKenzie,*
   739 F. Supp. 2d 453 (S.D.N.Y. 2010)..........................................46, 47

*Silverman v. Motorola, Inc.,*
   798 F. Supp. 2d 954 (N.D. Ill. 2011) ..................................51, 58, 59

*Simmons Invs., Inc. v. Conversational Computing Corp.,*
   No. 09-CV-2345 EFM/KMH, 2011 U.S. Dist. LEXIS 15962
   (D. Kan. Feb. 17, 2011) ..................................................................... 47

*Smithwick v. BNSF Ry. Co.,*
   No. 97-1025, 2020 WL 1318804
   (W.D. Okla. Mar. 20, 2020).............................................................. 32

*Truk International Fund LP v. Wehlmann,*
   737 F. Supp. 2d 611 (N.D. Tex. 2009) .............................................. 49

*TSC Indus., Inc. v. Northway, Inc.,*
   426 U.S. 438 (1976)............................................................................ 33

Page

*U.S. v. Erickson,*
   601 F.2d 296 (7th Cir. 1979)...............................................................58

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.,*
   426 F. Supp. 3d 864 (D. Kan. 2019)...................................................33

*Zinna v. Congrove,*
   755 F.3d 1177 (10th Cir. 2014).........................................................43

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78t(a)................................................................................................64
   §78u–4(b)(1)(A)-(B)...........................................................................34

Federal Rules of Civil Procedure
   Rule 56(a).............................................................................................4

17 C.F.R.
   210.4-10(a)............................................................................................8

**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995
   Pub. L. No. 104-67, 109 Stat. 737 (1995)......................................3, 44

## TABLE OF DEFINITIONS

| | |
|---|---|
| ¶__ | Paragraphs in the Third Consolidated Amended Complaint for Violations of Federal Securities Laws, ECF No. 225 (the "TAC"). |
| **b-factor or b-exponent** | Decline exponent in the Traditional Decline Analysis equation. |
| **Bennett** | Defendant James D. Bennett. Bennett was SandRidge's CFO during the Class Period. |
| **Barrel Oil Equivalent ("Boe")** | When a well produces both crude oil and natural gas, the production of the oil and gas is often expressed as "barrels oil equivalent" or "Boe." Converting gas volumes to the oil equivalent is customarily done on the basis of the heating content or calorific value of the fuel. Before aggregating, the gas volumes first must be converted to the same temperature and pressure. The conversion is 1.0 boe = 6.0 mscf. |
| **Barry Decl.** | Declaration of Stephen P. Barry in Support of Defendant Tom L. Ward's Motion for Summary Judgment, ECF No. 490. |
| **CHK** | Chesapeake Energy Corporation. |
| **Class Period** | February 24, 2011 through November 8, 2012, inclusive. |
| **Conventional Well** | A vertical or horizontal well which is completed with simple stimulation methods in which oil and gas can be economically produced given natural reservoir conditions. Does not include any wells completed with massive multi-stage hydraulic fracturing. |
| **Crane** | Plaintiffs' Oil and Gas Expert, Steven D. Crane, Crane Energy LLC. |
| **Crane Report** | Expert Report of Steven D. Crane, Crane Energy LLC, Evaluation of SandRidge Mississippian Lime Expected Oil & Gas Recoveries dated March 1, 2019 at n.53. |
| **Decline Curve analysis** | A method of estimating petroleum reserves by determining the natural production decline and extrapolating to predict future production. Manual of Oil and Gas Terms, 14th edition, Williams and Myers. |
| **Ex.** | Refers to the exhibits attached to the Declaration of Evan J. Kaufman In Support of Plaintiffs' Omnibus Opposition to Defendants' Motions for Summary Judgment. |
| **Estimated Ultimate Recovery ("EUR")** | Those quantities of petroleum that are estimated, on a given date, to be potentially recoverable from an accumulation, plus those quantities already produced therefrom. |

| | |
|---|---|
| **Gimbel Decl.** | Declaration of Mark P. Gimbel in Support of Defendants James Bennett's and Matthew Grubb's Motion for Summary Judgment, ECF No. 488. |
| **GOR** | Gas to oil ratio. In an oil field, calculated using measured natural gas and crude oil volumes at stated conditions. The percentage of oil is determined by the following formula: oil (bbls) / [ oil(bbls) + gas(BOEs)]. |
| **Grubb** | Defendant Matthew K. Grubb. Grubb was SandRidge's COO during the Class Period. |
| **Horizontal Well** | "Horizontal drilling is a technique whereby the well is initially drilled vertically and then turned and drilled horizontally at an angle to the vertical from anywhere from 79° to 104°. It encompasses high angle directional drilling of boreholes with lateral penetration through productive reservoirs. Horizontal drilling allows the wellbore to follow the desired formation. It is a widely used technique in North Dakota, the Austin chalk formation in Texas in the Appalachian basin." Manual of Oil and Gas Terms, 14th edition, Williams and Myers. |
| **Kaufman Decl.** | Declaration of Evan J. Kaufman In Support of Plaintiffs' Omnibus Opposition to Defendants' Motions for Summary Judgment. |
| **MBO** (aka mbbl and kbbl) | One thousand barrels of oil. Synonymous with mbbl and kbbl. |
| **MBOE** | One thousand barrels of oil equivalent. Sum of oil volume in thousand barrels plus gas volume converted to thousand barrels of oil equivalent. |
| **Mississippian, or Mississippian Play** | A Play is the "recognized prospective trend of potential prospects." The term Mississippian, or Mississippian Play refers to the geographic formation of potential development by SandRidge and offsetting operators during the class period in Oklahoma and Kansas during the Class Period. The Mississippian is a geological formation that extends hundreds of miles across northern Oklahoma and south-central Kansas. It ranges from a few hundred feet to as much as 1000 feet thick, and is composed of layers of limestone, chert and limey mudstones that were deposited in a shallow sea during the Mississippian geological period over 300 million years ago. |

| | |
|---|---|
| | Oil has been produced from the formation since the 1940s from conventional vertical wells. Beginning in 2007, horizontal well and hydraulic fracturing technology has been applied to extract oil from reservoirs within the Mississippian formation. |
| **MSJ** | The Motion for Summary Judgment of Defendants James Bennett and Matthew Grubb. |
| **MSJ at __** | Memorandum of Law in Support of the Motion for Summary Judgment of Defendants James Bennett and Matthew Grubb, ECF No. 480. |
| **MTD; MTD at _** | Motion of Defendants SandRidge, Bennett, Grubb *et. al* to Dismiss Plaintiffs' Consolidated Amended Complaint; ECF No. 133. |
| **MTD TAC; MTD TAC at __** | Motion to Dismiss Plaintiffs' Third Amended Complaint by SandRidge, Bennett and Grubb; ECF No. 227. |
| **NSAI** | Netherland Sewell & Associates, Inc. NSAI is a consulting firm providing "petroleum property analysis to industry and financial organizations and government agencies." (Source: NSAI website: https://netherlandsewell.com/about/) |
| **Opinion MTD TAC** | Opinion and Order on Defendants SandRidge, Bennett and Grubb's Motion to Dismiss Third Amended Complaint; ECF No. 239. |
| **Opinion WMTD TAC** | Opinion and Order on Defendant Ward's Motion to Dismiss Third Amended Complaint; ECF No. 240. |
| **PDP** | Proved Developed Reserves. PDPs are those Proved Reserves (see below) that are expected to be recovered from existing wells including Proved Reserves behind pipe. |
| **PES** | Pinnacle Energy Services (PES) is a consulting firm offering "an array of services ranging from: Reservoir Engineering, Economic Analysis, Geologic Mapping, Expert Testimony, Regulatory Support, to A&D Evaluations." (Source: Pinnacle Energy Services website: https://pinnacleenergy.com) |
| **Proved Oil and Gas Reserves** | An incremental category of estimated recoverable volumes associated with a defined degree of uncertainty Proved Reserves are those quantities of petroleum which, by analysis of geoscience and engineering data, can be estimated with reasonable certainty to be commercially recoverable, from a given date forward, from known reservoirs and underdefined economic conditions, operating methods, and government regulations. |

| PSAF | Plaintiffs' Statement of Additional Facts Precluding Judgment as a Matter of Law. |
|---|---|
| PUD | Proven Undeveloped Reserves. PUDs are those Proved Reserves that are expected to be recovered from future wells and facilities, including future improved recovery projects which are anticipated with a high degree of certainty in reservoirs which have previously shown favorable response to improved recovery projects. |
| Reasonable Certainty | If deterministic methods are used, the term reasonable certainty is intended to express a high degree of confidence that the quantities will be recovered. If probabilistic methods are used, there should be at least a 90% probability that the quantities actually recovered will equal or exceed the estimate.<br><br>A high degree of confidence exists if the quantity is much more likely to be achieved than not, and, as changes due to increased availability of geoscience (geological, geophysical, and geochemical), engineering, and economic data are made to the EUR with time, reasonably certain EUR is much more likely to increase or remain constant than to decrease. |
| ROR (aka "IRR") | Rate of Return, also referred to as internal rate of return ("IRR"). |
| RSUF | Plaintiffs' response to Bennett / Grubb Statement of Undisputed Facts. |
| RWSUF | Plaintiffs' response to Ward Statement of Undisputed Facts. |
| Steinholt | Plaintiffs' Loss Causation and Damages expert, Bjorn I. Steinholt, CFA. |
| TAC | Plaintiffs Third Amended Consolidated Complaint, ECF No. 225. |
| TPH | Tudor, Pickering, Holt & Co. TPH provides strategic and financial advice to investors, management teams, boards of directors, government bodies, and other professionals and participants in the global energy industry. (Source: Tudor Picking & Holt website: https://www.tphco.com) |
| Unconventional Well | Typically a horizontal well, but can be a vertical well, which is completed with massive multi-stage hydraulic fracturing. Normally applied in unconventional geology. |
| Vertical Well | A well drilled vertically from the surface down to the oil and gas producing formations. |

| Ward | Defendant Tom L. Ward. Ward was CEO during the Class Period. |
|---|---|
| WMSJ; WMSJ at _. | Defendant Tom L. Ward's Motion for Summary Judgment and Memorandum in Support, ECF No. 489. |
| WMTD; WMTD at _. | Tom L. Ward's Motion to Dismiss; ECF No. 134. |
| WMTD TAC; WMTD at _. | Tom L. Ward's Motion to Dismiss Plaintiffs' Third Amended Complaint; ECF No. 226. |

Class Representatives Laborers Pension Trust Fund for Northern Nevada, Construction Laborers Pension Trust of Greater St. Louis, and Angelica Galkin (collectively, "Plaintiffs"), by their undersigned counsel, hereby submit this omnibus response to the Motion for Summary Judgment of Defendants James Bennett and Matthew Grubb (ECF No. 479-80) and Defendant Tom L. Ward's Motion for Summary Judgment (ECF No. 489), and all related papers thereto.[1]

## I.   PRELIMINARY STATEMENT[2]

The evidence against Defendants is overwhelming and far exceeds the level needed to defeat summary judgment. Throughout the Class Period, Defendants Ward and Grubb repeatedly flashed the type curve for SandRidge's Mississippian wells before investors as an accurate representation of the economics and reserves of the Company's horizontal-well holdings in the Mississippian. At the same time, ███████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[1] Defendants Ward, Bennett, Grubb (the "Individual Defendants") and nominal defendant SandRidge, are collectively referred to herein as "Defendants."

[2] Defendants improperly seek to get around the page limitation for summary judgment motions by attaching voluminous charts as exhibits that make legal arguments. *See, e.g.*, Ward Appendixes A-D, ECF Nos. 489-1-489:4; Bennett/Grubb Appendixes 47-50, ECF Nos. 488:7-488:50; cf. Ex. 92, Appendix E, Misstatements Chart; Ex. 93, Appendix F, Plaintiffs' Response to Certain Portions of Defendants' Appendixes. "Any exhibits must comply with the rules and cannot contain argument, nor may they be used to circumvent the page limit for the response." *Lynn v. Maddox*, No. CIV.A. 12-3104-MLB, 2014 WL 6863462, at *1 (D. Kan. Dec. 3, 2014). Plaintiffs respectfully request that the Court not consider or strike those charts that make legal arguments.

Defendants that, contrary to the 52% oil and 48% gas represented on the 2011 type curve,

By the summer of 2011 through the end of the Class Period,

In fact,

Ex. 15, Ward Tr. Vol. II at 229:17-230:23.

Confirming

In fact,

---

[3] "Mbo" and "Mbbl" both refer to barrels of oil, in the thousands, and are used interchangeably herein.

█████████████████████████████████████████████████

████████████████████████████████████████████ Defendants,

however, never publicly disclosed that ████████████████████████████████

████████████████████████████ preventing investors from learning the true level of

SandRidge's reserves.

Faced with the mountain of evidence Plaintiffs have developed, Defendants have embarked on a campaign to exclude facts and distract the Court from the factual record. They misrepresent that facts which clearly support Plaintiffs' claims constitutes evidence of new "theories" or "claims," and they have filed a procedurally improper and meritless motion for reconsideration, based on mischaracterizations of evidence and the cherry-picked deposition testimony of former employees cited in the TAC. They also filed *Daubert* motions against both of Plaintiffs' experts, even though they are each highly qualified and reliable.

For example, in the guise of seeking summary judgment, Defendants improperly rehash the very arguments Judge West rejected at the motion to dismiss stage, contending that their false and misleading statements are protected by the PSLRA safe harbor or constitute opinion or puffery. But Judge West's well reasoned opinions finding Defendants' statements actionable are law of the case, and in any event there is nothing in the developed factual record making those arguments any more compelling now than they were before.

Defendants also argue they should be granted summary judgment on the element of scienter because they reasonably relied on NSAI and the accuracy of the type curve. The evidence shows, however, that ████████████████   ████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ This evidence creates a clear, material issue of fact about

whether ██████████████████████████████████████████████████████

████████████████████████████████████████████████ █████████

██████████████████████████████████████████████████████████

████████████████████████████████████ Yet they did not disclose those facts to

investors, as was required.

In addition, Defendants argue there are no material facts in dispute for loss causation, based on challenges to Plaintiffs' expert's conclusion that there were no negative confounding news events unrelated to the fraud that caused the decline in SandRidge common stock. Challenges to an expert's conclusions and credibility raise issues of fact inappropriate for summary judgment. The rest of Defendants' arguments, as discussed below, are without merit.

Summary judgment is appropriate only when the record shows that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because Defendants have failed to meet their heavy burden, Plaintiffs respectfully submit that summary judgment should be denied.

## II.   RESPONSE TO BENNETT AND GRUBB STATEMENT OF UNDISPUTED FACTS

For the sake of brevity, Plaintiffs do not dispute Nos. 1-3; 14, 17, 37, 40-41.

4.   Disputed.   SandRidge ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████. ¶¶146-48;152-54.[4] ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

5.    Disputed. SandRidge's statements, ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

6.    Disputed in part. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

7.    Disputed in part. ██████████████ ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[4] "¶" refers to the Third Consolidated Amended Complaint for Violations of Federal Securities Laws, ECF No. 225 (the "TAC").

[5] *See* Declaration of Evan J. Kaufman In Support of Plaintiffs' Omnibus Opposition to Defendants' Motions for Summary Judgment ("Kaufman Decl.") filed herewith.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Ex. 2, Crane Tr. at 149:10-24; 333:24-334:9.

8.    Disputed in part.  "EUR" or "estimated ultimate recovery" ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ ¶51.

9.    Disputed in part. ██████████████████████████████

████████████████████████████████████████████

████████████████████ Ex. 2, Crane Tr. at 149:10-24; 333:24-334:9; PSAF §IVA

below.

10.    Disputed in part. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Ex. 2, Crane Tr.

at 149:10-24; 333:24-334:9; PSAF §IVA below.

11.    Disputed. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

[7] Gimbel Decl. Ex. 1 at 0003102.

12.   Disputed.

Gimbel Decl. Ex. 15 at 0004613.

13.   Disputed in part.

15.   Disputed.

---

[6] *See* ECF No. 488, Declaration of Mark P. Gimbel in Support of Defendants James Bennett's and Matthew Grubb's Motion for Summary Judgment ("Gimbel Decl.") at Ex. 14 at 0002091; ECF No. 490, Declaration of Stephen P. Barry in Support of Defendant Tom L. Ward's Motion for Summary Judgment ("Barry Decl.") at Ex. 18, at 3.

[7] All emphasis is added, and internal citations and quotations omitted, unless otherwise specified herein.

Gimbel Decl. Ex. 18 at 0003214.

16.    Disputed in part.

¶59; *see also* Ex. 73, Rasor Rpt.; Ex. 13, Rasor Tr. at 27:7-20.

18-22. Disputed in part.

¶297.

23.    Disputed.

---

[8] *See* Ex. 69, Expert Report of Steven D. Crane, Crane Energy LLC, Evaluation of SandRidge Mississippian Lime Expected Oil & Gas Recoveries, dated March 1, 2019, at n.53 (the "Crane Rpt.").

██████████████████████████████████████████████████████████ Ex. 69,

Crane Rpt. at 5; 16; 17.

    24.   Disputed in part. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

§IV(A)(1).

    25-26. Disputed. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██ §IV(A)(1).

    27.   Disputed. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 9, Miller Tr. Vol. II

at 293:9-295:4.

    28.   Disputed ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Ex. 69, Crane Rpt. at 27-28; n.48, 49.

    29.   Disputed for the reasons stated in RSUF ¶23 above.

    30.   Disputed for the reasons stated in RSUF ¶¶25-26 above. ████████

███████████████████████████████████████████████████ Stark Tr.

at 100:9-25.

      31.    Disputed for the reasons stated in RSUF ¶¶25-26 above. ███████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 9, Miller Tr. Vol. II at

293:20-22.

      32.    Disputed. ███████████████████████████████████████

████████████████████████████████████. *See* §IV(A)(1) below.

      33.    Disputed. ███████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████ Ex. 28, R. Johnson Ex. 39.

      34.    Disputed. ███████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

[REDACTED] Ex. 24, R. Johnson Ex. 3.

35-36. Disputed in part. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

38.     Disputed.   Analysts generally, and Plaintiffs' expert Steinholt, viewed the potential Permian sale as positive or neutral for SandRidge.  *See* Ex. 83, 11/9/12 Stifel analyst report (positive); Ex. 82, 11/8/12 RBC analyst report (positive); Ex. 84, 11/12/12 Canaccord analyst report (neutral).   Defendants' expert [REDACTED] [REDACTED] Ex. 17, Grenadier Exs. 3-6 (positive reports) *cf.* Ex. 17, Grenadier Ex. 2 (describing Permian sale neutral, but not negative news).

He [REDACTED] [REDACTED]

[REDACTED] Ex. 5, Grenadier Tr. at 162:1-10; *compare* Ex. 12, Steinholt Tr. at 149:4-150:15.

39.     Disputed  in  part. [REDACTED]

[REDACTED]

[REDACTED].[9]  *See also* ¶¶242-243.

## III.    RESPONSE TO WARD'S STATEMENT OF UNDISPUTED FACTS[10]

5.      Disputed for the reasons stated in Plaintiffs' responses to the Statement of

---

[9] "Steinholt Rpt." refers to the Expert Report of Bjorn I. Steinholt, CFA, dated March 1, 2019 attached as Ex. 70.  *See* Ex. 71, Rebuttal Expert Report of Bjorn I. Steinholt, CFA dated April 29, 2019 at ¶11 ("Steinholt Rebuttal").

[10] Plaintiffs do not dispute Ward Nos. 1-4, 18, 26.

Undisputed Facts by Defendants Bennett and Grubb ("RSUF"), ¶¶5 and 15-16, above.

6.   Disputed for the reasons stated in RSUF, ¶¶7, 25-26, 30 above.

7.   Disputed for the reasons stated in RSUF, ¶¶25-26, 30 above. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

8.   Disputed for the reasons stated in RSUF, ¶¶28-29, above. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Barry Decl. Ex. 112 at 1.

9.   Disputed for the reasons stated in RSUF ¶¶25-26, 28, 30, above.

10.   Disputed for the reasons stated in RSUF ¶30, above. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

11.   Disputed for the reasons stated in RSUF ¶30, above. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ward Decl. ¶5;

RSUF ¶30, above and §IV(A)(1) below.

12.   Disputed in part for reasons stated in RSUF ¶27 ▮▮▮▮

▮▮

13.   Disputed for the reasons stated in RSUF ¶30. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  Ex. 69, Crane Rpt. at 28-29.

14-15. Disputed in part for the reasons stated in RSUF ¶30 and in §IV(A)(1) below.

16.   Disputed in part with respect to the veracity of ████████████████

████████████████████████████████████████████████████████████

████████████████████████  Ex. 46, Miller Ex. 37.

17.   Disputed in part with respect to the veracity of ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████  Ex. 77, SD-

SECURITIES-0005586, at 5615; 5642.

19.   Disputed for the reasons stated in RSUF ¶11 above.

20.   Disputed in part. ████████████████████████████████

████████████████████████████████████████████████  §IV(A)(2)

below.

21.   Disputed in part. ████████████████████████████████

████████████████████████████████████████████████████

█ §IV(A)(2) below.

22-23. Disputed in part for the reasons stated in RSUF ¶¶4, 12 above. ████

████████████████████████████████████████████████████

████████████████████████████  §IV(A)(2)(e).

24.   Disputed for the reasons stated in RWSUF ¶¶21-23 above. ████████

- 13 -

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ §IV(A)(2)(e) below.

25.   Disputed for the reasons stated in RWSUF ¶24 above. ██████████████

██████████████████████████████████████ Ex. 44, Miller Ex. 22.

27.   Disputed in part. ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

## IV.   PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS PRECLUDING JUDGMENT AS A MATTER OF LAW

Plaintiffs submit the following statement of additional facts ("PSAF") which undercut

Defendants' claim that they are entitled to judgment as a matter of law.

### A.   SandRidge Knowingly Overstated the Economics and Reserves for Its Holdings in the Mississippian

████████████████████████████████████

#### a.   2011 Type Curve

1.   ████████████████████████████████████

Ex. 46, Miller Ex. 37 at 1.

2.

Ex. 52, Walton Ex. 11.

        **b.**    **2012 Type Curve**

3.

███████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████ Ex. 45, Miller Ex. 23.

4.   ████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████ Ex. 11, Stark Tr. at 129:12-24.

5.   ████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

6.

7.

2. **Defendants Knowingly Misrepresented the Economics of the Mississippian**

8.

9.



10.

11.

12.

13.

14.

15.

c.

16.

17.



18.

19.



20.



21.





25.

26.

27.

---

[14] The Crane Report uses the synonymous term, "kbbl", which also means "thousand barrels of oil." *See https://petrowiki.org/Glossary:Kbbl/d; cf. https://www.petropedia.com/definition/4727/barrel-bbl-oil-production.*



28.   Plaintiffs'

Ex. 69, Crane Rpt. at 2-4; 42.

29.



30.

31.

32.

---

[15] Ex. 67, SandRidge Energy, Inc. Form 8-K filed with the SEC on June 19, 2013.

**B. The Individual Defendants Exercised Control Over and Influenced SandRidge's Day-to-Day Operations**

33.     Defendants Ward, Grubb and Bennett each had control over SandRidge and its

statements.  Defendant Bennett served as the CFO during the Class Period and

34.     During the Class Period,



## C.    SandRidge Common Stock Declines in Response to Negative News Related to the Fraud

35.    As discussed more fully in the expert reports of Bjorn Steinholt, when the alleged truth about the Mississippian was publicly disclosed after the market closed on November 8, 2012 and before the market opened on November 9, 2012, SandRidge's stock price declined, causing Class members to suffer economic damages as a result of the alleged fraud (*i.e.*, disclosure of the alleged truth).[16] There were no negative news events unrelated to the fraud alleged by Plaintiffs and the disclosure of the alleged truth caused all of Plaintiffs' and the Class's losses on November 9, 2012. *Id.*; ¶72. The price impact of the disclosure of the alleged truth on November 9, 2012 was 9.9%, or $0.60 per share, and represents the inflation from the first actionable misrepresentation concealing the alleged truth about the Mississippian until the disclosure of the alleged truth, *e.g.*, that it produced less oil (and more gas) than publicly represented, and production was not uniform.

---

[16] Ex. 70, Expert Report of Bjorn I. Steinholt, CFA dated March 1, 2019 ¶12 ("Steinholt Rpt.").

*See id.*, ¶12.

## V. ARGUMENT

### A. Standard of Review

"Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim." *Smithwick v. BNSF Ry. Co.*, No. 97-1025, 2020 WL 1318804, at \*5 (W.D. Okla. Mar. 20, 2020) (J. Goodwin). Summary judgment is only appropriate when, viewing the record in the light most favorable to the nonmoving party, "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor." *Smithwich*, 2020 WL 1318804, at \*5 (citing *Celotex*, 477 U.S. at 322). The court must resolve all ambiguities, and credit all factual inferences that could be drawn, in the nonmovant's favor. *Anderson*, 477 U.S. at 255. "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Lints v. Graco Fluid Handling (A) Inc.*, 347 F. Supp. 3d 990, 994 (D. Utah 2018). Finally, a motion for summary judgment "must be denied unless the moving party demonstrates its entitlement beyond a reasonable doubt." *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir. 1980) (citation omitted).

## B.  At Minimum There Are Disputed Facts About Whether Defendants Made Materially False and Misleading Statements

"'Generally, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact' – here, the jury." *Hsingching Hsu v. Puma Biotechnology, Inc.*, No. 5ACV15-00865 AG(JCGx), 2018 WL 4945703, at *6 (C.D. Cal. Oct. 5, 2018); *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 873-74 (D. Kan. 2019). A misrepresentation is material if there is a "'a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). A determination of materiality "'requires delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him,'" and these assessments are peculiarly ones for the trier of fact. *Id.* at 236 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). "Only if the established omissions are 'so obviously important to an investor, that reasonable minds cannot differf' . . . is the ultimate issue of materiality appropriately resolved 'as a matter of law' by summary judgment." *Id.*

Defendants █████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████ The evidence raises clear fact questions about whether Defendants made "untrue statement[s] of a material fact," and omitted facts "necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading[.]"

- 33 -

15 U.S.C. §78u–4(b)(1)(A)-(B).

### 1. Defendants Misrepresented Facts Concerning SandRidge's Production and Reserves in the Mississippian

The TAC alleges that during 2011, Defendants misrepresented the economics of the Mississippian and overstated the amount of oil relative to natural gas (¶133), and by March 2012, Defendants knew, or recklessly disregarded, that they overstated the oil EUR and total oil and gas EUR for SandRidge's Mississippian horizontal wells. *See, e.g.*, ¶¶135, 139, 248-49. The evidence developed during discovery, █████████████      ████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

Defendants ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████        *See In re Celestica Inc. Sec. Litig.*, No. 07 Civ. 0312 (GBD), 2014 WL 4160216, at *5, *9 (S.D.N.Y. Aug. 20, 2014) (evidence that raises a triable issue of fact is sufficient to withstand summary judgment). And Plaintiffs' expert, Crane, will testify that based on the facts ██████████████████████████████████████████████████

███████████████████████████████████████████████████



Defendants

For example,

[REDACTED]

*See, e.g., Berson v.*

*Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors"). Defendants Ward and Grubb made similar misleading statements during the Class Period (*i.e.,* on 2/7/12, 2/17/12, 3/12/12, 4/17/12, 5/4/12). *See* ¶¶228; 231; 241; 250; 257.

Defendants also [REDACTED]

[REDACTED]

*See, e.g.,* Ex. 92, Appendix E, §§A; B; *see also* ¶257.

### 2.   Defendants Misrepresented the Amount of Oil Relative to Gas

Throughout 2011, SandRidge consistently represented that production from its horizontal Mississippian type well yielded 52% oil and 48% natural gas. *See, e.g.,* 2/7/11 Credit Suisse 2011 Energy Summit (¶142), 3/1/11 Investor Conference (¶166); 6/3/11 Annual Shareholders Meeting (¶196); 11/16/11 Bank of America- Merrill Lynch - Global Energy Conference (¶219); *see also* 3/7/11 Raymond James conference, Defendant Grubb discussing the "high rate of return" of the Mississippian, "of which about half of it is crude oil and half of it is gas." (¶168). Defendants, however, [REDACTED]

[REDACTED]

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

Defendants  also  ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

Defendant  Ward  argues  ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  At minimum, it is an issue of fact

whether a reasonable investor would have  ███████████████████████

████████████████████  *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106,

1110 (D. Colo. 2002) (noting that, "[o]ften, the mere difference in characterization of the

facts demonstrates a genuine dispute").

### 3.   Misleading Statements About the Geology and Consistency of the Mississippian

Defendants misrepresented the geological makeup and consistency of the

Mississippian and connected the economics of the Mississippian with consistency. ¶154.

Defendants

Defendants

---

[17] Defendant Ward also

███████████████████████████████████████████████

███████████████████████████████████

### C.   The Court Has Already Held that Defendants' Materially False and Misleading Statements Are Actionable

Defendants Bennett's and Grubb's primary argument, joined by Defendant Ward (WMSJ at 13), is that their statements about the Mississippian are inactionable forward-looking statements.  MSJ at 15; WMSJ at 13.  ██████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

Defendants act as if Judge West's well-reasoned and thorough opinions on Defendants' motions to dismiss are not binding.  Those opinions, however, are firmly binding under the law of the case doctrine – "a fundamental precept of common-law adjudication" which provides that "an issue once determined by a competent court is conclusive." *Arizona v. California*, 460 U.S. 605, 619 (1983) (citations omitted).  And the issues it resolved (*i.e.*, whether Defendants' statements concerning SandRidge's production and reserves in the Mississippian are actionable), remain dispositive.  As the Tenth Circuit held, the "[l]aw of the case doctrine rightly bars the way, precluding the relitigation of issues either expressly or implicitly resolved in prior proceedings in the same court." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016) (citing *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1280 (10th Cir. 2010)) ("[T]he law of the case

doctrine applies to issues previously decided, either explicitly or by necessary implication.").

Defendants are improperly asking the Court to both overrule Judge West and reverse the law of the case which has been in effect for nearly three years and has guided extensive fact and expert discovery, and motion practice. Furthermore, the issues Defendants seek to relitigate here – the actionability of Defendants' statements about the type curve and SandRidge's reserves in the Mississippian – are those resolved at the motion to dismiss stage. MSJ at 23; *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1243 (D. Utah 1999) (courts "must determine, *at the pleading state*, whether a company's forward-looking statements fall within the Safe Harbor").

In an effort to circumvent the law of the case doctrine, Defendants ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████ Defendants argued in both their motions to dismiss the AC and the TAC that the same statements they challenge here are forward-looking and not actionable. ECF No. 133 at p.1, 16-18; ECF No. 189 at 24; ECF No. 227 at 3 (SandRidge, Bennett, Grubb).[18] And contrary to their statement, the Court "did not have occasion . . . to address the applicability of the safe harbor for forward-looking statements relating to Mississippian production" (MSJ at 18, note 3), Judge West had *two occasions* to address

---

[18] *See also* ECF No. 109 at n.1; ECF No. 226 at 1 (Ward).

their arguments, and Defendants' arguments were unsuccessful both times. *See* ECF No. 133 at p.1, 16-18; ECF No. 189 at 24; ECF No. 227 at 3.

It is unquestionable Judge West considered each of the statements alleged to be false and misleading and rejected Defendants' argument because Judge West sustained the entirety of Plaintiffs' claims as they relate to the economic value of the Mississippian. *See, e.g.* ECF No. 240, Opinion WMTD TAC at 7-9, n.10 (quoting TAC reasons why statements were false and misleading at length). In fact, Judge West specifically stated that he evaluated each of the alleged misstatements and omissions when evaluating scienter:

> The Court must determine whether the Lead Plaintiffs have stated specific facts that give rise to a strong inference that Bennett and/or Grubb acted with the required state of mind *with respect to each misstatement or omission* alleged regarding the remaining category of allegations: the economic value of the Mississippian formation to investors (because the amount of oil reserves and the amount of oil relative to natural gas had been overstated).

ECF No. 239, Opinion MTD TAC at 32; ECF No. 240 at 17-22; *see also* Opinion WMTD TAC at 11, note 12.

Furthermore, had Judge West considered any of Defendants' statements to be forward-looking, he would have evaluated scienter for those statements under an actual knowledge standard. *See Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2010 WL 3937403, at *14 (D. Conn. Sept. 28, 2010) (analyzing forward looking statements under actual knowledge standard in similar class action). Judge West, however, evaluated the sufficiency of Plaintiffs' scienter allegations for *all* statements under a reckless standard, which establishes that he did not consider *any* of Defendants' statements to be forward-looking. ECF No. 239, Opinion MTD TAC at 32 (stating that the Court must focus on allegations that

attempt to show that Bennett and Grubb "knew, or recklessly disregarded, that the public documents and statements issued or disseminated . . . were materially false and misleading"); ECF No. 240, Opinion WMTD TAC at 15-17 (discussing and applying reckless standard). *See McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1037 (10th Cir. 2000) (finding an issue of contract applicability to be implicitly decided, and therefore barred by the law of the case doctrine, because resolution of the issue was integral to the explicit holding); *see also Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996).

> As Justice Gorsuch wrote in *Entek:*
>
> So it is we will not tangle any more with these arguments. [The moving party] had the chance and incentive to present them all at earlier stages in the proceedings; it has enjoyed vigorous representation by counsel throughout several years of proceedings; no one cites any new legal or factual developments that have intervened since the time of our last decision; and it would be unfair to Entek and a waste of judicial resources for this court to entertain any further new arguments on old issues, like some sort of extended game of litigation whack-a-mole. The law of the case doctrine is intended to prevent continued re-argument . . . to avoid in short, Dickens's Jarndyce v. Jarndyce syndrome, a syndrome that we would only risk feeding by proceeding further.

840 F.3d at 1242, quoting *Huffman v. Saul Holdings Ltd. P'Ship*, 262 F.3d 1128, 1132 (10th Cir. 2001).

Defendants also ask the Court to go against the law of the case and overrule Judge West by arguing that certain statements are inactionable as "puffery," opinions, or because the statements – according to Defendants – are true. MSJ at 23-24; WMSJ at 13-15; 18-19. Defendants' repackaged arguments from their motions to dismiss should be rejected. MTD AC at 24; MTD TAC at 3; ECF Nos. 181-183 (supplemental briefing on the Supreme Court's *Omnicare* opinion). Plaintiffs respectfully submit that the Court should not "entertain any further new arguments on old issues[.]" *Entek*, 840 F.3d at 1242;

*Zinna v. Congrove*, 755 F.3d 1177, 1182 (10th Cir. 2014).

Proved reserves are ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id*.; *see In re Genworth Fin. Inc. Sec. Litig.*,

103 F. Supp. 3d 759, 778-79 (E.D. Va. 2015) (applying *Omnicare* and stating, "[a]s an initial

matter, Defendants' statements regarding the adequacy of reserves in the instant case are not

necessarily statements of opinion").[19]

Regardless ████████████████████████████████████████, the statements are

actionable. *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 135

S. Ct. 1318, 1328-29 (2015). Even where an opinion is sincerely held, liability attaches if

the statement does not "fairly align[] with the information in the [speaker's] possession at the

time" or when the speaker "lacked the basis for making those statements that a reasonable

investor would expect." *Omnicare*, 135 S. Ct. at 1329, 1333. Here, ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████

---

[19] *See, e.g., In re Emp. Sols. Secs. Litig.*, No. CIV 97-545-PHX-RGS-OMP, 1998 U.S. Dist.
LEXIS 16444, at *10 (D. Ariz. Sept. 29, 1998) ("[R]eserves are best seen as statements of
historical fact."); *In re WRT Energy Secs. Litig.*, No. 96 Civ. 3610 (JFK), 1999 U.S. Dist.
LEXIS 3883, at *23 (S.D.N.Y. Mar. 31, 1999) (holding that statements about oil and gas
reserves are not protected by bespeaks caution doctrine).
[20] Defendants reliance on *Del Noce v. Delyar Corp.*, 72 Civ. 1819-CLB, 1976 WL 813,
at *10 (S.D.N.Y. July 30, 1976) is misplaced. The court in *Del Noce* made a clear
distinction between proved reserves, which are at issue here, and probable and possible

Defendants' statements such as "[p]roduction growth is matching our expectations," "results" from "our Mississippian project . . . continue to meet or exceed our expectations," and that oil was "coming in on target" are not inactionable puffery because they were each objectively verifiable against the type curve.  WMSJ at 18-19; *see also* §IV(A); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1234-35 (S.D. Cal. Apr. 21, 2010) (citing *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007) (holding "our China ramp is proceeding on plan" describes a "current business condition," is not forward-looking, and is not puffery).

Finally, Defendants misstate the law and ask the Court to go against the law of the case by arguing that certain statements are barred by the PSLRA safe harbor because, according to Defendants, they were not under a duty to update SandRidge's type curve.[21] MSJ at 23.  ███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ by the court in *Erber*, ████████████████████████ *Erber*, 2017 WL 930828, at *3 (discussing duty to update in context of plaintiffs' allegations that defendants "omitted to disclose allegedly material facts when they remained silent at the Analyst Day" about the topic at issue).  "By voluntarily choosing to speak about [SandRidge's reserves and the Type Curve], the defendants were under a duty to be honest and forthright."  *In re Sprint Corp.*

---

reserves, which were key parts of the plaintiff's claim.  *Id.*  In fact, the court in *Del Noce* recognized, "[u]nlike evaluations of reserves which fall into the proved category, estimating probable reserves involves excessive speculation and guesswork."  *Id.* at *11.

[21] Both cases cited by Defendants are at the motion to dismiss stage. MSJ at 23.  *Karacand*, 53 F. Supp. 2d at 1243; *Erber v. Williams Cos., Inc.*, No. 16-CV-131-JHP-FHM, 2017 WL 930828, at *4 (N.D. Okla. Mar. 8, 2017), *aff'd*, *Emps.' Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153 (10th Cir. 2018).

*Sec. Litig.*, 232 F. Supp. 2d 1193, 1220 (D. Kan. 2002) (rejecting the defendants' duty to update argument).

> ### 1.   As the Court Correctly Held, Defendants' Statements Are Not Protected by the Safe Harbor or Bespeaks Caution Doctrine

Many of the misstatements Plaintiffs allege are not forward looking at all, so they are not entitled to protection under the safe harbor, including statements such as "results *continue to meet* or exceed our expectations (¶200) and the "oil *is coming in* on target . . . [a]nd they're *just making* more gas." ¶232. Similarly, Defendants' ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

As the Sixth Circuit wrote in *Dougherty*, "[a]lthough it is true that Esperion's statements concern an event in the future, that alone does not automatically make them forward-looking statements." *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 983 (6th Cir. 2018). "The critical inquiry in determining whether a statement is forward-looking is whether its veracity can be determined at the time the statement is made . . . If so, then the statement is not forward-looking." *Id*. at 983 (citing the test supplied by the Eight Circuit in *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 921 (8th Cir. 2016)). Here, since the veracity of SandRidge's ██████████ ████████████████████████████████████

█████████ ████████████████████████████████████████████

██████████████████

Furthermore, if Defendants' statements are viewed as having a forward-looking

component, those statements are not protected by the safe harbor because they are "mixed" statements of both present and future events. *See, e.g.,* ¶¶247, 279, 300; *see also In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1295 (D. Colo. 2013) ("The mere fact that a statement contains some reference to a projection of future events cannot sensibly bring the statement within the safe harbor if the allegation of falsehood relates to non-forward-looking aspects of the statement.") (citation omitted).  Even though the ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*see also Patriot Exploration, LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 357 (D. Conn. 2013) (holding statements that SandRidge had increased average reserves of gas per well were statements of present or historical fact and not protected by safe harbor); *Sgalambo v. McKenzie*, 739 F. Supp. 2d 453, 478 (S.D.N.Y. 2010).

Even if Plaintiffs had ██████████████████████████████████████████████

██████████████████████████, Judge West already rejected Defendants' argument that their risk factors were meaningful.  MSJ at 17-18.  The purported cautionary language refers to uncertainties before drilling but fails to caution investors as to the risks that were revealed after drilling had occurred.  The court in *Patriot* held that similar purportedly cautionary language provided by SandRidge (including that "'actual results or developments may differ materially from those projected'" and "'our success in discovering, estimating, [and] developing . . . reserves'" might materially impact SandRidge's ability to meet projections), failed to identify the specific risks alleged by the plaintiffs.  *Patriot*, 951 F. Supp. 2d at

358.[22]  And the evidence provides more reason to find those warnings inadequate because

Defendants ███████████████████████████████████████████████████

███████████████████

    To the extent that any of Defendants' statements are deemed forward-looking, as

discussed in the scienter section below, Plaintiffs have developed facts ████████

███████████████████████████████████████████████.  *See Simmons*

*Invs., Inc. v. Conversational Computing Corp.*, No. 09-CV-2345 EFM/KMH, 2011 U.S.

Dist. LEXIS 15962, at *17 (D. Kan. Feb. 17, 2011) (holding that safe harbor did not apply

because plaintiff alleged that defendants' statements were knowingly false when made); *In re*

*BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at *16 (S.D. Tex. May 31,

2016).

### 2.    Defendants Arguments About SandRidge's Production Results Are Without Merit

    Defendants misstate the law by arguing that statements about historical production or

production growth cannot be actionable because Plaintiffs do not challenge the accuracy of

the figures.  WMSJ at 13-14.  Even "a statement that is literally true can be misleading and

thus actionable under the securities laws." *Brody v. Transitional Hospitals Corp.*, 280 F.3d

997, 1006 (9th Cir. 2002).  Once a company chooses to discuss an issue or topic, it has "a

duty to be both accurate and complete." *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 331

---

[22] *See also Sgalambo*, 739 F. Supp. 2d at 478-79 ("Though this disclaimer mentioned myriad, general factors – such as natural gas prices or environmental hazards – that might cause actual results to differ from [the] projections, the disclaimer provided no company-specific information, failed to link any specific projections to specific risks, and remained constant throughout the Class Period, even as the risks confronting [the defendant] changed.").

(2d Cir. 2002); *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014).

Defendants erroneously argue they did not have a duty to disclose the truth about SandRidge's production and reserves even though their statements created the misleading impression that SandRidge's production and reserves in the Mississippian were better than they were. "'[A] duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it alters the meaning of the statement.'" *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002). Defendants' statements about the 30-day initial production meeting or exceeding the type curve, and statements about strong production growth and volume, were material. And Defendants' failure to disclose there was a rapid decline after the initial 30-days and that older wells were producing less than the type curve, were also material, and altered the meaning of Defendants' statements. *Rodenfels v. PDC Energy*, No. 16-cv-00251-PAB-STV, 2017 WL 1197297, at *4 (D. Colo. Mar. 30, 2017) (applying *McDonald*, and holding that a company that disclosed the valuation of reserves in proxy statement was under a duty to disclose facts, including internal estimates, indicating the reserves were more valuable than represented.)[23]

Defendants erroneously argue they had no duty to disclose they overstated the reserves or the oil percentage because those facts, according to Defendants – were already in the public domain from a BNP Paribas analyst. WMSJ at 17. Defendants ignore that SandRidge made statements contrary to the analyst report (*see* ECF No. 342-10 at 3, May 21, 2012 BNP Paribas Report about SandRidge slides discussing OTC data integrity problems)

---

[23] Defendants also had a duty to disclose the omitted material facts in SandRidge's SEC filings under Items 303 and 503. ¶¶289-93.

and a truth on the market defense creates a factual issue to be resolved by a jury.[24] *Nguyen v. Radient Pharms. Corp.*, 946 F. Supp. 2d 1025, 1039 n.18 (C.D. Cal. 2013) (truth on the market is an "intensely factual" defense that "fails" at the summary judgment stage).

Defendant Ward cites *Truk International Fund LP v. Wehlmann*, 737 F. Supp. 2d 611, 623-24 (N.D. Tex. 2009), a motion to dismiss opinion, in an apparent effort to argue that Defendants' statements about the consistency of the Mississippian are not material, which is a factual issue. WMSJ at 14-15. *S.E.C. v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007) ("Materiality typically cannot be determined as a matter of summary judgment because it depends on determining a hypothetical investor's reaction to the alleged misstatement.").[25] The Tenth Circuit's holding in *McDonald* also does not help them (WMSJ at 15), since the plaintiffs there alleged the disclosure of historical financial results created a duty to disclose **contingencies** that might alter revenues in the future. *Id.* at 998. The court in *McDonald* stated, "it would be unreasonable for someone to take a report strictly concerned with the past as a representation about **the future**[.]" *Id.* Here, ██████████████████████████████

██████████████████████████████████████████████████

---

[24] *Jensen v. Kimble*, cited by Defendant Ward (WMSJ at 17), which dealt with whether a letter was publicly disclosed, is inapposite. 1 F.3d 1073, 1079 n.11 (10th Cir. 1993). The court there determined, it "is undisputed that the existence of the letter of intent was public knowledge by November 3 and Jensen himself admitted that he learned about the letter of intent immediately following the October 31 sale." *Id.*

[25] Defendant Ward argues that Defendants were not under a duty to "disclose sub-level updates on the performance of each and every one of its wells," but Plaintiffs do not argue they were. WMSJ at 15. Defendant Ward's argument concerning the GOR fails for the same reason. WMSJ at 17. As with the reserves, Plaintiffs' allege that Defendants understated the GOR for the average Mississippian well. ¶152(b)(c).

### D.    Plaintiffs Do Not Assert Theories Not Alleged in the Complaint

Defendants falsely argue that Plaintiffs are "inventing new" claims and seeking to advance "previously unpled theories for why they claim Defendants' statements were false or misleading." MSJ at 25; MSJ at 25, Ex. 50, App. D. Defendants, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ MSJ at 26. Plaintiffs only seek to present evidence to a jury that supports Plaintiffs' claims as pled.

Defendants erroneously argue that Plaintiffs are advancing a new theory based on evidence that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Gimbel Decl. Ex. 50; MSJ at 25 note 9. Defendants appear to take issue with the technical phrase ▮▮▮▮▮▮▮▮▮▮▮ when describing older wells and producing wells, but their argument is simply one of semantics. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[26] The other cases cited by Defendants (WMSJ at 15, note 15) do not assist them and actually support Plaintiffs. The court in *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305-06 (11th Cir. 2011), recognized that a statement is misleading "if 'in the light of the facts existing at the time of the [statement] . . . [a] reasonable investor, in the exercise of due care, would have been misled by it'" and held that the omission of problems with the company's click traffic did not make its statements misleading because the company "conveyed no message" about the click traffic when disclosing revenues. Similarly, the court in *Brody*, when addressing a motion to dismiss, acknowledged that "a statement that is literally true can be misleading and thus actionable under the securities laws" such as when an omission "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *Id*. at 1006. Here, a reasonable investor would have been misled by Defendants' statements about reserves and production growth because Defendants identified the type curve as a point of reference when discussing the 30-day IP figures and discussed total production figures in the context of the same discussion. ¶257.



Evidence that SandRidge

Defendants take issue with other evidence as well,

but ignore the TAC alleges SandRidge

"misrepresented that well performance was consistent as represented by a single type curve

across their entire leasehold, which extended for hundreds of miles." ¶132.

### E.    There Is a Triable Issue of Fact on Scienter

"Generally, scienter should *not* be resolved by summary judgment." *Provenz v.*

*Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) (emphasis in original). "*[O]nly* where 'there is

no rational basis in the record for concluding that any of the challenged statements was made

with [the] requisite scienter'" is summary judgment proper. *Id*. at 1490 (emphasis in

original). This is a lower threshold than what was required of Plaintiffs at the pleading stage.

*In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1017-19 (S.D. Cal. 2011) ("[A]t

summary judgment, the standard [for scienter] is less stringent [than at the pleading stage]."

*Id*. at 1017.

As a general matter, "determinations as to a lack of scienter are typically—though not

categorically—inappropriate at the summary judgment stage." *Silverman v. Motorola, Inc.*,

798 F. Supp. 2d 954, 68 (N.D. Ill. 2011); *see P.H. Glatfelter Co. v. Voith, Inc.*, 784 F.2d 770,

774 (7th Cir. 1986) ("'[R]esolution by summary judgment of the issues raised by an

allegation of fraud is often difficult or impossible.'") (citation omitted); *Provenz*, 102 F.3d at

1489 ("Generally, scienter should *not* be resolved by summary judgment.") (emphasis in original). A court could grant Defendants' summary judgment on the basis of scienter only "[if] no reasonable jury could conclude that the requisite scienter exists[.]" *In re Miller Indus., Inc.*, 120 F. Supp. 2d 1371, 1383 (N.D. Ga. 2000).

In the Tenth Circuit, a "plaintiff may establish scienter either with facts evidencing the defendant's intent to deceive or defraud, or with facts establishing the defendant acted recklessly." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015); (ECF No. 239, WMTD TAC Opinion at 30, note 34). This Court already found that Plaintiffs met the higher pleading standard by plausibly alleging that Defendants Ward and Grubb "acted with the required state of mind and engaged in either knowing or reckless conduct by materially misrepresenting the economic value of the Mississippian formation to investors." ECF No. 240, Opinion WMTD TAC at 22; ECF No. 239, Opinion MTD TAC at 37.

Discovery ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Because "[s]cienter may be established" where the evidence shows "the defendants knew their statements were false," summary judgment is not warranted. *Gebhart v. S.E.C.*, 595 F.3d 1034, 1041 (9th Cir. 2010).

### 1. There Is Direct Evidence of Defendants' Actual Knowledge

The "most direct" evidence of scienter is the "contemporaneous reports or data, available to [Defendants], which contradict the[ir] statement[s]." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). Here, Defendants

████████████████████████████████████████████████████████████████████████

[REDACTED]

Furthermore, [REDACTED]

[REDACTED] "[D]efendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete," which "*is classic evidence of scienter*." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005) (emphasis added and citations omitted).

Plaintiffs are not seeking to establish scienter "based simply on an individual's position within the Company or access to relevant information," as argued by Defendants.

MSJ at 19.  Ward and Grubb were



---

[27] *Gold Res. Corp*, which was a decision on a motion to dismiss, does not help Defendants. That court, when deciding a motion to dismiss, held that the complaint did not satisfy the actual knowledge requirement because the "plaintiff pleads only that defendants, as a natural consequence of their executive positions, had access to adverse information related to GRC's growth projections and should have known the projections were unattainable." 957 F. Supp. 2d at 1298. Here, the Court has already rejected Defendants' argument that Plaintiffs' claims should have been dismissed due to a failure to allege actual knowledge in connection with forward looking statements.

[28] At his 

*Robert Edward Auctions, LLC v. Nash*, No. 10-3759, 2010 WL 11695034, at *3 (D.N.J. Nov. 5, 2010) (finding "'false, incomplete and misleading answers'" given at a deposition, together with other factors, provided "'conclusive evidence of an actual intent to defraud'").

## 2. Defendants' Attempts to Negate the Evidence of Scienter Are Contradicted by the Record and Legal Precedent

Defendants urge the Court to ignore the clear evidence of their knowledge on the basis of a number of arguments that lack legal support and are contradicted by the factual record. Defendants cite a case from outside this circuit for the proposition that Plaintiffs "must present significant probative evidence" when opposing summary judgment, but fail to acknowledge that the same authority added, "'summary judgment on the scienter issue is appropriate only where there is no rational basis in the record for concluding that any of the challenged statements was made with the requisite scienter.'" *REMEC*, 702 F. Supp. 2d at 1236. And Defendants fail to mention the court in *REMEC* also stated, ("[g]enerally, scienter should *not* be resolved by summary judgment" and a court "must deny a defendant's motion for summary judgment on intent 'unless *all* reasonable inferences that could be drawn from the evidence defeat the plaintiff's claims.'") *Id*. (emphasis in original).

Defendants argue they should not be held accountable for their own statements because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MSJ at 19-20; WMSJ at 22.

This argument fails both factually and legally.

First, even though NSAI ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*In re Ikon Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002) in not applicable

because the court found that another auditor's sign-off on Ernst's opinion was "highly

probative of the competence of Ernst's 1997 audit opinion[.]" *Id*. at 669. Here,

---

[29] *In re Hansen Nat. Corp. Sec. Litig*., 527 F. Supp. 2d 1142, 1157-58 (C.D. Cal. 2007)
(auditor opinion about GAAP compliance "highly probative" of lack of scienter compared
with plaintiffs' "conclusory allegations"); *S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342,
366 (D.N.J. 2009) ("The SEC does not effectively dispute that Carter was neither involved
nor aware that the four switches were ordered and shipped.").



*Silverman* is instructive. In *Silverman*, the plaintiffs alleged, in part, that defendants failed to follow GAAP in connection with disclosures. *Id.* at 968. The defendant Motorola argued in support of summary judgment that it followed a strict process relating to the challenged disclosure, including reliance on Motorola's outside financial auditor, KPMG. The defendants argued that their reliance on Motorola's accounting and reporting mechanisms "negated any possible intent or recklessness on their part." *Id.* at 969. The court rejected the defendants' argument, which it characterized as "effectively . . . an argument of good-faith reliance" and stated, "[i]f Defendants knew that (or were reckless as to whether) Motorola's disclosure or accounting was false or misleading, however, then the fact that the company employed substantial processes aimed at ensuring accurate accounting would not establish that Defendants lacked scienter." *Id.*[30]

And the court in *Motorola* pointed out that the "weight of authority suggests that

---

[30] *See U.S. v. Erickson*, 601 F.2d 296, 305 (7th Cir. 1979) ("If a company officer knows that the financial statements are false or misleading and yet proceeds to file them, the willingness of an accountant to give an unqualified opinion with respect to them does not negative the existence of the requisite intent or establish good faith reliance[.]"); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) ("[T]he fact that the defendants published statements when they knew facts suggesting the statements were inaccurate or misleadingly incomplete is classic evidence of scienter.").

evidence of reliance is merely relevant to the question whether a defendant acted with the requisite scienter." *Id.* at 969 (citing cases, including, *Secs. & Exch. Comm'n v. McNamee*, 481 F.3d 451, 455 (7th Cir. 2007) ("'[A]dvice of counsel *may* show that a person lacked a culpable intent[.]'") (emphasis in original)).[31] ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  But "credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, whether he is ruling on a motion for summary judgment[.]"[32]

*Anderson*, 477 U.S. at 255. "[S]ummary judgment is likely to be inappropriate when the

issues concern intent . . . or are otherwise 'complex and convoluted.'" *SEC v. Research*

---

[31] Defendants' characterization ██████████████████████

████████████████████████████████████████████████████████████

Defendants' argument that ████████████

████████████  MSJ at 21-22. *Firefighters Pension & Relief Fund of the City of New Orleans v.*

*Bulmahn*, No. 13-3935, 2015 WL 4879217, at *18 (E.D. La. Aug. 14, 2015) (MSJ at 22), is

not applicable because it is a motion to dismiss opinion, and the court found it important that

the "[p]laintiff does not challenge the accuracy of ATP's underlying data or provide any

explanation as to why ATP was not entitled to rely on the estimates of third-party petroleum

engineers in making its projection." *Bulmahn*, 2015 WL4879217, at *18.

[32] Defendant Ward ██████████████

████████████████████████████████████████████████████████████.

*Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978) (citations omitted).

Defendants ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████. *See Loudermilk v. Best Pallet Co.,*

*LLC*, 636 F.3d 312, 314 (7th Cir. 2011) ("When ruling on a motion for summary judgment,

the party opposing the motion gets the benefit of all facts that a reasonable jury might find.").

Defendant ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



"[P]laintiffs have produced direct evidence of [D]efendants' actual knowledge." *In re Entropin, Inc. Sec. Litig.*, 487 F. Supp. 2d 1141, 1153 (C.D. Cal. 2007) (denying summary judgment); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) ("The absence of a motive allegation, though relevant, is not dispositive."); Opinion MTD TAC at n25 (Ward); n42 (SandRidge, Bennett Grubb) (stating motive not required for scienter).

## VI.   THERE IS NO BASIS FOR SUMMARY JUDGMENT ON LOSS CAUSATION

To establish loss causation at trial, Plaintiffs need only prove that a "relevant truth" that was previously concealed became "'generally known'" and caused the Company's stock price to drop. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 346 (2005). As the party seeking summary judgment, it is Defendants' burden to establish the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. For loss causation, Defendants must

"'establish that, as a matter of undisputed fact, the depreciation in the value of [SandRidge stock] could not have resulted from the alleged false statement or omission of the defendant.'" *Novatel*, 830 F. Supp. 2d at 1019. Defendants have not met this "heavy burden[.]" *Provenz*, 102 F.3d at 1493.

Based on the widely accepted event study methodology, Plaintiffs' economic expert Steinholt established that SandRidge's stock price suffered a Company-specific, statistically significant decline on November 9, 2012, following the Company's disclosures on November 8 and 9, 2012, including that the average SandRidge Mississippian well was expected to have an oil EUR of 155 Mbbl, down from the Company's previous figure of 204 Mbbl, or a decline of 24%, and that the IRR was now 50%. *See* Ex. 70, Steinholt Rpt. ¶¶72;79.[34]

But while Steinholt explained why the entire price decline on November 9, 2012 was caused by fraud-related disclosures (Ex. 70, Steinholt Rpt. ¶72), Defendants' expert, Grenadier, failed to establish that any part of the decline was caused by something else. Instead, without conducting his own independent analysis, Granadier merely criticizes Steinholt's views by pointing to potential "confounding factors" (*i.e.*, non-fraud related information) and snippets of analyst reports. Ex. 72, Grenadier Rpt. ¶¶39; 40; 47. Because Defendants have failed to provide evidence "establishing that the decline[s] in the value of the security [are] attributable in total to some other factor" unrelated to the alleged fraud,

---

[34] Steinholt determined that the price impact of the disclosure of the alleged truth on November 9, 2012 was 9.9%, or $0.60 per share. Ex. 70, Steinholt Rpt. ¶12. As discussed more fully in Plaintiffs' opposition to the motion to exclude Steinholt, Plaintiffs have raised issues of fact with respect to damages.

summary judgement must be denied. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649-50 (7th Cir. 1997); *see also Nguyen*, 946 F. Supp. 2d at 1040 (denying summary judgment where defendants did not "show that depreciation of a stock was the result of factors other than alleged false and misleading statements").[35]

Even if Defendants could meet their initial burden, █████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████ Defendants ignore Steinholt's expert reports and deposition testimony and erroneously argue that Steinholt "fails to disaggregate the impact of non-fraud related information including announcements of increased well costs and plans to divest the Company's Permian Basin assets." MSJ at 27.

First, Defendants' argument should be rejected because they have not █████████

████████████████████████████████████████████████████████

██████████ Second, as discussed more fully in Plaintiffs' opposition to Defendants' motion to exclude Steinholt's testimony, Defendants ignore that Steinholt performed his own analysis and concluded that none of the non-fraud related events caused any part of the decline in SandRidge's stock price. Ex. 71, Steinholt Rebuttal ¶¶36; 38; 62. Steinholt concluded that the announcement of the potential Permian sale was viewed positively, so it did not contribute to the decline in SandRidge's stock price (Ex. 71, Steinholt Rebuttal ¶38), and the news about increased Mississippian well costs related to Plaintiffs' allegations, and

---

[35] *Puma Biotechnology*, 2018 WL 4945703, at \*9 (denying summary judgment where defendants "failed to show that factors other than the . . . corrective disclosures caused the stock's decline"); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2009 WL 10695884, at \*14 (S.D.N.Y. Apr. 6, 2009) (denying summary judgment where defendants failed to establish any "obvious competing cause" for plaintiffs' loss).

therefore was not a confounding factor. Ex. 12, Steinholt Tr. at 146:15-147:15.

Defendants also argue ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir.

2009). ███████████████████████████████████████████

████████████████████████████████████████████████

## VII.   DEFENDANTS ARE CONTROL PERSONS UNDER SECTION 20(A)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. *Janus Capital Grp., Inc. v.*

*First Deriv. Traders*, 564 U.S. 135, 142-43 (2011);

## VIII. CONCLUSION

For the foregoing reasons, Defendants' motions should be denied.

DATED: July 24, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
MARK S. REICH (admitted *pro hac vice*)
CHRISTOPHER T. GILROY (admitted *pro hac vice*)

/s/ *Evan J. Kaufman*
EVAN J. KAUFMAN

- 65 -

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
mreich@rgrdlaw.com
cgilroy@rgrdlaw.com

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY
(OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK 73105
Telephone: 405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: 619/342-8000
619/342-7878 (fax)
ambere@haelaw.com

*Additional Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I, Evan J. Kaufman, certify that on July 24, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 24th day of July, 2020, at Melville, New York.



*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN