# EXHIBIT 66

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

## Form 10-K

**(Mark One)**

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2012**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from to**

**Commission File Number: 001-33784**

# SANDRIDGE ENERGY, INC.

**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **Delaware** | **20-8084793** |
| **(State or other jurisdiction of incorporation or organization)** | **(I.R.S. Employer Identification No.)** |
| **123 Robert S. Kerr Avenue Oklahoma City, Oklahoma** | **73102** |
| **(Address of principal executive offices)** | **(Zip Code)** |

**(405) 429-5500**

**(Registrant's telephone number, including area code)**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| **Common Stock, $0.001 par value** | **New York Stock Exchange** |
| **Preferred Stock Purchase Rights** | **New York Stock Exchange** |

**Securities registered pursuant to Section 12(g) of the Act:**

**None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☑ No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. Yes ☐ No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑ No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

| | |
|---|---|
| Large accelerated filer ☑ | Accelerated filer ☐ |
| Non-accelerated filer ☐ (Do not check if smaller reporting company) | Smaller reporting company ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐ No ☑

The aggregate market value of our common stock held by non-affiliates on June 29, 2012 was approximately $3.0 billion based on the closing price as quoted on the New York Stock Exchange. As of February 22, 2013, there were 493,991,081 shares of our common stock outstanding.

**DOCUMENTS INCORPORATED BY REFERENCE**

Portions of the Company's definitive proxy statement for the 2012 Annual Meeting of Stockholders are incorporated by reference in Part III.

**SANDRIDGE ENERGY, INC.**
**2012 ANNUAL REPORT ON FORM 10-K**
**TABLE OF CONTENTS**


| Item | | Page |
|---|---|---|
| | **PART I** | |
| 1. | Business | 1 |
| 1A. | Risk Factors | 32 |
| 1B. | Unresolved Staff Comments | 50 |
| 2. | Properties | 51 |
| 3. | Legal Proceedings | 52 |
| 4. | Mine Safety Disclosures | 55 |
| | **PART II** | |
| 5. | Market for Registrant’s Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 56 |
| 6. | Selected Financial Data | 59 |
| 7. | Management’s Discussion and Analysis of Financial Condition and Results of Operations | 61 |
| 7A. | Quantitative and Qualitative Disclosures About Market Risk | 85 |
| 8. | Financial Statements and Supplementary Data | 88 |
| 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 89 |
| 9A. | Controls and Procedures | 90 |
| 9B. | Other Information | 91 |
| | **PART III** | |
| 10. | Directors, Executive Officers and Corporate Governance | 92 |
| 11. | Executive Compensation | 93 |
| 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 94 |
| 13. | Certain Relationships and Related Transactions and Director Independence | 95 |
| 14. | Principal Accounting Fees and Services | 96 |
| | **PART IV** | |
| 15. | Exhibits and Financial Statement Schedules | 97 |

Table of Contents

Revenues of $112.1 million and earnings of $90.1 million generated by the oil and natural gas properties acquired in the Arena Acquisition for the period of July 17, 2010 through December 31, 2010 have been included in the Company's accompanying consolidated statements of operations for the year ended December 31, 2010.

*Divestitures*. The Company completed the following divestitures in 2010, both of which were accounted for as adjustments to the full cost pool with no gain or loss recognized:

- On August 26, 2010, the Company sold certain deep acreage rights in the Cana Shale play in western Oklahoma for estimated net proceeds of $109.4 million, net of post-closing adjustments. The Company retained the shallow rights associated with this acreage.
- On December 10, 2010, the Company sold approximately 40,000 net acres in the Avalon Shale and Bone Spring reservoirs of the Permian Basin for $102.1 million, net of post-closing adjustments. There was no production or proved reserves associated with these assets and the Company retained all rights above and below the Avalon Shale and Bone Spring formations.

***2011 Divestitures***

The Company completed the following divestitures in 2011, all of which were accounted for as adjustments to the full cost pool with no gain or loss recognized:

- In July 2011, the Company sold its Wolfberry assets in the Permian Basin for $151.6 million, net of fees and post-closing adjustments.
- In August 2011, the Company sold certain oil and natural gas properties in Lea County and Eddy County, New Mexico, for $199.0 million, net of fees and post-closing adjustments.
- In November 2011, the Company sold its east Texas natural gas properties in Gregg, Harrison, Rusk and Panola counties for $225.4 million, net of fees and post-closing adjustments.

***2012 Acquisitions and Divestitures***

*Dynamic Acquisition.* The Company acquired 100% of the equity interests of Dynamic on April 17, 2012 for total consideration of approximately $1.2 billion, comprised of approximately $680.0 million in cash and approximately 74 million shares of the Company's common stock (the "Dynamic Acquisition"). Dynamic is an oil and natural gas exploration, development and production company with operations in the Gulf of Mexico. The Dynamic Acquisition expanded the Company's presence in the Gulf of Mexico, adding oil and natural gas reserves and production to its existing asset base in this area.

A preliminary allocation of the purchase price as of April 17, 2012 was prepared in connection with the Company's June 30, 2012 consolidated financial statements. Upon completion of the initial purchase price allocation, the Company reviewed its assessment, including the identification and valuation of assets acquired and liabilities assumed. Upon verification of the purchase price allocation, the Company recorded a bargain purchase gain for the difference between the purchase price and the estimated fair value of the net assets acquired. During the fourth quarter of 2012, the Company updated certain of the estimates used in the preliminary purchase price allocation, primarily with respect to deferred taxes and other accruals for which the Company was awaiting additional information, resulting in adjustments of $1.8 million to the bargain purchase gain and $3.0 million to the initial valuation allowance release, which resulted in income tax expense. The Company recorded a net deferred tax liability associated with the Dynamic Acquisition, which resulted in the release of a portion of the previously recorded valuation allowance on the Company's net deferred tax asset. The Company will monitor the need to further adjust the Company's valuation allowance on its net deferred tax asset as the purchase price allocation is finalized and the full impact of the acquisition is determined, both of which are expected to occur by the second quarter of 2013. The Company believes the estimates used in the purchase price allocation are reasonable and the significant effects of the Dynamic Acquisition are properly reflected. However, the estimates are subject to change as additional information becomes available and is assessed by the Company. Changes to the purchase price allocation and any corresponding change to the bargain purchase gain will be adjusted retrospectively to the date of the acquisition.