**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. CIV-12-1341-G |
| This Document Relates To: ALL ACTIONS. | |

**REPLY IN SUPPORT OF THE**
**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS**
**JAMES BENNETT AND MATTHEW GRUBB**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THERE ARE NO GENUINE AND MATERIAL FACTUAL DISPUTES. ........ 2

II. THE CHALLENGED STATEMENTS ARE INACTIONABLE FORWARD-LOOKING STATEMENTS, OPINIONS, AND PUFFERY. ........ 3

A. The Law of the Case Doctrine Does Not Apply. ........ 3

B. The Challenged Statements Were Forward-Looking and Accompanied by Adequate Cautionary Language. ........ 5

C. Plaintiffs Confirm Any Duty-to-Update Claim Must Be Dismissed. ........ 8

III. PLAINTIFFS DO NOT RAISE A TRIABLE ISSUE ON SCIENTER. ........ 8

IV. THE STATEMENTS ABOUT HISTORICAL PRODUCTION RESULTS AND GEOLOGY WERE IMMATERIAL AND NOT MISLEADING. ........ 13

V. PLAINTIFFS CONCEDE THAT DEFENDANTS FACE NO LIABILITY FOR UNPLEADED CLAIMS AND THEORIES. ........ 14

VI. PLAINTIFFS ATTEMPT TO ELIDE DEFENDANTS' LOSS CAUSATION AND DAMAGES ARGUMENTS. ........ 14

VII. PLAINTIFFS FAIL TO REBUT MR. BENNETT'S AND MR. GRUBB'S CONTROL PERSON LIABILITY ARGUMENTS. ........ 15

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) .......... 15

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) .......... 9

*Bumgarner v. Williams Cos.*,
2016 WL 1717206 (N.D. Okla. Apr. 28, 2016) .......... 7

*City of Hialeah Employees' Ret. Sys. v. FEI Co.*,
289 F. Supp. 3d 1162 (D. Or. 2018) .......... 6

*Dougherty v. Esperion Therapeutics*,
905 F.3d 971 (6th Cir. 2018) .......... 7

*Erber v. Williams Cos.*,
2017 WL 930828 (N.D. Okla. Mar. 8, 2017) .......... 8

*Geffon v. Micrion Corp.*,
249 F.3d 29 (1st Cir. 2001) .......... 9

*In re Gold Res. Corp. Sec. Litig.*,
957 F. Supp. 2d 1284 (D. Colo. 2013) .......... 7

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) .......... 10

*W. Wash. Laborers-Employers Pension Tr. v. Panera Bread Co.*,
697 F. Supp. 2d 1081 (E.D. Mo. 2010) .......... 4

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011) .......... 15

*In re N. Telecom Ltd. Sec. Litig.*,
116 F. Supp. 2d 446 (S.D.N.Y. 2000) .......... 4

*Newland v. Newland*,
82 F.3d 338 (10th Cir. 1996) .......... 4

*Patriot Exploration v. SandRidge Energy, Inc.*,
951 F. Supp. 2d 331 (D. Conn. 2013) .......... 7, 8

*Rebel Enters., Inc. v. Prudential-Bache Sec., Inc.*,
959 F.2d 245 (10th Cir. 1992) .... 8

*In re Reliance Sec. Litig.*,
135 F. Supp. 2d 480 (D. Del. 2001) .... 4

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) .... 11

*Robbins v. Wilkie*,
433 F.3d 755 (10th Cir. 2006), *rev'd on other grounds*, 551 U.S. 537 (2007) .... 3

*In re SandRidge Energy, Inc. Sec. Litig.*,
2017 WL 3309758 (W.D. Okla. Aug. 1, 2017) .... 6, 8, 15

*SFF-TIR, LLC v. Stephenson*,
250 F. Supp. 3d 856 (N.D. Okla. 2017) .... 12

*Silverman v. Motorola, Inc.*,
798 F. Supp. 2d 954 (N.D. Ill. 2011) .... 13

*Stifel, Nicolaus & Co., v. Woolsey & Co.*,
81 F.3d 1540 (10th Cir. 1996) .... 5

*In re Tronox, Inc. Sec. Litig.*,
769 F. Supp. 2d 202 (S.D.N.Y. 2011) .... 15

*In re Tseng Labs, Inc. Sec. Litig.*,
954 F. Supp. 1024 (E.D. Pa. 1996), *aff'd*, 107 F.3d 8 (3d Cir. 1997) .... 10

*W. Wash. Laborers-Employers Pension Tr. v. Panera Bread Co.*,
697 F. Supp. 2d 1081 (E.D. Mo. 2010) .... 4

**Statutes**

15 U.S.C. § 78u-5 .... 5, 6

**Other Authorities**

17 C.F.R. § 229.1202 .... 11

## INTRODUCTION

Plaintiffs' opposition is premised on distortions of the record and misstatements of the law. In an effort to circumvent the PSLRA safe harbor, Plaintiffs argue that predictions of recoverable oil and gas from future wells are not forward-looking because they are based in part on present data and can be estimated with "reasonable certainty." That argument not only misconstrues NSAI's predictive estimates as historical statements, but ignores the language of the PSLRA and this Court's prior opinion explicating it, both of which make clear that the safe harbor protects not only projections but the historical assumptions on which they rest. Plaintiffs also argue that the Court's August 2017 motion to dismiss opinion precludes Defendants from raising the safe harbor and other defenses, but no portion of the opinion addressed whether these defenses are available for the statements at issue here.

Plaintiffs' other arguments are similarly unpersuasive. On scienter, Plaintiffs speculate that Messrs. Ward and Grubb unduly pressured NSAI, but not a single document supports their theory and sworn testimony (including from NSAI) refutes it. Plaintiffs also fall back on the same erroneous interpretation of NSAI's estimates that dooms their forward-looking statement argument, asserting that lower PDP estimates were inconsistent with the type curves, even when witnesses explained that *PUD* estimates like the type curves are fundamentally different and, by definition, higher than PDP estimates. On loss causation, Plaintiffs elide rather than respond. They fixate on purported omissions of Defendants' expert, even though it is Plaintiffs' burden to prove loss causation, not Defendants' burden to disprove it.

Plaintiffs must rebut summary judgment with evidence sufficient to support a verdict on each element of their claims. Their attempt to escape that burden by sleight of hand falls well short. Defendants' motion should be granted.

## ARGUMENT

### I. THERE ARE NO GENUINE AND MATERIAL FACTUAL DISPUTES.

Neither Plaintiffs' response to Defendants' statements of undisputed facts nor Plaintiffs' additional facts creates a material factual dispute. The disputes Plaintiffs allege are either manufactured and non-existent or unsupported. For example, Plaintiffs claim to dispute that "[a] type curve is a predictive estimate," but their response does not in any way contradict this fact, and they concede that the type curves "refer to PUDs," which makes them by definition predictive. SUF & RSUF ¶¶ 6-7; *see also* PSAF ¶ 1. An estimate of how much oil and gas *will* come out of an undeveloped well in the future is, by its nature, predictive. Likewise, Plaintiffs claim to dispute Defendants' disclaimers and cautionary language, but do not dispute (and therefore concede) the facts actually stated by Defendants: The challenged statements were identified as forward-looking when made and included cautionary language. SUF & RSUF ¶¶ 18-22. Plaintiffs also claim to dispute the testimony of third-party NSAI's David Miller that the type curves were consistent with the underlying data and SEC regulations, but assert only that his "credibility is questionable," without identifying any evidence undermining his credibility. SUF & RSUF ¶ 32.

Plaintiffs' attempt to conjure up evidence of scienter in their "additional facts" follows the same pattern of immaterial and unsupported allegations. As explained in *infra* Part III, these allegations amount to nothing more than a baseless conspiracy theory.

## II. THE CHALLENGED STATEMENTS ARE INACTIONABLE FORWARD-LOOKING STATEMENTS, OPINIONS, AND PUFFERY.

### A. The Law of the Case Doctrine Does Not Apply.

Plaintiffs' primary response to Defendants' PSLRA safe harbor, *Omnicare*, and puffery defenses is to evade. They contend that the Court's August 2017 opinion precludes Defendants from raising these defenses under the law of the case. Opp'n 39. The law of the case doctrine does not apply for at least three reasons.

First, a "district court's decision denying a defendant's motion to dismiss … is not law of the case for purposes of a subsequent motion for summary judgment on [the same defense]. Law of the case does not apply because a motion to dismiss and a motion for summary judgment do not raise the 'same issues.'" *Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006), *rev'd on other grounds*, 551 U.S. 537 (2007). That is especially true here, where significant discovery confirmed the fact that NSAI's type curves and related estimates are forward-looking opinions, and even Plaintiffs' expert conceded that a type curve is a "predictive statement[]" and that "two engineers acting in good faith could reach different conclusions about a particular well's EUR." Dkt. 488-6, Crane Tr. 255:16-24.

Second, the August 2017 opinion did not even address these defenses to the Mississippian production claims, let alone finally decide them or preclude Defendants from raising them at summary judgment. Although Defendants raised a forward-looking statement argument in their motion to dismiss the first amended complaint, Dkt. 133, at 16, the Court did not decide it, and dismissed the claims for failure to plead scienter, Dkt. 184. When Plaintiffs amended again, Defendants moved to dismiss the Mississippian

production claims based on the same scienter defense that they had already prevailed on, and merely incorporated by reference their prior forward-looking statement and *Omnicare* arguments. Dkt. 189, at 24, 227. The Court rejected Defendants' scienter argument, but did not address the forward-looking statement and *Omnicare* defenses to Plaintiffs' Mississippian production claims. Dkt. 239, 240. Nor did the Court decide Defendants' puffery defense, which Defendants did not even brief. Because the Court did not decide these issues, the law of the case doctrine does not apply. *See Newland v. Newland*, 82 F.3d 338, 342 (10th Cir. 1996) (doctrine does not control where court "did not address" issue).

Tellingly, Plaintiffs do not identify a single portion of the Court's opinion deciding or even discussing these defenses. Plaintiffs contend that the Court must have considered them because it evaluated scienter under the recklessness standard (as opposed to the "actual knowledge" standard) and ultimately allowed Plaintiffs to proceed to discovery on their Mississippian production claims. But this indicates only that the Court did not address Defendants' forward-looking statement, *Omnicare*, and puffery arguments, which are independent from Defendants' scienter defense, not that the Court rejected them. Plaintiffs' claim that these arguments must be resolved at the pleading stage is likewise incorrect. Nothing prohibits Defendants from raising the safe harbor and inactionable opinions and puffery at summary judgment, and courts routinely grant summary judgment to defendants based on similar defenses.[1]

[1] *See, e.g.*, *W. Wash. Laborers-Employers Pension Tr. v. Panera Bread Co.*, 697 F. Supp. 2d 1081, 1096 (E.D. Mo. 2010) (safe harbor); *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 516 (D. Del. 2001) (opinion); *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 466 (S.D.N.Y. 2000) (puffery). Indeed, the PSLRA specifically contemplates summary

Third, and in all events, the Tenth Circuit recognizes that the law of the case doctrine is not binding. Rather, it is "discretionary, not mandatory," and "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Stifel, Nicolaus & Co., v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir. 1996).

### B. The Challenged Statements Were Forward-Looking and Accompanied by Adequate Cautionary Language.

Plaintiffs do not dispute that the challenged statements were identified as forward-looking, and that all fact and expert witnesses recognized them as such. They argue only that (i) they were not actually forward-looking under the PSLRA because they were based in part on past results, and (ii) they were not accompanied by adequate cautionary language. Opp'n 45-47. These arguments misstate both the facts and law.

To begin with, Plaintiffs' argument that NSAI's type curves and reserves were "statements of fact … based upon the analysis of historical production results" misconstrues these projections as representations of past PDP results. Opp'n 45. As Defendants explained to investors, the type curves and reserves were *PUD* estimates that projected future production from as yet undeveloped wells. SUF ¶ 7; Ex. 1, -118 ("[T]here's our PUD type curve"). While the type curve and related statements were developed based in part on PDP results (as well as other assumptions), that does not transform them from inactionable forward-looking estimates to actionable statements about the past. The PSLRA safe harbor protects both forward-looking projections and "any statement of the assumptions underlying or relating to any [such] statement." 15 U.S.C.

---

judgment motions based on the safe harbor. *See* 15 U.S.C. § 78u-5(f).

§ 78u-5(i)(1)(D).

Nor does the fact that PUD estimates are determined within a "reasonable certainty" make them non-forward-looking. Merely having some level of confidence in a projection does not transform it from a prediction into a present fact. *See City of Hialeah Employees' Ret. Sys. v. FEI Co.*, 289 F. Supp. 3d 1162, 1173 (D. Or. 2018) ("Expressing confidence or lack thereof in a given projection is not different from making a projection. Every statement of a future projection carries at least the implicit assertion that the speaker or writer of that statement believes it.").

Even if considered "mixed" statements of present facts and future events, the statements still would fall under the safe harbor. As this Court has already recognized with respect to the dismissed CapEx statements, "[f]orward-looking conclusions often rest both on historical observations and assumptions about future events." *In re SandRidge Energy, Inc. Sec. Litig.*, 2017 WL 3309758, at *12 (W.D. Okla. Aug. 1, 2017). Accordingly, "if the non-forwarding looking parts of a statement, 'when read in context, cannot meaningfully be distinguished from the future projection of which they are a part[,]' the statements … fall within the safe harbor and are not actionable."[2] *Id.* That is the case here because, to the extent NSAI's type curve and related estimates included historical components, they "cannot meaningfully be distinguished from the future projection." *Id.*[3]

[2] Ironically, despite accusing Defendants of violating the law of the case, Plaintiffs do not even mention these conclusions. As the Court recognized with respect to other statements, virtually all forward-looking projections are based on historical data. Plaintiffs' argument that this disqualifies statements from the safe harbor would render the defense toothless.

[3] Plaintiffs' cases each are distinguishable because the statements included specific, historical facts that *could* be meaningfully distinguished from any future projection. *Dougherty*

Plaintiffs' argument that Defendants lacked meaningful cautionary language similarly is unsupported. Plaintiffs devote only a single paragraph to this argument and do not discuss, let alone grapple with, the specific cautionary language cited by Defendants. Instead, Plaintiffs assert that the Court "already rejected Defendants' arguments that their risk factors were meaningful," but do not cite any decision to that effect (and indeed, there is none). Opp'n 46.

Plaintiffs also argue that the cautionary language was inadequate because, they claim, it consisted only of "uncertainties before drilling" and not risks "revealed after drilling had occurred." *Id.* Not so. First, the distinction Plaintiffs draw is not grounded in any case law. Second, the distinction does not even make sense. The most pertinent cautionary language here relates to the PUD type curves—estimates which by definition are for *undrilled* wells. Third, the argument is not even accurate. For instance, Defendants warned about the risk of unproductive wells by noting that SandRidge drilled 29 dry wells in 2010. Dkt. 488-2, at 34. And fourth, in this Circuit, "cautionary language need not mention all factors that could alter anticipated results, or even the specific factor that 'ultimately belies a forward-looking statement.'"[4] *Bumgarner v. Williams Cos.*, 2016 WL

*v. Esperion Therapeutics*, 905 F.3d 971, 983 (6th Cir. 2018) (statement that FDA confirmed it would not require trial to approve drug non-forward-looking); *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1295 (D. Colo. 2013) (statements about past record results and aggressive growth non-forward-looking, while statements about future results and growth forward-looking); *Patriot Exploration v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 357 (D. Conn. 2013) (statements about historical data not forward-looking).

[4] Plaintiffs' argument based on *Patriot Exploration* is inapposite. There, the court found the cautionary language inadequate because it did not warn of the specific factor plaintiff alleged had not been accounted for in the challenged statements or of company-specific information. 951 F. Supp. 2d at 357. By contrast, the cautionary language here warned of

1717206, at *3 (N.D. Okla. Apr. 28, 2016).

Finally, Plaintiffs misconstrue the PSLRA safe harbor to the extent they argue that the defense is defeated by actual knowledge of falsity. Opp'n 47. As this Court has already held, "where there are 'meaningful cautionary statements,' liability is precluded despite a defendant's state of mind." *SandRidge*, 2017 WL 3309758, at *7.

### C. Plaintiffs Confirm Any Duty-to-Update Claim Must Be Dismissed.

Plaintiffs declare that their claims "do not implicate the duty to update." Opp'n at 44. They also do not dispute that investors understood that NSAI's estimates would be updated only once per year, at year-end. Given these concessions and the fact that "the Tenth Circuit has not recognized a 'duty to update,'" *Erber v. Williams Cos.*, 2017 WL 930828, at *4 (N.D. Okla. Mar. 8, 2017), the Court should dismiss any claim that Defendants failed to update the NSAI type curves and related estimates after their creation.

## III. PLAINTIFFS DO NOT RAISE A TRIABLE ISSUE ON SCIENTER.

To defeat summary judgment as to scienter, a plaintiff must "go beyond the allegations in its pleadings and designate specific facts which would establish a genuine issue for trial concerning the existence of scienter." *Rebel Enters., Inc. v. Prudential-Bache Sec., Inc.*, 959 F.2d 245 (10th Cir. 1992).[5] Further, Plaintiffs' burden here is greater than

---

the specific risks Plaintiffs assert caused their loss—e.g., that estimating reserves is "inherently imprecise" and reserves "most likely" would vary from estimates—and other SandRidge-specific information—e.g., SandRidge's operations were "concentrat[ed] … in West Texas and the Mid-Continent." *See* Dkt. 488-48 (collecting Defendants' extensive cautionary language). Regardless, as explained above, Defendants' cautionary language is adequate in this Circuit even if it omitted the risk that transpired here.

[5] Contrary to Plaintiffs' argument, it is not easier to survive a motion for summary judgment than a motion to dismiss. "The judicial reasoning applicable to imposing heightened

in the typical case because they primarily challenge forward-looking statements subject to the PSLRA safe harbor, and opinions subject to *Omnicare*.[6] Under the safe harbor, for example, recklessness will not suffice; Plaintiffs must present evidence that Defendants *actually knew* that "the forecast[s] could [not] be met." *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *8 (N.D. Cal. Nov. 27, 2018).

No reasonable jury could find that Plaintiffs have met this standard. First, Plaintiffs contend that there is "direct evidence" of Defendants' knowledge that the type curves were overstated based on certain presentations and reports, including daily production reports, presentations by SandRidge's operations groups ("BPRs"), presentations by SandRidge's reservoir engineering group ("PUD reviews"), and third-party analyses by Pinnacle Energy Services ("PES") and Tudor Pickering Holt ("TPH"). Opp'n 52; PSAF § IV.A.2. But unlike the NSAI type curves, which Plaintiffs agree projected PUD wells as of year-end 2010 and 2011 (*see* SUF & RSUF ¶¶ 7, 9, 10), these estimates forecasted production from different well sets, based on different data, for different purposes:

- <u>Daily Production Reports</u>. These reports provided a snapshot of daily oil and gas production of SandRidge-operated producing wells. *See* Ex. 2, Lawler Tr. 297:25-299:1. They did not forecast Mississippian PUD well production.
- <u>BPRs</u>. These presentations, prepared by the operations group, provided appraisals of a subset of producing SandRidge Mississippian wells drilled in each month after

pleading requirements is at least as forceful, if not more so, with regard to proof requirements that a trial judge must consider in deciding whether to allow a motion for summary judgment." *Geffon v. Micrion Corp.*, 249 F.3d 29, 36 (1st Cir. 2001). In particular, summary judgment is appropriate where, as here, the challenged statements are approved by a third-party auditor or estimator. *See* MSJ 19-22.

[6] Plaintiffs do not dispute that Defendants subjectively believed the challenged opinions. Plaintiffs' argument that the opinions did not "fairly align" with other information and they lacked a reasonable basis under *Omnicare* (Opp'n 43) is refuted by the fact that the type curves are PUD (not PDP) estimates and Defendants relied on NSAI to create them.

February 2012. *See* Dkt. 517-29 to -38; Ex. 3, Koontz Tr. 64:6-65:18. They did not forecast production from PUD wells and did not start until months after the announcement of the year-end 2011 type curve. *See* Ex. 4, Ward Tr. 145:20-147:20.

- PUD Review Materials. Plaintiffs cite to the PDP oil EURs presented at these quarterly meetings. PSAF ¶ 17. Yet they ignore the *PUD* oil EURs presented at the same meetings, which were nearly identical to the PUD oil EURs projected by the NSAI type curves. *See* Ex. 4, Ward Tr. 86:5-87:10 (second quarter 2011 PUD Oil EUR of 213 vs. year-end 2010 NSAI PUD oil EUR of 211); *id.* at 124:4-8 (year-end 2011 PUD Oil EUR of 203 vs. year-end 2011 NSAI PUD oil EUR of 204).

- Plaintiffs' Appendix A. Plaintiffs neither explain how they derived the EUR estimates in this chart nor submit the documents it cites, which appear to be unauthenticated raw data or rough, non-final analyses of non-representative well sets. The chart is unauthenticated, unreliable, and inadmissible on summary judgment.

- PES and TPH Analyses. These third-party analyses, prepared for potential transactions involving SandRidge wells, also involved different well sets. The PES report included probable and possible wells in addition to PUDs. Dkt. 517-27, at -914-18; Ex. 5, R. Johnson Tr. 39:8-23, 360:5-363:18. The TPH presentation did not estimate PUDs. Dkt. 517-24. The TPH presentation estimated a total EUR of 455 and oil EUR of 235, which both *exceed* NSAI's type curves. *Id.* at -575.

The fact that these fundamentally different estimates reached different conclusions is not evidence of fraud, especially considering the subjective and imprecise nature of estimating reserves, *see* SUF ¶ 23. *See Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 540 (5th Cir. 2008) (internal reports did not demonstrate scienter when they did not "include[] information at odds with … public statements"); *In re Tseng Labs, Inc. Sec. Litig.*, 954 F. Supp. 1024, 1031 (E.D. Pa. 1996), *aff'd*, 107 F.3d 8 (3d Cir. 1997) (granting summary judgment on scienter for sales forecast even though internal documents showed actual orders were below forecast). In fact, much of this evidence contradicts Plaintiffs' theory by showing that SandRidge's internal *PUD* estimates were consistent with NSAI's estimates. *See, e.g.*, Ex. 4, Ward Tr. 124:4-8; Ex. 5, R. Johnson Tr. 21:6-18.

Second, Plaintiffs assert that NSAI's "initial" determinations and the long-form year-end NSAI reserve reports contradict the type curves. PSAF ¶¶ 1, 3, 8. NSAI's "initial" determinations, however, are merely early drafts. Plaintiffs do not show that these drafts were more reliable or accurate than NSAI's final analyses, nor even that Messrs. Ward or Grubb received them. As for the reserve reports, Plaintiffs again conflate PDP well projections with the type curves' PUD well projections. *See* PSAF ¶ 8. By definition, a PUD projection should be higher than a PDP projection, because PUDs are booked where the company wants to drill—i.e., where the best-performing PDPs are. Ex. 4, Ward Tr. 379:18-380:2. After all, Plaintiffs do not contend that the *PUD* estimates in the long-form NSAI reports were inconsistent with the type curves.[7] *See* SUF ¶ 17 (undisputed).

Third, Plaintiffs theorize that Defendants "pressured" NSAI into manipulating the type curves by including third-party wells, excluding poor-preforming SandRidge wells, and using a single type curve rather than multiple type curves. PSAF ¶¶ 4, 7. But crucially, Plaintiffs do not cite a single example of Messrs. Grubb or Ward discussing the type curves with NSAI, nor any evidence that they directed or were even aware of these alleged inclusions/exclusions or the decision to use a single type curve vs. multiple type curves. Plaintiffs cannot survive summary judgment by making speculative characterizations about conversations with NSAI that Mr. Grubb (and Mr. Ward) did not even participate in. *See*

[7] Plaintiffs also suggest that the fact that the long-form NSAI reports were not published demonstrates scienter. Opp'n 55. But Plaintiffs identify no rule or reason requiring Defendants to disclose the long-form reports. SandRidge's summary reports were consistent with SEC requirements, which require only a "summary" of reserves, 17 C.F.R. § 229.1202, and are similar to the reports disclosed by virtually every public oil and gas company, *see, e.g.*, Ex. 6, 2011 Chesapeake Energy Reserve Reports.

*In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1240 (S.D. Cal. 2010) (on summary judgment, defendant's "general discussion" about estimates does not "indicate that [the defendant] was involved in selecting or manipulating the assumptions used").[8]

Plaintiffs' entire pressure theory boils down to two lines, stripped of their context, from emails that do not support this theory.[9] PSAF ¶ 2. But even if there was somehow any doubt of that, NSAI's Mr. Miller confirmed that NSAI's relationship with SandRidge was "fairly typical [of] all [its] clients" with "a good, healthy back-and-forth" and that NSAI simply tried "to use the data and honor the [SEC reserves] definitions." Ex. 7, Miller Tr. 54:20-55:6, 61:3-9.[10] Plaintiffs elide rather than dispute the consistent testimony that NSAI had the final say in determining the type curves and reserves. SUF & RSUF ¶ 30.

Finally, [redacted]

[8] Similarly, Plaintiffs vague allegations that Mr. Grubb attended "a variety of meetings at which the results in the Mississippian were discussed" without evidence connecting any specific information disclosed at a meeting Mr. Grubb attended to any specific challenged statement are insufficient. Opp'n 54; *see SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 975 (N.D. Okla. 2017) (plaintiff cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation").

[9] They argue the first email shows Messrs. Ward and Grubb "encouraged" employees to "push" NSAI to increase the oil EUR, but the email makes clear that any pushing concerned the *timing* of NSAI's feedback, not the substance. Dkt. 517-18, 517-19 (Ward: "When is Rodney getting feedback from [NSAI]?" Grubb: "We are working as fast as we can here. I am not sure how much more we can push NSAI."). The second email, in which Mr. Grubb quips to Rodney Johnson about Mr. Miller "You must have really beat him up yesterday," is clearly a joke, and not evidence of pressure. Dkt. 517-23.

[10] Nor do Plaintiffs present evidence that lower-level employees pressured NSAI to manipulate the type curves. SandRidge and NSAI witnesses consistently testified that it was appropriate to include and exclude certain wells and to use a single type curve, that it was NSAI's decision which wells to include and whether to use a single type curve, and that NSAI was not subject to undue pressure. *See* SUF ¶¶ 30-32; Ex. 7, Miller Tr. 223:24-224:16; 276:13-15; Ex. 8, Walton Tr. 72:21-73:3, 83:9-17; Ex. 9, Galvin Tr. 67:25-68:15.

[redacted]

On top of all this, Plaintiffs fail to rebut the fact—highly probative of the absence of scienter—that the statements they challenge were estimates prepared and determined by a third-party estimator, and not by Defendants. They seek to distinguish the similar cases cited by Defendants on two grounds, neither persuasive. First, they argue that these cases involved accounting firms while NSAI is an oil and gas estimator. Opp'n 57. But this fact makes Defendants' argument stronger, not weaker. Unlike an auditor, NSAI did not merely sign off on Defendants' estimates; it prepared its own. *See* SUF ¶ 7. Second, they argue that the Plaintiffs' allegations in these cases were "conclusory." Opp'n 57. Yet as discussed above, Plaintiffs' allegations here are just as conclusory and unsupported.[11]

## IV. THE STATEMENTS ABOUT HISTORICAL PRODUCTION RESULTS AND GEOLOGY WERE IMMATERIAL AND NOT MISLEADING.

Plaintiffs also challenge (i) factually accurate past production results, and (ii)

[11] *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954 (N.D. Ill. 2011) is easily distinguishable. The court denied summary judgment there because of evidence that the alleged misrepresentations were never approved by the defendant and auditor's accounting and reporting process. *Id.* at 970. By contrast here, there is no dispute that the type curves were created and approved by NSAI's year-end reserve process. *See* SUF & RSUF ¶ 26; PSAF ¶ 1, 3. Plus, the reasons for granting summary judgment are stronger here than in *Silverman* and the typical "auditor" case, as detailed in Defendants' opening brief. MSJ 19-22.

statements about the Mississippian's geology. As explained in the reply brief submitted by Mr. Ward (which Mr. Bennett and Mr. Grubb join and incorporate here), these statements were not materially misleading and thus do not preclude summary judgment.

## V. PLAINTIFFS CONCEDE THAT DEFENDANTS FACE NO LIABILITY FOR UNPLEADED CLAIMS AND THEORIES.

In Defendants' opening brief, they showed that Plaintiffs asserted several new claims at the end of discovery, and that these unpleaded claims are precluded by the statute of repose and PSLRA. MSJ 25-26. In response, Plaintiffs admit defeat. They concede that they "only seek to present evidence to a jury that supports Plaintiffs' claims as pled," but argue Defendants are seeking to "exclude evidence." Opp'n 50.

Defendants are not trying to exclude relevant evidence; they are merely holding Plaintiffs to the allegations they pled. For example, Defendants cannot be held liable for a claimed failure to disclose the alleged pressure on NSAI or the alleged underperformance in Grant County because the Complaint does not plead that these alleged omissions violated the law. This issue is separate from the question, not presented here, whether evidence related to Plaintiffs' unpleaded allegations would be relevant to Plaintiffs' pleaded claims and admissible for the purposes of trial (if there is one).

## VI. PLAINTIFFS ATTEMPT TO ELIDE DEFENDANTS' LOSS CAUSATION AND DAMAGES ARGUMENTS.

As explained in Defendants' reply brief to exclude Mr. Steinholt, Plaintiffs avoid Defendants' loss causation and damages arguments, and seek to shift the burden of disproving loss causation and damages to Defendants. Plaintiffs also do not meaningfully address Defendants' argument that they failed to "establish how and when the truth"

concerning the allegedly false geology statements "was revealed" to the market. *SandRidge*, 2017 WL 3309758, at *14. They still fail to identify any statement that revealed the alleged "truth" that the Mississippian was inconsistent and not well understood or any mechanism by which that alleged truth was revealed.

## VII. PLAINTIFFS FAIL TO REBUT MR. BENNETT'S AND MR. GRUBB'S CONTROL PERSON LIABILITY ARGUMENTS.

Defendants' opening brief argued that Plaintiffs cannot demonstrate the elements of control liability as to Messrs. Bennett and Grubb for three categories of statements: (i) Mr. Ward's statements, (ii) each other's statements, and (iii) NSAI's type curve and estimates.

- Mr. Ward's Statements. Plaintiffs' opposition does not contend that Messrs. Bennett or Grubb had control over Mr. Ward's statements, thereby conceding that the control liability claims based on those statements should be dismissed.

- Each Other's Statements. Plaintiffs' only argument as to Messrs. Bennett's and Grubb's control over each other's statements is that scripts for earnings and conference calls were at times circulated and commented on by other SandRidge employees. Opp'n 65. But the ability to offer suggestions and comments is a far cry from the "power to direct or cause the direction of the management and policies of a person" required to demonstrate control. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003); *see also In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011) ("[P]roviding advice that the [primary violator] chose to follow does not suggest control.").

- NSAI's Estimates. Finally, Defendants do not rebut the uncontroverted evidence that Messrs. Bennett and Grubb lacked the power to control NSAI's estimates. Their arguments that Messrs. Grubb and Bennett may have had some power to control whether to disclose *other* information and *when* the estimates were disclosed are beside the point. *See In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2011) ("Allegations of influence are not the same as the power to direct the management and policies.").

## CONCLUSION

Accordingly, the Court should grant Defendants' motion for summary judgment.

Dated: September 22, 2020

Respectfully submitted,

CROWE & DUNLEVY

/s/ Evan G.E. Vincent
Evan G.E. Vincent, OBA #22325
evan.vincent@crowedunlevy.com
324 North Robinson Avenue Suite 100
Oklahoma City, OK 73102
(405) 239-6696

COVINGTON & BURLING LLP
Mark P. Gimbel (admitted *pro hac vice*)
mgimbel@cov.com
C. William Phillips (admitted *pro hac vice*)
cphillips@cov.com
Christopher Y.L. Yeung (admitted *pro hac vice*)
cyeung@cov.com
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1000

*Attorneys for Defendants James D. Bennett and Matthew K. Grubb*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2020, I electronically transmitted the attached Reply in Support of Defendants James Bennett and Matthew Grubb's Motion for Summary Judgment to the Clerk of the Court using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

*/s/ Evan G.E. Vincent*