**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | Case No. 12-cv-01341-G |
| This Document Relates to: ALL ACTIONS. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION UNDER RULE 54(B)**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 1

II. DISCUSSION .......... 2

A. Plaintiffs' Response To The Key Facts Is Inadequate .......... 2

1. *Plaintiffs Do Not Begin To Dispute Many Crucial Facts* .......... 2

2. *Former Employee Number 1 Did Not Support Any Allegations* .......... 2

3. *Former Employee Number 2 Did Not Confirm The Allegations Attributed To Him* .......... 3

4. *Former Employee Number 3 Did Not Confirm The Allegations Attributed To Her* .......... 5

B. The Court Has Broad Power To Right This Wrong .......... 7

C. Discovery Has Not Cured Plaintiffs' Misrepresentations .......... 9

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Spirit AeroSystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016) .......... 7

*Benavidez v. Sandia Nat'l Labs*,
2017 WL 3052765 (D.N.M. June 21, 2017) .......... 8

*City of Livonia Emps' Retirement Sys. v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) .......... 10

*City of Philadelphia v. Fleming Cos., Inc.*,
264 F.3d 1245 (10th Cir. 2001) .......... 9

*Miami Tribe of Oklahoma v. United States*,
2006 WL 3848949 (D. Kan. Dec. 29, 2006) .......... 8, 9

*Shaefer v. First National Bank of Lincolnwood*,
465 F.2d 234 (7th Cir. 1972) .......... 8

*Sorkin LLC v. Fischer Imaging Corp.*,
2005 WL 1459735 (D. Colo. June 21, 2005) .......... 7

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
684 F. Supp. 2d 1296 (N.D. Okla. 2010) .......... 8

*Wolfe v. Aspenbio Pharma, Inc.*,
587 F. App'x 493 (10th Cir. 2014) .......... 4

*Zhang v. LifeVantage Corp.*,
2017 WL 4142660 (D. Utah Sept. 18, 2017) .......... 4

## RULES

Fed. R. Civ. P. 54(b) .......... 8, 9

# I. INTRODUCTION

A close reading of Plaintiffs' opposition reveals that the main points of Defendants' motion remain essentially unrebutted: Plaintiffs survived motions to dismiss only by asserting secret witness testimony. Plaintiffs fought tooth-and-nail against discovery from these witnesses, showing they knew from the outset their frailty. In discovery, the first witness avoided service by Defendants, and Plaintiffs did nothing to obtain his testimony. The second witness testified that he did not work on the Mississippian project during the class period at all. The third witness testified that the dramatic story attributed to her supposedly showing Defendant Ward's bad intent and corruption was fabricated. None was interviewed by Plaintiffs' counsel, contrary to specific assurances in the Complaint. None feared physical or job retaliation, contrary to specific statements by Plaintiffs. Tellingly, Plaintiffs did not challenge their testimony during their depositions and now present no evidence from investigators or attorneys criticizing the witnesses' sworn testimony.

Plaintiffs respond with what one might call "unapologetic deflection." They do not explain their deception, but instead complain that they should have been called out sooner. They spin the proof of knowing false allegations as "quibbling over small irrelevant details" or "minor variations." They persist in claiming that their once pivotal fraud allegations are now somehow irrelevant after having been disproven. They never once venture to explain themselves, choosing an "offense is the best defense" tactic, rather than acknowledging the collapse of their secret witness case. And they do not grapple with the fact that several published authorities addressing this very problem

involve the same law firm.

Whether or not to permit this kind of litigation conduct is ultimately within the Court's discretion. Defendants would note that this is far from a one-off situation where a witness might have recanted some testimony. The evidence here shows a lengthy course of conduct fabricating multiple witnesses' testimony, concealing the falsehoods, pushing the case forward on an inappropriate basis, and not once acknowledging the undisputable problem, even to this day. Defendants respectfully request that the Court reconsider the denial of their motions to dismiss and dismiss Plaintiffs' Third Amended Complaint with prejudice.

## II. DISCUSSION

### A. Plaintiffs' Response To The Key Facts Is Inadequate

#### 1. *Plaintiffs Do Not Begin To Dispute Many Crucial Facts*

Plaintiffs have nothing to say about: (1) the false allegation that Plaintiffs' counsel had interviewed the witnesses; (2) the false representation that the witnesses feared retribution; (3) why Plaintiffs resisted disclosing these witnesses or presenting them for deposition; and (4) that no witness actually accused any Defendant of fraud.

#### 2. *Former Employee Number 1 Did Not Support Any Allegations*

After Plaintiffs attempted to conceal his identity and whereabouts, Former Employee Number One avoided Defendants' attempts to serve him. Plaintiffs apparently never tried. They offer no explanation for this odd situation, but instead try to dismiss the unsupportable allegations as not relevant to the *Glitz* motion to dismiss. This after-the-fact argument glosses over the truth that Plaintiffs presented the allegations in their

Complaint and urged the Court to consider them in denying Defendants' motion to dismiss. (The Lanier court considered these allegations as true in its order denying the Defendants' motion.) Put simply, on this record, there is no basis to conclude that this witness is anything but a third example of fabricated allegations presented in court filings as truthful allegations.

**3. *Former Employee Number 2 Did Not Confirm The Allegations Attributed To Him***

The Court relied on allegations attributed to Former Employee Number 2 (Michael Hale) that Defendants, Grubb and Ward, received updates each week starting in early 2012 indicating the Mississippian play was underperforming. Dkt. 239 at 35; Dkt. 240 at 20. But Hale testified unequivocally that he had no first-hand knowledge of Mississippian performance in early 2012. Mot. at 10 (citing Ex. 1, Hale Dep. 52:19-53:9). With this key fact undeniable, Plaintiffs resort to harvesting innocuous background statements from his deposition, and stretching to argue that they are somehow important to show Defendants' scienter.

For example, Plaintiffs claim that Hale can testify a little about the performance of the Mississippian. But he worked exclusively on the Permian—and *not* the Mississippian—between 2010 and 2013. And while Mississippian performance was occasionally discussed at weekly management meetings, Hale testified that beginning in 2011, SandRidge held separate meetings for the Permian and Mississippian. Ex. 1, Hale Dep. 87:18-23. Furthermore, the "one or two" Mississippian meetings Hale attended were between "January and June of 2013"—after the end of the class period. *Id.* 28:6-19.

Plaintiffs' next attempt to excuse the Complaint's factual inaccuracies is to argue that, despite the Complaint's allegations of direct secret witness testimony, second-hand testimony is good enough. Plaintiffs argue that Hale had second-hand "access to and received information from colleagues about the Mississippian for the period of time prior to his dedicated involvement on the Mississippian [L]ime." Opp. at 12 (citing Ex. 1, Hale Dep. at 52:20-55:12). There are two glaring problems with this claim: First, the best testimony Plaintiffs can muster is that Hale "remember[ed] other geologists that were working on the Miss saying that, you know, they were kind of lukewarm on it." *Id.* "Kind of lukewarm" is a far cry from the testimony promised in the Complaint, and would not get past an simple evidentiary objection. Second, had the Complaint truthfully alleged this secondhand information, the Court would have rejected it and dismissed the case. The Court rejected other confidential witness allegations in Plaintiffs' Complaint because they were not based on the type of first-hand knowledge the PSLRA requires. Dkt. 239 at 34; Dkt. 240 at 19 (rejecting claims made by FE 1 because they were not based on "his or her 'direct first-hand knowledge'"). To the extent they "require[] the court to 'stack inference upon inference to even conclude that the statements [Plaintiffs challenge] were false—much less that [D]efendants knew or were reckless in not knowing they were false'"—the sort of passive, generalized facts Plaintiffs now rely on are "insufficient" to establish scienter. *Zhang v. LifeVantage Corp.*, 2017 WL 4142660, at *18 (D. Utah Sept. 18, 2017) (quoting *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 498 (10th Cir. 2014).

Plaintiffs' next effort to spin Hale's testimony into something it is not is his use of

the word "underperforming" in an answer. But look at the question. He was explaining what it means generally for wells to underperform, not that the Mississippian was actually underperforming. Ex. 1, Hale Dep. 39:23-41:8. The first time that he personally saw data from which he concluded that the Mississippian had a greater number of underperforming wells than expected was in March 2013. *Id.* 54:1-12.

#### 4. *Former Employee Number 3 Did Not Confirm The Allegations Attributed To Her*

Testimony by the third secret witness, Maggie Silvertooth, was quite stark. The dramatic scenes described in the Complaint did not happen ("The whole thing is not correct') and she had no reason to believe anything fraudulent occurred at SandRidge. Plaintiffs now spin the unsupported allegations as Silvertooth not specifically recalling her statement to an investigator, but those are their words, not hers. If Plaintiffs' defense to these inaccuracies is a failed memory, they could have presented an affidavit from their investigator, or deposed other supposed witnesses to the incident. That they did neither – and retreated to lawyer arguments instead – speaks volumes.

Plaintiffs try two more angles to avoid the import of their false allegations. The first is the same strategy used with Hale's testimony – ignore the disproved allegations and instead pluck innocuous background facts from the deposition. And so, they argue that Silvertooth confirmed that Defendants Ward and Grubb attended some unspecified meetings, she met Ward a "handful of times, Ex. 2, Silvertooth Dep. 20:19-23, that Mississippian performance was discussed, and that she was disappointed that one particular well did not pay off. *Id.* 66:8-24. None of this would support proof of fraud or

scienter had it been truthfully alleged in the Complaint. Silvertooth's testimony does not support the central allegation the Court relied on in denying Defendants' Motions to Dismiss: that Defendants knew the Mississippian was underperforming because they attended "weekly [e]xploration [m]eetings . . . . [during which] attendees discussed . . . [t]he poor performance of the Mississippian." Dkt. 239 at 35; Dkt. 240 at 20 (modifications in original). Instead, her testimony revealed that she attended a handful of meetings that Ward and Grubb attended and did not believe Defendants engaged in any misconduct or sought to mislead investors. Mot. at 13. Silvertooth testified that, at most, Ward attended the meetings "less than 25 percent of the time" and that Grubb attended "the same amount or slightly less." Ex. 2, Silvertooth Dep. 47:18-25; 69:1-12.

Plaintiffs' second argument is that these dramatic allegations, even if true, were irrelevant to the Court because the front-running allegations have been dismissed. Yet there is no indication the Court did not consider these allegation in denying the motion to dismiss. Indeed, they were the only allegations with any specific facts suggesting bad intent by Defendant Ward. Furthermore, Plaintiffs are arguing now in their summary judgment opposition that the front-running allegations show Ward was motivated to defraud investors. Pls.' Omnibus Opp. to Def's Mot. Summ. J. ¶¶ 29-32, Dkt. 514.

Silvertooth offers no testimony about which meetings Ward and Grubb attended, and she certainly does not place them at meetings where alleged underperformance of the Mississippian was discussed—allegations that the Court specifically relied on. Dkt. 239 at 35; Dkt. 240 at 20-21 (relying on allegations attributed to FE 3 that Ward and Grubb attended weekly meetings regarding "[t]he poor performance of the Mississippian . . . .").

The Complaint also led the Court to believe that everyone at SandRidge knew the Mississippian was not performing as expected. But Silvertooth revealed at deposition that, contrary to the Complaint's allegations, when she spoke to Plaintiffs' investigator about "frustration within SandRidge" or "common knowledge that [the Mississippian] was underperforming," she was not referring to Defendants or even SandRidge as a whole—she referred to only "[her] group of geologists." Ex. 2, Silvertooth Dep. 65:7-68:11. In fact, Silvertooth specifically testified she did not know what any others at weekly performance meetings believed about the Mississippian's performance. *Id.* 68:13-17 ("I don't know what those people thought."). And the only example she cited of frustration with that performance related to a single well in 2013, after the close of the class period. *Id.* 66:8-25.

Allegations that Defendants attended only a fraction of meetings without particularized facts establishing exactly "who was present and what information was presented" fail to support a strong inference of scienter. *Sorkin LLC v. Fischer Imaging Corp.*, 2005 WL 1459735, at * 8 (D. Colo. June 21, 2005); *see also Anderson v. Spirit AeroSystems Holdings, Inc.*, 827 F.3d 1229 (10th Cir. 2016) ("[M]ere attendance at meetings does not contribute to an inference of scienter."). The innocuous facts that Silvertooth confirmed certainly could not support an inference of scienter.

### B. The Court Has Broad Power To Right This Wrong

Plaintiffs' primary defense, consuming almost one-third of their brief, is the procedural argument that, regardless of the factual merits, it is too late for the Court to address this conduct. As part of this argument, they make the bizarre claim that had

Defendants moved to dismiss the case sooner, more escrow money would have been available to pay a settlement to the (apparently dismissed) Plaintiffs. Plaintiffs are incorrect; the Court has ample power to address this regrettable situation.

To start, Rule 54(b) gives this Court wide discretion to reconsider "*any* order or other decision . . . *at any time*" before the entry of final judgment. This Court has broad statutory power to reconsider its prior decisions at any time prior to final adjudication.

Next, there is no "extreme hardship" exception to Rule 54. Plaintiffs cite *Shaefer v. First National Bank of Lincolnwood*, 465 F.2d 234 (7th Cir. 1972), to argue Defendants need an "extreme hardship" "excuse" or else any motion filed 30 days after the original order should be denied. Of course, that standard would not work here, where it took Defendants months and years to uncover the evidence supporting this motion. Moreover, "[t]he Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides." *Benavidez v. Sandia Nat'l Labs*, 2017 WL 3052765, at*45 (D.N.M. June 21, 2017). Thus, courts in this circuit "'generally remain free to reconsider their earlier interlocutory orders'" at "any time"—including "to correct clear error or prevent manifest injustice." *Id.*; *Tomlinson v. Combined Underwriters Life Ins. Co.*, 684 F. Supp. 2d 1296, 1299 (N.D. Okla. 2010);[1] *see also* Mot. at 16 (collecting cases).[2]

---

[1] Plaintiffs' suggestion that Defendants somehow misrepresented *Tomlinson* is wrong. The *Tomlinson* court set forth the standard for granting reconsideration under Rule 54(b), including based on newly discovered evidence or to prevent manifest injustice. 684 F. Supp. 2d at 1299. Defendants cited multiple cases in their Opening Brief confirming that Rule 54(b) can be and is often used to reconsider interlocutory orders. *See* Mot. at 16.

[2] Plaintiffs also rely on *Miami Tribe of Oklahoma v. United States*, 2006 WL 3848949 (D. Kan. Dec. 29, 2006), to suggest reconsideration motions are time-limited in

Unlike in other reported cases involving Plaintiffs' firm, Defendants framed this motion as a motion to reconsider, rather than as a motion for sanctions. The remedy of reconsidering the dismissal order is clean and well-justified by the arguments Plaintiffs presented previously in opposition to the motion. Moreover, with several cases and multiple law firms and, apparently, investigators involved, it spares the system from litigating who is at fault and by how much. Defendants are most interesting in getting these baseless allegations and accusations dismissed in the most direct way possible.

**C. Discovery Has Not Cured Plaintiffs' Misrepresentations**

Plaintiffs' final argument is that discovery has substantiated their claims, and that the Court should therefore overlook the now-refuted basis on which it allowed the case to proceed.[3] That view is contrary to both the law and the facts.

As a legal matter, Plaintiffs do not get a free pass for misrepresentations to this Court and should not be permitted to flout the protections that the PSLRA affords to public companies. *See City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258–59 (10th Cir. 2001) (noting the PSLRA "intended to 'eliminate some of the abuses experienced in private securities litigation, such as the routine filing of lawsuits . . . and

---

this Circuit. But *Miami Tribe* did not involve a motion for reconsideration at all. Instead, it addressed a motion for *entry of final judgment* under Rule 54(b). *Id.* at *2-3. Moreover, the Kansas district court specifically declined to adopt the Seventh Circuit standard that Plaintiffs advocate here.

3 Plaintiffs also argue that this motion is like a motion for summary judgment that "raise[s] issues of fact that are not appropriate to resolve on a motion to dismiss." Opp. at 22. But Plaintiffs have not cited a single case that stands for the proposition that a Court cannot reconsider its own decision on a motion to dismiss based on newly discovered evidence presented by the moving party.

the manipulation by class action lawyers of the clients they purportedly represent'"). Allowing this case to proceed—based on faulty secret witness allegations, without which Plaintiffs would not have survived the motions to dismiss—would incentivize every plaintiff in a securities class action case to exaggerate (and even fabricate) allegations from unnamed witnesses in hopes of finding some evidence of wrongdoing through discovery. *See, e.g.*, *City of Livonia Emps' Retirement Sys. v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013) (cautioning courts to discount confidential witness allegations because "[t]he sources may be ill-informed . . . misrepresented, [or] may even be nonexistent").

In any event, Plaintiffs never actually tried to disprove the secret witness testimony disavowing Plaintiffs' allegations. They did not depose other witnesses, ask witnesses about the secret witness allegations or even the witnesses themselves, and asked few, if any questions directly to the secret witnesses. Plaintiffs should not have been allowed to take any discovery in this case because the secret witness statements, if honestly reported, would fail before Defendants' PSLRA motion to dismiss. At the end of the day, not one percipient witness in this case has testified that any Defendant made a single false or misleading statement about SandRidge's production in the Mississippian. Dkt. 489 ¶ 27.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its Orders denying Defendants' Motions to Dismiss (Dkt. Nos. 239, 240).

Dated: September 22, 2020

Respectfully submitted
(with consent of all signatories),

**LATHAM & WATKINS LLP**

*/s/ Steven M. Bauer*
Steven M. Bauer (pro hac vice)
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: steven.bauer@lw.com

J. Christian Word (pro hac vice)
Stephen P. Barry (pro hac vice)
David L. Johnson (pro hac vice)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
christian.word@lw.com
stephen.barry@lw.com
david.johnson@lw.com

**CORBYN LAW FIRM**

*/s/ George S. Corbyn, Jr.*
George S. Corbyn, Jr., OBA #1910
211 North Robinson, Suite 1910
One Leadership Square
Oklahoma City, OK 73102
gcorbyn@corbynlaw.com
kcaldwell@corbynlaw.com
(405) 239-7055

*Attorneys for Defendant Tom L. Ward*

**COVINGTON & BURLING LLP**
Mark P. Gimbel (*pro hac vice*)
C. William Phillips (*pro hac vice*)
Christopher Y.L. Yeung (*pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
mgimbel@cov.com
cphillips@cov.com
cyeung@cov.com
(212) 841-1000

**CROWE & DUNLEVY**

*/s/ Evan G.E. Vincent*
Evan G.E. Vincent, OBA #22325
324 North Robinson Avenue Suite 100
Oklahoma City, OK 73102
evan.vincent@crowedunlevy.com
(405) 239-6696

*Attorneys for Defendants James D. Bennett and Matthew K. Grubb*

**LAW OFFICES OF HERBERT BEIGEL**
Herbert Beigel (*pro hac vice*)
5641 N. Chieftan Trail
Tucson, AZ 85750
hbeigel@me.com
(520) 825-1995

**JOHNSON & JONES, P.C.**

*/s/ J. Christopher Davis*
J. Christopher Davis, OBA #16639
Jason L. Callaway, OBA #31958
Two Warren Place
6120 S. Yale, Suite 500
cdavis@johnson-jones.com
jcallaway@johnson-jones.com
(918) 584-6644

*Attorneys for Nominal Defendant SandRidge Energy, Inc.*