**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) | No. 5:12-cv-01341-G |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT SANDRIDGE'S**
**MOTION FOR EXTENSION OF TIME TO COMPLY WITH ORDER**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT BACKGROUND ........................................................................... 2

    A.     The Motion to Compel ........................................................................... 2

    B.     SandRidge Fails to Comply with the Court's Order and Seeks to
            Delay Its Interrogatory Responses .......................................................... 4

III.   ARGUMENT ...................................................................................................... 4

    A.     Legal Standard......................................................................................... 4

    B.     SandRidge Has Not Shown Good Cause for Not Complying with the
            Court's Order........................................................................................... 5

    C.     SandRidge Has Not Shown Good Cause for an Extension........................ 6

    D.     Plaintiffs Will Be Unduly Prejudiced if SandRidge Does Not
            Promptly Answer the Interrogatories ...................................................... 10

IV.    CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

## CASES

*City of Wichita v. Aero Holdings, Inc.*,
  192 F.R.D. 300 (D. Kan. 2000) ................................................................ 11

*Cox v. Sandia Corp.*,
  941 F.2d 1124 (10th Cir. 1991) .................................................................. 8

*Eller v. Trans Union, LLC*,
  739 F.3d 467 (10th Cir. 2013) .................................................................... 5

*GFSI, Inc. v. San Sun Hats & Cap Co.*,
  No. 07-2026-JWL-DJW, 2008 WL 489318
  (D. Kan. Feb. 20, 2008) ............................................................................. 6

*Green Country Food Mkt., Inc. v. Bottling Grp., LLC*,
  371 F.3d 1275 (10th Cir. 2004) ................................................................ 12

*In re Worldcom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...................................................... 11

*Mgmt. Comp. Grp. Lee, Inc. v. Okla. State Univ.*,
  No. Civ-11-967-D, 2011 WL 5326262
  (W.D. Okla. Nov. 3, 2011) .......................................................................... 8

*Queen v. TA Operating, LLC*,
  734 F.3d 1081 (10th Cir. 2013) ................................................................ 11

*Rachel v. Troutt*,
  820 F.3d 390 (10th Cir. 2016) .................................................................. 10

*Ruleford v. Tulsa World Pub. Co.*,
  266 F. App'x 778 (10th Cir. 2008) ........................................................... 12

*Semsroth v. City of Wichita*,
  239 F.R.D. 630 (D. Kan. 2006) ................................................................... 8

*U.S. ex rel. Pedersen v. Hosp. Corp. of Am.*,
  No. 1:11-cv-41-CW-PMW, 2012 WL 718896
  (D. Utah Feb. 14, 2012) .............................................................................. 5

**Page**

*United States v. Madsen*,
 No. 2:16-cv-00946-DN, 2017 WL 90351
 (D. Utah Jan. 9, 2017) ..................................................................................... 9, 10

*Utah Republican Party v. Herbert*,
 678 F. App'x 697 (10th Cir. 2017) ........................................................................ 5, 9

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
 Rule 6(b) ....................................................................................................... 4, 5, 12
 Rule 6(b)(1)(A) ................................................................................................. 4, 5

Class Representatives Laborers Pension Trust Fund for Northern Nevada, Construction Laborers Pension Trust of Greater St. Louis, and Angelica Galkin (collectively, "Plaintiffs"), by their undersigned counsel, hereby submit this opposition to Defendant[1] SandRidge's ("SandRidge") motion for an extension of time to comply with the Court's Order (ECF No. 532; the "Order") compelling them to provide updated interrogatory responses (ECF No. 533; the "Motion").

## I.      INTRODUCTION

The Court ordered SandRidge to respond to Plaintiffs' interrogatories (the "Interrogatories") by November 13, 2020.  SandRidge, however, has failed to comply with the Court's order and is seeking to prevent Plaintiffs from obtaining the responses until after voluminous summary judgment and *Daubert* motions are decided.

SandRidge has failed to provide any good cause for its refusal to abide by the Court's Order.  First, while SandRidge claims it should not have to pay the roughly $44,000 cost to reopen a Relativity database containing the documents, its Motion ignores that SandRidge and the other Defendants burned through more than $30 million in an escrow account and insurance defending claims in this action and the coordinated *Lanier* action. Had Defendants been as diligent about expenses throughout the litigation as SandRidge is attempting to appear in its Motion, there would likely have been more than enough remaining funds to pay for re-opening the Relativity database.

---

[1]  The other Defendants are Tom L. Ward, Matthew K. Grubb and James D. Bennett, collectively with SandRidge, "Defendants."

Second, Plaintiffs' motion to compel (ECF No. 463) was fully briefed five months before Defendants archived the Relativity database, and Defendants freely accessed those documents when it suited them, including in connection with their summary judgment and *Daubert* motions. There was ample time for SandRidge to search the database for responsive information to ensure it could comply with a potential Court order granting Plaintiffs' motion. SandRidge should not be permitted to stonewall Plaintiffs during discovery with deficient discovery responses and then prevent Plaintiffs from obtaining the responses. While SandRidge will be unfairly rewarded by the extension, Plaintiffs have been, and will continue to be, unduly prejudiced by SandRidge's failure to provide the answers to the Interrogatories.

For these reasons, and as detailed below, SandRidge has failed to show good cause for not complying with the Court's Order or to justify further delaying its answers to the Interrogatories. Plaintiffs respectfully submit that SandRidge's Motion should be denied in its entirety.

## II.   RELEVANT BACKGROUND[2]

### A.   The Motion to Compel

Plaintiffs' Interrogatory Nos. 10 and 13 seek information concerning meetings held by SandRidge's executive committee about the amount of Mississippian oil and gas reserves. ECF No. 464 at 1. Defendants' initial responses to the Interrogatories were

---

[2] For a recitation of facts relevant herein, Plaintiffs respectfully refer the Court to the October 16, 2020 Order granting in part Plaintiffs' motion to compel (ECF No. 532) and Plaintiffs' memorandum of law in support of the motion to compel (ECF No. 464).

deficient because they failed to provide any substantive information and consisted exclusively of boilerplate and inconsistent objections, including undue burden, proportionality and vagueness. Order, ECF 532 at 4-5. Plaintiffs' motion to compel, filed on March 27, 2020 (ECF No. 463), sought, in pertinent part, SandRidge's supplemental responses to the Interrogatories.

The Court granted in part and denied in part Plaintiffs' motion to compel on October 16, 2020. ECF No. 532. When granting the portion of Plaintiffs' motion seeking responses to the Interrogatories, the Court recognized "SandRidge offer[ed] no specific, reasoned dispute as to the relevance of the information sought in these Interrogatories" and stated that "it [was] implausible for SandRidge to argue, concurrently, that it already has answered the Interrogatories via its document production, that it would need to undertake additional searches to answer, and that it does not know whether responsive information exists." Order ECF No. 532 at 7. *Id.* The Court also held that it "cannot find that requiring substantive answers to these two queries would be unduly burdensome to SandRidge." *Id.*

The Order required SandRidge to submit answers within 30 days and provided SandRidge with two scenarios under which it could respond: (i) if "SandRidge is able to certify [pursuant to the Federal Rules] that the answers may be determined from business records already produced . . . then SandRidge may specify those records for review in accordance with Federal Rule of Civil Procedure 33(d);" and (ii) if "SandRidge determines it must undertake a new search of its records or otherwise engage in additional efforts to obtain the requested information and properly respond, then the answers should so

reflect."[3]  *Id*. at 8.  SandRidge was required to answer the Interrogatories under both scenarios.

> **B.     SandRidge Fails to Comply with the Court's Order and Seeks to Delay Its Interrogatory Responses**

Instead of answering the Interrogatories as ordered by the Court, SandRidge filed the Motion in an effort to further delay its responses until after the Court rules on the voluminous summary judgment and *Daubert* motions filed by the parties.  SandRidge, however, does not contend that it is unable to comply with the Order.  Rather, SandRidge does not **want** to answer at this time because of Defendants' decision to archive their documents and because SandRidge does not want to incur the costs of complying with the Order.

According to SandRidge, the cost of reopening the Relativity database is approximately $44,000.  SandRidge states that once the database is reopened, it would take approximately seven (7) days for Covington & Burling LLP ("Covington"), SandRidge's former counsel and existing counsel for Defendants Bennett and Grubb, to review the documents stored in Relativity and for SandRidge to answer the Interrogatories.

## III.   ARGUMENT

> **A.     Legal Standard**

Federal Rule of Civil Procedure 6(b) permits courts to extend the time for an act that must be done within a specified time upon a showing of "good cause."  Fed. R. Civ.

---

[3] Under the second scenario, the Court advised "the parties to work together as much as reasonably possible to reach agreement on the procedural details and timetable" after SandRidge served its' amended answers within the 30-day deadline.  *Id*. n.6.

P. 6(b)(1)(A).   The Tenth Circuit has interpreted the rule "as permissive and not mandatory." *Eller v. Trans Union, LLC*, 739 F.3d 467, 478 n.10 (10th Cir. 2013).  "[A]n enlargement of the time period is by no means a matter of right." *Id.*  Indeed, when "there is no support" in the record "for needing an extension of time," a party fails to demonstrate good cause for modifying the schedule under Federal Rule of Civil Procedure 6(b).  *U.S. ex rel. Pedersen v. Hosp. Corp. of Am.*, No. 1:11-cv-41-CW-PMW, 2012 WL 718896, at *2 (D. Utah Feb. 14, 2012).

As discussed below, SandRidge has not shown good cause for either (i) failing to answer the Interrogatories or (ii) its request for an extension to identify documents responsive to the Interrogatories.

### B. SandRidge Has Not Shown Good Cause for Not Complying with the Court's Order

A district court is permitted to review a party's conduct at prior stages in the litigation when determining a lack of good cause exists to extend the schedule.  *Utah Republican Party v. Herbert*, 678 F. App'x 697, 701 (10th Cir. 2017).  Here, SandRidge's conduct weighs against a finding of good cause.

As a preliminary matter, SandRidge provides no explanation in its Motion as to why it did not serve answers to the Interrogatories as ordered by the Court.  The Order was clear that SandRidge was to serve answers "within 30 days of the date of th[e] Order."  The Order also provides that if SandRidge determines that it must "undertake a new search" or "otherwise engage in additional efforts to obtain the requested information and properly

respond, then ***the answers should so reflect***." Order at 8 (emphasis added).[4] SandRidge's excuse for not searching the Relativity database did not hamper its ability to answer the Interrogatories based on information available outside of the Relativity database.

Indeed, even though the Relativity database was archived, SandRidge apparently had access to sufficient information to conclude that the Interrogatories can be answered exclusively by identifying business records already produced.  Motion at 1.  SandRidge, however, made no effort to respond to the Interrogatories or comply with the Court's Order, and a party's failure to follow the orders of the court establishes a lack of good cause. *GFSI, Inc. v. San Sun Hats & Cap Co.*, No. 07-2026-JWL-DJW, 2008 WL 489318, at *4 (D. Kan. Feb. 20, 2008).  At minimum, SandRidge should have provided written responses to the Interrogatories and included a statement that SandRidge must undertake additional collection efforts. *See Id.*, at *3 (a party who violates a court order cannot invoke a good cause basis for relief from an adverse ruling against it).

### C.   SandRidge Has Not Shown Good Cause for an Extension

SandRidge brazenly "requests the Court grant it partial relief from" the Order so that it can "avoid potentially unnecessary financial burdens."  Motion at 1, 4.  SandRidge argues that it should not be required to answer the Interrogatories until the Court rules on the dispositive motions. Motion at 3.[5]  This is because "the [Relativity] database turned

---

[4]  The Motion omits this critical portion of the Court's Order. *See* Motion at 1.

[5]  The dispositive motions are referred to in the Twelfth Amended Scheduling Order.  ECF No. 531.  Once the Court decides each of the fully briefed motions currently out for

off" when Defendants finished briefing summary judgment, and it is not scheduled to reopen until Covington is ready to finalize pretrial witness and exhibit lists. *Id*. at 2, 4. Thus, according to SandRidge, there is a good faith basis for its compliance with the Court's Order "to be delayed until the Relativity database is once again active." *Id*. at 4. SandRidge's argument is without merit and it should be ordered to promptly search the Relativity database and comply with the Court's Order.

SandRidge ignores that this is a problem of its own making. SandRidge and the other Defendants had complete access to the Relativity database for months after the briefing on the motion to compel was completed. ECF No. 496. The Relativity database was not archived until approximately five months later, on September 22, 2020, when Defendants served their replies in support of summary judgment. ECF Nos. 520-522, 525. *See* Motion at 2.[6] Defendants chose to archive the database in September and SandRidge recklessly disregarded the risk that it would need to access the database to answer the Interrogatories.

---

decision, the parties will confer and submit a proposed schedule for the exchange of pretrial exhibit and witness lists. *Id*. at 1.

[6] Five months is a conservative estimate. For example, Plaintiffs started the meet and confer process with SandRidge on February 12, 2020, which is more than seven months before Defendants' summary judgment motions were fully briefed. ECF No. 520-522, 525, Motion to Compel Ex. N (email chain between Christopher Gilroy, Esq. and Herb Beigel, Esq.); ECF No. 465-14. And Plaintiffs initially raised concerns about the Interrogatories on September 4, 2019, more than *one year* before summary judgment was fully briefed. ECF No. 465-12, Motion to Compel Ex. L, Letter from Robbins Geller to Covington.

SandRidge improperly objected to the Interrogatories and opposed Plaintiffs' motion to compel but failed to search for the documents in Relativity. SandRidge's failure to comply with its discovery obligations is not a basis for good cause. *See Cox v. Sandia Corp.*, 941 F.2d 1124, 1126 (10th Cir. 1991) (affirming district court's "refus[al] to reward counsel with [a good cause] excuse" for failing to actively monitor the litigation, and holding "[t]he lesson to the federal [defendant's] lawyer is not to take any chances").

SandRidge contends that the $44,000 cost to re-open Relativity is a "significant expense to SandRidge" and characterizes itself as a "discharged debtor without any further liability in this matter." SandRidge, however, ignores that *after* it exited bankruptcy, it and the other Defendants had access to a $24 million escrow account established for the sole purpose of paying defense costs and a settlement or judgment in this action and the *Lanier* action. On top of that, there was at least one other insurance policy available to all of the Defendants. Therefore, SandRidge and the other Defendants have spent more than $30 million on fees and expenses, including a portion of that amount on improperly refusing to answer the Interrogatories. *See Mgmt. Comp. Grp. Lee, Inc. v. Okla. State Univ.*, No. Civ-11-967-D, 2011 WL 5326262, at *4 (W.D. Okla. Nov. 3, 2011) (undue burden objection to comply with discovery demand rejected in light of the party's financial involvement in the litigation).

SandRidge is now pointing to Defendants' depletion of that large sum of money as a basis for continuing to frustrate Plaintiffs' discovery efforts. *See Semsroth v. City of Wichita*, 239 F.R.D. 630, 641 (D. Kan. 2006) (rejecting cost burden argument raised by party compelled to perform email searches where the discovery was found to be directly

relevant to plaintiffs' claims); *compare same to* Order at 6 (recognizing the Interrogatories "goes toward the key allegations of the case" and "should bolster Plaintiffs' scienter claims concerning Defendants' reckless disregard of the true state of the Mississippian during the Class Period").   And contrary to SandRidge's assertion that it is "without any further liability in this matter," it is Plaintiffs' understanding that as part of its bankruptcy proceeding, SandRidge negotiated that it would indemnify Defendants Grubb and Bennett in this litigation.

SandRidge argues that the timing of Plaintiffs' motion supports the extension but ignores that Plaintiffs' motion was filed after SandRidge reneged on agreeing to provide responses.  ECF No. 465-14, Motion to Compel Ex. N (email thread between Plaintiffs and SandRidge showing SandRidge initially agreed but then refused to produce the information shortly before the discovery deadline, leaving Plaintiffs no choice but to seek judicial relief).  *See Herbert*, 678 F. App'x at 701-02 (holding district courts should not view a motion to extend deadlines "in a vacuum" and finding no good cause exists where a party's counsel systematically engages in a course of conduct that added unnecessary cost and delay to the litigation).

Furthermore, the notion that SandRidge cannot afford complying with the Court's Order is belied by its recent SEC filing, dated November 5, 2020, which reports that SandRidge has over $11,000,000 in cash and cash equivalents.  Ex. A at 4, SandRidge Form 10-Q excerpts for the period dated September 30, 2020, filed with the SEC on November 5, 2020.  *See United States v. Madsen*, No. 2:16-cv-00946-DN, 2017 WL

90351, at *3 (D. Utah Jan. 9, 2017) (holding no good cause to extend deadlines when alleged hardships no longer exist).[7]

### D. Plaintiffs Will Be Unduly Prejudiced if SandRidge Does Not Promptly Answer the Interrogatories

SandRidge's extension request should also be denied because it will unduly prejudice Plaintiffs.  SandRidge misstates the history of the discovery dispute by asserting that "it does not appear that Plaintiffs' need for the requested information is extremely high" because of the "delay" between its original discovery responses (May 6, 2019) and Plaintiffs' subsequent motion to compel (March 27, 2020).  Motion at 4.  As Plaintiffs explained in support of their motion to compel, it was *SandRidge* who proposed that the parties adjourn all discussions of discovery issues until after the December 13, 2019 mediation and subsequent mid-January 2020 settlement talks.  ECF No. 464 at 6.  The parties resumed negotiations over the Interrogatories in February 2020.  *See id.*  It was also *SandRidge's* counsel who engaged in a series of delay tactics during the meet and confer process which left Plaintiffs with no choice but to file the motion to compel in March 2020. *See id.* at 6-7.  The instant Motion is yet another iteration of SandRidge's systematic pattern of delay.

The Interrogatories are highly relevant to Plaintiffs' claims, and in particular the element of scienter.  While Plaintiffs believe Defendants produced very few documents

---

[7] The sole authority cited in the Motion, *Rachel v. Troutt*, 820 F.3d 390 (10th Cir. 2016) ("*Troutt*") is distinguishable because unlike here, "no one ha[d] questioned the presence of good cause for an extension of time."  *Id*. at 395.  The party in *Troutt* also "had no opportunity to pursue any discovery" on account of being incarcerated.  *Id.*

relating to these meetings, SandRidge contends that the Interrogatories can be fully answered through identification of documents already produced to Plaintiffs. Plaintiffs would be unduly prejudiced by the continued denial of answers.

First, Plaintiffs will be prejudiced by the requested extension because they will have incomplete information and will be put at a disadvantage during this stage of the litigation. Plaintiffs need access to the Interrogatory answers and related documents to properly evaluate the strengths and weaknesses of their case, especially in the context of settlement negotiations. Without this information, Plaintiffs "would be prejudiced by [their] inability to make informed decisions about [their] litigation strategy in a rapidly shifting landscape" and would "essentially be the only major interested party" without this information during any potential settlement talks. *In re Worldcom, Inc. Sec. Litig*., 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002); *see also City of Wichita v. Aero Holdings, Inc*., 192 F.R.D. 300, 301-02 (D. Kan. 2000) (recognizing the relevance of documents used for the purpose of settlement negotiations).

Second, even though the Court has not scheduled a hearing on Defendants' motions for summary judgment, in the event the Court schedules a hearing, Plaintiffs will be at a disadvantage without access to the information. *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087-95 (10th Cir. 2013) (holding that a party seeking to withhold adverse information during the summary judgment phase gains an unfair advantage if they are not precluded from doing so by the district court).

Third, if SandRidge does not need to answer the Interrogatories until after the resolution of the dispositive motions, Plaintiffs would be required to simultaneously

compile final exhibit and witness lists for trial while potentially reviewing new documents for the first time or in a new context. Since the responses could be important to the formulation of Plaintiffs' trial strategy, SandRidge's proposal is unduly prejudicial because the Tenth Circuit "do[es] not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case[.]" *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004). Compelling SandRidge to answer the Interrogatories at this stage of the litigation, as opposed to before trial, would also avoid "wast[ing] . . . judicial resources" because it would minimize (if not eliminate) the need to extend discovery or seek continuances. *See id.*

Defendants withheld this information during discovery, and are now seeking an order from the Court permitting them to continue hiding this information. The Tenth Circuit mandates that there is no good cause for extension under Rule 6(b) where the party requesting extension is "dilatory in engaging in discovery." *Ruleford v. Tulsa World Pub. Co.*, 266 F. App'x 778, 786 (10th Cir. 2008). The Court should reach the same conclusion here.

Finally, in the alternative, SandRidge requests that the Court provide it with an additional 30 days to answer the Interrogatories. Motion at 4. SandRidge has represented that it would take seven days to answer the Interrogatories, so Plaintiffs believe an additional 30 days is excessive. Nevertheless, Plaintiffs do not object to SandRidge being afforded 30 days to answer the Interrogatories.

## IV.   CONCLUSION

Plaintiffs respectfully submit that the Court should deny SandRidge's Motion in its

entirety.

DATED:  December 3, 2020                    Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
MARK S. REICH (admitted *pro hac vice*)
CHRISTOPHER T. GILROY (admitted *pro hac vice*)

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
mreich@rgrdlaw.com
cgilroy@rgrdlaw.com

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY (OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK  73105
Telephone:  405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone:  619/342-8000
619/342-7878 (fax)
ambere@haelaw.com

*Additional Plaintiffs' Counsel*

**CERTIFICATE OF SERVICE**

I, Evan J. Kaufman, certify that on December 3, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3rd day of December, 2020, at Melville, New York.

*/s/ Evan J. Kaufman*
EVAN J. KAUFMAN
