# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re SANDRIDGE ENERGY, INC. SECURITIES LITIGATION | ) ) ) | No. 5:12-cv-01341-G <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | ) ) ) ) ) ) ) | PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     SUMMARY OF THE ACTION ................................................................. 3

III.    TERMS OF THE SETTLEMENT ............................................................. 6

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................. 9

        A.      Standards for Preliminary Approval of a Proposed Settlement ................... 9

        B.      The Settlement Satisfies the Rule 23(e)(2) Factors ..................................... 11

                1.      Plaintiffs and Lead Counsel Have Adequately Represented
                        the Class ........................................................................................ 11

                2.      The Proposed Settlement Was Negotiated at Arm's Length .......... 12

                3.      The Proposed Settlement Is Adequate in Light of the Costs,
                        Risks, and Delay of Trial and Appeal ............................................... 14

                        a.      Serious Legal and Factual Questions Placed the
                                Litigation's Outcome in Doubt ............................................. 14

                        b.      Immediate Recovery Is More Valuable than the Mere
                                Possibility of a More Favorable Outcome After Further
                                Litigation ................................................................................. 17

                4.      The Proposed Method for Distributing Relief Is Effective .............. 18

                5.      Attorneys' Fees and Expenses ......................................................... 19

                6.      The Settling Parties Have No Additional Agreement Other
                        than an Agreement to Address Requests for Exclusion ................... 20

                7.      Class Members Are Treated Equitably ............................................. 21

        C.      The Settlement Satisfies the Remaining Factor Considered by Courts
                in the Tenth Circuit ....................................................................................... 21

V.      THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO
        THE CLASS ARE APPROPRIATE ........................................................... 22

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ....................... 24

4839-2786-4318.v2

**Page**

VII.    CONCLUSION ........................................................................................................ 25

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amoco Prod. Co. v. Fed. Power Comm'n,*
   465 F.2d 1350 (10th Cir. 1972) ..................................................................... 9

*Barnwell v. Corr. Corp. of Am.,*
   No. 2:08-02151-JWL-DJW, slip op.
   (D. Kan. Feb. 12, 2009) ............................................................................. 20

*Bennett v. Sprint Nextel Corp.,*
   298 F.R.D. 498 (D. Kan. 2014).................................................................. 11

*Bennett v. Sprint Nextel Corp.,*
   No. 2:09-cv-02122-EFM-GEB, slip op.
   (D. Kan. Apr. 10, 2015) ............................................................................ 24

*Chavez Rodriguez v. Hermes Landscaping, Inc.,*
   No. 17-2142-JWB-KGG, 2020 WL 3288059
   (D. Kan. June 18, 2020) ...................................................................... *passim*

*Christine Asia Co. v. Yun Ma,*
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534
   (S.D.N.Y. Oct. 16, 2019) .......................................................................... 14

*Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.,*
   No. CIV 89-822-T, 1993 WL 355466
   (W.D. Okla. June 8, 1993) ........................................................................ 20

*Hapka v. CareCentrix, Inc.,*
   No. 2:16-cv-02372-KGG, 2018 WL 1871449
   (D. Kan. Feb. 15, 2018) ............................................................................ 21

*Horton v. Molina Healthcare, Inc.,*
   No. 17-cv-0266-CVE-JFJ, 2019 WL 2207676
   (N.D. Okla. May 22, 2019) ....................................................................... 13

*In re Crocs, Inc. Sec. Litig.,*
   306 F.R.D. 672 (D. Colo. 2014) ................................................... 15, 16, 17, 21

Page

*In re Crocs, Inc. Sec. Litig.*,
   No. 07-CV-02351-PAB-KLM, 2013 WL 4547404
   (D. Colo. Aug. 28, 2013) ............................................................................ 24

*In re Genworth Fin. Sec. Litig.*,
   No. 3:14-cv-682-JAG, 2016 U.S. Dist. LEXIS 132269
   (E.D. Va. Sept. 26, 2016) ............................................................................. 19

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................. 17

*In re Molycorp, Inc. Sec. Litig.*,
   No. 12-CV-00292-RM-KMT, 2017 WL 4333997
   (D. Colo. Feb. 15, 2017)
   *rep. & rec. adopted*, No. 12-CV-00292-RM-KMT, 2017 WL 4333998
   (D. Colo. Mar. 6, 2017) ............................................................................... 13

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   625 F. Supp. 2d 1133 (D. Colo. 2009) ................................................... 14, 15

*In re Syngenta AG MIR162 Corn Litig.*,
   No. 14-MD-2591-JWL, 2018 WL 1726345
   (D. Kan. Apr. 10, 2018) ..................................................................... 10, 12, 17

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   912 F. Supp. 2d 1178 (D.N.M. 2012) ......................................... 9, 14, 16, 17

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
   No. 02-MD-1468-JWL, 2011 WL 1808038
   (D. Kan. May 12, 2011) ............................................................................... 20

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) .................................................................. 18

*Marcus v. State of Kansas Dept. of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002) ......................................................... 21

*McNeely v. Nat'l Mobile Health Care, LLC*,
   No. CIV-07-933-M, 2008 WL 4816510
   (W.D. Okla. Oct. 27, 2008) ......................................................................... 15

4839-2786-4318.v2

**Page**

*Nakamura v. Wells Fargo Bank, N.A.*,
    No. 17-4029-DDC-GEB, 2019 WL 2185081
    (D. Kan. May 21, 2019) ................................................................................ 20

*O'Dowd v. Anthem, Inc.*,
    No. 14-cv-02787-KLM-NYW, 2019 WL 4279123
    (D. Colo. Sept. 9, 2019) ............................................................................... 21

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ....................................................................... 17

*Shapiro v. Alliance MMA, Inc.*,
    No. 17-2583, 2018 WL 3158812
    (D.N.J. June 28, 2018) ................................................................................. 13

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) ............................................................... 10, 22

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    333 F.R.D. 39 (S.D.N.Y. 2019) .................................................................. 12

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336
    (D.N.J. Nov. 10, 2016) ................................................................................ 13

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77k ............................................................................................................... 4
    §77l ............................................................................................................... 4
    §78j(b) .................................................................................................... 3-6, 15
    §78t(a) ........................................................................................................ 3, 5
    §78u-4(a)(4) ........................................................................................... 19, 23
    §78u-4(a)(7)(A)-(F) ................................................................................. 3, 23

4839-2786-4318.v2

**Page**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................ 3, 23, 24
    Rule 23(b)(3) ................................................................................................ 22
    Rule 23(c) ...................................................................................................... 2
    Rule 23(c)(2)(B) .......................................................................................... 22
    Rule 23(e) .................................................................................................. 2, 9
    Rule 23(e)(1) .............................................................................................. 9, 22
    Rule 23(e)(1)(B) ........................................................................................ 22
    Rule 23(e)(2) .............................................................................................. 9, 11
    Rule 23(e)(2)(A) ........................................................................................ 11
    Rule 23(e)(2)(B) ........................................................................................ 9, 12
    Rule 23(e)(2)(C)(i) .................................................................................... 14
    Rule 23(e)(2)(C)(ii) ................................................................................... 18
    Rule 23(e)(2)(C)(iii) .................................................................................. 19
    Rule 23(e)(2)(C)(iv) .................................................................................. 20
    Rule 23(e)(2)(D) ........................................................................................ 21
    Rule 23(e)(3) .............................................................................................. 10
    Rule 23(g) .................................................................................................. 11

17 C.F.R.
    §210.10b5 ..................................................................................................... 3

**SECONDARY AUTHORITIES**

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*
    (NERA Jan. 25, 2021) ............................................................................ 17

Plaintiffs and Class Representatives Laborers Pension Trust Fund for Northern Nevada ("Northern Nevada"), Construction Laborers Pension Trust of Greater St. Louis ("Greater St. Louis"), and Angelica Galkin (collectively, "Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the proposed Settlement between Plaintiffs, on behalf of the Class, as defined below, and defendants Tom L. Ward ("Ward"), James D. Bennett ("Bennett"), and Matthew K. Grubb ("Grubb") (collectively, the "Settling Defendants"), as well as the approval of the form and manner of the notice of pendency and settlement of the Litigation to Class Members.[1]  The terms of the Settlement are set forth in the Stipulation filed simultaneously herewith.

## I.    INTRODUCTION

Plaintiffs, on behalf of the Class, and Defendants have reached a global settlement involving this matter and the *Lanier* Litigation (defined herein) for $35,750,000 in cash.  The mediator then conducted an arbitration in which he apportioned that global settlement amount between the Plaintiffs here and the plaintiffs in *Duane & Virginia Lanier Trust v. SandRidge Mississippian Trust I*, No. 5:15-cv-00634-G (W.D. Okla.) (the "*Lanier* Litigation").  The result is the proposed Settlement here on behalf of Plaintiffs and the Class of $21,807,500 ("Settlement Amount") ($11,437,500 from Settling Defendant Ward, and $10,370,000 from Settling Defendants Bennett and Grubb).  This is an exceptional recovery for the Class.

---

[1]   All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement, dated as of November 12, 2021 ("Stipulation").  Citations are omitted and emphasis is added throughout unless otherwise noted.

The Settling Parties reached this Settlement after nearly nine years of hard-fought litigation.  The Settlement – both the global amount and the Settlement Amount – is the result of multiple well-informed and extensive arm's-length negotiations over many years between highly experienced counsel, mediated by the Honorable Layn R. Phillips (Ret.) (W.D. Okla.). It represents a substantial, immediate recovery for the Class, *i.e.*, all Persons who purchased or otherwise acquired SandRidge common stock between February 24, 2011 and November 8, 2012, inclusive, and were damaged thereby.  Additionally, the Settlement was reached by experienced counsel who have a thorough understanding of the strengths and weaknesses of the claims at issue due to extensive litigation, which included a thorough investigation and discovery, the review and analysis of over 2.4 million pages of documents, and expert analysis of issues such as estimated oil and gas reserves, market efficiency, loss causation, and damages.

Considering the value of the proposed Settlement in light of the costs and risks of further litigation, the Settlement is a great result for the Class.  It is fair, reasonable, and adequate under Rule 23(e) and Tenth Circuit precedent.  Plaintiffs' proposed form and method of notice of pendency and proposed Settlement also satisfy the requirements of due process, Rules 23(c) and (e), and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Accordingly, Plaintiffs respectfully request that the Court enter the Settling Parties' agreed-upon Preliminary Approval Order, Exhibit A to the Stipulation, which will:

1.      Preliminarily approve the terms of the Settlement as set forth in the Stipulation;

2.     Approve the form and content of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Summary Notice, attached as Exhibits A-1 and A-3 to the Stipulation; and

3.     Find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best practicable notice under the circumstances, and comply with the notice requirements of due process, Rule 23, and Section 21D(a)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(7), as amended by the PSLRA.

## II.    SUMMARY OF THE ACTION

This case arises from allegations that defendants made materially false and misleading statements and omissions in violation of  §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Specifically, Plaintiffs allege that defendants misrepresented and omitted material facts concerning the production, reserves, and economics of SandRidge's core holdings in an area referred to as the Mississippian play (the "Mississippian") throughout the Class Period (February 24, 2011 through November 8, 2012, inclusive).  Plaintiffs allege these misrepresentations and omissions caused the price of SandRidge common stock to trade at artificially inflated prices, and when the market learned of the false and misleading statements and omissions, the Company's share price declined significantly.

The initial complaint in this action was filed on December 5, 2012.  ECF No. 1.  On March 6, 2013, the Court appointed Plaintiffs and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Plaintiffs and Lead Counsel, respectively.  ECF No. 60.

Plaintiffs' Corrected Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "AC") was filed on July 30, 2013.  ECF No. 75.  Defendants denied the allegations in the AC and filed motions to dismiss on October 7, 2013, which Plaintiffs opposed.  *See* ECF Nos. 128-135, 138-142.  In the AC, Plaintiffs added claims against two entities named SandRidge Mississippian Trust I and SanRidge Mississippian Trust II (the "Trusts"), and their respective board members and underwriters, alleging violations of §§11 and 12(a)(2) of the Securities Act and §10(b) of the Exchange Act in connection with the Trusts' Class Period equity offerings.  Plaintiffs further alleged Securities Act and Exchange Act claims against defendants SandRidge, Ward, Bennett, and Grubb arising out of these offerings.

On March 27, 2015, the parties held a mediation before Judge Phillips but were unable to resolve the Litigation.  On May 11, 2015, the Court issued opinions and orders dismissing Plaintiffs' claims relating to the Trusts' offerings, finding that those claims were not encompassed by Plaintiffs' PSLRA notice.[2]  *See* ECF Nos. 179-180.  On August 27, 2015, the Court dismissed the AC but granted leave to amend.  ECF Nos. 184-185.  Plaintiffs filed a Second Consolidated Amended Complaint on October 23, 2015.  ECF No. 188.

SandRidge filed for bankruptcy protection on May 16, 2016.  *See* ECF No. 212.  On May 24, 2016, the Court issued an opinion and order staying the proceedings as a result of SandRidge's voluntary bankruptcy petition.  ECF No. 216.  After the stay was vacated on October 17, 2016 (ECF No. 219), Plaintiffs filed the Third Consolidated Amended

---

[2]    The claims alleged on behalf of Trust purchasers were thereafter brought by the plaintiffs in the *Lanier* Litigation.

Complaint (the "TAC") on October 21, 2016, to name SandRidge as a nominal defendant. *See* ECF No. 225. Defendants filed motions to dismiss the TAC on October 27, 2016 (ECF Nos. 226-227), and on August 1, 2017, the Court sustained the §10(b) claims against all defendants except Bennett, and sustained the §20(a) claims against all defendants. ECF Nos. 239-240.

The parties held a second mediation before Judge Phillips on February 9, 2018, but were unable to resolve the Litigation. On February 16, 2018, Plaintiffs moved for class certification (ECF No. 268) and the Court heard oral argument on that motion on September 6, 2019. *See* ECF No. 449. The Court granted Plaintiffs' class certification motion on September 30, 2019, certifying the class, appointing Northern Nevada, Greater St. Louis and Angelica Galkin as Class Representatives, and naming Robbins Geller as Class Counsel. ECF No. 453.

The parties conducted extensive fact, class certification and expert discovery, including 29 depositions, the production and review of over 2.4 million pages of documents by the parties and numerous non-parties, and the exchange of multiple expert reports. The parties then held a third mediation before Judge Phillips on December 13, 2019, but were again unable to resolve the Litigation.

On September 22, 2020, briefing was completed on defendants' two summary judgment motions (*see* ECF Nos. 479-480; 489; 514; 520; 525), two motions to exclude Plaintiffs' expert witnesses (*see* ECF Nos. 475; 487; 504; 507; 524; 526), one motion to reconsider the denial of defendants' motion to dismiss the TAC (*see* ECF Nos. 483; 510; 528), and Plaintiffs' motion to exclude one of defendants' expert witnesses (*see* ECF Nos.

- 5 -

477-478; 513; 519) (the "Dispositive Motions").  The Settling Defendants contend that they did not violate §§10(b) or 20(a) of the Exchange Act.  Specifically, the Settling Defendants deny, *inter alia*, that they made any false or misleading statements, that any of the allegedly false or misleading statements were made with scienter, and that Class Members, including Class Representatives, suffered any damages.  Plaintiffs vigorously dispute these arguments and contend the case should proceed to trial.

With the Dispositive Motions pending before the Court, the parties engaged in prolonged arm's-length negotiations.  First, Plaintiffs negotiated with all Settling Defendants as a group.  After that was unsuccessful, Plaintiffs negotiated with Settling Defendant Ward separately from Settling Defendants Bennett and Grubb.  On June 4, 2021, Plaintiffs executed a confidential term sheet memorializing their agreement with Settling Defendant Ward.  The agreement included, among other things, an agreement to settle the Litigation and the *Lanier* Litigation on a global basis with Settling Defendant Ward in return for a cash payment of $18,750,000, for the benefit of the Class, subject to the negotiation of the terms of the Stipulation and Agreement of Settlement and approval by the Court.  Separately, on June 18, 2021, Plaintiffs reached an agreement in principle to settle the Litigation and the *Lanier* Litigation on a global basis with Settling Defendants Bennett and Grubb for a cash payment of $17,000,000.  The Settlement reflects a compromise of all matters that are in dispute between the Settling Parties.

## III.   TERMS OF THE SETTLEMENT

The Stipulation, which is attached as Exhibit 1, provides that Settling Defendants shall cause their insurers to pay the Settlement Amount as follows: $11,437,500 from

Settling Defendant Ward, and $10,370,000 from Settling Defendants Bennett and Grubb, into the Escrow Account no later than seventeen (17) calendar days (but not before December 1, 2021) from the later of entry of the Preliminary Approval Order or the date on which the Settling Defendants and their insurers have been provided with all necessary funding instructions.  Stipulation, ¶2.1.

The cost of settlement administration, including the costs of notice to the Class, as well as Taxes and Tax Expenses, will be funded by the Settlement Fund (*id.*, ¶5.2), which consists of the Settlement Amount, plus accrued interest and accretions.  *Id.*, ¶1.32. Plaintiffs propose a nationally recognized class action settlement administrator, Epiq Class Action Notice and Administration ("Claims Administrator" or "Epiq"), to be retained here subject to the Court's approval.  The proposed notice plan is discussed below and in the accompanying Declaration of Joseph Mahan Regarding Notice Plan ("Mahan Decl."), attached hereto as Exhibit 2.

If the Court grants preliminary approval, the Claims Administrator will mail the Notice[3] and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation, respectively) to all Class Members who can be identified with reasonable effort.  Mahan Decl., ¶¶4-9. Additionally, the Claims Administrator will cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in *The Wall Street Journal* and once over a national newswire service.  *See* Stipulation, Ex. A, ¶12; Mahan Decl., ¶10.

---

[3]  The proposed form and method for providing Notice is discussed in detail below in §V.

The recovery to individual Class Members will be determined pursuant to the Plan of Allocation, explained in the Notice, and will depend on several variables, including: (i) the aggregate value of the Recognized Claims represented by all valid and acceptable Proof of Claim forms; (ii) when the Class Members' shares were purchased or acquired and the price at the time of purchase; and (iii) whether the shares were sold, and, if so, when they were sold and for how much. *See* Stipulation, Ex. A-1 at 7-12. The Plan of Allocation treats all Class Members equitably based on the timing of their SandRidge stock purchases, acquisitions, and sales. *Id*.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against the Settling Defendants and the other Released Persons that are based upon, arise out of, or in connection with both: (i) the purchase or other acquisition of SandRidge common stock, and (ii) the allegations, transactions, acts, facts, matters, statements, filings, representations, omissions, or events that were or could have been alleged or asserted in the Litigation.[4]

---

[4]   The Stipulation (¶1.25) defines "Released Claims" as follows: "all rights, liabilities, suits, debts, obligations, demands, damages, costs, expenses, fees, injunctive relief, attorneys' fees, expert consulting fees, prejudgment interest, indemnities, duties, losses, judgments, matters, issues, claims (including Unknown Claims), obligations, and causes of action of every nature and description whatsoever, in law, equity, or otherwise, whether accrued or unaccrued, fixed or contingent, liquidated or unliquidated, direct or indirect, known or unknown, whether or not concealed or hidden, anticipated or unanticipated, whether arising under federal, state, local, statutory, common law, foreign law, or any other law, rule, or regulation, and whether class and/or individual in nature, that arise out of or in connection with, or otherwise relate to both:

(a) the purchase or other acquisition of SandRidge common stock during the period from February 24, 2011 to November 8, 2012, inclusive; and

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Standards for Preliminary Approval of a Proposed Settlement

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").  In general, the law favors and encourages settlements, and there is an overriding public interest in settling class action litigation.  *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354-55 (10th Cir. 1972); *In re Thornburg Mortg., Inc. Sec. Litig*., 912 F. Supp. 2d 1178, 1242 (D.N.M. 2012).

Under Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."[5]  Fed. R. Civ. P. 23(e)(2)(B).  Rule 23(e)(2) provides that a class action settlement may be approved by the court "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In deciding whether to approve a class action settlement, courts should consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;

---

(b) any of the allegations, transactions, acts, facts, matters, occurrences, disclosures, statements, filings, representations, omissions, or events that were or could have been alleged or asserted in the Litigation.

Released Claims do not include claims to enforce the Settlement."

[5]    This requirement is already satisfied as the Court certified the Class by its order dated September 30, 2019.  ECF No. 453.  The Class definition for purposes of the Settlement is substantially similar to the Class definition in Plaintiffs' motion for class certification.  *See* ECF No. 268.

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, in deciding whether a settlement is "fair, reasonable, and adequate," courts in the Tenth Circuit consider the following factors:

> "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable."

*In re Syngenta AG MIR162 Corn Litig.*, No. 14-MD-2591-JWL, 2018 WL 1726345, at *2 (D. Kan. Apr. 10, 2018) (citing *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).   Because the Tenth Circuit's additional factors "largely overlap" with the Rule 23(e)(2) factors, "with only the fourth factor not being subsumed" into it, courts in this District now "consider[] the Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the Tenth Circuit's factors.  *Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020).

- 10 -

As discussed below, the proposed Settlement for $21,807,500 in cash easily satisfies each of the Rule 23(e)(2) and Tenth Circuit factors.  Accordingly, Plaintiffs request that the Court grant preliminary approval of the Settlement.

## B.     The Settlement Satisfies the Rule 23(e)(2) Factors

### 1.     Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting the Litigation, which included, among other things, (i) investigating the relevant factual events; (ii) drafting the detailed, 152-page TAC; (iii) successfully opposing defendants' motions to dismiss; (iv) engaging in document and written discovery, including producing, obtaining, reviewing, and analyzing over 2.4 million pages of documents; (v) successfully litigating Plaintiffs' motion for class certification, and fully briefing defendants' motions for summary judgment, supported by multiple expert reports; and (vi) preparing for and engaging in numerous lengthy mediation sessions with Judge Phillips, preceded by detailed mediation submissions exchanged between the Settling Parties.  Moreover, Plaintiffs have achieved a significant all-cash Settlement of $21,807,500, which will provide immediate relief to the Class.

Plaintiffs have substantial experience prosecuting complex securities class actions, and courts around the country and in this Circuit recognize the expertise and ability of Robbins Geller to effectively litigate complex class actions.  *See, e.g*., ECF No. 453 at 20-21 (recognizing that "attorneys of Robbins Geller are experienced class-action litigators"); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 513 (D. Kan. 2014) (observing that Robbins

Geller satisfied the criteria of Rule 23(g) and appointing it class counsel); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation, as well, indicating its ability to manage this litigation and ably apply the applicable law"); *see also* www.rgrdlaw.com.  Moreover, two of the court-appointed Plaintiffs comprise institutional investors and multi-employer defined benefit plans that oversee the investment of over $1.2 billion in assets on behalf of over 10,000 participants.  *See* ECF No. 268 at 11.  The collective tenacity and sophistication of Lead Counsel and Plaintiffs contributed to the Settlement, which will provide significant and immediate relief to the Class.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by courts in the Tenth Circuit and assesses whether "'the settlement was fairly and honestly negotiated.'"  *See Syngenta*, 2018 WL 1726345, at *2 (Lungstrum, J.).  Here, the Settlement is the result of extensive, arm's-length negotiations conducted by Judge Phillips, a neutral, third-party mediator.  The negotiations that ultimately led to the Settlement occurred during numerous vigorous and adversarial mediation sessions and follow-up telephonic discussions in March 2015, February 2018, December 2019, and February-June 2021, and were supported by comprehensive mediation submissions.  Indeed, as further evidence of the adversarial nature of the parties' negotiations, the parties spent months negotiating the Stipulation and exhibits thereto.  At no point did Settling Defendants, represented by highly sophisticated counsel, concede that Plaintiffs' claims were meritorious or that Class Members suffered any

damages.  The Settlement was only reached after the parties were awaiting rulings on multiple

key dispositive motions after fact and expert discovery was completed and was the result of

intense negotiations resulting in a settlement with Settling Defendant Ward first and then

Settling Defendants Bennett and Grubb.

"Utilization of an experienced mediator during the settlement negotiations supports a

finding that the settlement is reasonable, was reached without collusion and should therefore

be approved."  *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292-RM-KMT, 2017 WL

4333997, at *4 (D. Colo. Feb. 15, 2017), *rep. & rec. adopted*, No. 12-CV-00292-RM-KMT,

2017 WL 4333998 (D. Colo. Mar. 6, 2017); *Horton v. Molina Healthcare, Inc.*, No. 17-cv-

0266-CVE-JFJ, 2019 WL 2207676, at *1 (N.D. Okla. May 22, 2019) (finding a proposed class

action settlement fair and reasonable because, *inter alia*, it was "negotiated in good faith at

arms' length between experienced attorneys familiar with the legal and factual issues of this

case aided by an experienced and neutral third-party mediator"); *Shapiro v. Alliance MMA,

Inc.*, No. 17-2583 (RBK/AMD), 2018 WL 3158812, at *2 (D.N.J. June 28, 2018) (the parties'

participation in a mediation before Judge Hochberg supported the finding that the settlement

was negotiated at arm's length and without collusion between the parties); *Yedlowski v. Roka

Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *11 (D.N.J. Nov. 10,

2016) (same).  "Accordingly, a presumption of fairness, adequacy, and reasonableness attaches

to the Settlement achieved here."  *Molycorp*, 2017 WL 4333997, at *4; *Chavez Rodriguez,*

2020 WL 3288059, at *3 (determining that a settlement "negotiated through a formal

mediation" with an experienced mediator supported the conclusion that the settlement "is a

product of an arm's length negotiation").

- 13 -

### 3.   The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should also balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the significant costs, risks, and delay of proceeding with the Litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This consideration largely overlaps with the second ("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt'") and third factors ("'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation'") traditionally considered by courts in the Tenth Circuit. *Chavez Rodriguez*, 2020 WL 3288059, at *3. Thus, courts consider these factors to be "subsumed under Rule 23's requirement." *Id*.

### a.   Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt

The presence of serious legal and factual questions concerning the outcome of the litigation weighs in favor of settlement, "because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009). Securities class actions in particular are notoriously complex and present numerous hurdles to proving liability and damages. *See, e.g.*, *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) ("'In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.'"); *Thornburg*, 912 F. Supp. 2d at 1242 (recognizing difficulty associated with

- 14 -

proving loss causation and establishing damages, and finding that the parties "disagree on many factual and legal issues, making the likelihood of prevailing at trial problematic"); *Qwest Commc'ns*, 625 F. Supp. 2d at 1138 (finding that the issues of scienter, causation, and damages in a securities fraud action were "complex and problematic" and that "[p]resenting these issues to a jury would create substantial risks for all parties, including the plaintiffs"); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014) (recognizing "a risk that plaintiffs would be unable to establish the required elements of their §10(b) claims").

Indeed, Plaintiffs have advanced numerous complex legal and factual issues under the federal securities laws. For instance, Plaintiffs allege that during the Class Period, defendants knowingly or recklessly made materially false or misleading statements regarding, *inter alia*: (i) the amount of oil being produced in the Mississippian play for its typical horizontal Mississippian well; (ii) the amount of oil relative to gas; (iii) the economics for horizontal Mississippian wells; and (iv) the geology of the Company's leasehold across the Mississippian. *See* ECF No. 225, ¶¶113-297. Plaintiffs also allege that the price of SandRidge's stock was artificially inflated by defendants' allegedly misleading statements and omissions, and that Plaintiffs and the Class suffered damages when SandRidge's true financial condition was revealed. *Id.*, ¶¶340-351.

While Plaintiffs believe their claims would be borne out by the evidence presented at trial, they recognize that there are significant hurdles to proving liability or even proceeding to trial. Indeed, although the Court denied defendants' motions to dismiss, "that ruling provides no guarantee that [Plaintiffs] will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla.

Oct. 27, 2008).  Thus, Plaintiffs must "consider their likelihood of success . . . surviving summary judgment, and winning at trial."  *Crocs*, 306 F.R.D. at 691.

Settling Defendants, represented by experienced and skilled local and national counsel, continue to strenuously argue that they did not make any false or misleading statements or omissions, contending that the statements at issue were truly held opinions, forward-looking statements protected by the PSLRA's safe harbor, statements of corporate optimism, and/or accurate statements of historical performance, and that SandRidge adequately warned investors about the uncertainty of its financial projections throughout the Class Period.  Settling Defendants also claim that Plaintiffs will be unable to prove that any defendant acted with the requisite state of mind.

Plaintiffs also faced significant risks in establishing loss causation and damages. Defendants undoubtedly would have argued that Plaintiffs' damages methodology is unreliable and does not accurately account for the effect that confounding or market factors had on the alleged decline in the price of SandRidge stock.  Establishing loss causation and damages would have likely come down to an unpredictable and hotly disputed "'battle of the experts.'"  *See Thornburg*, 912 F. Supp. 2d at 1242.  As a result, Plaintiffs' claims are also susceptible to the risks involved in relying on expert witness testimony, namely that the experts will be subject to a *Daubert* challenge.  If, for some reason, the Court determined that even one of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove.

### b. Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation

Considering the risks associated with continued litigation, as discussed above, the immediate, substantial relief offered by the Settlement outweighs the "mere possibility of a more favorable outcome after protracted and expensive litigation over many years in the future." *Syngenta*, 2018 WL 1726345, at *2; *Thornburg*, 912 F. Supp. 2d at 1244 ("'[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now'") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002)).

The Settlement here represents an excellent result, falling in a range of approximately 11.3% of the estimated recoverable damages consistent with the proposed Plan of Allocation. Plaintiffs achieved this result even though SandRidge filed for bankruptcy protection during the Litigation. *See, e.g.*, *Crocs*, 306 F.R.D. at 691 n.20 (finding recovery of approximately 1.3% of amount of damages "is in line with the median ratio of settlement size to investor losses"); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving settlement of 3% of estimated damages); *see also* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021) at 20, Fig. 16 (noting that median recovery in securities class actions in 2020 was approximately 1.7% of estimated investor losses).[6]

Further, this Litigation has already been pending for nearly nine years, and the Court would expend significant additional time, resources, and costs to complete the pre-trial

---

[6]   *Available at* https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf.

proceedings, including summary judgment and *Daubert* motions.  *Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial").  In addition, Settling Defendants could appeal any verdict eventually obtained for Plaintiffs and the Class to the Tenth Circuit, which could take years to resolve. *See, e.g.*, *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694 (D. Colo. 2006) ("If this case were to be litigated, in all probability it would be many years before it was resolved.").  Considering the complex legal and factual issues associated with continued litigation, there is an undeniable and substantial risk that, after years of continued litigation and potential additional delays resulting from the ongoing COVID-19 pandemic, the Class would have received an amount significantly less than the Settlement Amount, or nothing at all.

Thus, the $21,807,500 immediate recovery, particularly when viewed in the context of the risks, costs, delay, and the uncertainties of further proceedings, weighs in favor of preliminary approval of the Settlement.

### 4.  The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan involves direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Mahan Decl., ¶¶4-10.  In addition, a Settlement-specific website will be created where Settlement-related and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *Id.*, ¶12.

Plaintiffs propose a thorough and comprehensive claims administration process.

- 18 -

Specifically, a standard claim form will request the information necessary to calculate a claimant's Recognized Loss Amount pursuant to the Plan of Allocation. Stipulation, Ex. A-1 at 8-11. The Claims Administrator will process the claims, calculate claimants' recognized losses pursuant to the Plan of Allocation and, ultimately, distribute the Net Settlement Fund to Authorized Claimants. The Plan of Allocation is based primarily on an analysis estimating the amount of artificial inflation in the price of SandRidge common stock during the Class Period.

### 5. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Notice provides that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount up to one-third of the Settlement Amount and litigation expenses in an amount not to exceed $2.7 million, plus interest on these amounts at the same rate as earned by the Settlement Fund. Stipulation, Ex. A-1 at 4, 14. In addition, Plaintiffs may seek an award of no more than $20,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class. *Id.* With respect to the timing of payment, the Stipulation provides that any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel once the Court executes the Judgment and an order awarding such fees and expenses. Stipulation, ¶6.2.[7]

---

[7]   *See In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682-JAG, 2016 U.S. Dist. LEXIS 132269, at *28 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

Lead Counsel's fee request is well within the range that other courts in this District and the Tenth Circuit have approved in complex class actions. *See Chavez Rodriguez*, 2020 WL 3288059, at *4 (awarding attorneys' fees of 33% of the settlement amount after costs); *Nakamura v. Wells Fargo Bank, N.A.*, No. 17-4029-DDC-GEB, 2019 WL 2185081, at *1 (D. Kan. May 21, 2019) (awarding attorneys' fees of 33% of the settlement fund); *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (finding a fee of one-third of the settlement fund to be "a reasonable and appropriate fee"); *Barnwell v. Corr. Corp. of Am.*, No. 2:08-02151-JWL-DJW, slip op. at 2 (D. Kan. Feb. 12, 2009) (approving award of 33% of settlement amount) (attached as Exhibit 3 hereto); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, No. CIV 89-822-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

### 6. The Settling Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements. The Settling Parties have entered into a standard supplemental agreement which provides solely that in the event Class Members with Class Period purchases of SandRidge common stock that exceed a certain percentage of SandRidge shares validly request exclusion from the Class, the Settling Defendants shall have the option to terminate the Settlement. *See* Stipulation, ¶7.3.

### 7.      Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably.  As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1 at 8-11), the Settlement treats all Class Members equitably relative to each other, based on the timing of their SandRidge common stock purchases, acquisitions, and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.

### C.      The Settlement Satisfies the Remaining Factor Considered by Courts in the Tenth Circuit

The final, additional factor courts in the Tenth Circuit consider is "'the judgment of the parties that the settlement is fair and reasonable.'"  *Chavez Rodriguez*, 2020 WL 3288059, at *2.  In analyzing this factor, courts recognize that "'the recommendation of a settlement by experienced plaintiff[s'] counsel is entitled to great weight.'"  *O'Dowd v. Anthem, Inc*., No. 14-cv-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (alteration in original); *Hapka v. CareCentrix, Inc*., No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018); *Marcus v. State of Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002) ("'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'").  Bringing its extensive experience and knowledge to bear (*see supra*, §IV(B)(1)), Lead Counsel believes that the Settlement is in the best interests of the Class, as it provides a meaningful cash recovery to the Class now, eliminating the risk that the Class will ultimately obtain nothing.  *Crocs*, 306 F.R.D. at 691 (noting that the settling parties, represented by experienced counsel, believed that the

settlement agreement was fair and reasonable).   The fairness of this Settlement is additionally confirmed because it was the result of a proposal by an experienced mediator, who was well versed in the strengths and weaknesses of this Litigation.   Therefore, this factor further supports preliminary approval of the Settlement.

## V.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice "'must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille*, 785 F.3d at 436.

The PSLRA requires that any proposed settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and

- 22 -

costs sought; (4) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court. *See* 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed Notice contains all of the information required by Rule 23 and the PSLRA. *See* Stipulation, Ex. A-1. For example, the Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim pursuant to the proposed Plan of Allocation included in the Notice and subject to the Court's approval. Stipulation, Ex. A-1 at 8-11. The Notice advises Class Members of, among other information: (i) Lead Counsel's application for attorneys' fees, charges, and expenses, and Plaintiffs' application for an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class; (ii) the procedures for requesting exclusion from the Class or objecting to the Settlement, the Plan of Allocation, the request for attorneys' fees, charges, and expenses, and/or Plaintiffs' application for an award pursuant to 15 U.S.C. §78u-4(a)(4); and (iii) the date and time for the Settlement Hearing. *Id*. at 14-16, 19. It also provides recipients with the contact information for the Claims Administrator and Lead Counsel. *Id*. at 5, 14.

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail the Notice and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation, respectively) to all Class Members who can be identified with reasonable effort, including all Class Members identified by SandRidge's transfer agent as well as brokers and

other nominees who purchased or otherwise acquired shares on behalf of others.  Stipulation, Ex. A, ¶¶11, 14.  The Claims Administrator will also post the Notice and Proof of Claim on the case-designated website, www.SandRidgeSecuritiesSettlement.com, and publish the Summary Notice in *The Wall Street Journal* and a national newswire service.  *Id.*, ¶¶11-12.  The proposed notice plan and plan for claims processing is further discussed in the accompanying Mahan Declaration.

Similar methods of providing notice have been recognized as comporting with the requirements of due process, Rule 23, and the PSLRA, and have been approved as adequate in prior cases within this Circuit.  *See, e.g.*, *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-GEB, slip op. at 2-3 (D. Kan. Apr. 10, 2015) (approving a substantially similar proposed notice and method for mailing, distributing and publishing the notice) (attached as Exhibit 4 hereto); *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 WL 4547404, at *13 (D. Colo. Aug. 28, 2013) (approving proposed method of notice, consisting of mailing notice to class members identified through reasonable efforts and through posting a summary notice by press releases issued over leading business oriented newspapers).

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, the Settling Parties respectfully propose the following schedule:

| Event | Proposed Due Date |
| --- | --- |
| Date for commencing the mailing of the Notice and Proof of Claim to Class Members (the "Notice Date") | 14 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |

| Event | Proposed Due Date |
|---|---|
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing |
| Deadline for requesting exclusion from the Class | 21 calendar days prior to Settlement Hearing |
| Deadline for filing objections | 14 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Proofs of Claim | 70 calendar days after the Notice Date |
| Settlement Hearing | At least 112 calendar days after entry of Preliminary Approval Order |

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order, which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Class; and (iii) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  November 12, 2021             Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
CHRISTOPHER T. GILROY (admitted *pro hac vice*)


                        s/ EVAN J. KAUFMAN
                        EVAN J. KAUFMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com
cgilroy@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

*Lead Counsel for Plaintiffs*

DERRYBERRY & NAIFEH, LLP
DARREN B. DERRYBERRY (OBA No. 14542)
4800 North Lincoln Blvd.
Oklahoma City, OK  73105
Telephone:  405/708-6784
405/528-6462 (fax)
dderryberry@derryberrylaw.com

*Liaison Counsel*

HAEGGQUIST & ECK, LLP
AMBER L. ECK
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone:  619/342-8000
619/342-7878 (fax)
ambere@haelaw.com

*Additional Plaintiffs' Counsel*

4839-2786-4318.v2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, I electronically transmitted the attached Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

s/ EVAN J. KAUFMAN
EVAN J. KAUFMAN

4839-2786-4318.v2